1   JAMES C. YOON (State Bar No. 177155)
    jyoon@wsgr.com
2   RYAN R. SMITH (State Bar No. 229323)
    rsmith@wsgr.com
3   ALBERT SHIH (State Bar No. 251726)
    ashih@wsgr.com
4   CHRISTOPHER MAYS (State Bar No. 266510)
    cmays@wsgr.com
5   WILSON SONSINI GOODRICH & ROSATI PC
    650 Page Mill Road
6   Palo Alto, CA 94304-1050
    Telephone:  (650) 493-9300
7   Facsimile:  (650) 493-6811

8   LUCY YEN, State Bar No. 224559
    lyen@wsgr.com
9   WILSON SONSINI GOODRICH & ROSATI
    1301 Avenue of the Americas, 40th Floor
10  New York, New York 10019-6022
    Telephone: (212) 999-5800
11  Facsimile: (212) 999-5899

12  CELINE LIU (State Bar No. 268990)
    celine.liu@wsgr.com
13  WILSON SONSINI GOODRICH & ROSATI PC
    1700 K Street NW, Fifth Floor
14  Washington, D.C. 20006
    Telephone:  (202) 791-8800
15  Facsimile:  (650) 493-6811

16  *Attorneys for Plaintiff*
    *CYNTEC COMPANY, LTD.*

17

18                **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
19                        **OAKLAND DIVISION**

| | |
|---|---|
| 20   CYNTEC COMPANY, LTD., | CASE NO.: 4:18-cv-00939-PJH |
| 21           Plaintiff, | **CYNTEC'S TRIAL BRIEF** |
| 22        v. | Trial Date: August 23, 2021 |
| 23   CHILISIN ELECTRONICS CORP., | Time: 8:30 a.m. |
|      CHILISIN AMERICA LTD., | Location: Courtroom 3, 3rd Floor |
| 24 | Judge: Hon. Phyllis J. Hamilton |
|           Defendants. | |
| 25 | |

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 1

    A.    Technology Background ............................................................................ 1

    B.    The Parties ................................................................................................. 3

        1.    Cyntec ........................................................................................... 3

        2.    Chilisin ......................................................................................... 3

III.  CAUSES OF ACTION REMAINING TO BE TRIED ...................................... 4

    A.    Direct Infringement Under 35 U.S.C. § 271(a) ....................................... 4

        1.    Literal Infringement ..................................................................... 5

        2.    Infringement Under the Doctrine of Equivalents ......................... 5

    B.    Induced Infringement Under 35 U.S.C. § 271(b) ..................................... 6

    C.    Contributory Infringement Under 35 U.S.C. § 271(c) ............................. 7

    D.    Willful Infringement ................................................................................. 8

    E.    Damages .................................................................................................... 9

        1.    Reasonable Royalty ...................................................................... 9

        2.    Lost Profits ................................................................................. 12

        3.    Foreign Sales ............................................................................. 14

        4.    Enhanced Damages ..................................................................... 15

        5.    Exceptional Case ........................................................................ 15

    F.    Permanent Injunction ............................................................................. 15

IV.   CHILISIN'S DEFENSES REMAINING TO BE TRIED ............................... 16

    A.    Invalidity ................................................................................................ 16

        1.    Invalidity Under 35 U.S.C. § 102 (Anticipation) ...................... 16

        2.    Invalidity Under 35 U.S.C. § 103 (Obviousness) ...................... 16

        3.    Invalidity Under 35 U.S.C. § 112 (Lack of Written Description
            and/or Enablement) .................................................................... 18

V.  ISSUES THAT SHOULD BE RESOLVED AS A MATTER OF LAW BY THE
    COURT AND NOT TRIED TO THE JURY..................................................................19

    A.   The Court Should Enter Judgment Against Chilisin's Indefiniteness
         Defense as A Matter of Law ............................................................................19

    B.   The Court Should Enter Judgment of No Inequitable Conduct ...........................20

    C.   The Court Should Enter Judgment of No Unclean Hands ...................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020 (Fed. Cir. 2015) ...........................4

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013 (N.D. Cal. 2017) ...........................9

*BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993) ....................14

*Braun Inc. v. Dynamics Corp.*, 975 F.2d 815 (Fed. Cir. 1992)....................................................5

*Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120 (Fed.
     Cir. 2000)........................................................................................................................17

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670 (Fed. Cir.
     1990)................................................................................................................................7

*Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005) ........................................19

*Cargill, Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359 (Fed. Cir. 2007)........................................20

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002) .......................6

*Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920 (2015) ...........................................6

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336
     (Fed. Cir. 2001) ...............................................................................................................9

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955 (Fed. Cir.
     1986)..............................................................................................................................18

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc)...............................4

*Deere & Co. v. Int'l Harvester Co*, 710 F.2d 1551 (Fed. Cir. 1983) ........................................11

*Digital Control, Inc. v. Charles Mach. Works,* 437 F.3d 1309 (Fed. Cir. 2006) ..........................20

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 809 F.3d 1223 (Fed. Cir.
     2015)..............................................................................................................................19

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) .................................................6

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ....................................................15

*Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Grp, LLC,* 879 F.3d 1332
     (Fed. Cir. 2018) ..............................................................................................................20

*Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209 (Fed. Cir. 1987) ...................................20

*Garretson v. Clark*, 111 U.S. 120 (1884).............................................................................12

*Genentech, Inc. v. Ismed Inc.*, 436 F. Supp. 2d 1080 (N.D. Cal. 2006)....................................18

*Georgia-Pacific v. United State Plywood Corp.* 318 F. Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied* 404 U.S. 870 (1971) ................................................................................................9, 10, 11

*Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231 (Fed. Cir. 2018) ...............................21

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011) ..................................................6

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ..................................................................................17

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999) ...............12, 13

*Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549 (Fed. Cir. 1984) .........................13, 14

