Jamie L. Lucia (SBN 246163)
jlucia@steptoe.com
STEPTOE & JOHNSON LLP
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6711
Facsimile: (415) 365-6681

John L. Abramic*
Katherine H. Johnson*
Anna M. Targowska*
Daniel F. Gelwicks*
jabramic@steptoe.com
kjohnson@steptoe.com
atargowska@steptoe.com
dgelwicks@steptoe.com
STEPTOE & JOHNSON LLP
227 W. Monroe St., Suite 4700
Chicago, Illinois 60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

John M. Caracappa*
Stanley Kuo*
Katherine D. Cappaert*
jcaracap@steptoe.com
skuo@steptoe.com
kcappaert@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

*Counsel for Defendants Chilisin Electronics Corp.*
*and Chilisin America Ltd.*

*Appearance *pro hac vice*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CYNTEC COMPANY, LTD., | Case No.: 4:18-cv-00939-PJH |
| Plaintiff, | **DEFENDANTS' TRIAL BRIEF** |
| v. | Dept.: Courtroom 3, 3rd Floor |
| CHILISIN ELECTRONICS CORP. CHILISIN AMERICA LTD., | Judge: Hon. Phyllis J. Hamilton |
| Defendants. | Complaint Filed: February 14, 2018 Trial Date: August 23, 2021 |

1
2

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................................1

II.    ISSUES TO BE TRIED ............................................................................................1

       A.    Infringement: Chilisin Does Not Infringe the Asserted Claims................................1

             1.    Cyntec Cannot Prove Direct Infringement Literally or
                   Under the Doctrine of Equivalents ................................................................2

             2.    Cyntec Cannot Prove Indirect Infringement ...............................................5

             3.    Chilisin Has Not Willfully Infringed the Asserted Claims.........................9

       B.    Invalidity ......................................................................................................................9

             1.    The Asserted Claims are Anticipated ..........................................................9

             2.    The Asserted Claims are Obviousness......................................................10

             3.    On-Sale & Public Use Bar .........................................................................12

             4.    Indefiniteness ............................................................................................12

             5.    Enablement ................................................................................................13

             6.    Written Description....................................................................................14

             7.    Priority ......................................................................................................15

       C.    Damages......................................................................................................................16

             1.    Lost Profits ................................................................................................17

             2.    Apportionment ...........................................................................................18

             3.    Reasonable Royalty Damages....................................................................19

             4.    Enhanced Damages ....................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abbott Labs. v. Sandoz, Inc.*,
    544 F.3d 1341 (Fed. Cir. 2008)...........................................................................9

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007)...........................................................................6

*Akamai Techs. Inc. v. Limelight Networks, Inc*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc).........................................................5

*Alcon Rsch., Ltd. v. Apotex Inc.*,
    687 F.3d 1362 (Fed. Cir. 2012)...................................................................11, 13

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003).........................................................................14

*Amgen Inc. v. Sanofi*,
    872 F.3d 1367 (Fed. Cir. 2017).........................................................................13

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014).........................................................................20

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)...................................................................16, 17

*Arendi S.A.R.L. v. Apple Inc.*,
    832 F.3d 1355 (Fed. Cir. 2016)...................................................................10, 11

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
    598 F.3d 1336 (Fed. Cir. 2010)...................................................................14, 15

*Astrazeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015).........................................................................19

*Augme Techs., Inc. v. Yahoo! Inc.*,
    755 F.3d 1326 (Fed. Cir. 2014)...........................................................................2

*Bayer AG v. Elan Pharma. Res. Corp.*,
    212 F.3d 1241 (Fed. Cir. 2000)...........................................................................2

*BIC Leisure Prods. v. Windsurfing Int'l, Inc.*,
    1 F.3d 1214 (Fed. Cir. 1993).............................................................................17

*Broadcom Corp. v. Qualcomm Inc.*
    543 F.3d 683 (Fed. Cir. 2008).............................................................................6

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys. Inc.*,
   911 F.2d 670 (Fed. Cir. 1990)................................................................................5

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002)................................................................................2

*Celanese Int'l Corp. v. Oxyde Chemicals, Inc.*,
   554 F. Supp. 2d 725 (S.D. Tex. 2008) ...................................................................3

*Cephalon, Inc. v. Watson Pharm., Inc.*,
   707 F.3d 1330 (Fed. Cir. 2013)............................................................................14

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
   1 F. App'x 879 (Fed. Cir. 2001) ..........................................................................18

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 ......................................................................................................6

*CreAgri, Inc. v. Pinnaclife, Inc.*,
   No. 11-CV-6635-LHK, 2013 WL 6673676 (N.D. Cal. Dec. 18, 2013) ..............12

*Cross Med. Prods. v. Medtronic Sofamor Danek*,
   424 F.3d 1293 (Fed. Cir. 2005)..............................................................................2

*In re Cruciferous Sprout Litigation*,
   301 F.3d 1343 (Fed. Cir. 2002)............................................................................10

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*,
   803 F.3d 620 (Fed. Cir. 2015)..............................................................................13

*DSU Medical Corp. v. JMS Co., Ltd.*,
   471 F.3d 1293 (Fed. Cir. 2006)......................................................................4, 6, 8

*Enplas Display Device Corporation v. Seoul Semiconductor Company, Ltd.*,
   909 F.3d 398 (Fed. Cir. 2018)................................................................................7

*Enzo Biochem, Inc. v. Calgene, Inc.*,
   188 F.3d 1362 (Fed. Cir. 1999)............................................................................14

