Jonathan J. Lamberson (SBN 239107)
jonathan.lamberson@whitecase.com
Henry Yee-Der Huang (SBN 252832)
henry.huang@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for Defendants
CHILISIN ELECTRONICS CORP. and
CHILISIN AMERICA LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| CYNTEC COMPANY, LTD,<br><br>Plaintiff,<br><br>v.<br><br>CHILISIN ELECTRONICS CORP. and CHILISIN AMERICA LTD.,<br><br>Defendants. | Case No. 4:18-cv-00939-PJH<br><br>**CHILISIN'S REPLY IN SUPPORT OF ITS RULE 59 MOTION FOR A NEW TRIAL**<br><br>Date: February 3, 2022<br>Time: 1:30 p.m.<br>Dept.: Courtroom 3, 3rd Floor<br>Judge: Hon. Phyllis J. Hamilton |

## I. INTRODUCTION

In its opposition to Chilisin's new trial motion, Cyntec fails to dispute the key facts and evidence that warrant jury consideration, relying instead on misplaced legal and procedural arguments. For invalidity, Cyntec cannot challenge the numbers that the prior art discloses for size and hardness values of known magnetic powders. Instead, it argues incorrectly that anticipation by inherency is foreclosed, and that there was insufficient evidence of motivation to combine for obviousness. These arguments have nothing to do with the Court's stated basis for granting JMOL, and both arguments misapply Federal Circuit law. Ultimately Cyntec relies solely on its own expert's say-so, which cannot justify removing disputed fact issues from jury consideration. As to remittitur, Cyntec does not dispute the calculation of Chilisin's proposed remittitur amount, or the propriety of offering remittitur in the event a new trial on damages is necessary. Cyntec's remaining procedural arguments are unfounded and should be rejected.

## II. ARGUMENT

### A. A New Trial on Invalidity is Necessary

Chilisin presented both documentary evidence and expert testimony that Shafer and Nakamura disclose using two magnetic powders with the claimed size and hardness differences. While Cyntec argues (at 3) that the Court determined that there was no clear and convincing evidence of invalidity, the Court's sole stated basis for taking invalidity away from the jury was that Shafer "doesn't disclose the hardness or the size" of magnetic powders. [Trial Tr. at 1159:11-18.] For anticipation, this finding was incorrect because the prior art and Dr. Bravman's testimony showed the inherent size and hardness of Shafer's two powders. For obviousness, this holding ignored the undisputed size and hardness values disclosed in Nakamura. Cyntec's opposition does not dispute these facts, and relies instead on its subjective view of the weight and persuasiveness of the evidence, but those arguments raise disputes the jury should have resolved in the first instance, making a new trial appropriate under Rule 59.

#### 1. *Chilisin Raised a Triable Dispute About Anticipation and Inherency*

Chilisin's anticipation theory relied on inherency, which was entirely proper. *See, e.g.*, *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1380 (Fed. Cir. 2003) ("inherency

operates to anticipate entire inventions as well as single limitations within an invention"). At trial, Chilisin presented more than sufficient evidence to convince a reasonable jury that Shafer's powders necessarily have the claimed size and hardness values. Chilisin's evidence showed specifically that Ancorsteel 1000C (Shafer's first powder) has a size range of 27-224 microns and a Vicker's hardness of 100-115, while carbonyl iron (Shafer's second powder) has a size range of 3.9-5.0 microns and a Vicker's hardness of 95. [*See* D.I. 286 at 5 (tabulating references and testimony).] Cyntec claims (at 4) that this record shows "nothing more than a mere possibility" that the powders possess the claimed properties, but this argument simply disagrees with the persuasive value of the evidence—something that should have been left to the jury to resolve.

Cyntec renews its argument that inherency is impossible, stating (at 4) that "Shafer says nothing about hardness or size differences." Inherency, however, is meant to addresses precisely this situation: recognizing properties that a reference does not ***expressly*** disclose. Indeed, Cyntec cites *Continental Can*, which explains that inherency "accommodates situations where the common knowledge of technologists ***is not recorded in the reference***." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991) (emphasis added). The Federal Circuit also acknowledged that physical properties can be inherent "regardless of how they are shown in the [reference]." *Id.* at 1268. Those inherent properties can become apparent after the fact, as inherency "does not require a person of ordinary skill in the art to recognize the inherent disclosure in the prior art at the time the prior art is created." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005). Accordingly, the fact that Shafer itself does not discuss hardness or size values is irrelevant to the question of inherency. Here, other technical publications and Dr. Bravman's trial testimony show that Ancorsteel 1000C and carbonyl iron inherently had all the relevant properties. Cyntec implies (at 4) that Shafer does not discuss its "manufacturing process," but Shafer discloses combining its two "powdered iron[s]" together as a "magnetic molding material," and Cyntec did not dispute any limitations at trial other than those involving size and hardness. [*See* Trial Tr. at 1126:8-1138:6.]

