Jonathan J. Lamberson (SBN 239107)
jonathan.lamberson@whitecase.com
Henry Yee-Der Huang (SBN 252832)
henry.huang@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Attorneys for Defendants
CHILISIN ELECTRONICS CORP. and
CHILISIN AMERICA LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

CYNTEC COMPANY, LTD,

Plaintiff,

v.

CHILISIN ELECTRONICS CORP. and
CHILISIN AMERICA LTD.,

Defendants.

Case No. 4:18-cv-00939-PJH

**CHILISIN'S REPLY IN SUPPORT OF ITS RENEWED RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**

Date: February 3, 2022
Time: 1:30 p.m.
Dept.: Courtroom 3, 3rd Floor
Judge: Hon. Phyllis J. Hamilton

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Cyntec Misstates the Law on Waiver ..... 1

B. The Court Should Grant JMOL of No Infringement ..... 2

1. *The Court Should Grant JMOL on Products Cyntec Did Not Analyze* ..... 2

2. *Direct Sales Do Not Infringe the '037 Patent* ..... 3

3. *Cyntec Has Not Shown Chilisin Infringes the "By Means Of" Limitation* ..... 4

a. Claim Construction ..... 4

b. Cyntec's Failure of Proof ..... 5

C. The Court Should Grant JMOL of No Lost Profits Damages ..... 8

1. *Chilisin Properly Moved on Lost Profits Issues Under Rule 50(a)* ..... 8

2. *Cyntec's Lost Profits Evidence is Deficient* ..... 9

3. *Cyntec's Market Share Analysis is Unfounded* ..... 10

4. *Cyntec's Importation Percentages are Unfounded* ..... 12

D. The Court Should Grant JMOL On Cyntec's Royalty Base and Rate ..... 14

E. The Court Should Grant JMOL Limiting the Damages Period ..... 14

F. The Court Should Grant JMOL of No Willful Infringement ..... 15

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Amgen Inc. v. Hoechst Marion Roussel*,
314 F.3d 1313 (Fed. Cir. 2003)....5

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)....10

*Apple, Inc. v. Samsung Elecs. Co.*,
67 F. Supp. 3d 1100 (N.D. Cal. 2014)....3

*Atl. Thermoplastics Co. v. Faytex Corp.*,
970 F.2d 834 (Fed. Cir. 1992)....9

*Bd. of Trs. of the Cal. Winery Workers' Pension Trust Fund v. Giumarra Vineyards*,
2018 U.S. Dist. LEXIS 153208 (E.D. Cal. Sep. 7, 2018)....4

*BIC Leisure Prods. v. Windsurfing Int'l*,
1 F.3d 1214 (Fed. Cir. 1993)....12

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013)....9

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
381 F.3d 1371 (Fed. Cir. 2004)....4

*Cedars Sinai Med. Ctr. v. Quest Diagnostic*,
2020 U.S. Dist. LEXIS 257591 (C.D. Cal. Mar. 5, 2020)....1

*EEOC v. Go Daddy Software, Inc.*,
581 F.3d 951 (9th Cir. 2009)....1

*Embotelladora Electropura S.A. de C.V. v. Accutek Packaging Equip. Co.*,
2020 U.S. Dist. LEXIS 71954 (S.D. Cal. Apr. 23, 2020)....2

*Galdieri-Ambrosini v. National Realty & Dev. Corp.*,
136 F.3d 276 (2d Cir. 1998)....2

*Gonzalez-Bermudez v. Abbott Labs. P.R. Inc.*,
990 F.3d 37 (1st Cir. 2021)....1, 2, 6, 15

*Gordon v. County of Rockland*,
110 F.3d 886 (2d Cir. 1997)....2, 6

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999)....9, 10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016) ..... 15

*Herschler v. Gateway Prods.*,
1995 U.S. App. LEXIS 40363 (Fed. Cir. Jul. 14, 1995) ..... 3

*Johnston v. IVAC Corp.*,
885 F.2d 1574 (Fed. Cir. 1989) ..... 14

*Lakeside-Scott v. Multnomah Cty.*,
556 F.3d 797 (9th Cir. 2009) ..... 13

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ..... 5

*Oiness v. Walgreen Co.*,
88 F.3d 1025 (Fed. Cir. 1996) ..... 10

*Orion IP, LLC v. Hyundai Motor Am.*,
605 F.3d 967 (Fed. Cir. 2010) ..... 1

*Promega Corp. v. Life Techs. Corp.*,
875 F.3d 651 (Fed. Cir. 2017) ..... 12

*R.R. Dynamics v. A. Stucki Co.*,
727 F.2d 1506 (Fed. Cir. 1984) ..... 10

*Rankin v. Evans*,
133 F.3d 1425 (11th Cir. 1998) ..... 2, 6

*Reeves v. Teuscher*,
881 F.2d 1495 (9th Cir. 1989) ..... 1, 2

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007) ..... 4

*S. Cal. Retail Clerks Union & Food Employers Joint Pension Tr. Fund v. Bjorklund*,
728 F.2d 1262 (9th Cir. 1984) ..... 4

*Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*,
2018 U.S. Dist. LEXIS 109309 (C.D. Cal. Jun. 26, 2018) ..... 11

*Upjohn Co. v. MOVA Pharm. Corp.*,
225 F.3d 1306 (Fed. Cir. 2000) ..... 3

*Western Union Co. v. MoneyGram Payment Sys.*,
626 F.3d 1361 (Fed. Cir. 2010) ..... 1, 2, 6, 15

*Wolf v. Reynolds Elec. & Eng'g Co.*,
304 F.2d 646 (9th Cir. 1962) ..... 13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001)....2

*z4 Techs., Inc. v. Microsoft Corp.*,
507 F.3d 1340 (Fed. Cir. 2007)....7

**FEDERAL STATUTES**

35 U.S.C. § 271(a) ....4

35 U.S.C. § 271(a)-(c)....3

35 U.S.C. § 271(g) ....3, 4

**FEDERAL RULES**

Fed. R. Civ. P. 16(e)....4

Fed. R. Civ. P. 50(a)(2)....1

Rule 50 ....1, 2, 8

Rule 50(a).... passim

Rule 50(b) ....2, 8, 15

Rule 51 ....5

Rule 1006 ....13

# I. INTRODUCTION

Cyntec makes few arguments on the merits, and the arguments it does make are incorrect and unsupported. Instead Cyntec focuses on waiver, but it misstates the law and ignores the arguments Chilisin made at trial. For the reasons below and in its opening brief, the Court should grant Chilisin JMOL of no infringement, no willfulness, and JMOL on damages issues.

# II. ARGUMENT

## A. Cyntec Misstates the Law on Waiver

Cyntec's opposition relies heavily on waiver, but Cyntec misstates the law. First, Rule 50 should be given a "liberal interpretation" to avoid results that are overly harsh. *See EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Issues can be preserved through an "ambiguous or inartfully made motion under Rule 50(a)." *Id.* (citing *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989)). Second, a party that moves under Rule 50 need only indicate the grounds upon which the motion is based, not all the arguments and evidence in support of those grounds. *See, e.g., Western Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1367 (Fed. Cir. 2010) ("even a cursory motion suffices to preserve an issue on JMOL"); *Gonzalez-Bermudez v. Abbott Labs. P.R. Inc.*, 990 F.3d 37, 45 (1st Cir. 2021) ("Rule 50(a) does not require technical precision in stating the grounds of the motion. Otherwise, Rule 50(a) motions—often made while the jury awaits argument and instructions—would necessarily turn into lengthy analyses of every possible piece of evidence in the other party's possible favor"). For example, a motion seeking "JMOL on liability" has been found sufficient. *See Cedars Sinai Med. Ctr. v. Quest Diagnostic*, 2020 U.S. Dist. LEXIS 257591 at *6 (C.D. Cal. Mar. 5, 2020). Similarly, the Federal Circuit found a request for "partial judgment as a matter of law based on prior art" sufficient to preserve an invalidity challenge. *See Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 973-74 (Fed. Cir. 2010). The Court can also consider arguments that are the "logical extension" of any motion made during trial under Rule 50(a). *See Go Daddy*, 581 F.3d at 962.

Third, Rule 50(a) motions need not be brought at the close of a plaintiff's case, but instead can be made at any time before the case is submitted to the jury. *See* Fed. R. Civ. P. 50(a)(2). An issue could be raised during a colloquy with the Court, or as part of an objection to evidence or

jury instructions. *See Reeves*, 881 F.2d at 1498; *Embotelladora Electropura S.A. de C.V. v. Accutek Packaging Equip. Co.*, 2020 U.S. Dist. LEXIS 71954 at *10-14 (S.D. Cal. Apr. 23, 2020); *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 287 (2d Cir. 1998). Rule 50 can also be satisfied when the non-movant and the Court are "well aware" of the grounds for the challenge. *See Gordon v. County of Rockland*, 110 F.3d 886, 887 n.3 (2d Cir. 1997) (noting the specificity requirement "adds nothing" where both nonmovant and court were "well aware" of basis for motion); *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998) (finding strict enforcement of specificity requirement unnecessary when trial court and parties are actually aware of grounds for motion).[1]

### B. The Court Should Grant JMOL of No Infringement

#### 1. *The Court Should Grant JMOL on Products Cyntec Did Not Analyze*

Chilisin's opening brief noted there are 14 accused products where Cyntec introduced no hardness evidence. [D.I. 285 ("Mot.") at 3-4.] Cyntec makes two arguments in response. First, Cyntec argues this challenge was waived because it was not included in Chilisin's Rule 50(a) motion. This is incorrect: Chilisin specifically sought JMOL of "no infringement for all the accused products based on the fact that there is no evidence that any of the products infringed the 'by means of' limitation." [Trial Tr. at 866:8-10.] The "by means of" limitation requires a formation temperature that results from a hardness difference between two magnetic powders. [D.I. 287, Trial Exs. 143 & 145.] Because Cyntec introduced no evidence of hardness for these products, it did not show there was a hardness difference, so it did not show these products' formation temperatures were lowered "by means of" any such hardness difference. This is the same issue raised in Chilisin's JMOL, so the issue was preserved. Chilisin was not required to spell out all the ways Cyntec failed to show the "by means of" limitation was satisfied. *See, e.g., Gonzalez-Bermudez*, 990 F.3d at 45. Also, while the challenge was made via a single sentence, even a "cursory motion" is sufficient. *See Western Union*, 626 F.3d at 1367.

