JAMES C. YOON (State Bar No. 177155)
jyoon@wsgr.com
RYAN R. SMITH (State Bar No. 229323)
rsmith@wsgr.com
ALBERT SHIH (State Bar No. 251726)
ashih@wsgr.com
CHRISTOPHER MAYS (State Bar No. 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

LUCY YEN (State Bar No. 224559)
lyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

CELINE LIU (State Bar No. 268990)
celine.liu@wsgr.com
WILSON SONSINI GOODRICH & ROSATI PC
1700 K Street NW, Fifth Floor
Washington, D.C. 20006
Telephone: (202) 791-8800
Facsimile: (202) 973-8899

*Attorneys for Plaintiff*
*Cyntec Company, Ltd.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

CYNTEC COMPANY, LTD.,

Plaintiff,

v.

CHILISIN ELECTRONICS CORP.,
CHILISIN AMERICA LTD.,

Defendants.

CASE NO.: 4:18-cv-00939-PJH

**CYNTEC COMPANY, LTD.'S REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION AND ENHANCED DAMAGES**

Date: February 3, 2022
Time: 1:30 p.m.
Dept.: Courtroom 3, 3rd Floor
Judge: Hon. Phyllis J. Hamilton

## I. INTRODUCTION[1]

The jury determined that Chilisin willfully infringed Cyntec's patents by copying Cyntec's technology. Such infringement caused irreparable harm to Cyntec and its customer relationships that cannot be solely addressed through monetary damages. Cyntec is therefore entitled to both enhanced damages and a permanent injunction.

Cyntec supported its motion with a declaration from Dan Wu discussing the ongoing harm caused by Chilisin. Chilisin makes no attempt to rebut Mr. Wu's statements, nor did it offer any declaration or evidence of its own to dispute him. Instead, Chilisin's Opposition rehashes discredited arguments, contradicts the law, and ignores the record.

For example, Chilisin's arguments regarding an alleged Cyntec/Apple agreement are baseless. The Court already found this to be highly speculative and untimely. *See* D.I. 304 ("Chilisin's request . . . is not only untimely, but also shows a lack of diligence . . . Moreover, it is highly speculative…"). In response to the jury's finding of willful infringement, Chilisin also advances a brand-new advice of counsel defense which Chilisin never disclosed before trial and flagrantly violates the rules of this District. *See* Patent L.R. 3-7 ( "a party who does not comply with the [deadline] shall not be permitted to rely on advice of counsel ***for any purpose***."); Opp. at 4, 17, 21-23. Finally, Chilisin asks the Court to ignore the jury's finding that Chilisin was a willful infringer who failed to take any action after receiving Cyntec's notice of infringement. None of Chilisin's last-ditch strategies changes the evidentiary record, which supports the entry of a permanent injunction and enhanced damages.

## II. CYNTEC IS ENTITLED TO A PERMANENT INJUNCTION

### A. Chilisin Failed to Show Any Delay

Chilisin argues that Cyntec unreasonably delayed in filing this lawsuit in 2018 because Chilisin's first act of infringement occurred in 2015. *See* Opp. at 7; D.I. 1. Chilisin offers no evidence (1) that Cyntec was aware of Chilisin's infringement in 2015, (2) of how Cyntec allegedly became aware of Chilisin's alleged infringement in 2015, or (3) that Cyntec failed to take prompt

[1] Chilisin's mootness argument fails for the reasons discussed in Cyntec's opposition to Chilisin's renewed Rule 50 and Rule 59 motions. *See* D.I. 296 *et seq*.

action once it became aware of such infringement. For Cyntec to have been aware of Chilisin's infringement in 2015, at a minimum, Cyntec had to obtain the infringing Chilisin products and analyze them for infringement in 2015. Chilisin points to no evidence of this. Instead, the record shows (and Chilisin admits) that Cyntec sent a demand letter to Chilisin in December 2017 and then filed this lawsuit ***three months*** later. *See id*. This shows prompt and decisive action to protect Cyntec's patent rights. Chilisin's speculation and spin cannot negate the clear showing of irreparable harm.[2]

Chilisin also argues that Cyntec should have sought a preliminary injunction in this case. However, the Federal Circuit has repeatedly explained that seeking a preliminary injunction is not a prerequisite to (nor even necessarily relevant to) a permanent injunction:

> [W]hen a patent owner postpones suit and forgoes a preliminary injunction, there may well be reasons for the patent owner's actions independent of any implied concession that the infringement-caused injury is not actually irreparable: for example, the competitive threat may initially be small, or the merits may be much better presented through full litigation than through abbreviated preliminary-injunction proceedings.

*Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1385 (Fed. Cir. 2017); *see also Mytee Prod., Inc. v. Harris Rsch., Inc.*, 439 F. App'x. 882, 888 (Fed. Cir. 2011) ("we have never held that failure to seek a preliminary injunction must be considered as a factor weighing against a court's issuance of a permanent injunction."); *Lermer Ger. GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996) ("[Preliminary and permanent injunctions] are distinct forms of equitable relief that have different prerequisites and serve entirely different purposes."); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, ("*Presidio II*") 2018 WL 9903323, at *6 (S.D. Cal. Aug. 13, 2018) (imposing permanent injunction though movant did not seek preliminary

---

[2] The authority Chilisin cites at 6:26-7:8 of its Opposition each involve a delay in seeking a ***preliminary*** injunction, which is not at issue here since Cyntec filed its motion for a permanent injunction in accordance with the Court's schedule. *See T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 647 (Fed. Cir. 1987) ("put in no evidence on irreparable harm"); *Nutrition 21 v. United States*, 930 F.2d 867, 871-872 (Fed. Cir. 1991)(district court improperly applied a "presumption of irreparable harm"); *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, 2015 WL 9876952, at *8 (E.D. Tex. Dec. 23, 2015)(holding that the movant "provided only speculative evidence as to their alleged irreparable harm"). Here, Cyntec's substantial proof of irreparable harm renders these cases inapposite.

injunction); *Broadcom Corp. v. Emulex Corp.*, 2012 WL 13036855, at *5 (C.D. Cal. Mar. 16, 2012), *aff'd*, 732 F.3d 1325 (Fed. Cir. 2013) ("the Court does not find significant the fact that Broadcom did not seek lost profits for its patents, or that it did not seek a preliminary injunction"). Chilisin's argument for unreasonable delay thus lacks both legal and factual support.

**B. There Is No Credible Dispute About Competition**

Chilisin's argument that the parties' competition is "not relevant" is equally flawed. As Cyntec detailed in its opening brief, Cyntec and Chilisin have long agreed that they are direct competitors in the field of the patents-in-suit and infringing products. *See* D.I. 288-1 at 2-3. The trial evidence—which Chilisin largely ignores—corroborates this direct competition and shows Chilisin purposefully undercut Cyntec's price in the market (sometimes below margin) for its infringing products. *See id.* at 8:11-9:10 (citing several exhibits, including Trial Ex. 117).[3]

Chilisin contends that the undisputed intense competition between the parties can be overlooked because, it argues, Cyntec has failed to show its lost profits damages with mathematical precision. Opp. at 8. But Chilisin cites no legal authority requiring such a level of precision when assessing a motion for a permanent injunction. The Federal Circuit has "never held, [] that in order to establish irreparable harm a patentee must demonstrate that it is entitled to lost profits or that it is in direct competition with the infringer." *Mytee*, 439 F. App'x at 887. On the contrary, a jury's finding of lost profits "squarely supports a finding of irreparable harm." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("*Presidio I*").

Chilisin's reliance on *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015) is misplaced. *Apple* held that irreparable harm cannot be shown by pointing to "otherwise lawful competition." Opp. at 10-11 (quoting *Apple*). However, the evidence on which Chilisin relies (at 9:11-10:22 of its Opposition) does not show Chilisin's conduct was lawful. The competition at issue here involves those Chilisin products that the jury has already determined willfully infringe Cyntec's patents; Chilisin, therefore, ***unlawfully*** competed with Cyntec. The decision in *Praxair,*

---

[3] For the first time, Chilisin states that it is "impossible to tell" whether Exhibit 117 (a Chilisin document) refers to the infringing products. At trial, however, Chilisin's witnesses never suggested that the document does not identify infringing products, nor did Chilisin's counsel make any relevance objection.