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016) ...................................8, 15

*Hewlett-Packard Co.*, 909 F.2d at 1469 ..............................................................................................7

*In re Buchner*, 929 F.2d 660 (Fed. Cir. 1991) ..................................................................................19

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc)................................................8

*In re Vaeck*, 947 F.2d 488 (Fed. Cir. 1991) ......................................................................................19

*In re Wands*, 858 F.2d 731 (Fed. Cir. 1988) ...............................................................................18, 19

*Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336 (Fed. Cir. 2015) ................................................17

*Kalman v. The Berlyn Corp.*, 914 F.2d 1473 (Fed. Cir. 1990).........................................................14

*Keystone Driller Co. v. General Extractor Co.*, 290 U.S. 240 (1933).............................................21

*King Instruments Corp.*, 65 F.3d at 952 .....................................................................................12, 13

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).........................................................................17

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012).........................11, 12

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006) ........................................5

*LizardTech, Inv. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005) .....................18

*Lucent Techs., Inc. v. Gateway*, 580 F.3d 1301 (Fed. Cir. 2009)....................................................11

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).............................................................................................................4, 5

*Marlowe Patent Holdings v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 171762 (D.N.J. Dec. 4, 2013) .....................................................................................................................16

*Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009) ................................5

*MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307 (Fed. Cir. 2017.) ...................19, 20

*McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339 (Fed. Cir. 2001) ...............................................17

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012).............................................................14

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011)................................................................16

*Minerals Separation Ltd. v. Hyde*, 242 U.S. 261 (1916)..............................................................18

*Molins PLC v. Textron, Inc.,* 48 F.3d 1172 (Fed. Cir. 1995) ......................................................21

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) ................................................19

*nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317 (Fed. Cir. 2006) ........................................8

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) ..............................15

*Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995) .....................................8, 9

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978)...................13, 14

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir.
    1984)....................................................................................................................................13

*Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085 (Fed. Cir.
    1995)....................................................................................................................................17

*Perspective Biosystems, Inc. v. Pharmacia Biotaech, Inc.,* 225 F.3d 1315 (Fed. Cir.
    2000)....................................................................................................................................20

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, No. 08-cv-309-LPS,
    2019 U.S. Dist. LEXIS 121675 (D. Del. July 22, 2019)......................................................14

*Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151 (Fed. Cir. 2012) ................................................18

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324
    U.S. 806 (1995) ....................................................................................................................21

*Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000) ......................................18

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), *abrogated in part on
    other grounds by Markman v. Westview Instruments, Inc.*, 517 U.S. 370
    (1996) ...................................................................................................................................8

*Rite-Hite II*, 56 F.3d at 1545 ................................................................................................12, 13

*Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000) ...........................................................17

*Sandisk Corp. v. Lexar Media, Inc.*, 91 F.Supp.2d 1327 (N.D. Cal. 2000) ..................................7

*SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010) ....................................4

*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.,* 844 F.3d 1370 (Fed. Cir. 2017)..............................20

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462 (Fed. Cir. 1997) ..............................8

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008),
    *cert. denied*, 129 S. Ct. 1595 (2009) ...............................................................................20, 21

*State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573 (Fed. Cir. 1989), *cert.
    denied*, 493 U.S. 1022 (1990) ..........................................................................................12, 13

1  *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350 (Fed. Cir. 2007) ...........................16

2  *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017) .....................................5

3  *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895 (Fed. Cir. 1986) ........................................................12

4  *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991)..........................................................18

5  *VirnetX, Inc. v. Cicsco Systems, Inc.*, 767 F.3d 1308 (Fed. Cir. 2014) ...........................................12

6  *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374 (Fed. Cir. 2012)..................................................................................................................................16

7

8  *Wordtech Sys. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010)....................................................................................................................................9

9                                   **STATUTES**

10 35 U.S.C. § 102 .................................................................................................................................16

11 35 U.S.C. § 103 .................................................................................................................................16

12 35 U.S.C. § 112 .................................................................................................................................18

13 35 U.S.C. § 271 ...........................................................................................................................4, 6, 7

14 35 U.S.C. § 282 .................................................................................................................................16

15 35 U.S.C. § 284 ...........................................................................................................................9, 15

16 35 U.S.C. § 285 .................................................................................................................................15

17

18

19

20

21

22

23

24

25

26

27

28

1      Pursuant to the Court's October 15, 2020 Case Management and Pretrial Order (Dkt.

2   175), Plaintiff Cyntec Company, Ltd. ("Cyntec") respectfully submits this Trial Brief.

3   **I.      INTRODUCTION**

4      Cyntec will prove at trial that Defendants Chilisin Electronics Corp. and Chilisin

5   America Ltd. (collectively, "Chilisin" or "Defendants") willfully infringe the following Cyntec

6   patents, which cover electronic power chokes: U.S. Patent Nos. 8,922,312 ("the '312 Patent");

7   9,481,037 ("the '037 Patent"); and 9,117,580 ("the '580 Patent") (collectively, "the Asserted

8   Patents"). These patents are infringed by Chilisin's products identified in Appendix A to the

9   parties' Joint Pretrial Statement (and referred to collectively here as the "Accused Products").

10  Specifically, Cyntec will show that the Accused Products infringe twelve claims of the Asserted

11  Patents (the "Asserted Claims"), as shown below:

| Patent | Asserted Claims |
|---|---|
| '312 Patent | 1, 2, 5, 8, 10, and 18 |
| '037 Patent | 9, 12, and 20 |
| '580 Patent | 2, 3, and 5 |

17  At trial, Cyntec will seek monetary damages under the requirements of law, including a

18  judgment of willful infringement, enhanced damages, pre-judgment and post-judgment interest,

19  costs, and attorney fees. Cyntec will also present evidence that rebuts Chilisin's defenses and

20  any appropriate monetary damages related claims the Chilisin intends to raise at trial. Cyntec

21  also reserves the right to seek a permanent injunction through post-trial briefing as appropriate.