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
   93 F.3d 1572 (Fed. Cir. 1996)................................................................................2

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)............................................................................19

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)..............................................................................4

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010).................................................................8

*Garretson v. Clark*,
  111 U.S. 120 (1884)....................................................................................19

*Gentry Gallery, Inc. v. Berkline Corp.*,
  134 F.3d 1473 (Fed. Cir. 1998)................................................................15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970)..........................................................20

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011)..............................................................................6, 8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)...................................................................................6, 7

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999).........................................................17, 18

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016)....................................................................9, 20, 21

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)...................................................................................10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)..............................................................19, 20

*Linear Tech. Corp. v. Impala Linear Corp.*,
  379 F.3d 1311 (Fed. Cir. 2004)..................................................................5

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)................................................................19

*MagSil Corp. v. Hitachi Global Storage Techs., Inc.*,
  687 F.3d 1377, 1380 (Fed. Cir. 2012)......................................................13

*MEHL/Biophile Intern. Corp. v. Milgraum*,
  192 F.3d 1362, 52 U.S.P.Q.2d 1303 (Fed. Cir. 1999) ..............................10

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005)..............................................................3, 6

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
  851 F.3d 1275 (Fed. Cir. 2017)........................................................17, 18, 19

*Meyer Intell. Properties Ltd. v. Bodum, Inc.*,
    690 F.3d 1354 (Fed. Cir. 2012)................................................................4

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007)...........................................................................3

*Microsoft Corp. v. i4i Lt. P'Ship.*,
    564 U.S. 91 (2011)............................................................................9

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005)................................................................2

*Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    336 F.3d 1373 (Fed. Cir. 2003)...............................................................11

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)...........................................................................7

*Motorola, Inc. v. Interdigital Tech. Corp.*,
    121 F.3d 1461 (Fed. Cir. 1997)...............................................................12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)..........................................................................13

*Nike, Inc. v. Adidas AG*,
    812 F.3d 1326 (Fed. Cir. 2016)...............................................................11

*Novartis AG v. Torrent Pharms. Ltd.*,
    853 F.3d 1316 (Fed. Cir. 2017)...............................................................12

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
    723 F.3d 1336 (Fed. Cir. 2013)...............................................................15

*NTP, Inc. v. Rsch. In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005)..............................................................3, 4

*O'Reilly v. Morse*,
    56 U.S. 62 (1854)............................................................................14

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006)................................................................5

*Pall Corp. v. Micron Separations, Inc.*,
    66 F.3d 1211 (Fed. Cir. 1995)...............................................................20

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
    575 F.2d 1152 (6th Cir. 1978)...............................................................17

*Pause Tech. LLC v. TiVo Inc.*,
    419 F.3d 1326 (Fed. Cir. 2005)................................................................1, 2

*Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*,
    822 F.2d 1528 (Fed.Cir.1987).....................................................................2

*Persion Pharm. LLC v. Alvogen Malta Operations Ltd.*,
    945 F.3d 1184 (Fed. Cir. 2019)..................................................................11

*Pfizer Inc. v. Teva Pharm. USA, Inc.*,
    555 F. Appx. 961 (Fed. Cir. 2014)..............................................................14

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007)..................................................................10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)....................................................................6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    904 F.3d 965 (Fed. Cir. 2018)....................................................................19

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008)..................................................................15

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017)..................................................................17

*Prometheus Lab'ys, Inc. v. Roxane Lab'ys, Inc.*,
    805 F.3d 1092 (Fed. Cir. 2015)..................................................................12

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)....................................................................21

*Regents of the University of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997)..................................................................15

*Rengo Co. v. Molins Mach. Co.*,
    657 F.2d 535 (3rd Cir. 1981)......................................................................15

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) (en banc)....................................................17

*RJR Nabisco, Inc. v. European Community*,
    136 S.Ct. 2090 (2016)..................................................................................7

*Seal-Flex, Inc. v. Athletic Track & Court Constr.*,
    172 F.3d 836 (Fed. Cir. 1999)......................................................................1

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008)......................................................................................14

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
    926 F.2d 1161 (Fed. Cir. 1991)....................................................................................16

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991)..............................................................................10, 18

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015)........................................................................................6

*Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
    895 F.3d 1304 (Fed. Cir. 2018)......................................................................................3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    593 F.3d 1325 (Fed. Cir. 2010)....................................................................................11

*TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*,
    375 F.3d 1126 (Fed. Cir. 2004)......................................................................................9

*Transclean Corp. v. Bridgewood Servs., Inc.*,
    290 F.3d 1364 (Fed. Cir. 2002)....................................................................................16

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
    264 F.3d 1111 (Fed. Cir. 2001)....................................................................................15

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*,
    204 F. 3d 1360 (Fed. Cir. 2000)......................................................................................1

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)................................................................................19, 20

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
    358 F.3d 916 (Fed. Cir. 2004)......................................................................................15

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
    782 F.3d 671 (Fed. Cir. 2015)......................................................................................14

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)........................................................................18, 19, 20

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988)......................................................................................14

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005)......................................................................................1

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   913 F.3d 1067 (Fed. Cir. 2019)................................................................18

*WesternGECO LLC v. ION Geophysical Corp.*,
   138 S.Ct. 2129 (2018).........................................................................7

*Ziptronix, Inc. v. Omnivision Techs., Inc.*,
   71 F. Supp. 3d 1090 (N.D. Cal. 2014) ...............................................3, 7

*Zoltek Corp. v. United States*,
   672 F.3d 1309 (Fed. Cir. 2012).............................................................4