Next, Cyntec seizes upon Dr. Bravman's cross-examination testimony that Ancorsteel 1000C could have a Vicker's hardness as low as 80. [D.I. 296 ("Opp.") at 5.] Those isolated

statements do not foreclose inherency, nor do they support preventing the jury from deciding anticipation. First, Dr. Bravman explained that "there are typically ranges of these materials," so the presence of some particles with a different size or hardness is well-understood and irrelevant, since the challenged claims refer to a "***mean*** [i.e., average] particle diameter." [*E.g.*, D.I. 287-3 ("'312 patent"), cl. 1 (emphasis added).] Moreover, even if Shafer's materials have ranges of hardness and size, there is no dispute that there are at least *some* particles that meet the claims, and the presence of *additional* particles outside those ranges does not affect anticipation. *See SmithKline*, 403 F.3d at 1344 (holding a chemical process producing "at least trace amounts" sufficient for inherency). Second, the Kabatova reference—a published scientific article—states that Ancorsteel 1000C had a Vicker's hardness of 100-115, confirming the inherent hardness of this material. [D.I. 287-31, Trial Ex. A-323 at 1; Trial Tr. at 1034:3-25 (Bravman testimony).] Third, Cyntec's argument about ranges contradicts Cyntec's own infringement case, which also applied average values for size and hardness. Dr. Kohl testified that "you typically make a batch of powders and they range from really, really tiny to quite big." [Trial Tr. at 356:8-21.] Cyntec did not try to prove that every single powder particle in Chilisin's chokes satisfy the claims, but now argues inconsistently that such proof is necessary for invalidity. This is improper because the Court must apply the same standard for both infringement and validity. *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) ("The principle of law is concisely embodied in the truism that: 'That which infringes if later anticipates if earlier.'").

Cyntec then argues (at 5-6) that there are different forms of Ancorsteel, and that "thermochemical history" is required to know a material's hardness. These arguments are baseless because Shafer, Kabatova, and Dr. Bravman all discussed the same material—Ancorsteel 1000C:

- Shafer says a "preferred powdered iron" is "manufactured by Hoeganaes Company . . . under the trade designation Ancorsteel 1000C." [D.I. 287-25, Trial Ex. A-033 at 3:33-38.]
- Kabatova identifies the hardness of "[t]he commercial iron powder Ancorsteel 1000C (Hoeganaes Corporation, USA)." [D.I. 287-31, Trial Ex. A-323 at 2.]
- Dr. Bravman identified the same powders in Shafer: "One of them is Ancorsteel 1000C." [Trial Tr. at 1016:10-22.]

There is no "mere possibility" or guesswork about the powder at issue in the prior art, as Cyntec contends. The clear weight of the scientific literature and expert testimony shows that Ancorsteel 1000C and carbonyl iron inherently possess the requisite sizes and hardness values. At a minimum, the jury should have had the opportunity to assess the credibility of this evidence.

### 2. *Chilisin Presented a Triable Case of Obviousness*

With respect to obviousness, Cyntec's argument that Chilisin failed to cross-examine Dr. Kohl on secondary considerations or prior art, or "recall its own expert in rebuttal," are disingenuous. The Court granted JMOL of no invalidity *before* Dr. Kohl's cross-examination, so there was no basis for Chilisin to address secondary considerations or any other invalidity issues with him on cross-examination. [*See* Trial Tr. at 1158:12-1160:21.] It would be entirely unfair for the Court to grant JMOL before cross-examination of Cyntec's expert, and then fault Chilisin for not cross-examining that expert on issues it had just removed from the case. Moreover, Cyntec (not Chilisin) bears the burden of production with respect to evidence of secondary considerations of non-obviousness. *See ZUP, LLC v. Nash Mfg.*, 896 F.3d 1365, 1373 (Fed. Cir. 2018).