---

[1] Even if a Rule 50(b) motion is brought on grounds not previously raised in a Rule 50(a) motion, the jury's verdict is still reviewed for "plain error," and is reversible if such plain error would result in a "manifest miscarriage of justice." *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1109 (9th Cir. 2001).

On the merits, Cyntec suggests Trial Exhibit 1364 contains hardness evidence for these products, but that is clearly false: the exhibit only has columns for "powder diameter" (i.e., size), not hardness. [*See* D.I. 300-41.] Cyntec also points to Trial Exhibit 218, a specification for one of the powders, but that document similarly only provides information on size, not hardness. [*See* D.I. 299-4.] Cyntec also points to testimony where Dr. Kohl says he analyzed the data sheets and specifications for these products, but since that evidence does not specify any hardness values, that testimony is irrelevant for purposes of analyzing this limitation.

Cyntec further points to introductory testimony where Dr. Kohl said "the larger alloy powder is harder in every case than the smaller iron powder." [D.I. 297 ("Opp.") at 4, citing Trial Tr. at 404:1-19.] This conclusory expert testimony must be backed by evidence. *See Upjohn Co. v. MOVA Pharm. Corp*., 225 F.3d 1306, 1311 (Fed. Cir. 2000). Here, there is no evidence regarding hardness for these 14 products, so the statement is unsupported. Indeed, when Dr. Kohl testified about hardness, his only support was the Exponent testing data for the MA002 and MA004 powders. [Trial Tr. at 408:14-19, 422:13-423:8.] The 14 products at issue in this motion do not use those two powders. Cyntec argues there was no need for Dr. Kohl to perform "direct hardness testing," but Dr. Kohl had to do *something* to show hardness for these products. Because he did *nothing*, either directly or indirectly, JMOL is appropriate. *See Apple, Inc. v. Samsung Elecs. Co*., 67 F. Supp. 3d 1100, 1127 (N.D. Cal. 2014).

Finally, Cyntec suggests Dr. Kohl relied on the asserted patents to prove infringement, but Dr. Kohl never testified the powders in the patents were the same as the powders in these accused chokes. The asserted patents cannot make up for Cyntec's lack of proof. *See Herschler v. Gateway Prods*., 1995 U.S. App. LEXIS 40363 (Fed. Cir. Jul. 14, 1995).

### 2. *Direct Sales Do Not Infringe the '037 Patent*

Cyntec acknowledges that the only viable theory by which Chilisin could ***directly*** infringe the '037 patent is under 35 U.S.C. § 271(g) (Opp. at 5), but that theory was omitted from both the pretrial order and the jury instructions. Cyntec acknowledges Section 271(g) infringement was omitted from the pretrial order. [*Id*. at 6 n.3; *see also* D.I. 198 ("Cyntec alleges that Chilisin willfully infringes … under 35 U.S.C. § 271(a)-(c).").] By not identifying Section 271(g) in the

pretrial order, Cyntec waived this theory. *See S. Cal. Retail Clerks Union & Food Employers Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984) ("We have consistently held that issues not preserved in the pretrial order have been eliminated from the action"). Cyntec argues its waiver was "inadvertent" and should be excused, but the Court can only modify a pretrial order "to prevent manifest injustice." *See* Fed. R. Civ. P. 16(e). Cyntec does not attempt to show that standard is met here. Cyntec also argues Section 271(g) was identified in the complaint, but "[c]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint." *See Bd. of Trs. of the Cal. Winery Workers' Pension Trust Fund v. Giumarra Vineyards*, 2018 U.S. Dist. LEXIS 153208 at *7 (E.D. Cal. Sep. 7, 2018) (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007)).

Cyntec argues the jury was instructed on Section 271(g), but this is false. The instructions defined infringement as "making, importing, using, selling, and offering for sale products" covered by the claims of the '037 patent. [Opp. at 5.] That is infringement under 35 U.S.C. § 271(a), not 35 U.S.C. § 271(g). The Court never instructed the jury on the separate requirements of Section 271(g)—for example, that Chilisin imported into the United States a product "which is made by a process patented in the United States." More importantly, the Court never instructed the jury on relevant exceptions to Section 271(g), such as the exception that a product is non-infringing if it becomes "a trivial and nonessential component of another product." *See* 35 U.S.C. § 271(g). Cyntec argues Chilisin never objected to the jury instructions, but there was nothing to object to: the Court properly instructed the jury on 35 U.S.C. § 271(a), which was at issue, and omitted 35 U.S.C. § 271(g), which was not. The Court should grant Chilisin judgment that it did not ***directly*** infringe the '037 patent.