*Inc. v. ATMI, Inc.*, 479 F. Supp. 2d 440 (D. Del. 2007), is also inapposite because there the parties stipulated that the products at issue "are not critical to either party's overall corporate success." *Id.* at 444. Here, in contrast, there is no dispute that Cyntec's patented products are critical to its business. *See* D.I. 288-1 at 4:2-20 (and cited evidence). There is likewise no dispute that in the design wins market present here, there is a strong incumbency effect, a factor noted in *Praxair*. *See Praxair*, 479 F. Supp. 2d at 444 (a relevant factor is whether "customers tend to remain loyal to the company"); *see also* D.I. 288-1 at 3:9-26, 4:2-20, 7:14-11:6; D.I. 288-4 at 43:11-44:4, 45:6-46:24, 66:18-68:17, and 69:22-70:21; D.I. 288-5 at 159:18-160:7; D.I. 288-24 at ¶¶4-5, 10-13.

### C. Chilisin's Predatory Pricing Reveals Chilisin's Improper Intent

Chilisin next argues that it did not engage in predatory pricing. *See* Opp. at 11-12 (attempting to rebut Trial Exhibits 117 and 132). Chilisin's argument misses the mark. Cyntec's witness, Dan Wu, explained in his declaration exactly how Chilisin's pricing policies for the infringing products irreparably harmed Cyntec. D.I. 288-24 at ¶¶ 4-5, 10-16. Indeed, Mr. Wu noted that competition with Chilisin's infringing products, including Chilisin's underbidding, caused Cyntec to lose customers for Cyntec's patented products. *See id.* Chilisin does not substantively rebut Mr. Wu's declaration, nor does it offer a declaration of its own to explain Chilisin's pricing policies and/or why the exhibits on which Cyntec relies are irrelevant.[4] Instead, Chilisin merely observes that Cyntec's profits increased around the time of these exhibits. But, it fails to show why this fact is relevant since, as shown at trial, Cyntec's profits would have been higher but for Chilisin's infringement. Chilisin's argument overlooks that the jury already found it willfully infringed and caused Cyntec's lost profits by (1) obtaining specifications for Cyntec's patented products; (2) copying Cyntec's products; (3) targeting Cyntec's customers; and (4) undercutting Cyntec's prices. *See* D.I. 288-1 at 8:12-9:10 and 10:28-11:4; *see also Presidio* I, 702 F.3d at 1363.

### D. Chilisin Copied Cyntec's Patented Technology

Chilisin next relies on attorney argument (but no evidence) that Chilisin's deliberate copying is irrelevant because the patent claims are supposedly unconcerned with the size, shape,

[4] As previously discussed, Chilisin's objection to the allegedly irrelevant nature of these documents was not one it made at trial when this evidence was proffered.

and electrical characteristics of the accused products. Opp. at 12:5-16. Again, Chilisin's unsupported argument fails both legally and factually.

*First*, Cyntec's expert Dr. Kohl explained in detail how size and hardness attributes of the mixed powders described in the patent claims directly improve the ***electrical characteristics*** of the patented products by reducing core loss, a measure of electrical efficiency, thereby allowing the accused products to meet the stringent size constraint. *See* Trial Tr. at 1142:20-1143:6 (describing how the claimed inventions yielded surprising results in electrical performance because "if you took this mixture of the . . . hard, large allow and small, soft iron . . . the core loss was even less than when you annealed just the hard one."); 411:5-18 (describing how the patents relate hardness and size to electrical performance); 386:6-388:21 (explaining how the electrical characteristics of Chilisin's infringing products were 25% higher due to using mixed powders). *Second*, the evidence shows that Chilisin infringed Cyntec's patents by copying the electrical characteristics of Cyntec products. *See, e.g., id*. at 1146:19-1148:15 (discussing improvement in electrical characteristics of Chilisin's infringing mixed-powder products over its legacy single-powder products as shown in Trial Exhibit 50 (D.I. 287-1)); Trial Ex. 1363 at CHILISIN00030071 ("the samples [sic] characteristics need to completely match Cyntec characteristics"); and Trial Exs. 56, 57, 117, 120, 122, 132, 384 (discussed in D.I. 288-1 at 3-5, 8-9, and 16-17). *And third*, Chilisin concedes that the patented claims involve attributes such as the size and hardness of the magnetic powders. *See* Opp. at 12:16-17.[5]

For all these reasons, Chilisin fails to credibly rebut the evidence of copying on which the jury relied.