22  **II.     FACTUAL BACKGROUND**

23  **A.      Technology Background**

24     This case involves power chokes. A choke is an inductor used to block higher-frequency

25  alternating current (AC) in an electrical circuit, while passing lower-frequency or direct current

26  (DC). The choke's impedance increases with frequency. Its low electrical resistance passes both

27  AC and DC with little power loss, but it can limit the amount of AC due to its reactance.

28

At a high level, a choke typically consists of a coil of insulated wire often wound on a magnetic core or buried in magnetic body. Chokes consisting of magnetic cores are often called chokes with "pillars," whereas chokes without magnetic cores are referred to as chokes without "pillars."

Generally speaking, the conventional manufacturing of a choke includes the following steps:

(1)    Wind wires into a coil (with or without pillars);

(2)    place the coil into a mold, and add in a mixture of resin and magnetic powders;

(3)    apply pressure to the coil and resin/magnetic powder mixture to form a magnetic body (called "molding");

(4)    apply heat to the magnetic body to improve adhesion (called "curing"); and

(5)    apply high heat to relieve strains on the magnetic particles (called "annealing").

The '312 and '037 Patents are directed to chokes without pillars. The patents disclose using a conducting wire buried within two magnetic powders, the first magnetic powder having a larger Vicker's Hardness and a larger mean particle diameter than those of the second magnetic powder. The magnetic powders and the conducting wire are combined to form an integral magnetic body at a temperature lower than the melting point of the conducting wire's insulating encapsulant. In addition, the differences between the hardness and mean particle diameters of the first and second magnetic powders reduces the strains on the mixture during the molding process, which consequently reduces core loss (i.e., energy loss in the core), and high temperature is not needed for annealing in forming the integral magnetic body. The difference in mean particle diameters of the first and second magnetic powders also allows the two powders to mix with a higher density, which improves the permeability of the choke.

The '580 Patent, on the other hand, is directed to chokes with pillars. The '580 Patent discloses a pillar having a non-circular and non-rectangular cross section having a first and second axis substantially perpendicular, intersecting with each other at a center of the cross section of the pillar, as shown below:



FIG. 5

The design of the pillar allows for reduced height and size of the chokes, improved performance due to the increased cross-section of the pillar, and reduced opportunity for wire damage due to the non-rectangular cross section.

**B.    The Parties**

**1.    Cyntec**

Founded in 1991, Cyntec is a leader in the research and development of the miniaturized and highly integrated products and one the world's largest choke suppliers.  Cyntec staffs approximate 350 engineers that have contributed to the development of a robust patent portfolio consisting of more than 330 patents.  Cyntec's research and development efforts have made Cyntec one of the world's leading manufacturers of integrated products.  Its product lines consist of power modules, passive components, protective components, and sensors which serve the appliance, automotive, computer, and communication industries.  With expertise in miniaturization technology, including micro-powder molding and power choke forming, Cyntec has developed and produced a complete series of high saturation current and low DCR surface mount molding type and sealing type power chokes.

**2.    Chilisin**

Defendant Chilisin Electronics Corp. is a Taiwanese corporation headquartered in Taiwan.  Defendant Chilisin America Ltd. is a California company based in San Jose, California.  Chilisin America Ltd. is the U.S. sales arm of Chilisin Electronics Corp. Defendants tout themselves as a major supplier in the power choke industry.  Defendants advertise on their

United States-facing website that they provide inductor turnkey solutions for Power, EMI, and RF and maintain a global technical team to support its customers.

## III.    CAUSES OF ACTION REMAINING TO BE TRIED

Cyntec's Second (Infringement of the '312 Patent), Third (Infringement of the '580 Patent), and Fourth (Infringement of the '037 Patent) Causes of Action remain to be tried to the jury. *See* Dkt. 1 (Complaint) at 15, 17, and 19.  Cyntec alleges direct (literal and DOE) infringement under 35 U.S.C. § 271(a), induced infringement under 35 U.S.C. § 271(b), and contributory infringement under 35 U.S.C. § 271(c).  Cyntec alleges that Chilisin's infringement is willful.  For this infringement Cyntec seeks lost profits damages, reasonable royalty damages, and a permanent injunction (the latter of which Cyntec reserves the right to raise in post-trial briefing as appropriate).

### A.    Direct Infringement Under 35 U.S.C. § 271(a)

Plaintiffs may prove direct infringement by showing that a defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271(a).  For method claims, liability under § 271(a) can be found "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance."  *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022-23 (Fed. Cir. 2015).  A defendant also directly infringes a method claim when it sells or offer to sell within the United States a product that automatically carries out the steps of a method claim without intervention by the end-user of the product.  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010).

The infringement analysis involves a two-step process:  First, the court "determines the scope and meaning of [the] patent claims asserted and then the properly construed claims are compared to the allegedly infringing device."  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).  The first step, claim construction, is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  The second step, comparison of the construed claim to the accused device,

1  requires that the patent owner show that the accused device meets each claim limitation either

2  literally or equivalently. *See id.* at 976. The patent owner must prove infringement by a

3  preponderance of the evidence. *See, e.g., Braun Inc. v. Dynamics Corp.*, 975 F.2d 815, 819 (Fed.

4  Cir. 1992).

5       "A patentee may prove infringement by any method of analysis that is probative of the

6  fact of infringement, and circumstantial evidence may be sufficient." *Martek Biosciences Corp.*

7  *v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (internal quotations and citation

8  omitted); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("A

9  patentee may prove direct infringement . . . by either direct or circumstantial evidence."). The

10  Federal Circuit has made clear that "[a] patentee is entitled to rely on circumstantial evidence to

11  establish infringement." *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed.