*ZUP, LLC v. Nash Mfg., Inc.*,
   896 F.3d 1365 (Fed. Cir. 2018)............................................................12

**Statutes**

35 U.S.C. § 102, 103 .............................................................9, 10, 12

35 U.S.C. § 112 .......................................................12, 13, 15, 16

35 U.S.C. § 271 ......................................................................*passim*

35 U.S.C. § 284 ....................................................................16, 17, 20

35 U.S.C. § 287(a) ......................................................................16

1
2
3
4
5
6
7
8
9

## I.    **INTRODUCTION**

Pursuant to the Court's Standing Order regarding Civil Pretrial Instructions and Case Management and Pretrial Order (Dkt. 175), Defendants Chilisin Electronics Corp. and Chilisin America, Ltd. ("Defendants" or "Chilisin") hereby submit the issues remaining to be tried and the corresponding legal standards.  Plaintiff Cyntec Company Ltd. ("Plaintiff" or "Cyntec") alleges that Chilisin infringes certain claims of U.S. Patent Nos. 9,117,580, 8,922,312, and 9,481,037 (collectively, the "Asserted Patents").[1]  Chilisin denies these allegations and will present evidence at trial to show that the accused products do not infringe any claims of the Asserted Patents and the Asserted Patents are invalid.

10

## II.    **ISSUES TO BE TRIED**

11

### A.    **Infringement: Chilisin Does Not Infringe the Asserted Claims**

12
13

Cyntec alleges that Chilisin is liable for direct and indirect infringement of the Asserted Claims 35 U.S.C. §§ 271(a), (b), and (c).

14
15
16
17
18
19
20
21
22
23

"[I]t is axiomatic that the *patentee* bears the burden of proving infringement."  *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F. 3d 1360, 1364 (Fed. Cir. 2000).  Cyntec bears the burden of proving infringement by a preponderance of the evidence.  *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005).  "A determination of infringement is a two-step process.  The court must first construe the asserted claims and then compare the properly construed claims to the allegedly infringing devices."  *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1335 (Fed. Cir. 2005).  To prove infringement, a patentee must "prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim."  *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

24
25
26
27
28

---

[1] Specifically, Cyntec asserts claims 2, 3, and 5 of the '580 Patent, claims 1, 2, 5, 8, 10, and 18 of the '312 Patent, and claims 9, 12, and 20 of the '037 Patent (collectively, the "Asserted Claims").

1. <u>Cyntec Cannot Prove Direct Infringement Literally or Under the Doctrine of Equivalents</u>

Direct infringement under 35 U.S.C. § 271(a) is the making, using, selling, offering to sell a patented invention within the United States, or importing a patented invention into the United States without authorization from the patent owner.

To prove direct infringement, "[t]he patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents." *Pause Tech.*, 419 F.3d at 1335; *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). There is no literal infringement where the accused product does not include each claim limitation. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309-11 (Fed. Cir. 2005).  In other words, "[l]iteral infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s).  If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.  *Bayer AG v. Elan Pharma. Res. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000) (citing *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)); *Catalina*, 289 F.3d at 812.

"Infringement under the doctrine of equivalents requires the patentee to prove that the accused device contains an equivalent for each limitation not literally satisfied." *Catalina*, 289 F.3d at 812; *see Bayer*, 212 F.3d at 1250-51 (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39-41 (1997)).  "That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the same function and achieves the result in a substantially different way." *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 n.6 (Fed.Cir.1987); *see Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335-36 (Fed. Cir. 2014); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1583 (Fed. Cir. 1996).

Chilisin contends that Cyntec cannot meet its burden of proof in showing that each and every claim limitation is met, either literally or by the doctrine of equivalents.

In addition to not being able to prove that each and every element of the Asserted Claims are practiced by the Accused productions, it is well-established that direct infringement liability is "limited to infringing activities that occur within the United States." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005). "Mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a)." *Id.* at 1377. To this end, it is Cyntec's burden at trial to show that the accused products are made, used, sold, offered for sale within the United States or imported into the United States by Chilisin in order for Chilisin to be liable under § 271(a).

The United States patent laws do not extend to provide a remedy for any infringing activities committed outside of the United States. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441, 454-55 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." "The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law."); *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005) ("The territorial reach of section 271 is limited. Section 271(a) is only actionable against patent infringement that occurs within the United States.") (abrogated on other grounds, *see Zoltek Corp. v. United States*, 672 F.3d 1309, 1319 (Fed. Cir. 2012) (explaining NTP involves analysis of 35 U.S.C. § 271(a))); *see e.g.*, *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1329-31 (Fed. Cir. 2018) (affirming a summary judgment that excluded from the damages base 98.8% of the accused products because the products were manufactured, packaged, and tested abroad, and were shipped to manufacturers and distributors abroad); *Ziptronix, Inc. v. Omnivision Techs., Inc.*, 71 F. Supp. 3d 1090, 1096 (N.D. Cal. 2014) (citing "the strong presumption that United States patent law does not operate extraterritorially" in granting summary judgment of no direct (or indirect) infringement); *Celanese Int'l Corp. v. Oxyde Chemicals, Inc.*, 554 F. Supp. 2d 725, 728 (S.D. Tex. 2008) (granting accused infringer summary judgment of no infringement under § 271(a) and no inducing infringement under § 271(b) based on accused infringer's acts of importing an acetic acid that had been produced in

China using the patented process where the only alleged acts of direct infringement were done outside of the United States); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (reversing the denial of the accused infringer's JMOL motion that it did not directly infringe the method claims since the patentee failed to show any instance of the accused infringer performing the claimed method in the United States by actually using its accused software product in the United States where the patentee could only show that the accused infringer tested its accused software product in Germany); *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303–04 (Fed. Cir. 2006).