Cyntec's reliance on an alleged lack of motivation to combine Shafer and Nakamura (at 7-8) reveals why a new trial on invalidity is necessary, as motivation to combine raises disputed questions of fact, which the jury should have resolved. Notably, the Supreme Court eliminated any "rigid" requirement for a teaching, suggestion, or motivation to combine to demonstrate obviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). A jury should have assessed motivation to combine because it is a question of fact. *See MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1167 (Fed. Cir. 2015).

Indeed, the Court did not rely on any alleged lack of motivation to combine when granting JMOL of no invalidity, only the conclusion that Shafer "doesn't disclose the hardness or the size." Yet this finding overlooked Nakamura, which Chilisin offered as further evidence that a PHOSITA knew how to use two magnetic powders with differing size and hardness values. As Dr. Bravman explained, Nakamura demonstrates that "there is an additional reference that shows the very same concept" of differing powder size and hardness. [Trial Tr. at 1037:23-1039:2.]

Cyntec does not—and cannot—dispute that Nakamura teaches distinct Fe and Fe-Si-B powders with varying size and hardness ranges. [*See* D.I. 286 at 7; D.I. 287-21, Trial Ex. A-017 at 0032.] Instead, Cyntec raises a host of irrelevant alleged distinctions between Nakamura and the claimed inventions, such as the stage at which Nakamura applies heat treatment, and the lack of a buried conducting wire. [*See* Opp. at 7-8.] Chilisin never relied on Nakamura for these limitations of the asserted patents, only for the limitations relating to particles with differing size and hardness values, so Cyntec's arguments are irrelevant to the issue presented here. Dr. Bravman also explained to the jury that a PHOSITA reading Shafer would look to references like Nakamura that discuss the use of magnetic materials and their properties. [*See* Trial Tr. at 1038:15-1041:7 (noting Shafer is "talking about exactly the same kind of issues that Nakamura speaks to").] As noted above, the differences between the prior art and claimed inventions, and motivation to combine, are questions of fact for the jury. To the extent Cyntec disagrees that Nakamura is an analogous reference that a PHOSITA would combine with Shafer, "[w]hether a reference is analogous art is a question of fact." *In re Ethicon, Inc.*, 844 F.3d 1344, 1349 (Fed. Cir. 2017). Moreover, as Chilisin explained in its new trial motion, Dr. Kohl's testimony about lack of motivation to combine was conclusory, based on Nakamura not discussing molding chokes, along with the other irrelevant distinctions discussed above. [*See* Trial Tr. at 1133:9-12.] As noted above, these arguments ignore the *combined* teachings of Nakmura and Shafer.

Chilisin also presented at least five additional references at trial and explained how each would have motivated a PHOSITA to combine Shafer and Nakamura, based on using magnetic powders. Those additional references were Gramatyka, Brunner, Hiroyoshi, Watanabe, and Masaru. [*See* D.I. 286 at 8.] Cyntec dismisses those references (at 9) because they purportedly are not "invalidating prior art" about molding chokes, and because they do not discuss Shafer or Nakamura. That is a red herring: the five references address motivation to combine more broadly by showing that a PHOSITA knew how to vary the magnetic properties of chokes, and how to change particle shape, size, and hardness to achieve desired properties. [*E.g.,* D.I. 287-27, Trial Ex. A-268 at 2 (identifying "particle shape" and "size distribution" as known variables for magnetic powders).] The jury could reasonably have viewed these references, Dr. Bravman's

testimony about them, and the Shafer and Nakamura references to conclude that a PHOSITA would have been motivated to combine known magnetic powders with known size and hardness parameters in a molded choke.

Cyntec next contends (at 8-9) that even assuming a motivation to combine exists, the combination of Shafer and Nakamura would not teach all the claim limitations. Here, Cyntec cites only portions of its own expert's testimony, but competing expert testimony does not support JMOL or refute Chilisin's obviousness case. Cyntec notes Dr. Kohl's testimony that Shafer and Nakamura do not "address the problem of high-temperature annealing," but that is not a claim limitation. Cyntec then cites Dr. Kohl's opinion that Shafer and Nakamura do not "disclose particle size difference in a prescribed manner," but Cyntec cannot dispute that Nakamura teaches two magnetic powders with the claimed physical size ranges: one at 1 μm to 10 μm, and the other at 5 μm to 20 μm. [D.I. 287-21, Trial Ex. A-017 at 0032.] Finally, Cyntec cites conclusory statements that Shafer and Nakamura each lack certain "elements" missing from the other, but it does not identify those claimed limitations. At most, Cyntec has identified some expert testimony that supports its position—which Chilisin disputed with Dr. Bravman's opinions and scientific references—but that fails to show that no reasonable jury could find the claims obvious. JMOL of no obviousness was premature, so a new trial on invalidity is warranted.