### 3. *Cyntec Has Not Shown Chilisin Infringes the "By Means Of" Limitation*

#### a. Claim Construction

Cyntec argues Chilisin waived its claim construction challenge by not renewing it during trial. This misstates the law. The Federal Circuit has repeatedly held that a party need not re-argue claim construction at trial once the Court has rendered its decision. *See, e.g., Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381 (Fed. Cir. 2004) ("Objection under

Rule 51 was not required to preserve the right to appeal the *Markman* ruling."); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008) ("When the claim construction is resolved pre-trial … a further objection to the district court's pre-trial ruling may indeed have been not only futile but unnecessary."). Here, the Court gave the term its "plain and ordinary meaning" during claim construction. [D.I. 83 at 19.] In its summary judgment motion, Chilisin argued the plain and ordinary meaning meant the lower formation temperature must be due to hardness, not due to something else. [D.I. 140-3 at 11, 160-3 at 10.] The Court rejected this, finding the limitation only requires hardness to have "an effect or impact on using a lower … manufacturing temperature." [D.I. 170 at 11-19.] Chilisin asked the Court to revisit this construction during pretrial, but the Court refused, stating, "I'm not going to have you all litigate this [claim construction] issue over and over and over again at trial. Period. I'm just not going to tolerate that." [*See* 7/29/20211 Pretrial Conf. Tr. at 15:6-17:21.] Chilisin did not raise the issue again because the Court clearly did not want further argument on claim construction.

While Chilisin is not seeking reconsideration here, it is still important to discuss the Court's claim construction because it is the first step in performing an infringement analysis, *see Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1324 (Fed. Cir. 2003) ("the first step in an infringement analysis is to construe the claims"), and it will be important for the appellate court to understand the Court's construction. As Chilisin understands the Court's construction, hardness must have *some* impact on formation temperature, but that impact can be modest. For example, under the Court's construction, if lower formation temperature is due 10% to hardness differences and 90% to size differences, the Court would find the "by means of hardness" limitation satisfied. Chilisin disagrees for the reasons stated previously—hardness should at least be the predominant or primary factor causing lower formation temperature. Regardless, even under the Court's more lenient construction, Cyntec has no actual evidence of infringement.

**b. Cyntec's Failure of Proof**

Chilisin's opening brief explained how Cyntec failed to present evidence that hardness differences impacted formation temperatures in any accused products. Cyntec again starts with a waiver argument, but here again Chilisin expressly raised non-infringement for the "by means of"

limitation in its Rule 50(a) motion. [*See* Trial Tr. at 866:8-10 ("no infringement for all the accused products based on the fact that there is no evidence that any of the products infringed the 'by means of' limitation"); Trial Tr. at 873:16-17 ("No infringement of any claim that includes the 'by means of' limitation.").] Chilisin went on to argue that Cyntec had not ruled out other factors that might have caused lower formation temperatures in the accused products. For example, single-powder chokes are also formed at room temperature, which means something other than hardness must cause lower formation temperature (because there is no hardness difference in single-powder chokes). [Trial Tr. 873:23-874:3.] This failure to determine what caused lower formation temperatures in the accused products is the same failure raised here.

Cyntec complains that Chilisin never mentioned size during its Rule 50(a) argument. First, Chilisin did not need to give the Court a laundry list of all the factors that could potentially impact formation temperature. *See Western Union*, 626 F.3d at 1367; *Gonzalez-Bermudez*, 990 F.3d at 45. More importantly, Cyntec was well aware size could impact formation temperature. The role of size was discussed, for example, during summary judgment. [*See, e.g.,* D.I. 140-3 at 14.] Both size and hardness are discussed in the asserted patents themselves as potential causes of lower formation temperature. [*See, e.g.*, D.I. 287-3, Trial Ex. 143 ('312 Patent) at 5:1-11 ("during a molding process, the second magnetic powder 114 is easily filled in spaces among the first magnetic powder 112 … Therefore, the density of compression is increased … In addition, it can [] avoid using greater molding pressure and high temperature heat treatment so as to improve the density of compression and the permeability.").] Again, there was no need to list all possible factors that cause lower formation temperature, especially factors that were well-known to Cyntec. *See Gordon*, 110 F.3d at 887 n.3; *Rankin*, 133 F.3d at 1433. Because Chilisin argued during JMOL that Cyntec had not shown ***hardness*** specifically contributed to lower formation temperatures in the accused products, it preserved this non-infringement position.

On the merits, Cyntec refers to Dr. Kohl's analysis of technical specifications, but as noted above, those specifications do not discuss hardness or its impact. For example, Cyntec points to Trial Exhibit 1364, but as explained, that document contains no hardness information, it only discusses size. [D.I. 300-41.] Cyntec also points to Exponent's testing, but that testing only

provides hardness values; Exponent never analyzed formation temperature. [*See* D.I. 299-12 at 3; Trial Tr. at 472:18-473:10.] Notably, Dr. Kohl never cited the Exponent report during his analysis of the "by means of" limitation. [*See* Trial Tr. at 413:18-415:3.]