### E. Chilisin Fails to Rebut the Relevance of Cyntec's Cited Authority

Chilisin next argues that the *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325 (Fed. Cir. 2013) decision cited by Cyntec is irrelevant. *Broadcom* discussed how the incumbency effect from a design wins market can lead to irreparable harm that cannot be compensated for through monetary damages. *See Broadcom*, 732 F.3d at 1336-1337. Here, Dan Wu's declaration explains how this

[5] Chilisin's Opposition also appears to limit "electrical characteristics" to "inductance," a position that finds no support anywhere in the record. *See* Opp. at 12:14-16.

case, like *Broadcom*, presents a design wins market with similar incumbency effects. *See* D.I. 288-24 at ¶¶ 10-13. Chilisin does not dispute this testimony. *See* Opp. at 12:24-13:26.

Chilisin also attempts to distinguish the Federal Circuit's decision in *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) by noting that in *i4i*, the defendant's infringement forced the obsolescence of the patentee's products. However, Chilisin fails to explain why ***obsolescence*** is a prerequisite for a finding of a permanent injunction or how public policy would be served if a patentee can obtain an injunction only after being forced out of a market completely. *See Presidio II*, 2018 WL 9903323, at *7 ("there is no requirement that in order to obtain an injunction, the movant must show that an injunction is necessary for the survival of the company."). *i4i* instead holds that irreparable harm flows when two parties are direct competitors, where the patentee has lost market share to the infringing products, and/or where the patentee's policy is to retain exclusive use of its invention. *See i4i Ltd.*, 598 F.3d at 861. Here, Chilisin does not dispute that the parties are direct competitors, that Cyntec lost certain customers due to Chilisin's infringement, and that Cyntec sought to retain exclusive use of its invention.

### F. Monetary Damages Are Inadequate to Compensate for the Infringement

Chilisin's arguments regarding the adequacy of monetary damages also miss the mark. For example, Chilisin argues that the scope of any harm is limited but relies on the same arguments made in its own post-trial briefing, which Cyntec has separately addressed. *See* Opp. at 14:10-19 (citing Chilisin's Rule 59 motion); *see also* D.I. 296 (Cyntec's opposition to Chilisin's Rule 59 motion). Chilisin quibbles regarding the availability of third-party sales data (Opp.at 14:20-15:10) but misses the point that even Chilisin cannot accurately account for the full extent of its infringing activity in the United States. *See* D.I. 288-01 at 12:14-13:2 (quoting testimony). Chilisin also ignores Cyntec's further point about how the nature of the design wins market in this case renders monetary damages insufficient. *Compare* D.I. 288-1 at 13:3-9 *with* Opp. at 14:10-16:16.

Chilisin advances several other arguments which do not show how monetary damages can adequately compensate Cyntec. First, Chilisin argues that there is no evidence of lost exclusivity or goodwill because Chilisin began infringing in 2015 shortly after the patents-in-suit issued. Chilisin essentially argues that it should be rewarded for commencing infringement earlier. Chilisin

is wrong, and its argument underscores the need for a permanent injunction to restore the exclusivity that Chilisin denied Cyntec. Second, Chilisin repeats its argument that Cyntec delayed in seeking to enforce its patent rights which fails for the same reasons discussed above. Finally, Chilisin disputes the quantification of price erosion and criticizes Dan Wu's declaration, but tellingly does not dispute that such price erosion occurred or any of the other facts Mr. Wu provided, such as how Chilisin's price cutting caused Cyntec to lose business with multiple customers. *See* D.I. 288-24 at ¶ 5. None of these arguments rebuts Cyntec's showing of the inadequacy of monetary damages.

### G. The Balance of Hardships Favors Cyntec

Chilisin's primary balance of hardships argument relates to evidence from Cyntec's corporate parent, Delta, which Chilisin never sought to subpoena and which played no role at trial. Chilisin argues that Delta's revenues should be considered but cites no authority supporting this argument. Critically, Chilisin makes no attempt to show that Cyntec's corporate veil should be pierced. And, in any event, Chilisin fails to explain how the Delta document on which it relies—which was not a trial exhibit, has not been authenticated, and has not shown to be anything other than inadmissible hearsay—is probative. The portion cited by Chilisin says nothing about Delta reporting Cyntec's income and this claim, like its recent arguments seeking to reopen discovery of Delta, is speculatory. *See* D.I. 292-9 at 118; D.I. 304. Chilisin also fails to address that its witnesses agreed the infringing products are a small portion of its business. *See* Trial Tr. 654:9-11.