12  Cir. 2017) (accused product's instruction manual was "circumstantial evidence of

13  infringement").

14       There are two ways that Cyntec alleges Chilisin directly infringes. First, that it literally

15  infringes the Asserted Patents; and second, that it infringes the Asserted Patents under the

16  Doctrine of Equivalents.

17                    **1.      Literal Infringement**

18       To decide whether the Accused Products literally infringe an Asserted Claim, the jury

19  compares the Accused Products with the Asserted Claim and determine whether every

20  requirement of the claim is found in the Accused Products. If so, the Accused Products literally

21  infringe that Asserted Claim. The jury must decide literal infringement for each Asserted Claim

22  separately. *See* Northern District of California Model Patent Jury Instruction 3.2 (citing cases).

23                **2.      Infringement Under the Doctrine of Equivalents**

24       Under the doctrine of equivalents, an Accused Product infringes an Asserted Claim if the

25  Accused Product includes parts that are identical or equivalent to the requirements of the claim.

26  A part of an Accused Product is equivalent to a requirement of an Asserted Claim if a person of

27  ordinary skill in the field would think that the differences between the part and the requirement

28

1  were not substantial as of the time of the alleged infringement.  *See* Northern District of

2  California Model Patent Jury Instruction 3.4 (citing cases).

3         Cyntec will prove by a preponderance of the evidence that Chilisin directly infringes the

4  Asserted Claims of the Asserted Patents, literally and/or under the doctrine of equivalents, by

5  using, selling, offering for sale, and/or importing the Accused Products.  *See Catalina Mktg.*

6  *Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002) ("To prove infringement,

7  the patentee must show that the accused device meets each claim limitation either literally or

8  under the doctrine of equivalents.").

9         **B.     Induced Infringement Under 35 U.S.C. § 271(b)**

10        To prove induced infringement, plaintiff must prove: (1) that defendants actively

11  encouraged or instructed a third party to use a product or perform a process in a way that

12  infringes at least one claim; (2) that defendants knew of the patent at that time; (3) that

13  defendants knew or were willfully blind to the fact that the encouragement or instructions would

14  result in infringement of at least one claim; and (4) that the third party infringed at least that one

15  claim.  35 U.S.C. § 271(b); *see Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060

16  (2011); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-1305 (Fed. Cir. 2006).

17        In *Global-Tech*, the Supreme Court held that "induced infringement under Section 271(b)

18  requires knowledge that the induced acts constitute patent infringement."  131 S. Ct. at 2068.

19  Knowledge of infringement, however, can be satisfied by actual knowledge or willful

20  blindness—the latter can be satisfied by showing that defendants took "deliberate actions to

21  avoid confirming a high probability of wrongdoing."  *Id.* at 2070.  The Supreme Court further

22  explained that for willful blindness the inducer must take "active efforts . . . to avoid knowing

23  about the infringing nature of the activities."  *Id.* at 2070-71.  A good faith belief in the invalidity

24  of a patent is not a defense to induced infringement.  *Commil USA, LLC v. Cisco Systems, Inc.*,

25  135 S. Ct. 1920 (2015).

26        *See* Northern District of California Model Patent Jury Instruction 3.7 (citing cases).

27

28

Cyntec will prove by a preponderance of the evidence that Chilisin induces others to infringe the Asserted Claims of the Asserted Patents, by making, using, selling, offering for sale, and/or importing the Accused Products.

**C.     Contributory Infringement Under 35 U.S.C. § 271(c)**

To be liable for contributory infringement pursuant to 35 U.S.C. § 271(c), a defendant must have "offer[ed] to sell or [sold] within the United States or import[ed] into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in . . . a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for [infringing] use . . . and not a staple article or commodity of commerce suitable for substantial noninfringing use . . . ." 35 U.S.C. § 271(c).

Contributory infringement occurs when a supplier provides a device to another for use in a patented system or method. For there to be contributory infringement, the person who received the device must infringe the patent. The device: (1) must be a material part of the invention; (2) must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the device was especially made for that use; and (3) must not have substantial uses that do not infringe the patent. 35 U.S.C. § 271(c); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990); *Sandisk Corp. v. Lexar Media, Inc.*, 91 F.Supp.2d 1327, 1335 (N.D. Cal. 2000). "All that is required for a finding of contributory infringement is (1) knowledge of the activity that is alleged to be infringing . . . and (2) knowledge of the patent." *Sandisk*, 91 F.Supp.2d at 1335; *Hewlett-Packard Co.*, 909 F.2d at 1469.

*See* Northern District of California Model Patent Jury Instruction 3.6 (citing cases).

Cyntec will prove by a preponderance of the evidence that Chilisin is liable for contributory infringement of the Asserted Claims of the Asserted Patents, by selling, offering for sale, and/or importing the Accused Products.

1    **D.    Willful Infringement**

2    Under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), the jury

3    must decide is whether it is more likely than not that defendants' infringement was egregious.  *Id.*

4    at 1934.  Egregious conduct can be willful, wanton, malicious, bad-faith, deliberate, consciously

5    wrongful, flagrant, or characteristic of a pirate.  *Id.* at 1932.  "The subjective willfulness of a

6    patent infringer, intentional or knowing, may warrant enhanced damages, without regard to

7    whether his infringement was objectively reckless."  *Id.* at 1933.  Thus, under *Halo*, the fact-finder

8    must determine that the defendant's behavior was subjectively willful under a preponderance of

9    the evidence standard.  *Id.* at 1934.

10    Subjective willfulness is found when "the risk of infringement 'was either known or so

11    obvious that it should have been known to the accused infringer.'"  *Id.* at 1930 (quoting *In re*

12    *Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc)).  "Actual notice of

13    another's patent rights triggers an affirmative duty of due care to avoid infringement."  *nCube*

14    *Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006) ("*nCube I*").  A breach of

15    such a duty can render an infringer liable for willfulness.