\*     \*     \*

In view of the above, in order to prove direct infringement by Chilisin of the '312 Patent, Cyntec must prove by a preponderance of the evidence (i) that the accused molding choke products are made, used, sold, or offered for sale within the United States by Chilisin, or imported into the U.S. by Chilisin, and (ii) that the accused molded type choke products meet each limitation of the Asserted Claims of the '312 Patent.

In order to prove direct infringement by Chilisin of the '580 Patent, Cyntec must prove by a preponderance of the evidence that (i) the accused pillar choke products are made, used, sold, or offered for sale within the United States by Chilisin, or imported into the U.S. by Chilisin, and (ii) that the accused pillar choke products meet each limitation of the Asserted Claims of the '580 Patent.

Each of the Asserted Claims of the '037 Patent are method claims, particularly methods of manufacturing.[2]  "[D]irect infringement of a method claim requires that each of the claimed steps are performed within the United States."  *Meyer Intell. Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1371 (Fed. Cir. 2012) (citing *NTP*, 418 F.3d at 1318 (Fed.Cir.2005) ("We therefore hold that a process cannot be used 'within' the United States as required by section 271(a) unless

---

[2] "Under section 271(a), the concept of 'use' of a patented method or process is fundamentally different from the use of a patented system or device."  *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) (abrogated on other grounds; *see Zoltek Corp. v. United States*, 672 F.3d 1309, 1319 (Fed. Cir. 2012).

each of the steps is performed within this country.")).[3]  Moreover, to establish direct infringement of a method claim, all steps of the claimed method must be performed by or attributable to a single actor. *Akamai Techs. Inc. v. Limelight Networks, Inc*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). As such, in order to prove direct infringement under § 271(a) by Chilisin of the '037 Patent, Cyntec must prove by a preponderance of the evidence that each step of the asserted method is performed by Chilisin within the United States.

At trial, Chilisin will show that Cyntec has failed to establish its burden of proof showing any instances of direct infringement by Chilisin.

### 2.  Cyntec Cannot Prove Indirect Infringement

First, "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1316 (Fed. Cir. 2004).  For similar reasons as provided above, in addition to not being able to meet its burden of proof of direct infringement by Chilisin, Cyntec cannot prove the direct infringement by a third party for which Chilisin may be liable under §§ 271(b) or (c).  In other words, Cyntec must prove that a third party makes, uses, sells, or offers to sell within the U.S., or imports into the U.S., the accused molded-type choke products or the accused pillar-type choke products in order to establish direct infringement of the '312 or '580 Patents.  Similarly, Cyntec must prove that a third party uses or performs each step of the accused method claims of the '037 Patent within the U.S.  At trial, Chilisin will show that Cytenc has not established the existence of direct infringement under its burden of proof, and thus, there can be no indirect infringement.

### a.  Chilisin Does Not Induce Infringement

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  A party "induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys. Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990).  To prove active inducement, the patentee must show by a preponderance of the evidence that (1) a third party engaged in acts that resulted in

---

[3] "Method claims are only infringed when the claimed process is performed." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).

direct infringement and (2) the accused infringer acted with a specific intent to induce the direct infringement by the third party. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.* 543 F.3d 683, 697-700 (Fed. Cir. 2008). Put another way, if the jury finds that Cyntec does meet its burden on direct infringement, in order to succeed on any claim of induced infringement, "the patentee must establish … that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (citations omitted).

To establish liability for induced infringement, "a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement…The mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) ("induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement"). "The mere existence of direct infringement …, while necessary to find liability for induced infringement, is not sufficient for inducement. *Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015) ("[Indirect i]nfringement only exists where there is evidence that goes beyond a product's characteristics or the knowledge that it may be put to infringing uses." (internal quotation omitted)). As noted above, knowledge of possible importation is not enough to prove that direct infringement actually occurred. *See MEMC Elec. Materials*, 420 F.3d at 1377.

The intent requirement of active inducement is met by proving that (1) the accused infringer aided, instructed, or otherwise acted with the intent to cause the third party's acts, (2) the accused infringer knew of the patent, and (3) the accused infringer knew, or showed willful blindness, that the induced acts of the third party would result in direct infringement of the patent. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, at 1926-28. For willful blindness, the

accused infringer must have subjectively believed that there was a high probability that a fact exists, and must take deliberate actions to avoid learning of that fact. *Global-Tech*, 563 U.S. at 769-70.

In short, when dealing with alleged extraterritorial inducing acts, "[u]nlike direct infringement under 35 U.S.C. § 271(a), which must occur in the United States, liability for induced infringement under § 271(b) can be imposed based on extraterritorial acts, provided that the patentee proves the defendant possessed the requisite knowledge and specific intent to induce direct infringement in the United States." *Enplas Display Device Corporation v. Seoul Semiconductor Company, Ltd.*, 909 F.3d 398, 408 (Fed. Cir. 2018) citing *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302 (Fed. Cir. 2012).[4] "Even indirect infringement, which can encompass conduct occurring outside the United States, requires underlying direct infringement in the United States. [] United States patent laws do not provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Ziptronix, Inc. v. Omnivision Techs., Inc.*, 71 F. Supp. 3d 1090, 1098 (N.D. Cal. 2014) (citation omitted).