### B. Cyntec Does Not Dispute the Amount or Propriety of Remittitur, in the Event of a New Trial on Damages

Cyntec defends the damages verdict (at 9-10) by citing its JMOL arguments that "there is no need to reduce the jury's damages award," but it does not disagree that remittitur would be appropriate if the Court rules the damages here were excessive. Nor does Cyntec dispute that the trial record shows Chilisin's direct sales totaled $643,855, and that a 2.5% royalty applied to those sales would be $16,096.38. [*See* D.I. 286 at 10-11.] Accordingly, if the Court determines that a new damages trial is necessary, the Court should offer this undisputed remittitur in the alternative.

### C. Cyntec's Procedural Arguments are Wrong

Cyntec makes unfounded arguments that Chilisin's requests for post-trial relief are

procedurally improper. These arguments are meritless and do not affect the Court's ability to order a new trial.

First, Cyntec contends incorrectly (at 1-3) that Chilisin cannot rely on the facts and arguments raised in Chilisin's JMOL motion to support a new trial on the same issues. Cyntec fails to explain how any differences between Rules 50 and 59 affect the availability of a new trial in this case. Rule 50(b) states expressly that "the movant may file a renewed motion for judgment as a matter of law *and may include an alternative or joint request for a new trial* under Rule 59." Rule 50(b) (emphasis added). "The granting of a motion for new trial is subject to a less stringent standard." *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1188 (9th Cir. 1984); *see also* 12 Moore's Federal Practice – Civil § 59.13 (2021) ("the standard for a new trial is distinct and less stringent"). Moreover, "a new trial may be granted even when substantial evidence supports the jury's verdict," and "in ruling on a new trial motion, the court need not view the evidence in the light most favorable to the verdict winner." *Id.* § 59.05. Cyntec relies solely upon *Johnstech*, but in that case, the plaintiff sought a new trial by referencing arguments "that are waived for Rule 50 purposes." *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 315 F. Supp. 3d 1130, 1138 (N.D. Cal. 2018). None of Chilisin's requests were waived, for the reasons explained in Chilisin's reply in support of its Rule 50 motion, filed herewith. Judge Donato also faulted the plaintiff in *Johnstech* for simply "cataloguing the evidence it considers favorable to its case," which failed to address the standards for *either* Rule 50 or 59. *Id.* By contrast, Chilisin's post-trial JMOL motion explained why Cyntec's proof was legally insufficient to support the verdict of infringement and damages, which also demonstrates the need for a new trial because the verdict is "contrary to the clear weight of the evidence." *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

Second, Cyntec's argument (at 3) that Chilisin improperly seeks reconsideration on invalidity is baseless. Rule 59 permits "a new trial on all or some of the issues . . . *after a jury trial*." Rule 59(a)(1)(A) (emphases added). Here, the trial is over, and after the jury heard evidence about anticipation and obviousness, the Court directed a verdict in Cyntec's favor. This directed verdict should be treated no differently from any other verdict, and under the plain

language of Rule 59, it can be set aside just like any other verdict. Cyntec identifies no authority that prevents Chilisin from seeking a new trial on invalidity. *Peasley* is irrelevant—that case involved a *pro se* plaintiff's request to "partially reverse . . . summary judgment," which is not the situation here. *Peasley v. Ahmed*, No. 15-CV-01769-LHK, 2019 U.S. Dist. LEXIS 108956, at *41 (N.D. Cal. June 28, 2019). In this motion, Chilisin seeks a new trial under Rule 59, not reconsideration, and there is no procedural bar to granting Chilisin's request.

## III. CONCLUSION

For these reasons, Chilisin respectfully requests a new trial on all issues above.

Dated: January 7, 2022

WHITE & CASE LLP

By: *_/s/ Jonathan Lamberson*
Jonathan Lamberson

Attorneys for Defendants
CHILISIN ELECTRONICS CORP. and
CHILISIN AMERICA LTD.