Cyntec next identifies 27 different exhibits it says support the jury's verdict, but none of them provide evidence relevant to the "by means of" limitation.[2] Exhibits 6, 34, 39, 40, 42, 44, 47, 50, 51, 216, 217, 218 and 260 do not mention hardness at all. Because they do not mention hardness, they cannot show hardness has any impact on formation temperature. Exhibits 297, 298 and 299 are the Exponent reports. As discussed, these reports provide hardness values, but they do not analyze what causes lower formation temperatures. Exhibits 300, 342, 343, 345, 346, 347, 1293 and 1364 are Cyntec documents; they do not discuss the accused products, and none of the exhibits mentions hardness. Exhibit 391 is a Vishay license agreement; it is unclear why Cyntec cited it, but it has nothing to do with hardness. Finally, Cyntec identifies Exhibits 143 and 145—the asserted patents themselves. As noted, Cyntec has no proof the testing in the patents applies to Chilisin's products, which use different powders. Even if Cyntec did have such proof, the patents are clear that either size or hardness may impact formation temperature. [D.I. 287-3, Trial Ex. 143 at 5:1-11.] The patents thus cannot answer the critical question of whether size, hardness, or something else entirely, impacted formation temperatures ***in the accused products***.

Cyntec identifies testimony from its expert that hardness had a "direct impact" on formation temperature. [Opp. at 8.] Conclusory expert testimony such as this is not sufficient to carry a party's burden of proof. *See z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1355 (Fed. Cir. 2007). Dr. Kohl did nothing to confirm it was hardness that caused lower formation temperatures in the accused products. As noted, none of the exhibits he relied on support his statement that hardness had a "direct impact." The only exhibits that say hardness has even the potential to impact formation temperature are the asserted patents themselves, but they also say size can have the same impact. There is no dispute the accused products also have powders with

---

[2] Cyntec complains (at 9) about Chilisin's argument that this evidence was "irrelevant," noting that Chilisin did not object to any of these exhibits at trial. For the sake of clarity, Chilisin is not suggesting these exhibits are "irrelevant" for all purposes, only that they are "irrelevant" to the question presented here: whether the products satisfy the "by means of" limitation.

different sizes, and Dr. Kohl did nothing to determine whether it was size, hardness, or something else entirely that impacted the formation temperature in the accused products.

Finally, Cyntec argues that even if both size and hardness can impact formation temperatures, the Court should defer to the jury's fact finding. The question presented on JMOL, however, is whether the jury's finding has a "legally sufficient evidentiary basis." *See* Fed. R. Civ. P. 50(a). Here, the jury was given *no evidence* from which it could reasonably conclude it was hardness—not size, and not some other factor—that led to the use of lower formation temperatures in the accused products. In other words, this is not a case where the jury weighed competing evidence; here Cyntec has no relevant evidence, so JMOL is appropriate.

### C. The Court Should Grant JMOL of No Lost Profits Damages

#### 1. *Chilisin Properly Moved on Lost Profits Issues Under Rule 50(a)*

Cyntec once again begins by arguing Chilisin failed to move for JMOL on lost profits issues. This is false: before the case was submitted to the jury, Chilisin specifically sought JMOL of "no lost profits." [Trial Tr. at 1261:20-22.] Chilisin raised the "failure by Cyntec to prove the share of sales that Cyntec would have made but for Chilisin's sale of the accused products." [*Id*.] Chilisin also specifically challenged Cyntec's importation evidence: "[w]e don't feel that looking at the importation rates of various customers is sufficient for them to prove that damages number." [Trial Tr. at 876:21-23.] These are the same issues Chilisin raised in its motion under Rule 50(b): no lost profits, failure to prove Cyntec's share of the relevant market, and reliance on unfounded importation percentages. All three issues were preserved.

Cyntec argues the Court should ignore some of Chilisin's JMOL arguments because they were "procedurally improper and untimely," (Opp. at 11), but it does not explain the basis for this objection. Chilisin's arguments were all made after Cyntec presented its evidence and before the case was submitted to the jury (*see* Trial Tr. at 876, 1261), which is all Rule 50 requires. *See* Fed. R. Civ. P. 50(a). Cyntec appears to be suggesting Chilisin's arguments should have been made at the close of Cyntec's case-in-chief, rather than at the close of all evidence, but Cyntec provides no support for that position. To the contrary, "[m]any judges expressly invite motions at the close of all the evidence," finding it a "useful practice." Fed. R. Civ. P. 50(b), Committee Note of

2006. Because Chilisin brought its Rule 50(a) motions at an appropriate time, its motions were timely and procedurally proper.

### 2. *Cyntec's Lost Profits Evidence is Deficient*

Cyntec does not dispute that to recover lost profits, it must show what sales it would have made in a "but for" world where the adjudged-infringing sales did not occur. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). Cyntec says it "proffered evidence at trial showing that it obtained design wins and/or sold to disputed customers such as Apple, Intel, Broadcom, Microsoft, Qualcomm, Amazon, and Google." [Opp. at 13.] That is insufficient because Cyntec's lost profits theory was not limited to just those seven companies. Instead, Cyntec claimed lost profits for sales Chilisin made to 28 customers. Because there are more than two suppliers for molded chokes, the Court cannot simply assume Cyntec would have made all of Chilisin's sales to these companies. *See Atl. Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 847 (Fed. Cir. 1992). In other words, Cyntec should have presented evidence it would have made the sales Chilisin made to these 28 customers if Chilisin did not infringe, but Cyntec's own brief admits it ignored 21 of those 28 companies. Indeed, Cyntec does not dispute it never made even a single sale to Ambarella, Arris, Motorola, Jabil, Lite-On, Sercomm, or SanDisk, among others. It is pure speculation for Cyntec to claim it would have made sales to these companies if Chilisin were not on the market.