With no justification for flouting multiple pretrial deadlines, Chilisin also relies on a January 2018 email from its outside counsel (never identified on its exhibit list and which does not even reference the '037 patent) to contend that "once Chilisin learned about the asserted patents, it investigated and found they were not infringed and were invalid." Opp. at 17:9-16. Chilisin never timely disclosed an advice of counsel defense under Patent L.R. 3-7, and therefore has waived any right now to rely on any opinions of counsel in this case. *See, also,* discussion *infra*.

### H. Cyntec's Proposed Injunction Serves the Public Interest

Chilisin does not dispute Cyntec's argument that the public interest generally favors enforcement of patent rights. *See* D.I. 288-1 at 14:13-21. Chilisin also does not dispute the general form of Cyntec's proposed injunction, but instead raises two narrow issues: (1) risks arising from

enjoining the transmission of safety information about products not subject to the injunction; and (2) limits on extraterritoriality. As to the first point, Cyntec is willing to confer with Chilisin to reach agreement on a narrow exception allowing the conveyance of safety information. As to the second point, however, Cyntec's proposed form of injunction specifically covers only infringing activity in the United States. *See* D.I. 288-6 at 1:10-24 (referring to infringing acts and/or inducement in "the United States."). Chilisin's proposed language (Opp.at 18:3-10) should not be adopted because it does not enjoin Chilisin under the scenario where it manufactures a product outside the United States and then subsequently imports that product into the United States or induces another to do so, both acts for which Chilisin has now been found liable.

Given the foregoing, the Court should grant Cyntec's motion for a permanent injunction.

## III. CYNTEC IS ENTITLED TO ENHANCED DAMAGES

As an initial point, Chilisin argues that Cyntec's requested enhanced damages is erroneously high. However, as Cyntec noted in its Motion, Cyntec seeks trebled damages in the amount of $5,618,868, which both sides agree is three times the amount the jury awarded. *See* D.I. 288-1 at 16:19-22. The amount listed in Cyntec's proposed order was a typographical error. Also notably, Chilisin does not dispute that *Read* Factor 4 (Chilisin's size and financial condition) weighs in favor of enhancing damages. *Compare* D.I. 288-1 at 19:25-20:11 *with* Opp. at 20-25. As discussed, the other *Read* factors also weigh in favor of enhanced damages.

### A. Chilisin Copied the Claimed Features of the Asserted Patents

Chilisin does not deny that it deliberately and continuously copied Cyntec's products. Instead, it repeats the same arguments about copying noted above. Opp. at 21. As previously discussed, however, Chilisin should not be permitted to claim that its conduct was "lawful competition" because it has now been found to infringe. Moreover, as noted in § II.D., Dr. Kohl discussed at length the connection between the patented inventions and the size and electrical characteristics that Chilisin copied. *See also* D.I. 288-1 at 16:23-17:20. Cyntec established that Chilisin's copying continued well after Cyntec notified Chilisin of its infringement. *See, e.g.*, Trial Ex. 57 at CHILISIN00120602. Chilisin never disputed this evidence during trial, and its attorneys' arguments are not substitutes for competent witness testimony. *See* Trial Tr. at 558:13-559:4.

Chilisin also claims, for the first time, that any infringement is due to independent development rather than the result of copying Cyntec's products. Opp. at 21. Such assertion is devoid of any evidentiary support, and Chilisin cites to none. See *id*. Finally, Chilisin's reliance on its outside counsel's letter to Cyntec is improper for the same reasons discussed below.