16    There are several factors that the jury may use to assess whether defendants' conduct was

17    willful: (1) whether defendants deliberately copied the ideas or design of another; (2) whether

18    defendants, when they knew of the other's patent protection, investigated the scope of the patent

19    and formed a good-faith belief that it was invalid or that it was not infringed; (3) defendants'

20    behavior as a party to the litigation; (4) defendants' size and financial condition; (5) closeness of

21    the case; (6) duration of defendants' misconduct; (7) remedial action by the defendants; (8)

22    defendants' motivation for harm.  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir.

23    1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 517 U.S.

24    370 (1996).  Courts often use this non-exhaustive list of factors to determine if damages should be

25    enhanced.  *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997).

26    Conduct after becoming aware of the patents-in-suit and conduct after the lawsuit is filed

27    are relevant to willfulness.  "[P]atent infringement is a continuing tort . . . . The filing of a lawsuit

28    does not stop the clock insofar as culpability may arise from continuing disregard of the legal

1  rights of the patentee." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221-22 (Fed. Cir.

2  1995); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1024-29 (N.D. Cal.

3  2017) (pre-suit and pre-issuance copying "is evidence of willfulness" in light of continued sale of

4  accused product while refusing to switch to non-infringing alternative).  A party that continues its

5  accused infringing activity after a patentee files suit can be guilty of willful infringement even if

6  that party presents a non-frivolous defense to infringement.  *Crystal Semiconductor Corp. v.*

7  *TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351-52 (Fed. Cir. 2001).

8          *See* Northern District of California Model Patent Jury Instruction 3.8 (citing cases).

9          Cyntec will prove by a preponderance of the evidence that Chilisin willfully infringes the

10  Asserted Claims of the Asserted Patents, by making, selling, offering for sale, and/or importing

11  the Accused Products.

12      **E.      Damages**

13          At trial, Cyntec will prove that it is entitled to both a reasonable royalty and lost profits.

14              **1.      Reasonable Royalty**

15          Under 35 U.S.C. § 284, "[u]pon finding for the claimant the court shall award the

16  claimant damages adequate to compensate for the infringement, but in no event less than a

17  reasonable royalty for the use made of the invention by the infringer, together with interest and

18  costs as fixed by the court."  Damages for infringement may "be had for any infringement

19  committed [up to] six years prior to the filing of the complaint or counterclaim for infringement

20  in the action."  35 U.S.C. § 284.

21          A reasonable royalty is the payment that would have resulted from a hypothetical

22  negotiation between the patent holders and the infringer taking place just before the time when

23  the infringing sales first began.  *See Wordtech Sys. v. Integrated Network Solutions, Inc.*, 609

24  F.3d 1308, 1319 (Fed. Cir. 2010).  Various factors may be relevant for the evaluation of a

25  reasonable royalty, including the factors outlined in *Georgia-Pacific v. United State Plywood*

26  *Corp*. 318 F. Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert.*

27  *denied* 404 U.S. 870 (1971).  The *Georgia*-Pacific factors are:

28

(1)     The royalties received by the patent owner for the licensing of the patent in suit, proving or tending to prove an established royalty;

(2)     The rates paid by the licensee for the use of other patents comparable to the patent in suit;

(3)     The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

(4)     The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5)     The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;

(7)     The duration of patent and the terms of the license;

(8)     The established profitability of the product made under the patent; its commercial success; and its current popularity;

(9)     The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

(10)    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

(11)    The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

(13)    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14)    The opinion testimony of qualified experts; and

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Id.* at 1120.

The *Georgia-Pacific* framework requires the assumption that, at the time of the hypothetical negotiation, both parties agree that the patent is valid and infringed.  *Lucent Techs., Inc. v. Gateway*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  As a result, the Federal Circuit has affirmed reasonable royalty rates based on the *Georgia-Pacific* approach that are in excess of what the parties would have actually agreed upon as a result of licensing negotiations prior to the infringement.  *See, e.g. Deere & Co. v. Int'l Harvester Co*, 710 F.2d 1551, 1558 (Fed. Cir. 1983) (affirming damages award of a 15% royalty when the patents-in-suit had been licensed and offered for license at 1%).  Several of the *Georgia-Pacific* factors involve analysis of comparable license agreements.  *See Georgia-Pacific*, 318 F. Supp. at 1120 (stating factors 2 and 12 relate to comparable licensing rates).  The Federal Circuit, however, has warned courts against the use of non-comparable licenses and settlement agreements, stating that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) ("The notion

1  that license fees that are tainted by the coercive environment of patent litigation are unsuitable to

2  prove a reasonable royalty is a logical extension of *Georgia-Pacific*, the premise of which

3  assumes a voluntary agreement will be reached between a willing licensor and a willing licensee,

4  with validity and infringement not being disputed.").

5      The value of a patented technology may be based on an apportionment, in which the fact

6  finder "subtract[s] the infringer's usual or acceptable net profit from its anticipated net profit

7  realized from sales of infringing devices." *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899

8  (Fed. Cir. 1986).  A patentee may seek a reasonable royalty based on the value provided by the

9  claimed technology, rather than the value provided by other factors or attributes of a product.

10  *VirnetX, Inc. v. Cicsco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("No matter what the

11  form of the royalty, a patentee must take care to seek only those damages attributable to the

12  infringing features.").  In an apportionment analysis, a patentee must "give evidence tending to

13  separate or apportion the defendant's profits and the patentee's damages between the patented

14  features and the unpatented features, and such evidence must be reliable and tangible, and not

15  conjectural or speculative. . . .'" *Id.* (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).

16      Cyntec will prove by a preponderance of the evidence that Cyntec is entitled to a

17  reasonable royalty for Chilisin's infringement of the Asserted Patents.