At trial, Chilisin will show that Cytenc has not established the knowledge of infringement or the specific intent to cause infringement within the United States, and thus, there can be no induced infringement under § 271 (b).

---

[4] While some courts have found liability under § 271(b) based on extraterritorial actions, Chilisin respectfully submits that these holdings are contrary the Supreme Court's opinion in *WesternGECO LLC v. ION Geophysical Corp.*, 138 S.Ct. 2129 (2018) applying the test from *RJR Nabisco, Inc. v. European Community*, 136 S.Ct. 2090 (2016) involving the extraterritorial reach of U.S. laws. *See also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. … Thus, unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions. … When a statute gives no clear indication of an extraterritorial application, it has none." (quotations and citations omitted).

Here, § 271(b) includes no indication of extraterritorial application. To extend liability to a company who sells a product to a first third party overseas, who then sells to a second third party overseas who imports the product as part of another product, it is at least one step too far, beyond Congress's reach, and not the intent of § 271(b).

b.    Chilisin Is Not Liable for Contributory Infringement

Contributory infringement is defined as: "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c). "[A] violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing.'" *See Global-Tech*, 131 S. Ct. at 2067, citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

"To establish contributory infringement, the patent owner must show the following elements relevant to this appeal: 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).  In addition to there being no proof of direct infringement as provided above, Cyntec has not even attempted to show that "the component has no substantial noninfringing uses" and "that the component is a material part of the invention."

Although Cyntec includes contributory infringement in its pre-trial submissions, Cyntec has not proffered or presented evidence of contributory infringement, and its experts have offered no explanation as to how Chilisin is liable under § 271(c).  Put simply, while Cyntec has casually included reference to § 271 (c), Cyntec has failed to lay the basic framework for an assertion of contributory infringement.[5]

---

[5] Additionally, just like § 271(a),"Section 271(c) has a territorial limitation requiring contributory acts to occur in the United States." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

3.    Chilisin Has Not Willfully Infringed the Asserted Claims

Willfulness may only be found when an infringer has engaged in conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or … characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).  Mere knowledge of a patent, without more, is not sufficient for a willfulness finding."  *See id.* at 1936 (Breyer, J., concurring) ("First, the Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*.").

At trial, Chilisin will show that Cyntec has not presented any evidence indicative of willful infringement, and thus, that Cyntec has not met its burden in proving the existence of willful infringement.

**B.    Invalidity**

Chilisin will present evidence at trial to show that the Asserted Claims are invalid under 35 U.S.C. §§ 102, 103, and/or 112.  Cyntec denies that the Asserted Claims are invalid.  The invalidity of a patent must be proven by clear and convincing evidence.  *Microsoft Corp. v. i4i Lt. P'Ship.*, 564 U.S. 91, 95 (2011).  The "validity analysis is a two-step procedure: 'The first step involves the proper interpretation of the claims. The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art.'"  *TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1139 (Fed. Cir. 2004) (quoting *Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed.Cir.1994)).

1.    The Asserted Claims are Anticipated

Chilisin will present evidence to show that the Asserted Claims are anticipated by the prior art under 35 U.S.C. § 102.

A patent is invalid if it "anticipated" by prior art.  "'Anticipation' in patent usage means that the claimed invention was previously known and described in a printed publication, explicitly or inherently." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008). Anticipation requires a showing that a single prior art reference discloses, either expressly or

inherently, each limitation of the claim.  *See In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1349 (Fed. Cir. 2002).

"An anticipatory reference … need not duplicate word for word what is in the claims. Anticipation can occur when a claimed limitation is 'inherent' or otherwise implicit in the relevant reference."  *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991).  Likewise, "a prior art reference may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it."  *MEHL/Biophile Intern. Corp. v. Milgraum*, 192 F.3d 1362, 1365, 52 U.S.P.Q.2d 1303 (Fed. Cir. 1999).

### 2.   The Asserted Claims are Obviousness

Chilisin will also present evidence to show that the Asserted Claims are rendered obvious by the prior art under 35 U.S.C. § 103.

A patent claim is invalid as obvious under § 103 "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  *See* 35 U.S.C. § 103(a); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-407 (2007).  A party asserting an obviousness claim must demonstrate "that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation in doing so."  *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."  *KSR*, 550 U.S. at 406 (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

"[A] patent can be obvious in light of a single prior art reference if it would have been obvious to modify that reference to arrive at the patented invention."  *Arendi S.A.R.L. v. Apple*

*Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016); *see Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1336–37 (Fed. Cir. 2010). Moreover, prior art references do not need to literally disclose every claim limitation in order to render the claim obvious as a whole. *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1335 (Fed. Cir. 2016) (overruled on other grounds) ("A claimed invention may be obvious even when the prior art does not teach each claim limitation, so long as the record contains some reason why one of skill in the art would modify the prior art to obtain the claimed invention."). "[C]ommon sense, common wisdom, and common knowledge" are all valid considerations when analyzing obviousness. *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016).

"It is long settled that in the context of obviousness, the 'mere recitation of a newly discovered function or property, inherently possessed by things in the prior art, does not distinguish a claim drawn to those things from the prior art.'" *Persion Pharm. LLC v. Alvogen Malta Operations Ltd.*, 945 F.3d 1184, 1190 (Fed. Cir. 2019) (quoting *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981)). Claiming a physical property or parameter "is not an additional requirement imposed by the claims" where patent discloses that it is "a property necessarily present" where other claim limitations are present. *Alcon Rsch., Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1369 (Fed. Cir. 2012) ("this claim language does not impose any additional requirement because the [patent at-issue] itself defines mast cell stabilization as a property that is necessarily present at those concentrations.") citing *In re Kubin*, 561 F.3d 1351, 1357 (Fed.Cir.2009) ("[e]ven if no prior art of record explicitly discusses the [limitation], the [patent applicant's] application itself instructs that [the limitation] is not an additional requirement imposed by the claims on the [claimed invention], but rather a property necessarily present in the [claimed invention]."). Moreover, "[a] whereby [or wherein] clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited." *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003).