Cyntec's failure of proof is especially troubling given its argument in concurrent briefing that "the electronic choke market … is a design win market." [D.I. 288-1 at 15.] In a design win market, a customer must first qualify a product before making any purchases, and it is not a foregone conclusion that a part will pass the qualification process. *See Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1336 (Fed. Cir. 2013). Cyntec failed to introduce any evidence of which customers qualified its chips for which applications. Without at least some evidence it was qualified or at least could have become qualified to sell to each of these 28 customers, Cyntec cannot meet its burden to show all those customers would have purchased its chokes in a world where they could no longer buy from Chilisin.

Cyntec suggests it was not required to put on evidence for all 28 customers because it

needed only prove its damages with "reasonable certainty." [Opp. at 14.] An award of lost profits, however, requires rigorous proof because it goes "above and beyond the reasonable royalty floor required by the statute." *See Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1327 n.6 (Fed. Cir. 2014). In other words, once Cyntec decided to claim lost profits, it took on the burden to prove its claim. *See R.R. Dynamics v. A. Stucki Co*., 727 F.2d 1506, 1519-20 (Fed. Cir. 1984). Cyntec could have limited its theory to only those customers where it had actual proof of head-to-head competition, but Cyntec chose to cast its net more broadly. That strategic decision resulted in a failure of proof, and without evidence supporting the full scope of its theory, its recovery must be limited to a reasonable royalty. *Id.*

### **3. *Cyntec's Market Share Analysis is Unfounded***

Chilisin's opening brief explained why Cyntec's market share theory lacked evidentiary support. Cyntec makes an unusual argument in response: it says it competes with Chilisin in a two-player market. [Opp. at 15.] This argument is odd because it is not the theory Cyntec presented at trial.[3] At trial, Cyntec presented a market share theory, not a two-player market theory. [*See* D.I. 287-19, Trial Ex. 1344.] That is the theory it must now support, but as Chilisin noted in its opening brief, Cyntec's market share evidence was deficient. It relied on market shares for a different set of customers that did not even cover the correct time period. To the extent Cyntec is suggesting the Court can ignore these failures of proof because its damages calculation is "conservative," the Federal Circuit has rejected that argument. *See Oiness v. Walgreen Co*., 88 F.3d 1025, 1031 (Fed. Cir. 1996) (rejecting a party's purportedly "conservative" lost profits assumptions because it lacked a proper factual foundation). Put another way, to avoid devolving into "pure speculation," a lost profits calculation must be supported by "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *See Grain Processing*, 185 F.3d at 1350. Cyntec presented no sound economic proof of its market share, making JMOL appropriate.

Cyntec argues it relied on "the percent total sales in the mixed-power molded choke

[3] This argument is also contradicted by Cyntec's own evidence at trial, which shows it competing against multiple choke suppliers. [*See, e.g.,* D.I. 288, Trial Ex. 107, Trial Ex. 129 at CHILISIN00247605, and Trial Ex. A-213 at CHILISIN00239860-62.]

market generated by Cyntec," (Opp. at 15), but that is simply not correct. Cyntec's expert never said there was a single, unitary "mixed-power molded choke market"—instead, he presented five different markets, and he said Cyntec had a different share in each. [*See* D.I. 287-12, Trial Ex. 1295 (referring to markets for "PC & notebook," "Communication," "Automotive & Industrial," Consumer," and "Mobile & Tablet").] Cyntec relied on a single document to provide market share data for three of these markets (*see Id*., citing D.I. 287-9, Trial Ex. 385 at CYN_0026484), but that document refers to a different set of markets: a "NB Market" (presumably relating to notebook computers), a "Smartphone" market, and a "Server/Base station" market. Cyntec gave no support for why it applied the "NB [Notebook] Market" data to PC computers. [Trial Tr. at 906:8-11.] Cyntec gave no support for why it applied the "Smartphone" market data to tablet computers. [Trial Tr. at 906:12-14.] Cyntec gave no support for why it applied the "Server/Base station" market data to a category it labeled "Communication." [Trial Tr. at 906:15-19.] Cyntec's remaining market share data apparently came from undocumented oral conversations. While Cyntec is correct that its expert can rely on hearsay, Cyntec still has the burden to prove its lost profits damages with "reasonable certainty." *See* Trial Tr. at 1270:11-14; *Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co*., 2018 U.S. Dist. LEXIS 109309 at *15-16 (C.D. Cal. Jun. 26, 2018) (rejecting lost profits theory based on unsupported employee testimony regarding market share). The evidence Cyntec chose to rely on—hearsay and a single document that does not even address the correct markets—is plainly insufficient to carry that burden.