**B. Chilisin Did Not Form a Good Faith Belief of Non-infringement or Invalidity**

Chilisin's Opposition raises for the first time a January 2018 email as a basis for Chilisin's good faith belief of non-infringement and invalidity of Cyntec's patents. Opp. at 21:26-22:9; *see* Trial Tr. at 685:14-19. This letter was not included in Chilisin's trial exhibit list nor did Chilisin raise an advice of counsel defense before or during trial. Indeed, it is too late for Chilisin to do so now, as Patent L.R. 3-7 required Chilisin to disclose long ago any advice of counsel defense. Chilisin violates that rule by now invoking its counsel's "investigation" as a substitute for a good faith belief of non-infringement and/or invalidity. Further, Chilisin has not shown that anyone at ***Chilisin*** knew the letter's content, agreed with it, and acted with reliance thereon. And, as noted, the letter fails to address the infringed '037 Patent. It cannot form the basis of a good faith belief.

**C. Chilisin's Trial Strategy Lacked Good Faith and Belies Closeness**

Chilisin argues that its pre-trial conduct demonstrates a good faith litigation practice. This argument sidesteps the real issue: Chilisin's ***trial conduct***. As previously discussed, Chilisin's technical expert failed to provide *any* testimony on indefiniteness despite Chilisin having told the Court otherwise in its pretrial filings. *See* D.I. 213 at 14; D.I. 288-1 at 18:16-19:23. Likewise, Chilisin's trial presentation on anticipation and obviousness were so lacking that the Court granted JMOL on every one of Chilisin's invalidity defenses. D.I. 288-1 at 18:16-19:23.

Further, Chilisin's argument regarding closeness depends on its arguments previously presented and does not support a finding of closeness. Opp. at 23:16-26. As previously discussed, this case was not close. *See* D.I. 288-1 at 20:12-21; *supra* at §§ III.A-B.

**D. Chilisin Does Not Dispute That It Took No Remedial Action**

Chilisin's Opposition repeats its argument regarding reliance on its outside counsel's advice which, for the reasons previously discussed, are procedurally untimely and improper under Patent L.R. 3-7. Chilisin argues that *Read* factors 6 and 7 weigh in its favor because it had been selling

the infringing products three years before receiving Cyntec's notice letter and Cyntec never sought a preliminary injunction. Opp. at 23:28-24:10. Chilisin offers no authority that such facts are even relevant to *Read* factors 6 and 7, which focus on ***Chilisin's*** conduct. Critically, Chilisin does not dispute that even ***after*** learning about Cyntec's patents, it continued copying Cyntec's products' characteristics, making its infringing products, and inducing others to import those products.

### E. Chilisin Does Not Deny That Its Pricing Policies Sought to Displace Cyntec

Chilisin does not deny that it purposefully priced its products below cost to gain market penetration at Cyntec's expense. Instead, it argues that the substantial amount of email evidence presented at trial is all insufficient because, in Chilisin's view, each individual email is somehow flawed in the information it conveys. This argument takes an improperly narrow view of the body of evidence taken as a whole. The emails in question demonstrate, collectively if not individually, a pattern of predatory business practices, including copying Cyntec's patented products and their characteristics; aggressively pricing infringing products to undercut Cyntec; and even offering products at a negative margin to gain market traction. *See* D.I. 288-1 at 21:14-22:11 (including evidence cited therein). Moreover, Cyntec's witness Dan Wu offered a declaration detailing how Chilisin's pricing policies caused Cyntec to lose business with several customers. D.I. 288-24 at ¶ 5; *see also* D.I. 288-4 at 43:11-44:4; 45:6-46:24; 66:18-68:17; 69:22-70:21; D.I. 288-5 at 159:18-160:7. Chilisin's practices did not change even after receiving the notice letter from Cyntec. Instead, Chilisin expanded its infringing activity to the point that, by trial, its sales of infringing products had increased by sixfold. *See* D.I. 288-1 at 21:8-13. Finally, since the jury found both lost profits damages ***and*** willful infringement, Chilisin plainly intended to unlawfully harm Cyntec in the marketplace.[6] *See Presidio I*, 702 F.3d at 1363 (a jury's finding of lost profits "squarely supports a finding of irreparable harm").

## IV. CONCLUSION

Cyntec respectfully requests that the Court grant Cyntec's Motion.

---

[6] Chilisin also argues that because it did not attempt to conceal its infringing activities, the last *Read* factor weighs against enhancement. Opp. at 25. But Chilisin argued at trial that there was no way to distinguish its products from Cyntec's, hampering efforts to investigate its infringement.

Dated: January 7, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ James C. Yoon*
James C. Yoon

*Attorneys for Plaintiff*
*Cyntec Company, Ltd.*