18          **2.    Lost Profits**

19      "To recover lost profits damages, the patentee must show a reasonable probability that,

20  'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-*

21  *Hite II*, 56 F.3d at 1545.  There is "no one particular method by which the patent owner must meet

22  this burden; 'the methodology of assessing and computing damages is committed to the sound

23  discretion of the district court.'" *King Instruments Corp.*, 65 F.3d at 952 (quoting *State Indus.,*

24  *Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1576-77 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022

25  (1990)).  The plaintiffs may "present market reconstruction theories showing all of the ways in

26  which they would have been better off in the 'but for world,' and accordingly to recover lost

27  profits in a wide variety of forms." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d

28  1341, 1350 (Fed. Cir. 1999).  "In sum, courts have given patentees significant latitude to prove

1  and recover lost profits for a wide variety of foreseeable economic effects of the infringement."

2  *Id.*

3       The patent owner is not required, however, to negate all possibilities that a purchaser might

4  have bought a different product or might have foregone the purchase altogether. *State Indus.*, 883

5  F.2d at 1577. Once the patent owner has met its initial burden to show a reasonable probability

6  that it would have made the sales that were made by the infringer "but for" the infringement,

7  "[t]he burden then shifts to the infringer to show that the ['but for' claim] is unreasonable for some

8  or all of the lost sales." *Rite-Hite II*, 56 F.3d at 1545. The patentee need not practice the invention

9  to recover lost profits. *King Instruments*, 65 F.3d at 947.

10       Lost profits are available on collateral or derivative product sales if "[a]ll the components

11  together . . . [are] analogous to components of a single assembly or [are] parts of a complete

12  machine, or they . . . . constitute a functional unit." *Rite-Hite II*, 56 F.3d at 1144; *see also Paper*

13  *Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 23 (Fed. Cir. 1984) ("[I]f in all

14  reasonable probability the patent owner would have made the sales which the infringer has made,

15  what the patent owner in reasonable probability would have netted from the sales denied to him is

16  the measure of his loss, and the infringer is liable for that.").

17       One recognized method for proving lost sales—called the "*Panduit* test"—states that "to

18  obtain as damages the profits on sales he would have made absent the infringement, i.e., the sales

19  made by the infringer, a patent owner must prove: (1) demand for the patented product, (2)

20  absence of acceptable noninfringing substitutes, (3) its manufacturing and marketing capability to

21  exploit the demand, and (4) the amount of the profit it would have made." *Panduit Corp. v.*

22  *Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). The *Panduit* test is "useful,

23  but non-exclusive" test for a plaintiff to prove its entitlement to lost profits. *Rite-Hite II*, 56 F.3d

24  at 1545.

25       "The substantial number of sales . . . of infringing products containing the patented

26  features itself is compelling evidence of the demand for the [patented] product." *See Gyromat*

27  *Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984).

28

1    "Consumer demand defines the relevant market and relative substitutability among

2    products therein . . . . Important factors shaping demand may include consumers' intended use for

3    the patentee's product, similarity of physical and functional attributes of the patentee's product to

4    alleged competing products, and price." *Id.* at 1355.  "While there may be competing devices

5    available in the marketplace, the '[m]ere existence of a competing device does not make that

6    device an acceptable substitute.'" *Kalman v. The Berlyn Corp.*, 914 F.2d 1473, 1484 (Fed. Cir.

7    1990) (citation omitted).  "It is clear that '[a] product lacking the advantages of [the] patented

8    [device] can hardly be termed a substitute 'acceptable' to the customer who wants those

9    advantages.'" *Id.* (quoting *Panduit*, 575 F.2d at 1162).  "To be acceptable to the infringer's

10   customers in an elastic market, the alleged alternative must not have a disparately higher price

11   than or possess characteristics significantly different from the patented product." *BIC Leisure*

12   *Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993) (internal quotations

13   and citation omitted).

14        Cyntec will prove by a preponderance of the evidence that Cyntec is entitled to lost

15   profits for Chilisin's infringement of the Asserted Patents.

16              **3.    Foreign Sales**

17        Cyntec will also seek to recover damages for foreign sales of products imported into the

18   United States.  Accused products initially sold outside of the United States infringe a U.S. patent

19   (and are properly included as a part of the damages base) if the products are ultimately imported

20   into or used in the United States.  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir.

21   2012).  A jury can rely on expert opinion estimating the percentage of accused products that are

22   imported into the United States to determine the proper damages base, as "some degree of

23   estimation is fair game for the experts." *Power Integrations, Inc. v. Fairchild Semiconductor*

24   *Int'l*, No. 08-cv-309-LPS, 2019 U.S. Dist. LEXIS 121675, at *10-11 (D. Del. July 22, 2019).  It

25   is not necessary for the plaintiff to "directly link" each foreign sale to an instance of direct

26   infringement in the United States.  *Id.* at *13.

27

28

Cyntec will prove by a preponderance of the evidence that Cyntec is entitled to recover damages for sales of Chilisin's infringing products outside of the United States but subsequently imported into the United States.

### 4. Enhanced Damages

"[35 U.S.C. §] 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931 (2016). Where defendants' infringement is willful, "the court may increase the damages up to three times the amount found or assessed" as damages. 35 U.S.C. § 284.

Cyntec will demonstrate that Cyntec is entitled to enhanced damages for Chilisin's infringement of the Asserted Patents.

### 5. Exceptional Case

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Attorney fees may be awarded pursuant to § 285 if a party can demonstrate that the case "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "District Courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

Cyntec will demonstrate that this case is exceptional, and that Cyntec should be awarded with attorney fees.

### F. Permanent Injunction

Cyntec reserves the right to seek a permanent injunction, as appropriate, through post-trial briefing. A plaintiff is entitled to a permanent injunction if it can demonstrate: (1) that it has suffered an irreparably injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-392 (2006).