Objective indicia of non-obviousness, (or secondary considerations), such as commercial success, long-felt need, and failure of others should be taken into account, but for objective indicia of non-obviousness to be accorded substantial weight the Federal Circuit "require[s] that

a nexus must exist between the evidence and the merits of the claimed invention." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1330 (Fed. Cir. 2017) (quoting *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010)).  Once a patent challenger has presented a *prima facie* case of obviousness, the patentee bears the burden of production with respect to evidence of alleged secondary considerations of non-obviousness, including a nexus thereto.  *Prometheus Lab'ys, Inc. v. Roxane Lab'ys, Inc.*, 805 F.3d 1092, 1101 (Fed. Cir. 2015); *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1373 (Fed. Cir. 2018).  "Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *Novartis AG*, 853 F.3d at 1330 (emphasis and quotation omitted).  Moreover, "a strong showing of obviousness may stand 'even in the face of considerable evidence of secondary considerations.'" *ZUP*, 896 F.3d at 1374 (quoting *Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009)); *see also Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997) ("In reaching an obviousness determination, a trial court may conclude that a patent claim [was] obvious, even in the light of strong objective evidence tending to show nonobviousness.").

### 3.    On-Sale & Public Use Bar

Chilisin will present evidence to show that the Asserted Claims of the '580 Patent are invalid due to a device that was sold by Chilisin prior to the effective filing date of the '580 Patent.

A patent claim is invalid if "the claimed invention was patented, described in a printed publication, in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1).

"That which infringes, if later, would anticipate, if earlier." *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-6635-LHK, 2013 WL 6673676, at *4 (N.D. Cal. Dec. 18, 2013) (quoting *Peters v. Active Mgf.*, 129 U.S. 530, 537 (1889)).

### 4.    Indefiniteness

Chilisin will present evidence that the Asserted Claims are invalid under 35 U.S.C. § 112 for being indefinite.

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "[A] patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* at 909 (quotations omitted). "Otherwise there would be "[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id.* at 909-910. (quotations omitted).

"[T]he patent and prosecution history must disclose a single known approach or establish that, where multiple known approaches exist, a person having ordinary skill in the art would known which approach to select." *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 803 F.3d 620, 630 (Fed. Cir. 2015).

### 5. Enablement

To satisfy the enablement requirement, the Asserted Patents must describe the alleged invention and "the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains … to make and used the same." 35 U.S.C. § 112.

It is not enough to enable a subset of what is claimed, a patent specification "must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017); *see MagSil Corp. v. Hitachi Global Storage Techs.*, Inc., 687 F.3d 1377, 1380 (Fed. Cir. 2012). The requirement that the claims be fully enabled "prevents both inadequate disclosure of an invention and overbroad claiming that might otherwise attempt to cover more than was actually invented." *MagSil*, 687 F.3d at 1381. In other words, "[t]he scope of the claims must be less than or equal to the scope of the enablement to ensure that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims." *MagSil*, 687 F.3d at 1381 (quoting *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008)). A patentee

may choose to claim their invention narrowly or broadly, but "[a] patentee who chooses broad claim language must make sure the broad claims are fully enabled." *Sitrick*, 516 F.3d at 999.

Courts apply the *Wands*-factors to determine whether "undue experimentation" would be necessary, namely "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1370-77 (Fed. Cir. 1999). "These factors while illustrative are not mandatory." *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013) (citing *Enzo*, 188 F.3d at 1371). "[I]f 'undue experimentation' is needed, the claims are invalid." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015).

### 6.  Written Description

Chilisin will present evidence at trial to show that the Asserted Claims lack sufficient written description because the disclosures of the Asserted Patents do not show that the named inventors had possession of the claimed inventions by the priority date of the patents. Insufficient written description occurs when "a patent disclosure does not reasonably convey to a skilled artisan that the inventor was in possession of the claimed invention at the time of the patent application." *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 555 F. Appx. 961, 967 (Fed. Cir. 2014); *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). This requirement is "part of the quid pro quo of the patent grant and ensures that the public receives a meaningful disclosure in exchange for being excluded from practicing an invention for a period of time." *Ariad*, 598 F.3d at 1354. A patent applicant is therefore required to "recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991)); *see also O'Reilly v. Morse*, 56 U.S. 62, 113 (1854).

Specifically, "the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad*, 598 F.3d at 1351; *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001) (the required disclosure "'must necessarily be present in the [original] applications' specification such that one skilled in the art would recognize such a disclosure") (quoting *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998)).  It is not sufficient for the embodiment to be obvious from the disclosure.  *See Regents of the University of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997); *TurboCare*, 264 F.3d at 1119. Also, "[a] 'mere wish or plan' for obtaining the claimed invention does not satisfy the written description requirement." *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336 (Fed. Cir. 2013).  "[A] patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification. After all, it is in the patent specification where the written description requirement must be met." *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004).