Cyntec argues "Chilisin does not dispute the accuracy of Cyntec's Total Available Market ('TAM') information," (Opp. at 15), but this argument misses the point. Cyntec's witness Dan Wu explained how Cyntec calculated market share for the "Smartphone" market segment (*see* Trial Tr. at 200:6-19), but that did not explain why Cyntec then applied that smartphone market share to sales of tablet computers. [D.I. 287-12, Trial Ex. 1295.] Mr. Wu gave no explanation for how he calculated any other market share.[4] Cyntec argues Chilisin chose not to cross-examine

[4] Cyntec refers to market share data in Trial Exhibit 383 (Opp. at 15-16), but this data is not relevant here because it only covered 2015 and 2016—years that were not included in Cyntec's lost profits calculation. [*See* D.I. 287-12, Trial Ex. 1295 (identifying CYN_0197384 as the source for market share data for 2015 and 2016); D.I. 287-19, Trial Ex. 1344 (beginning Cyntec's lost profits calculation on December 14, 2017).]

Mr. Van Uden and Mr. Wu (Opp. at 16) on market share, but it was *Cyntec's* burden to prove its lost profits. *See Promega Corp. v. Life Techs. Corp*., 875 F.3d 651, 660 (Fed. Cir. 2017). Chilisin had no obligation to put on its own competing theory, and Cyntec's evidentiary shortcomings were apparent even without cross-examination.[5]

Finally, Cyntec argues it had no obligation to prove lost profits on a customer-by-customer basis. [Opp. at 16.] Cyntec did, however, have the burden to prove what sales it would have made in a world where Chilisin did not infringe. *See BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1219 (Fed. Cir. 1993). Cyntec chose to include 28 customers in its recreation of the but-for market, so Cyntec had the burden to prove how many sales it would have made *to those 28 customers*. The fact that the record is silent on all but a small subset of them shows why Cyntec's market share theory is unfounded and must be rejected.

### 4. *Cyntec's Importation Percentages are Unfounded*

Chilisin's opening brief explained why Cyntec's importation percentages were unfounded. Specifically, all but one of those percentages came from Form 10-K filings that provide only overall sales information, not any numbers specific to chokes or even specific to products containing chokes. Cyntec again starts its opposition in an unusual fashion, suggesting its importation percentages are based on Gartner data. This argument is unusual for two reasons. First, it is incorrect: Cyntec only relied on Gartner data for a single customer, HTC. [*See* D.I. 300-03, Trial Ex. 1312, n.2.] Second, what Cyntec now calls "Gartner data" is nothing more than an unlabeled spreadsheet that nobody discussed at trial. Cyntec's opposition says this data "shows the percentage of laptops, PCs, cell phones, and tablets that are imported into the United States by Apple (which is Chilisin's largest customer for the accused products), Microsoft, Amazon, Google, LG, and HTC," (Opp. at 17), but there is no evidence supporting this statement in the record. The exhibit says nothing about what the data is, where it came from, or what it shows. It does not even use the words "laptop," "cell phone," or "tablet" (or "Gartner"). [*See* D.I. 299-30, Trial Ex. 1289.] Even if the exhibit does show what Cyntec now says it does, that

[5] Chilisin did have its damages expert critique Cyntec's market share theory. [*See, e.g.*, Trial Tr. at 906:5-909:5.]

does not help Cyntec. For example, under the heading for LG there is data for "PC," "Phone" and "UMT."[6] There is no evidence in the record about whether LG uses Cyntec or Chilisin chokes for PCs, Phones, "UMT" devices, or something else. Without such evidence, it is impossible to know which set of data to use to calculate the relevant importation percentages. Also, there is nothing in the record that can reconcile the inconsistencies between this data and the Form 10-K information Cyntec actually used at trial. For example, Cyntec's expert said LG sold roughly 25% of its products to the United States and 75% overseas. [*See* D.I. 300-12, Trial Ex. 1321.] The "Gartner data" shows US and "OUS" sales (presumably referring to sales made outside the U.S.) split roughly 50/50. To the extent Cyntec is now suggesting this "Gartner data" is the best source of evidence on importation, this shows why the theory it presented at trial is clearly, demonstrably wrong. Finally, this "Gartner data" only mentions six of the 28 customers in Cyntec's "but for" market. [D.I. 299-30, Trial Ex. 1289.] Even if the Court gives it any weight (which it should not), it still does not support the full scope of damages Cyntec sought at trial.

Cyntec suggests Chilisin should have objected to the "Gartner data" and that the Court cannot weigh evidence or assess credibility on JMOL. Yet on JMOL, Cyntec is only entitled to *reasonable* inferences—inferences that do not rely on speculation. *See Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009); *see also Wolf v. Reynolds Elec. & Eng'g Co.*, 304 F.2d 646, 650 (9th Cir. 1962) ("The province of fact finding and inference drawing must be exercised in the realm of probability, not speculation, surmise and conjecture."). Here, the so-called "Gartner data" adds nothing because there is no testimony or other evidence explaining what the data is or what it shows. Without such explanation, both the jury and the Court are left guessing as to the import of this exhibit.