1  Cyntec will demonstrate that Cyntec is entitled to a permanent injunction against

2  Chilisin's infringement of the Asserted Patents.

3  **IV.   CHILISIN'S DEFENSES REMAINING TO BE TRIED**

4  **A.   Invalidity**

5  All issued patent claims are presumed valid under 35 U.S.C. § 282(a).  Defendants must

6  show, on a claim-by-claim basis, that each challenged claim is invalid by clear and convincing

7  evidence.  *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007).

8  **1.   Invalidity Under 35 U.S.C. § 102 (Anticipation)**

9  To prove anticipation, defendants must prove by clear and convincing evidence that all of

10  the limitations of the claim existed in a single item of prior art (such as a publicly available

11  article or patent), and the clear and convincing standard applies regardless of whether the prior

12  art was considered by the Patent Office during prosecution.  *Microsoft Corp. v. i4i Ltd. P'ship*,

13  564 U.S. 91, 95 (2011).

14  **a.   LVH252012 Prior Art**

15  Whether a reference qualifies as "prior art" and whether it was publicly available before

16  the priority date of the asserted patents are questions of law based on underlying factual

17  considerations.  *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1379-80

18  (Fed. Cir. 2012).  "In order to show that the prior art was on sale prior to the critical date, one

19  must first demonstrate  that the prior art actually embodied or rendered obvious the patented

20  invention. . . . A claim is considered to be an 'embodiment' of prior art if clear and convincing

21  evidence shows that the prior art contains each element of the claim."  *Marlowe Patent Holdings*

22  *v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 171762, at *8-9 (D.N.J. Dec. 4, 2013).

23  Chilisin will not be able to prove by clear and convincing evidence that Chilisin's

24  LVH252012 product is prior art to the '580 Patent.  Nor will Chilisin be able to prove by clear

25  and convincing evidence that any other supposed prior art anticipates the Asserted Patents.

26  **2.   Invalidity Under 35 U.S.C. § 103 (Obviousness)**

27  "A party seeking to invalidate a patent on obviousness grounds must demonstrate by

28  clear and convincing evidence that a skilled artisan would have been motivated to combine the

teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015).  A patent is invalid for obviousness only "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).  What a particular reference discloses is a question of fact, *see Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995); as is the question of whether there was a reason to combine certain references, *see McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1352 (Fed. Cir. 2001).  In addition, "[i]n order to determine obviousness as a legal matter," the *Graham* factors must be considered.  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000) (citing *Graham v. John Deere Co.*, 383 U.S. 1 (1966)).  *Graham*'s "four factual inquiries" are: "1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness, which in case law is often said to include commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results." *Graham*, 383 U.S. 1.

Objective indicia of nonobviousness, also known as "secondary considerations of nonobviousness," may be instructive in determining whether an invention was obvious to persons of ordinary skill in the art at the time of the invention.  Such secondary considerations include:  (1) commercial success of a product due to the merits of the claimed invention; (2) a long-felt, but unsolved, need for the solution provided by the claimed invention; (3) unsuccessful attempts by others to find the solution provided by the claimed invention; (4) copying of the claimed invention by others; (5) unexpected and superior results from the claimed invention; and (6) acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention.  *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1129 (Fed. Cir. 2000).  Prior art that was already considered by the Patent Office during prosecution of the patent may carry less weight than the prior art that was not considered and may make the accused infringer's burden of proof on

invalidity heavier. *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986).

Chilisin will not be able to prove by clear and convincing evidence that the Asserted Patents are invalid as rendered obvious by prior art.

### 3. Invalidity Under 35 U.S.C. § 112 (Lack of Written Description and/or Enablement)

The specification of a patent does not have to provide a verbatim description of the claimed subject matter to satisfy the written description requirement under § 112. *See Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000). The disclosure must simply "convey with reasonable certainty to those skilled in the art that . . . [the inventor] was in possession of the invention." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). Language identical to the claims is unnecessary; the written description requirement is met if the inventor demonstrates possession of the claimed subject matter—"how the specification accomplishes this is not material." *Genentech, Inc. v. Ismed Inc.*, 436 F. Supp. 2d 1080, 1093 (N.D. Cal. 2006). Thus, if the specification describes the invention such that it is understandable to one of ordinary skill in the art, the written description requirement has been met. *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012). Indeed, "it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation." *LizardTech, Inv. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

A particular claim is supported by the disclosure in an application when the disclosure at the time it was filed contained sufficient information regarding the subject matter of the claims as to enable one skilled in the pertinent art to make and use the claimed invention. The standard set forth by the Supreme Court for determining whether the specification meets the enablement requirement is based on the question whether the experimentation needed to practice the invention is undue or unreasonable. *Minerals Separation Ltd. v. Hyde*, 242 U.S. 261, 270 (1916); *see also In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). "Undue experimentation" has been interpreted to require that the claimed invention be enabled so that any person skilled in the art can make and use the

1    invention without undue experimentation.  *In re Wands*, 858 F.2d at 737.  A patent need not teach,

2    and preferably omits, what is well known in the art.  *In re Buchner*, 929 F.2d 660, 661 (Fed. Cir.

3    1991).  Any part of the specification can support an enabling disclosure, even a background

4    section that discusses, or even disparages, the subject matter disclosed therein.  *Callicrate v.*

5    *Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005) (discussion of problems with a prior art

6    feature does not mean that one of ordinary skill in the art would not know how to make and use

7    this feature).  Determining enablement is a question of law based on underlying factual findings.

8    *In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991).