Importantly, the written description requirement "'operates as a timing mechanism to ensure fair play in the presentation of claims after the original filing date and to guard against manipulation of that process by the patent applicant.'" *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (citation omitted).  "When the applicant adds a claim or otherwise amends his specification after the original filing date…the new claims or other added material must find support in the original specification." *TurboCare*, 264 F.3d at 1118; *see Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1475-79 (Fed. Cir. 1998).  An adequate description of the invention "guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." *Rengo Co. v. Molins Mach. Co.*, 657 F.2d 535, 551 (3rd Cir. 1981).

7.   <u>Priority</u>

The application a patentee uses to claim a priority date must provide adequate support under 35 U.S.C. § 112.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) ("It is elementary patent law that a patent application is intitled to the benefit of the filing

date of an earlier filed application only if the disclosure of the earlier application provides

support for the claims of the later application, as required by 35 U.S.C. § 112.")

### C.    Damages

At the outset, damages are only available for the infringement that Chilisin is proven

liable, which does not include infringement that does not occur "within the United States."  *See*

*supra* § A.1; *see also* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the

claimant damages *adequate to compensate for the infringement*.").  Thus, because Cyntec cannot

carry its burden of infringement, no damages are owed.  However, to the extent a jury finds in

favor of Cyntec and decides to award damages, those damages are limited based on the legal

authorities cited herein.

Section 284 of the Patent Act specifies that "[u]pon finding for the claimant the court

shall award the claimant damages adequate to compensate for the infringement, but in no event

less than a reasonable royalty for the use made of the invention by the infringer, together with

interest and costs as fixed by the court." 35 U.S.C. § 284. The amount of a prevailing patentee's

damages is a finding of fact on which the patentee bears the burden of proof by a preponderance

of the evidence.  *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed.

Cir. 2002); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir.

1991).

Moreover, Section 287 provides a limitation on damages, which includes subsection (a)'s

limitation that "In the event of failure so to mark, no damages shall be recovered by the patentee

in any action for infringement, except on proof that the infringer was notified of the infringement

and continued to infringe thereafter, in which event damages may be recovered only for

infringement occurring after such notice. Filing of an action for infringement shall constitute

such notice."  35 U.S.C. § 287(a).  "The burden of proving compliance with marking is and at all

times remains on the patentee."  *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d

1350, 1367 (Fed. Cir. 2017).  "If a patentee who makes, sells, offers for sale, or imports his

patented articles has not 'given notice of his right' by marking his articles pursuant to the

marking statute, he is not entitled to damages before the date of actual notice." *Id.*, 876 F.3d. at 1366.

### 1. Lost Profits

"To recover lost profits, the patentee bears the burden of proof to show a 'reasonable probability that, 'but for' infringement, it would have made the sales that were made by the infringer.'" *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017); *see also BIC Leisure Prods. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("An award of lost profits may not be speculative. Rather the patent owner must show a reasonable probability that, absent the infringement, it would have made the infringer's sales.").

In general, under the Panduit test, a patent owner must prove causation in fact by showing: "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit [the patent owner] would have made." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *see Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978). The availability of lost profits damages under 35 U.S.C. § 284 is a question of law. *See Rite-Hite Corp.*, 56 F.3d at 1544.

The "but for" test requires the patentee to establish "an absence of acceptable, noninfringing alternatives" by proving "that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio*, 875 F.3d at 1380; *see also Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1352 (Fed. Cir. 1999) ("[M]arket sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost profits.").

"[I]f there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017). "For example, if the customer would have bought the infringing product without the patented feature or with a different, non-infringing alternative to the patented feature, then the patentee cannot establish entitlement to lost profits for that particular sale. And this determination is made on a customer-

by-customer basis." *Id.* Where a noninfringing alternative is not on sale, it may still be considered where the accused infringer has the "necessary equipment, know-how, and experience" to put it on sale in the damages period. *Grain Processing*, 185 F.3d at 1354.

A patentee can only get lost profits on sales that were in fact used in infringing ways. *Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991) (of ten plants sold, only six were infringing, so patentee was only entitled to damages on those six plants). "[I]f not every sale leads to an instance of infringement, it logically follows that not every lost sale profit should be compensated by the party inducing infringement. Therefore, in cases in which there is a question whether every sale leads to an instance of direct infringement, a patentee must, in addition to establishing that the four factors of the Panduit test are satisfied, establish the connection between sales and direct infringement." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 883–84 (Fed. Cir. 2001).

"If the application of the Panduit factors does not result in the separation of profits attributable to the patented device and the profits attributable to providing other aspects of the surveys (e.g., the ship for towing the streamers), it appears that apportionment is necessary." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, 1073 (Fed. Cir. 2019). "When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. Indeed, apportionment is required even for non-royalty forms of damages: a jury must ultimately 'apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features' using 'reliable and tangible' evidence." *Ericsson*, 773 F.3d at 1226 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). "[A]pportionment is . . . necessary in both reasonable royalty and lost profits analysis." *Mentor Graphics Corp.*, 851 F.3d at 1287.

2.   Apportionment

"'[A] patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts.' In the absence of such a showing, principles of apportionment apply." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014)

(quoting *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013)); *see generally*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018) ("When the accused technology does not make up the whole of the accused product, apportionment is required."); *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015); *Ericsson*, 773 F.3d at 1226; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 n.2 (Fed. Cir. 2012); *ResQNet.com*, 594 F.3d at 868; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009).  Damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more," (*Ericsson*, 773 F.3d at 1226), and thus, apportionment is required "where an infringing product is a multi-component product with patented and unpatented components." *Mentor Graphics Corp.*, 870 F.3d at 1299 (Stoll, J., concurring).