Finally, Cyntec says the Court should consider Trial Exhibits 1312-1340 as Rule 1006 summaries of voluminous writings. Even if that is true, it begs the question: what are these documents summarizing? The answer is not disputed: these documents show overall importation percentages from SEC filings. [Trial Tr. at 546:13-20, 877:10-15.] Cyntec does not dispute that

[6] UMT is not defined in the document, and no witness asked at trial knew what it stood for. [*See* Trial Tr. at 947:7-14.]

Apple's SEC filings cover not just sales of iPhones and iPads, but also sales of irrelevant products and services such as advertising, AppleCare technical support, and the iPhone App Store, among other things. Again, while the jury may have been entitled to draw *reasonable* inferences from the importation percentages Cyntec introduced, it was *unreasonable* to take those numbers out of context and apply them in the manner Cyntec's expert did at trial.

### D. The Court Should Grant JMOL On Cyntec's Royalty Base and Rate

Cyntec does not make separate arguments to support its importation percentages in its reasonable royalty calculations. For the same reasons discussed above, those percentages are unfounded and should be rejected. Cyntec's royalty should be limited to direct sales.

Regarding the royalty rate, Cyntec continually refers to a "CAP-XX license" (Opp. at 18-20), but it never introduced any CAP-XX license at trial, it relied solely on a press release. [*See* D.I. 287-35, Trial Ex. A-467.] Chilisin is not aware of any case that has ever allowed a party to base its reasonable royalty on a press release. Doing so is highly problematic; there is no way to see the actual terms of the license, such as its territorial scope, or whether the running royalty is capped. It is not even clear what patents were licensed. [*See* Trial Tr. at 619:17-620:18.]

Cyntec attempts to distinguish case law that rejected weak royalty evidence on the basis that here its expert conducted a comparability analysis. [Opp. at 19.] The problem with this argument is ***Cyntec chose not have its technical expert present this comparability analysis to the jury***. The only statement about comparability came from Cyntec's damages expert, not its technical expert, but all he said was "based on Dr. Kohl's review of the patents, [the CAP-XX patents] were comparable." [Trial Tr. at 599:4-5.] This statement is conclusory; without any supporting evidence in the record, the Court must reject it. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed. Cir. 1989). Once the CAP-XX press release is excluded, the only evidence of record is the Vishay licenses, both of which have a 2.5% rate. [D.I. 298-18, Trial Ex. 76; D.I. 299-28, Trial Ex. 391.] The Court should limit Cyntec's royalty to that amount.

### E. The Court Should Grant JMOL Limiting the Damages Period

There appears to be no dispute that if direct sales under the '037 patent are removed from the case, all damages should start on the same date, which is the date Chilisin received notice of

the asserted patents. Chilisin agrees that whether that date is December 14th or December 17th of 2017 is a distinction without a difference, the key point is it should not be in 2016.

### F. The Court Should Grant JMOL of No Willful Infringement

Cyntec again leads with a misplaced waiver argument, but at trial Chilisin specifically said "we would like to move for no willfulness." [Trial Tr. at 866:7.] Nothing more was required to preserve the issue in an oral Rule 50(a) JMOL motion. Cyntec says Chilisin "abandoned" its argument because there was later discussion about the scope of Cyntec's willfulness case, but reading the transcript in context, Chilisin never withdrew its motion. Chilisin did say it was fine for Cyntec to unilaterally narrow its theory (Trial Tr. at 873:13-14), but that is not abandonment. Regardless, Rule 50(b) only requires that the ground was raised at trial, which here it clearly was. Cyntec also says Chilisin did not present the full scope of issues it addressed in its opening brief during trial, but only a cursory statement was required to preserve the issue, not a detailed recitation of all the reasons why Chilisin's infringement was not willful. *See Gonzalez-Bermudez*, 990 F.3d at 45; *Western Union*, 626 F.3d at 1367.

On the merits, these issues are addressed more fully in the briefing on Cyntec's motion for enhanced damages (D.I. 295), but the evidence Cyntec relies on is inapplicable. Trial Exhibit 1363 references a Cyntec part (PINA25201B-2R2MSR) that does not purportedly embody the asserted patents (*see* D.I. 300, Trial Ex. 1363 at CHILISIN00030077 & 74, Trial Ex. 1297) and a Chilisin part (BDBTEJ2S20122R2MCA) that is not accused of infringing (*see* D.I. 300, Trial Ex. 1363 at CHILISIN00030068, Trial Ex. 1364). Trial Exhibit 57 discusses Marvell, but they were not a Cyntec customer. [*See* D.I. 302-1.] Trial Exhibit 117 does not refer to any specific products, so it is impossible to tell whether it relates to sales of accused products, embodying products, or something else. The only other argument Cyntec makes is that Chilisin kept selling chokes after being sued, but that is not egregious. Cyntec's case law to the contrary predates the Supreme Court's decision in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016), which significantly tightened the requirements for finding willful infringement.

## III. <u>CONCLUSION</u>

The Court should grant Chilisin's motion for JMOL.

Dated: January 7, 2022

WHITE & CASE LLP

By: *<u>/s/ Jonathan Lamberson</u>*
Jonathan Lamberson

Attorneys for Defendants
CHILISIN ELECTRONICS CORP. and
CHILISIN AMERICA LTD.