9         Chilisin will not be able to prove by clear and convincing evidence that the Asserted

10   Patents are invalid as lacking written description and not enabled.

11   **V.    ISSUES THAT SHOULD BE RESOLVED AS A MATTER OF LAW BY THE
         COURT AND NOT TRIED TO THE JURY[1]**

12
         **A.    The Court Should Enter Judgment Against Chilisin's Indefiniteness Defense
13            as A Matter of Law**

14        Defendants bear the burden to prove indefiniteness by clear and convincing evidence.

15   *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015)

16   (Federal Circuit precedent "requires that the burden of proving indefiniteness remains on the

17   party challenging validity and that they must establish it by clear and convincing evidence.").

18   Thus, to show indefiniteness, defendants must show that the claim, when read in light of the

19   specification and the prosecution history, fails to inform—with reasonable certainty—those

20   skilled in the art about the scope of the invention by clear and convincing evidence.  *Id.*;

21   *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Indeed, the Supreme Court

22   recognized that "absolute precision is unattainable."  *Id.* at 910.

23        Although a claim directed to both an apparatus and a method of using that apparatus may

24   be indefinite, "apparatus claims are not necessarily indefinite for using functional language."

25   *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed. Cir. 2017.)  "Indeed,

26

27   ───────────────────
     [1] Cyntec has separately moved to bifurcate indefiniteness, inequitable conduct, unclean
     hands, and any other equitable defenses Chilisin asserts from the jury trial because they are
     issues for the Court to decide.  Cyntec is concurrently filing its Proposed Findings of Fact and
28   Conclusions of Law on indefiniteness, inequitable conduct, and unclean hands, pursuant to the
     Court's October 15, 2020 Case Management and Pretrial Order (Dkt. 175).

functional language in a means-plus-function format is explicitly authorized by statute," and "[f]unctional language may also be employed to limit the claims without using the means-plus-function format." *Id.*

For terms of degree, courts look to the specification for guidance about the scope of the term. *See Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.,* 844 F.3d 1370, 1377 (Fed. Cir. 2017). "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Sonix Tech.,* 844 F.3d at 1377. Numerical precision is not required when using such terms of degree. *See Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Grp, LLC,* 879 F.3d 1332, 1346 (Fed. Cir. 2018) (finding term "substantially straight" not indefinite).

Chilisin will not be able to prove by clear and convincing evidence that the Asserted Patents are invalid for indefiniteness.

### B.    The Court Should Enter Judgment of No Inequitable Conduct

"The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide." *Perspective Biosystems, Inc. v. Pharmacia Biotaech, Inc.,* 225 F.3d 1315, 1318 (Fed. Cir. 2000); *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed. Cir. 1987).

To establish inequitable conduct, the infringer must show that the "applicant, with intent to mislead or deceive the examiner, fail[ed] to disclose material information or submit[ed] materially false information to the PTO during prosecution." *Digital Control, Inc. v. Charles Mach. Works,* 437 F.3d 1309, 1313 (Fed. Cir. 2006). A threshold level of each element—both materiality and intent to deceive—must be proven by clear and convincing evidence. *Cargill, Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359, 1363 (Fed. Cir. 2007). Importantly, "[i]f a threshold level of intent to deceive or materiality is not established by clear and convincing evidence the district court does not have any discretion to exercise and cannot hold the patent unenforceable regardless of the relative equities or how it might balance them." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1357, 1367 (Fed. Cir. 2008), *cert. denied,* 129 S. Ct. 1595 (2009). But even if "a threshold level of both materiality and intent to deceive are proven by

1   clear and convincing evidence, the court may still decline to render the patent unenforceable."

2   *Id.* at 1365.

3          The lack of evidence regarding "intent to deceive" alone is enough to defeat the

4   inequitable conduct defense.  *See Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1181 (Fed. Cir.

5   1995) ("[T]he alleged conduct must not amount merely to the improper performance of, or

6   omission of, an act one ought to have performed.  Rather, clear and convincing evidence must

7   prove that an applicant had the *specific intent* to . . . mislead[] or deceiv[e] the PTO.  In a case

8   involving nondisclosure of information, clear and convincing evidence must show that the

9   applicant *made a deliberate decision* to withhold a *known* material reference.") (emphasis

10  added).

11         Chilisin will not be able to prove by clear and convincing evidence that the Asserted

12  Patents are unenforceable due to inequitable conduct.  Among other things, Chilisin failed to

13  adequately plead this defense, and Cyntec is entitled to judgment on the pleadings.  Moreover,

14  Chilisin conducted no discovery into this defense and offered no expert opinion as to the

15  elements of this defense.  It will not, consequently, be able to sustain the heavy burden of

16  proving inequitable conduct by clear and convincing evidence.

17         **C.      The Court Should Enter Judgment of No Unclean Hands**

18         Unclean hands is an equitable defense that applies when a party seeking relief has

19  committed misconduct that "has immediate and necessary relation to the equity that he seeks in

20  respect of the matter in litigation[.]"  *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 888 F.3d 1231,

21  1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. General Extractor Co.*, 290 U.S. 240, 245

22  (1933)).  A finding of unclean hands "'closes the doors of a court of equity to one tainted with

23  inequitableness or bad faith relative to the matter in which he seeks relief, however improper

24  may have been the behavior of the defendant,' and requires that claimants 'have acted fairly and

25  without fraud or deceit as to the controversy in issue.'"  *Id.* (quoting *Precision Instrument Mfg.*

26  *Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-15 (1995)).

27

28

Chilisin has waived its unclean hands defense for failing to provide the basis of its defense in response to Cyntec's Interrogatory No. 12 requesting that Chilisin provide factual and legal bases for each affirmative defense, including unclean hands, asserted in Chilisin's answer.

Dated:  July 1, 2021

WILSON SONSINI GOODRICH & ROSATI, Professional Corporation

By:  _/s/James C. Yoon_
      James C. Yoon

Attorneys for Plaintiff Cyntec Co., Ltd.