A patentee seeking damages based on an infringing product with both patented and unpatented features must apportion damages only to the patented features. *Garretson*, 111 U.S. at 121 (holding that patentee can be awarded unapportioned lost profits "calculated on the whole machine," but only if the patentee shows that "the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *VirnetX*, 767 F.3d at 1327.  "Even when a damages theory relies on the smallest salable unit as the basis for calculating the royalty, the patentee must estimate what portion of that smallest salable unit is attributable to the patented technology when the smallest salable unit itself contains several non-infringing features." *Power Integrations*, 904 F.3d at 977.

"[A]pportionment is an important component of damages law generally, and we believe it is necessary in both reasonable royalty and lost profits analysis." *Mentor Graphics Corp.*, 851 F.3d at 1287; *see also Ericsson*, 773 F.3d at 1226.

### 3.   Reasonable Royalty Damages

A reasonable royalty is the amount that the defendant would have paid for a license to the asserted patents if the parties had negotiated a license prior to the first alleged infringement. *See*

1   *LaserDynamics*, 694 F.3d at 60 & n.2.  The hypothetical negotiation approach "attempts to

2   ascertain the royalty upon which the parties would have agreed had they successfully negotiated

3   an agreement just before infringement began."  *Virnetx*, 767 F.3d at 1326.  The reasonable-

4   royalty inquiry requires consideration of, among other factors, "[t]he utility and advantages of

5   the patent property over the old modes or devices," "[t]he extent to which the infringer has made

6   use of the invention," and "[t]he portion of the realizable profit that should be credited to the

7   invention as distinguished from non-patented elements."  *Georgia-Pacific Corp. v. U.S. Plywood

8   Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  "[U]sing sufficiently comparable licenses is a

9   generally reliable method of estimating the value of a patent."  *Apple Inc. v. Motorola, Inc.*, 757

10  F.3d 1286, 1325 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online*,

11  *LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  The issue of damages under 35 U.S.C. § 284 is a question

12  of fact.  *Cybor Corp.*, 138 F.3d at 1461.

13          For an expert's royalty analysis to be admissible, it must be tied to the particular facts of

14  the case.  *Uniloc*, 632 F.3d at 1318.  An expert's damages theory must be based on "sound

15  economic and factual predicates."  *LaserDynamics*, 694 F.3d at 67.  When a reasonable royalty

16  opinion is not properly tied to the facts of the case, it is inadmissible under *Daubert* and the

17  Federal Rules of Evidence.  *Uniloc*, 632 F.3d at 1315.  The purpose of compensatory damages is

18  not to punish the infringer, but to make the patentee whole.  *Pall Corp. v. Micron Separations,

19  Inc.*, 66 F.3d 1211, 1223 (Fed. Cir. 1995).

20                    4.    Enhanced Damages

21          Whether to award enhanced damages is a matter left to the discretion of the Court. 35

22  U.S.C. § 284; *see Halo*, 136 S.Ct. at 1932 ("District courts enjoy discretion in deciding whether

23  to award enhanced damages, and in what amount.  But through nearly two centuries of

24  discretionary awards and review by appellate tribunals, 'the channel of discretion ha[s]

25  narrowed,' so that such damages are generally reserved for egregious cases of culpable

26  behavior." (citations omitted)).

27          Enhanced damages "should generally be reserved for egregious cases typified by willful

28  misconduct."  *Halo*, 136 S.Ct. at 1934.  "Awards of enhanced damages under the Patent Act over

1    the past 180 years establish that they are not to be meted out in a typical infringement case, but

2    are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement

3    behavior." *Id.* at 1932; *see also id.* at 1936 (Breyer, J., concurring) ("[T]he Court's references to

4    'willful misconduct' do not mean that a court may award enhanced damages simply because the

5    evidence shows that the infringer knew about the patent *and nothing more … .* It is

6    'circumstanc[e]' that transforms simple knowledge into such egregious behavior, and that makes

7    all the difference.").

8        Courts may consider the factors described in *Read Corp. v. Portec, Inc.*, 970 F.2d 816

9    (Fed. Cir. 1992) when deciding whether to award enhanced damages.  These factors include: (1)

10   whether the infringer deliberately copied the ideas or design of another; (2) whether the

11   infringer, when he knew of the other's patent protection, investigated the scope of the patent

12   and formed a good- faith belief that it was invalid or that it was not infringed; (3) the infringer's

13   behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the

14   closeness of the case; (6)the duration of the infringer's misconduct; (7) any remedial action by

15   the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to

16   conceal its misconduct.  *Read*, 970 F.2d at 827.

17

18   //

19

20   //

21

22   //

23

24   //

25

26   //

27

28   //

Dated: July 1, 2021

Respectfully submitted,

/s/ John L. Abramic

Jamie L. Lucia (SBN 246163)
jlucia@steptoe.com
STEPTOE & JOHNSON LLP
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6711
Facsimile: (415) 365-6681

John L. Abramic*
Katherine H. Johnson*
Anna M. Targowska*
Daniel F. Gelwicks*
jabramic@steptoe.com
kjohnson@steptoe.com
atargowska@steptoe.com
dgelwicks@steptoe.com
STEPTOE & JOHNSON LLP
227 W. Monroe St., Suite 4700
Chicago, Illinois 60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

John M. Caracappa*
Stanley Kuo*
Katherine D. Cappaert*
jcaracap@steptoe.com
skuo@steptoe.com
kcappaert@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

*Counsel for Defendants Chilisin Electronics
Corp. and Chilisin America Ltd.*

*Appearance *pro hac vice*