UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CYNTEC COMPANY, LTD.,

          Plaintiff,

    v.

CHILISIN ELECTRONICS CORP., et al.,

          Defendants.

Case No. 18-cv-00939-PJH

**ORDER RE POST-TRIAL MOTIONS**

Re: Dkt. Nos. 285, 286, 288, 294

United States District Court
Northern District of California

      Before the court are the post-trial motions filed by the parties in the above-captioned case.  Defendants Chilisin Electronics Corp. and Chilisin America Ltd. (collectively "Chilisin") filed a renewed motion for judgment as a matter of law under Rule 50(b) (Dkt. 285) and a motion for a new trial under Rule 59 (Dkt. 286).  Plaintiff Cyntec Company Ltd. ("Cyntec") filed a motion for permanent injunction and enhanced damages (Dkt. 288).  Chilisin also filed a motion to seal in connection with its opposition to Cyntec's motion for permanent injunction and enhanced damages (Dkt. 294).  The matters are fully briefed and suitable for resolution without oral argument.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

**BACKGROUND**

      This is a patent case, in which Cyntec filed suit against Chilisin for infringement of patents relating to electronic chokes.  After a seven-day trial, a jury returned a verdict in Cyntec's favor, finding that Chilisin willfully infringed every asserted claim of the patents-in-suit.  See Dkt. 269.  The jury awarded the full amount of damages sought by Cyntec,

namely, $1,552,493 in lost profits and $320,463 in reasonable royalties, for a total damages award of $1,872,956.  See id.

Before the court are the parties' post-trial motions, as described above.

**DISCUSSION**

Chilisin's renewed motion for judgment as a matter of law under Rule 50 (Dkt. 285)

A.    Legal standard

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue ...."  Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

A party must make a motion for judgment as a matter of law under Rule 50(a) before a case is submitted to the jury.  If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b).  In ruling on the renewed motion, the court may either "allow judgment on the verdict, if the jury returned a verdict," or "order a new trial," or "direct the entry of judgment as a matter of law."  Fed. R. Civ. P. 50(b).

The standard for judgment as a matter of law "mirrors" that for granting summary judgment.  Reeves, 530 U.S. at 150.  The court "should review all of the evidence in the record," but "may not make credibility determinations or weigh the evidence."  Id.; see also Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006).  The court should give credence to the evidence favoring the non-moving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached, to the extent that it comes from disinterested witnesses.  Reeves, 530 U.S. at 151.

The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.  Josephs, 443 F.3d at 1062.  The verdict must be upheld if the evidence is adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence.  Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001). The court "may

not substitute its view of the evidence for that of the jury."  Id. (citing Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999)).

Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion.  Thus, a party cannot properly "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."  EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009) (citing Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir.2003)).

While Rule 50(b) "may be satisfied by an ambiguous or inartfully made motion" under Rule 50(a), a party must still put the opposing party and the court on adequate notice of the basis for its motion.  See Go Daddy Software, 581 F.3d at 961; Freund, 347 F.3d at 761.

B.     Analysis

1.     Infringement

a.     Specific accused products

Chilisin's first argument is that the court should enter judgment as a matter of law "on products Cyntec did not analyze."  Dkt. 285 at 8.  Specifically, Chilisin argues that fourteen of the 310 accused products contain at least one powder that Cyntec did not test.  See Dkt. 25 at 8.

Cyntec first responds that Chilisin has waived its argument with respect to the fourteen accused products in question by not raising it as part of its original Rule 50(a) motion.  See Dkt. 297 at 8 (citing Trial Transcript (Trial Tr.) at 866:1-879:21, 1260:10-1262:23).  Cyntec further argues that Chilisin's argument fails on the merits, because Cyntec's expert, Dr. Paul Kohl, testified that he analyzed the characteristics of all accused products, including the fourteen products in Chilisin's motion.

The court agrees that Chilisin's Rule 50(a) motion did not raise the issue of whether Cyntec failed to test powders included in fourteen of the accused products. Chilisin's first Rule 50(a) motion on August 27, 2021 did not raise the argument, nor did

1   Chilisin's "renewed" Rule 50(a) motion on August 31, 2021 raise the issue.  See Trial Tr.

2   vol. 5 (Dkt. 260) at 866-81; vol. 7 (Dkt. 266) at 1260-63.  Accordingly, this argument is

3   waived and may not be raised on this renewed motion under Rule 50(b).  See Freund,

4   347 F.3d at 761.

5          Moreover, even if the court were to consider the merits of Chilisin's motion on this

6   issue, giving credence to the evidence of the non-moving party, Chilisin has not shown

7   that the evidence permits only one reasonable conclusion, and that conclusion is contrary

8   to the jury's verdict.  As Cyntec argued, its expert testified that he reviewed the material

9   specifications for each of the powders used in the accused products, and that "the larger

10  alloy powder is harder in every case than the smaller iron powder."  See Trial Tr. vol. 3

11  (Dkt. 255) at 378:25-379:2, 404:1-19.

12         Accordingly, Chilisin's renewed motion for judgment as a matter of law is DENIED

13  as to its argument that Cyntec did not prove infringement for fourteen of the accused

14  products.

15                 b.    Infringement of the '037 patent by direct sales

16         Next, Chilisin argues that the court should grant judgment as a matter of law that

17  direct sales do not infringe the '037 patent.  See Dkt. 285 at 9.  Chilisin argues that the

18  '037 patent is a method patent, and that "there is no dispute Chilisin manufactures the

19  accused chokes entirely outside of the United States," and "thus Cyntec's only viable

20  theory at trial was that Chilisin induced others to import chokes."  Id.

21         Chilisin's argument relies on a quotation from Cyntec's counsel during trial stating

22  that "with regard to the '037 patent, we are only asserting induced infringement."  See

23  Dkt. 285 at 9 (citing Trial Tr. vol. 5 at 868:23-869:3).  However, the full trial transcript

24  shows that Cyntec's counsel corrected himself, stating "with regards to the '037 patent . .

25  . we did assert [direct] infringement under 271(g) in our infringement contentions, just to

26  be clear."  See Trial Tr. vol. 5 (Dkt. 260) at 869:18-23.

27         Cyntec's opposition brief further argues that, after the hearing, Cyntec clarified

28  with Chilisin via email that it had not withdrawn or waived its claim for direct infringement

United States District Court
Northern District of California

1   under section 271(g), and cited portions of its pretrial papers disclosing the substance of

2   the theory.  See Dkt. 297 at 11 (citing Dkt. 298, Ex. 3).  Cyntec argues that "Chilisin did

3   not respond to that email or dispute its contents."  Id. at 11.

4        In its reply, Chilisin does not discuss Cyntec's corrective statement in the trial

5   transcript or the email sent by Cyntec to Chilisin after the Rule 50(a) hearing, instead only

6   arguing that Cyntec has waived its argument for infringement under section 271(g).  See

7   Dkt. 306 at 8.  Chilisin further argues, for the first time in reply, that "the court never

8   instructed the jury on relevant exceptions to section 271(g), such as the exception that a

9   product is non-infringing if it becomes 'a trivial and non-essential component of another

10   product.'"  Id. at 9.  However, Chilisin provides no basis for the court to conclude that

11   such an instruction would have been relevant on the "trivial and non-essential

12   component" exception, such that a reasonable jury would not have a legally sufficient

13   evidentiary basis to find for Cyntec on that issue.

14        Because Chilisin's motion on this issue is premised on its argument that "Cyntec's

15   theory for the '037 patent was limited to inducement," (See Dkt. 285 at 9) and because

16   the record shows that Chilisin was aware of Cyntec's intent to proceed under a theory of

17   direct infringement under section 271(g), Chilisin's motion is DENIED.

18               c.     The "by means of" limitation

19        Chilisin's next argument is that Cyntec has not shown that Chilisin infringed the "by

20   means of" element of the asserted claims.  Chilisin first re-argues the substance of its

21   claim construction argument, that hardness must be the primary factor affecting the

22   formation temperature, rather than having just an "effect or impact" on the temperature.

23   See Dkt. 285 at 10.

24        As an initial matter, Cyntec correctly points out that Chilisin's original Rule 50(a)

25   motion did not ask the court to amend its original claim construction.  See Trial Tr. at

26   873:20-23.  However, in its reply, Chilisin acknowledges that it "is not seeking

27   reconsideration here," and clarifies that it is discussing the claim construction as

28   background "because it is the first step in performing an infringement analysis."  See Dkt.

United States District Court
Northern District of California

306 at 10.  Given the representations in Chilisin's reply, the court will not address the substance of Chilisin's argument regarding claim construction of the "by means of" term.

Chilisin next argues that "Cyntec failed to show hardness has an impact on the accused chokes' formation temperature."  See Dkt. 285 at 11.  Specifically, Chilisin argues that "[g]iven that the causal relationship between hardness difference and formation temperature was expressly claimed, under the court's construction, Cyntec must prove that the hardness difference in Chilisin's products is a cause of their lower formation temperature."  Id.

Chilisin then provides a more robust version of its current argument:

In order to understand Cyntec's lack of proof, it is instructive to review the portion of the trial transcript where Cyntec's expert actually analyzed the disputed limitation.  When Cyntec's infringement expert performed his analysis of "limitation 1E" of the '312 patent (the "by means of" limitation), he only relied on a single piece of evidence: Exhibit 50.  Cyntec's expert testified that Exhibit 50 shows Chilisin's mixed powder chokes have better performance than a single-powder choke without annealing, but that does not answer the critical question: what caused that better performance and lack of annealing?  Was it the size differences between the magnetic powders, was it the hardness difference, or was it something else?  Exhibit 50 does not say, and indeed the exhibit says nothing about hardness whatsoever.  There is also nothing in Exhibit 50 about formation temperature, and nothing about what caused a given product to form at a given temperature.

Cyntec's analysis for claim 1 of the '037 patent was even more sparse.  Its expert gave ipse dixit testimony that hardness has an impact on formation temperature, but for support he referred back to his prior testimony on claim 1 of the '312 patent.  As noted, that prior testimony relied on a single exhibit that says nothing about hardness and nothing about formation temperature.  This was Cyntec's entire analysis of this critical, disputed limitation, and it was plainly deficient.  At most, Cyntec's expert showed the accused chokes have certain performance characteristics, but its own asserted patents say those same performance characteristics could be caused by size differences, not hardness differences.

See Dkt. 285 at 11-12 (emphasis added and internal citations omitted).

Chilisin's current argument bears little resemblance to the argument made in its Rule 50(a) motions.  This was the substance of Chilisin's initial Rule 50(a) motion on August 27, 2021:

> No infringement of any claim that includes the "by means of" limitation. We have had this argument with plaintiffs a number of times. We think the claim is clear.
>
> Prior to the trial, all the witnesses seemed to agree that the claim related to the forming step and that the differences in hardness of the particles has to impact the temperature at which the choke is formed.  All of the evidence is that <u>the chokes are formed at room temperature</u> regardless of the powders that are used.  <u>There can be no infringement</u> of that step if the chokes with a single powder are <u>molded at room temperature</u> and the chokes with a dual powder are <u>molded at room temperature.</u>
> …
> And their argument that you don't have to later perform an annealing step to meet the performance characteristics of a customer is nowhere in the claim, and we don't think any reasonable jury can conclude the products infringe.

Trial Tr. vol. 5 (Dkt. 260) at 873:16-874:3, 874:9-13 (emphasis added).

During the hearing on Chilisin's "renewed" Rule 50(a) motion on August 31, Chilisin simply reasserted its original grounds for the motion:

> You know this one is coming, the no infringement of the "by means of" limitation of the '312 and '037 patent. There is no way for Cyntec to prove, and they have not proven, that we infringed the "by means of" limitation under the Court's interpretation of that term.

Trial Tr. vol. 7 (Dkt. 266) at 1261:11-15.

To summarize, the argument made in Chilisin's Rule 50(a) motion was an argument that there was no temperature change in the first place, because "the chokes are formed at room temperature."  Trial Tr. vol. 5 (Dkt. 260) at 873:20-25.  That was also the argument made during Chilisin's closing argument to the jury.  See, e.g., Trial Tr. vol. 7 (Dkt. 266) at 1219:21-1221:25 ("All the chokes are molded at room temperature, and, therefore, the hardness difference has no impact on the temperature at which the choke is formed or molded.")

Chilisin's current argument on its Rule 50(b) motion is a causation argument, arguing that any "performance characteristics" such as a lower temperature were not necessarily caused by a hardness difference, but could have been caused by a size difference or other difference(s).  See, e.g., Dkt. 285 at 13 ("Nothing in Cyntec's evidence shows whether it was size, hardness, or something else that led to the formation

1   temperatures used for each accused product.").  This was an argument that Chilisin

2   made, and the court rejected, during summary judgment.  See, e.g., Dkt. 170 at 20-22

3   ("Defendants offer one broad argument as to why their devices do not infringe on

4   plaintiff's claims: there is no evidence that forming the magnetic body of the choke at a

5   temperature lower than the melting point of the wire is the result of the hardness

6   difference between two magnetic powders used to form the choke.") ("defendants argue

7   that Kohl's opinion does not differentiate between the size difference and the hardness

8   difference as having the desired effect").

9        As a threshold matter, the court concludes that Chilisin's current Rule 50(b) motion

10   on the "by means of" issue is based on an entirely different premise than its Rule 50(a)

11   motion.  Given that Rule 50(b) specifically provides that any motion be a "renewed" Rule

12   50(a) motion, the shifting-sands nature of Chilisin's "by means of" argument creates a

13   procedural hurdle in that it now "raise[s] arguments in its post-trial motion for judgment as

14   a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."

15   Go Daddy Software, 581 F.3d at 961 (citing Freund, 347 F.3d at 761).  For that reason

16   alone, the court concludes that Chilisin's Rule 50(b) motion must be DENIED as to the

17   "by means of" issue.

18        Moreover, even if the court were to reach the merits of the "by means of" issue,

19   the record shows that this issue is not suited for judgment as a matter of law.  Chilisin's

20   own motion argues that the "testimony at trial confirmed that both size and hardness

21   difference may impact formation temperature," and that under the court's construction,

22   Cyntec need only show that hardness have "an effect or impact," even if it is not "the

23   primary or most significant factor."  See Dkt. 285 at 10, 13; see also, e.g., Trial tr., vol. 3

24   (Dkt. 255) at 394:5-8, 404:14-17, 405:5-13.  Based on the trial testimony, the jury found

25   that Chilisin's accused products did meet the "by means of" limitation, and Chilisin has

26   given the court no basis to conclude that "the evidence permits only one reasonable

27   conclusion, and that conclusion is contrary to the jury's verdict."  Instead, Chilisin appears

28   to be asking the court to conduct its own weighing of the evidence and to reach a

United States District Court
Northern District of California

conclusion contrary to the jury's.  Accordingly, even if the court were to reach the merits of Chilisin's argument, Chilisin does not satisfy the standard for judgment as a matter of law under Rule 50(b).

Chilisin makes an additional argument that Cyntec's infringement theory "relies on irrelevant evidence."  See Dkt. 285 at 14.  As before, Chilisin's argument is primarily one of causation.  It argues that "[a]ll of Cyntec's evidence, including its own internal testing, varied both size and hardness together," and thus, "it is impossible for Cyntec to say which of the two caused the lower formation temperatures it observed."  Id. at 15. Chilisin again asks, "what causes reduced formation temperatures?  Is it size differences, hardness differences, or something else entirely?"  Id.

For the same reasons discussed above, the parties presented evidence regarding the effect of the hardness difference on the formation temperature, and the jury found that the accused products fell within the scope of the claim as construed by the court. Chilisin has provided no basis for concluding that "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  Accordingly, for the same reasons mentioned above, even if the court were to reach the merits of Chilisin's argument on the "by means of" issue, Chilisin does not satisfy the standard for judgment as a matter of law under Rule 50(b).

### 2.    Damages

#### a.    Lost profits

Next, Chilisin argues that the court should grant judgment as a matter of law of no lost profits damages.  See Dkt. 285 at 16.  Specifically, Chilisin raises three arguments regarding lost profits.  First, Chilisin argues that Cyntec "presented no evidence it would have made all the sales it purportedly lost to Chilisin in the 'but for' world."  See id. at 16. Next, Chilisin argues that "Cyntec's market share analysis is unfounded."  Id. at 18. Finally, Chilisin argues that "Cyntec's importation percentages are unfounded."  Id. at 21.

As an initial matter, only one damages-related argument was raised in Chilisin's first Rule 50(a) motion on August 27, 2021.  See Trial Tr. vol. 5 (Dkt. 260) at 866-77.

United States District Court
Northern District of California

Specifically, the only damages-related issue raised at the August 27 hearing was the issue related to importation of the accused products manufactured outside of the United States.  See id. at 876:13-879:7.

However, when Chilisin made its "renewed" Rule 50(a) motion on August 31, 2021, it stated that it was raising "two damages issues."  See Trial Tr. vol. 7 (Dkt. 266) at 1261:16-19.  The first issue was "no damages for any – all of the sales made outside of the United States."  Id.  Chilisin's counsel then stated:

> Second damages issue, no lost profits, failure by Cyntec to prove the share of sales that Cyntec would have made but for Chilisin's sale of the accused products.

Id. at 1261:20-22.

Given that Rule 50(a) provides that a motion "may be made at any time before the case is submitted to the jury," the court concludes that the additional damages-related issue raised by Chilisin at the August 31 hearing is properly included within the scope of the present Rule 50(b) motion.  And as the court understands it, that "second damages issue" raised at the August 31 hearing corresponds with the first issue raised in Chilisin's present motion, namely, that Cyntec "presented no evidence it would have made all the sales it purportedly lost to Chilisin in the 'but for' world."

However, neither of Chilisin's Rule 50(a) motions raised the issues that Chilisin now raise regarding the Cyntec's market share analysis – specifically, the contentions that Cyntec failed to "accurately defin[e] the relevant market" and to "recreate sales for the entire marketplace for the relevant damages period."  See Dkt. 285 at 20-21. Because these were not arguments raised in any Rule 50(a) motion, the court concludes that they are waived, and Chilisin's Rule 50(b) motion is DENIED to the extent it is based on challenging Cyntec's market share analysis.[1]  And to the extent that Chilisin did preserve a general "market share" argument by using the word "share" at the August 31

---

[1] Moreover, even if the court were to consider the merits of a standalone argument regarding Cyntec's market share analysis, its argument would fail for the same reasons as its arguments regarding the but-for analysis, as discussed below.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   hearing, the court concludes that such argument overlaps with Chilisin's first argument

2   that Cyntec failed to prove that it would have made sales "but-for" the infringement.  See

3   Trial Tr. vol. 7 (Dkt. 266) at 1261:16-22 (asserting argument of "failure by Cyntec to prove

4   the share of sales that Cyntec would have made but for Chilisin's sale of the accused

5   products.").

6         That leaves two issues for the court's analysis: (1) the but-for analysis, and (2) the

7   importation rate issue.  On issue (1), Chilisin argues that Cyntec must show that it would

8   have made Chilisin's sales "but for" the alleged infringement, and Chilisin argues that

9   "Cyntec cannot meet this burden because it introduced no evidence that its products

10  were qualified as replacements for all of Chilisin's 310 accused chokes."  See Dkt. 285 at

11  16.  Chilisin also argues that "Cyntec's lost profits theory is fatally flawed because Cyntec

12  introduced no evidence at trial that it had gone through a 'design win' process to sell

13  chokes to all of the customers who purchased the accused Chilisin chokes."  Id. at 17.

14        In its opposition, Cyntec argues that "Chilisin's argument is incorrect because it

15  ignores the fact that Cyntec proffered evidence at trial showing that Cyntec was the

16  market incumbent, not Chilisin, and that Chilisin was trying to copy Cyntec products that

17  had already been qualified by brand companies."  See Dkt. 297 at 18.  Cyntec then cites

18  numerous trial exhibits showing "Chilisin discussing its efforts to 'cross' (meaning copy)

19  Cyntec's patented products."  Id. (citing exhibits).

20        The court agrees that the evidence at trial included many examples of Chilisin

21  discussing efforts to make their products in line with the specifications of Cyntec's

22  products.  See, e.g., Trial Ex. 122 ("will mettle same dimensions with Cyntec's . . . we will

23  try to meet theirs as close as possible."); Trial Ex. 1363 (products' "characteristics need

24  to completely match Cyntec characteristics"); Trial Ex. 57 (products "need to be exactly

25  the same (sorry, no room for negotiation because the client prefers Cyntec)".)  Given that

26  evidence, there was more than a reasonable basis for the jury to conclude that Cyntec

27  would have made Chilisin's sales but for the alleged infringement.  Accordingly, Chilisin's

28  motion is DENIED on this issue.

United States District Court
Northern District of California

1    Turning to issue (2) regarding the importation rate, Chilisin argues that "Cyntec

2    gave the jury no reliable evidence regarding importation rates."  <u>See</u> Dkt. 285 at 21.

3    Chilisin first challenges the SEC data cited by Cyntec's expert, arguing that it does not

4    break down importation rates on a product-by-product basis.  <u>Id.</u>  Chilisin then further

5    challenges data from the Gartner research firm, arguing that it is "irrelevant."  <u>Id.</u> at 22.

6    In its opposition, Cyntec first argues that it is required to prove damages only to a

7    "reasonable certainty, not mathematical precision."  <u>See</u> Dkt. 297 at 22.  Cyntec then

8    argues that even Chilisin's own witnesses confirmed the reliability of data from the

9    Gartner firm.  <u>See</u> Dkt. 297 at 22.  Cyntec argues that '[w]hat Chilisin is doing is

10   challenging the weight that should be placed on the Gartner data," which is "not

11   acceptable at this stage of the proceeding" when the court "may not weigh the evidence

12   or assess credibility."  <u>Id.</u>  Cyntec further argues that its damages expert considered the

13   Gartner data, which did provide specific information on types of products, in conjunction

14   with the SEC filings "to confirm the accuracy and reasonableness of the importation

15   information."  <u>Id.</u>

16   The court concludes that Chilisin is asking the court to substitute its view for that of

17   the jury here.  The parties presented their competing arguments regarding whether

18   Cyntec had proven damages to a reasonable certainty, and the jury found that the

19   importation data to be sufficiently reliable on which to base a damages award.  There

20   was substantial evidence for the jury's verdict, and it is not the case that the evidence

21   permitted only one reasonable conclusion, which is contrary to the jury's verdict.

22   Accordingly, Chilisin's Rule 50(b) motion is DENIED on this issue.

23            b.     Royalty base and rate

24   Chilisin then argues that "the court should grant judgment as a matter of law on

25   Cyntec's royalty base and rate."  <u>See</u> Dkt. 285 at 24.

26   First, Chilisin argues that "the court should limit Cyntec's royalty base" because

27   "over 95% of Cyntec's reasonable royalty damages base came from estimated

28   importation by third parties."  Dkt. 285 at 24.  Chilisin argues that the "importation

percentages are speculative," and thus judgment as a matter of law should be granted to remove those sales from the royalty base.

This argument is the same in substance as the importation-rate argument made in connection with lost-profits damages, and the court rejects it for the same reason. Cyntec did provide evidence regarding importation rates, and the jury accepted that evidence, and the court finds no basis to overturn the jury's verdict on this issue. Thus, Chilisin's Rule 50(b) motion is DENIED as to the royalty base issue.

Next, Chilisin argues that "the court should limit Cyntec's royalty rate." See Dkt. 285 at 25. Chilisin argues that "Cyntec has no valid support" for the 5% royalty rate awarded by the jury. Id.

Chilisin did not raise any issue related to the royalty rate in either of its Rule 50(a) motions. See Trial Tr. vol. 5 (Dkt. 260) at 866-881, vol. 7 (Dkt. 266) at 1260-1263. Thus, the court finds that this issue is waived, and may not be raised on a renewed Rule 50(b) motion, and Chilisin's motion is DENIED as to the royalty rate issue.

　　　　　c.　　Damages period

Next, Chilisin argues that "the court should grant judgment as a matter of law limiting the damages period." See Dkt. 285 at 26. Chilisin argues that "all damages should start on December 17, 2017, the date Chilisin first received notice of the asserted patents." Id.

Regarding direct sales, Chilisin's argument is based on its earlier argument that "Cyntec's infringement theory for the '037 patent was that Chilisin induced others to import infringing chokes." See Dkt. 285 at 26. However, as discussed above, Chilisin relies on a single quote from Cyntec's counsel that he corrected at the same hearing (in fact, the correction is on the same page of the trial transcript as the initial misstatement). See Trial Tr. vol. 5 (Dkt. 260) at 869. Thus, this argument is rejected for the same reasons discussed above, Chilisin's Rule 50(b) motion is DENIED to the extent it seeks to exclude damages for the '037 patent from before December 17, 2017.

Chilisin's remaining arguments on this issue are arguments that were not raised

United States District Court
Northern District of California

1   during either of its Rule 50(a) motions, and are being raised for the first time on this Rule

2   50(b) motion.  Specifically, Chilisin argues that damages for direct sales under the '312

3   patent cannot begin before December 2017 because Cyntec's products were not marked

4   with its patent numbers, and further argues that indirect sales damages should not begin

5   until December 2017.  See Dkt. 285 at 27.

6          As discussed above, the only damages-related issues raised in Chilisin's Rule

7   50(a) motions related to (1) importation rates, and (2) the but-for analysis.  Because

8   Chilisin may not raise arguments on this motion that were not raised in its Rule 50(a)

9   motions, Chilisin's motion on these other issues regarding limitation of the damages

10  period is DENIED.

11         3.     Willfulness

12         Finally, Chilisin argues that the court should grant judgment as a matter of law of

13  no willful infringement.  Chilisin argues that willful infringement requires "egregious cases

14  of misconduct beyond typical infringement," and argues that the standard is not met here.

15  See Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S.Ct. 1923, 1935 (2016).

16         When Chilisin initially moved for judgment as a matter of law on August 27, 2021,

17  the parties appeared to agree that Cyntec's willfulness claim would be limited to the time

18  after December 2017.  Specifically, Cyntec's counsel stated that "[t]he willfulness claim,

19  Your Honor, we would limit to after receipt of the notice letter."  Trial Tr. vol. 5 (Dkt. 260)

20  at 872:13-14; see also id. at 872:20-22 ("And so we believe that willfulness would be

21  proper after the receipt of the letter, and we would be willing to limit our willfulness case

22  to the date period after that.")

23         Cyntec now argues that Chilisin "withdrew its motion" as a result of the previous

24  exchange, and thus "abandoned its motion on this issue," preventing it from raising the

25  argument on this motion.  See Dkt. 297 at 26.

26         However, at the August 31 hearing, when Chilisin re-asserted its Rule 50(a)

27  motion, it continued to assert a willfulness argument.  Specifically, Chilisin argued on its

28  'renewed' Rule 50(a) motion: "Third is the no willfulness, no evidence of any willful,

wanton, malicious, bad faith, deliberate, consciously wrong, flagrant, or characteristic of a pirate behavior." Trial Tr. vol. 7 (Dkt. 266) at 1261:7-9.

Because Chilisin continued to assert its willfulness argument even after the parties agreed to limit the temporal scope of Cyntec's willfulness claim, the court concludes that Chilisin has not waived or abandoned its argument on willfulness.

On the merits, Chilisin now argues that willful infringement requires "egregious cases of misconduct beyond typical infringement" and that "there is no evidence that anything egregious happened" in this case. See Dkt. 285 at 27.

Cyntec points to numerous trial exhibits showing that Chilisin intended to copy Cyntec's products, including emails stating that their products "need to completely match Cyntec characteristics" because clients "prefer Cyntec." See Dkt. 297 at 27 (citing trial exhibits). Cyntec argues that the evidence presented at trial was "more than adequate evidence on which the jury could find willful infringement," and the court agrees. That evidence will be discussed more fully below, in the context of Cyntec's motion for permanent injunction and enhanced damages.

As before, Chilisin appears to be asking the court to weigh the evidence differently than the jury did, rather than meeting its burden under Rule 50 to show that the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. Accordingly, Chilisin's Rule 50(b) motion is DENIED as to willfulness.

For the reasons discussed above, Chilisin's motion for judgment as a matter of law under Rule 50(b) is DENIED in full.

Chilisin's motion for new trial under Rule 59 (Dkt. 286)

A.    Legal standard

Whether to grant a new trial is a matter of the trial court's discretion. City Solutions, Inc. v. Clear Channel Communications, 365 F.3d 835, 843 (9th Cir. 2004). The court may grant a motion for a new trial even if the verdict is supported by substantial evidence, if it concludes that the verdict is contrary to the clear weight of the evidence, is based on evidence which is false, or would result in a miscarriage of justice. Silver Sage

1   Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001); see also

2   Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  The court may weigh the

3   evidence and may evaluate the credibility of the witnesses, and is not required to view

4   the evidence from the perspective most favorable to the prevailing party.  United States v.

5   Kellington, 217 F.3d 1084, 1095 (9th Cir. 2000).

6        However, where a movant claims that a verdict is against the clear weight of the

7   evidence, doubts about the correctness of the verdict are not sufficient grounds for a new

8   trial.  Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir.

9   1987).  "Courts are not free to reweigh the evidence and set aside the jury verdict merely

10  because the jury could have drawn different inferences or conclusions or because judges

11  feel that other results are more reasonable."  Tennant v. Peoria & Pekin Union Ry. Co.,

12  321 U.S. 29, 35 (1944).  The trial court, after having given full respect to the jury's

13  findings, must have a definite and firm conviction that the jury has made a mistake.

14  Landes Constr. Co., 833 F.2d at 1371-72 (citations omitted).

15  B.    Analysis

16       Chilisin's first argument is that, if the court denies Chilisin's Rule 50(b) motion, it

17  alternatively requests a new trial on each issue.  For the same reasons set forth in the

18  court's denial of Chilisin's Rule 50(b) motion, and for the additional reason that Chilisin

19  has not met its burden to show that the judgment on any issue contradicts the clear

20  weight of the evidence, the court also DENIES Chilisin's Rule 59 motion for a new trial to

21  the extent it is based on the same grounds raised in the Rule 50(b) motion.

22       Chilisin also raises two additional grounds for seeking a new trial: (1) invalidity of

23  the patents-in-suit for anticipation and obviousness, and (2) remittitur as an alternative to

24  a new trial on damages.  See Dkt. 286 at 5.

25       1.    Invalidity

26            a.    Anticipation

27       Regarding invalidity by anticipation, Chilisin first argues that it "established at least

28  a triable case of anticipation by inherency."  See Dkt. 286 at 8.  Chilisin points to the

16

1   Shafer reference as disclosing "a first powdered iron" and "a second powdered iron" with

2   "differing electrical characteristics . . . to maximize its efficiency."  See id.  Chilisin further

3   argues that "Cyntec's arguments at trial against Schafer [sic] never foreclosed

4   anticipation or inherency as a matter of law."  See Dkt. 286 at 10.

5        In its opposition, Cyntec argues that Chilisin had the burden to show anticipation

6   by clear and convincing evidence, not just the "mere possibility" of anticipation.  See Dkt.

7   296 at 7-8 (citing ATEN Int'l Co. v. Uniclass Tech. Co., 932 F.3d 1364, 1368 (Fed. Cir.

8   2019)).  Cyntec further argues that an "anticipation by inherency" argument requires the

9   evidence to "make clear that the missing descriptive matter is necessarily present."  Dkt.

10  296 at 8 (emphasis added by Cyntec); see also Allergan, Inc. v. Apotex Inc., 754 F.3d

11  952, 960-61 (Fed. Cir. 2014); Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1365

12  (Fed. Cir. 1999) (inherency "may not be established by probabilities or possibilities.  The

13  mere fact that a certain thing may result from a given set of circumstances is not

14  sufficient.").

15        Given the high standard to show anticipation by clear and convincing evidence,

16  the court concludes that Chilisin has not met its burden to show the right to a new trial on

17  anticipation, and thus Chilisin's motion is DENIED as to invalidity by anticipation.

18              b.    Obviousness

19        Regarding invalidity by obviousness, Chilisin argues that its expert explained why

20  the Shafer reference, in combination with the Nakamura reference or other references,

21  would have rendered the asserted claims obvious.  See Dkt. 286 at 11.  Chilisin further

22  argues that its expert "demonstrated a motivation to combine Shafer with Nakamura."  Id.

23  at 12.

24        In its opposition, Cyntec argues that "the evidence demonstrated that there was no

25  motivation to combine the Shafer and Nakamura references," because "the high

26  temperature treatment discussed in Nakamura was for a wholly different reason than the

27  ones discussed" in the patents-in-suit.  See Dkt. 296 at 11 (citing Forest Labs., LLC v.

28  Sigmapharm Labs., LLC, 918 F.3d 928, 934 (Fed. Cir. 2019)).  Cyntec also argues that

United States District Court
Northern District of California

1   Chilisin's own expert "acknowledged that the central problem that the inventors of the

2   '037 and '312 patents sought to solve was not at issue at all in the Nakamura reference."

3   Dkt. 296 at 12.

4        As with anticipation, given the high standard of clear and convincing evidence that

5   needs to be met by a party asserting obviousness, the court concludes that Chilisin has

6   not met its burden to show the right to a new trial on obviousness, and thus Chilisin's

7   motion is DENIED as to invalidity by obviousness.

8        2.      Remittitur

9        Chilisin's final argument on this motion is that "the court should order remittitur."

10  See Dkt. 286 at 14.  Chilisin explains that this motion is based on the same arguments

11  made in its Rule 50(b) motion related to (1) lost profits, and (2) the royalty rate.  Id.  The

12  court concludes that Chilisin has not met its burden to show that the jury's verdict on

13  these issues is contrary to the clear weight of the evidence, and thus Chilisin's motion is

14  DENIED.

15       For the reasons discussed above, Chilisin's motion for a new trial under Rule 59 is

16  DENIED in full.

17  Cyntec's motion for permanent injunction and enhanced damages (Dkt. 288)

18  A.    Motion for permanent injunction

19       1.      Legal standard

20       A patentee seeking a permanent injunction must make a four-part showing: (1) it

21  suffered an irreparable injury; (2) remedies available at law, such as monetary damages,

22  are inadequate to compensate for that injury; (3) the balance of hardships between the

23  plaintiff and defendant shows that a remedy in equity is warranted; and (4) the public

24  interest would not be disserved by a permanent injunction.  eBay v. MercExchange,

25  L.L.C., 547 U.S. 388, 391 (2006).

26       2.      Analysis

27       Cyntec argues that all four factors weigh in favor of granting an injunction in this

28  case.  As an initial matter, Chilisin asks the court to stay resolution of Cyntec's motion

United States District Court
Northern District of California

18

1  while it attempts to seek production of an alleged agreement with Apple.  See Dkt. 294-6

2  at 24-26.  Chilisin's attempt to seek discovery on that issue has already been denied, and

3  the court will not stay consideration of Cyntec's motion on that basis.  See Dkt. 304.

4           a.    Irreparable harm

5       On the first factor, Cyntec argues that it has suffered irreparable harm and will

6  continue to do so unless Chilisin is enjoined.  See Dkt. 288-1 at 12.  Cyntec argues that

7  courts have found irreparable harm have considered factors such as (1) whether the

8  patentee and alleged infringer are in direct competition, (2) whether the patentee lost

9  market share due to the competition, (3) whether the patentee was unwilling to license its

10  technology, and (4) whether the alleged infringement affected the patentee's ability to

11  compete in the design win process.  See Dkt. 288-1 at 12-16 (citing Broadcom Corp. v.

12  Emulex Corp., 732 F.3d 1325, 1336 (Fed. Cir. 2013); Douglas Dynamics, LLC v. Buyers

13  Prods. Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013); i4i Ltd. v. Microsoft Corp., 598 F.3d

14  831, 861 (Fed. Cir. 2010)).

15       Regarding direct competition, Cyntec cites a number of trial exhibits showing that

16  Chilisin sought to directly compete with Cyntec.  See Dkt. 288-1 at 13-14 (citing, e.g.,

17  Trial Ex. 1363 (Chilisin email stating that products "need to completely match Cyntec

18  characteristics"), Trial Ex. 117 (Chilisin stating "we have lowering our cost than their

19  major supplier (Cyntec) in order to get into the business")).

20       Cyntec also argues that the design win process leads to an "incumbency effect"

21  which compounds the harm to the patentee.  See Dkt. 288-1 at 14-16 (citing Broadcom,

22  732 F.3d at 1336).

23       In its opposition, Chilisin first argues that Cyntec's delay in bringing this lawsuit

24  shows a lack of irreparable harm.  See Dkt. 294-6 at 12-14.  As to direct competition,

25  Chilisin argues that "the actual scope of competition is unclear."  Id. at 14.  Chilisin then

26  argues that it "did not engage in predatory pricing" and that "Cyntec's copying evidence is

27  irrelevant."  Id. at 17-18.

28       In its reply, Cyntec argues that Chilisin has not presented evidence of any delay.

See Dkt. 307 at 3.  Cyntec argues that it sent a demand letter to Chilisin in December

United States District Court
Northern District of California

2017, and then filed suit three months later.  Id.  Cyntec argues that there is no evidence that, prior to that, Cyntec had obtained the accused products and analyzed them for infringement.  Id.

Overall, the court concludes that the first factor weighs in favor of an injunction. Chilisin's arguments do not undermine the extensive evidence at trial that Chilisin did directly compete with Cyntec, including through the design win process.  In particular, the fact that Chilisin designed its products to "completely match Cyntec characteristics" shows that the parties were in competition.  See Trial Ex. 1363; see also Trial Ex. 122 ("will mettle same dimensions with Cyntec's . . . we will try to meet theirs as close as possible."); Trial Ex. 57 (products "need to be exactly the same (sorry, no room for negotiation because the client prefers Cyntec)".)  The court further notes that the Federal Circuit has considered a jury award of lost profit damages to be an implicit finding of direct competition.  See Presidio Components, Inc. v. American Technical Ceramics Corp., 702 F.3d 1351, 1363 (Fed. Cir. 2012).  The court thus concludes that Cyntec has shown that it would suffer irreparable harm in the absence of an injunction.

> b.     Adequacy of monetary damages

As to the second eBay factor, Cyntec argues that monetary damages are inadequate to compensate it for ongoing and future infringement.  See Dkt. 288-1 at 16-18.  Cyntec argues that monetary damages cannot remedy Cyntec's loss of customer goodwill and exclusivity, and that the full extent of Chilisin's infringement "defies valuation."  Id.  In particular, Cyntec focuses on the fact that it has never licensed its patents to any third party, "electing instead to enjoy the exclusivity offered by its patent rights."  Id. at 16 (citing Dkt. 288, Ex. C at 159-60).

In its opposition, Chilisin argues that "the scope of proven harm is limited," and that "Cyntec offers no proof of lost exclusivity or goodwill."  See Dkt. 294-6 at 20-22.

Overall, the court concludes that the second factor weighs in favor of an injunction. In particular, the court notes that Cyntec was unwilling to license patents-in-suit, and Chilisin does not appear to respond to that argument.  The court thus concludes that Cyntec has shown that monetary damages are inadequate to compensate it for Chilisin's

infringement.

c.    Balance of hardships

As to the third eBay factor, Cyntec argues that the balance of hardships tips in favor of an injunction.  See Dkt. 288-1 at 18-19.  Cyntec points to trial testimony showing the relative importance of the patented technology to Cyntec's business, as well as testimony showing that Chilisin is a more diversified business.  Id.

In its opposition, Chilisin argues that Cyntec is a wholly-owned division of a company that is larger than Chilisin.  See Dkt. 294-6 at 22.  Chilisin also argues that "the parties' settlement history shows a lack of any need for court intervention."  Id. at 23.

Overall, the court concludes that the third eBay factor weighs in favor of an injunction.  Cyntec's evidence has shown the hardships that it would face in the absence of an injunction, and Chilisin has not presented evidence that it would suffer harm that would tip the balance of hardships in its favor.  Accordingly, the court concludes that Cyntec has shown that the balance of hardships favors an injunction.

d.    Public interest

As to the fourth eBay factor, Cyntec argues that the public interest favors "upholding Cyntec's patent rights and granting the narrow injunction."  See Dkt. 288-1 at 19-20.  Cyntec emphasizes the fact that the proposed injunction is "narrowly tailored, takes effect prospectively, and applies only to Chilisin (and not its customers)."  Id. at 19. Cyntec argues that the limited nature of the proposed injunction ensures that "the products that are already in Chilisin's customers' hands do not need to be destroyed, and customers may continue to use them without any restrictions."  Id.

Cyntec further argues that the infringing products are not "goods which require any deferential treatment, such as medical devices or other items that may raise health and safety concerns."  See Dkt. 288-1 at 20.  Cyntec also argues that an injunction would not create any supply chain shortages because Cyntec has the manufacturing capacity to meet any additional demand that would result from an injunction.  Id.

In its opposition, Chilisin argues that the public interest would not be served by Cyntec's proposed injunction.  See Dkt. 294-6 at 23-24.  Chilisin first argues that the

injunction would prevent it from "ensuring that customers who lawfully purchased chokes received necessary information and updates, for example." Id.  Second, Chilisin argues that the proposed injunction contains no express limits on extraterritoriality, and proposes new language regarding activity outside of the United States.  Id. at 24.

In its reply, Cyntec states that it is "willing to confer with Chilisin to reach agreement on a narrow exception allowing the conveyance of safety information." See Dkt. 307 at 9.  As to extraterritoriality, Cyntec argues that its proposed injunction already "specifically covers only infringing activity in the United States."  Id.

Overall, the court concludes that the public interest weighs in favor of an injunction.  As Cyntec points out, the Federal Circuit has held that "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions."  See Apple Inc. v. Samsung Elecs. Co. Ltd., 809 F.3d 633, 647 (Fed. Cir. 2015).

Having considered the eBay factors, the court concludes that Cyntec has made a sufficient showing, and its motion for permanent injunction is GRANTED, subject to the following: in its reply, Cyntec represents that it is willing to revise its proposed injunction to create a narrow exception allowing for the conveyance of safety information.  See Dkt. 307 at 9.  The court thus directs Cyntec to submit a proposed revised injunction incorporating such an exception.  Thus, while Cyntec's motion for permanent injunction is granted based on the showing made in the papers, the injunction remains subject to the court's approval of the form of the proposed injunction.  Cyntec shall have **fourteen (14) days** from the date of this order to submit a revised proposed injunction.

B.     Enhanced damages

        1.     Legal standard

Courts have the discretion to "increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  "The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances."  Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992), abrogated in part on other grounds by Markman v. Westview

Instruments, Inc., 517 U.S. 370 (1996).  The Read court set forth the following factors for courts to consider when deciding whether to award enhanced damages:

> (1) whether the infringer deliberately copied the ideas or design of another,
>
> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed,
>
> (3) the infringer's behavior as a party to the litigation,
>
> (4) defendant's size and financial condition,
>
> (5) closeness of the case,
>
> (6) duration of defendant's misconduct,
>
> (7) remedial action by the defendant,
>
> (8) defendant's motivation for harm, and
>
> (9) whether defendant attempted to conceal its misconduct.

Read, 970 F.2d at 826; see also SRI Int'l, Inc. v. Cisco Systems, Inc., 14 F.4th 1323, 1330 (Fed. Cir. 2021) (citing and applying the Read factors).

    2.      Analysis

    As to factor (1), Cyntec argues that Chilisin deliberately copied its design, pointing to trial exhibits showing that Chilisin sought to "completely match Cyntec characteristics." See Dkt. 288-1 (citing, e.g., Trial Ex. 56, 57, 120, 122, 1363).  Chilisin argues that "there has been no copying" because there is no evidence that Chilisin tested the powders in Cyntec's products.  See Dkt. 294-6 at 27.  Because Chilisin does not meaningfully rebut Cyntec's evidence of copying, the court concludes that the first Read factor weighs in favor of enhanced damages.

    As to factor (2), Cyntec argues that Chilisin offered no evidence of any good faith belief of non-infringement or invalidity.  See Dkt. 288-1 at 22-23.  Cyntec argues that there is no evidence in the record that Chilisin conducted any investigation into Cyntec's concerns.  Id. at 22.  Chilisin argues that it had a good faith belief of non-infringement and invalidity, pointing to the arguments made in its motion for judgment as a matter of law and motion for a new trial.  The court concludes that the second Read factor does not

weigh either for or against enhanced damages.

As to factor (3), Cyntec argues that "Chilisin advanced meritless invalidity defenses that needlessly consumed the court's time and drove up litigation costs."  See Dkt. 288-1 at 23-24.  Specifically, Cyntec points to Chilisin's indefiniteness defense, which was emphasized in pretrial papers and mentioned in Chilisin's opening statement, but "entirely abandoned" in its trial presentation.  Id.  Chilisin argues that it "litigated in good faith."  See Dkt. 294-6 at 28-29.  With regard to indefiniteness, Chilisin argues that "even up through pretrial, the parties were still arguing over the meaning of the 'by means of' limitation" and "[i]ndefiniteness was part of that claim construction dispute."  Id.  Chilisin contends that "[o]nce the court issued its construction, indefiniteness became moot."  Id.

The court concludes that the third Read factor weighs in favor of enhanced damages.  Chilisin's argument regarding indefiniteness highlights the unreasonableness of its own conduct.  Chilisin argues that "once the court issued its construction, indefiniteness became moot," but even though the court issued its construction in June 2019 and its summary judgment order in September 2020, Chilisin continued to litigate the issue through the start of trial.  See, e.g., Dkt. 83, 170.  In fact, the court specifically noted that Chilisin had attempted, on multiple occasions, to reopen claim construction.  See Dkt. 192.  Ahead of a status conference in May 2021, Chilisin filed a case management statement asking for an additional claim construction hearing on the "open claim construction issue" regarding the "by means of" term.  See Dkt. 181.  At the status conference, the court made clear that there was no "open claim construction issue," as the claims were construed in May 2019, and denied any request to reopen claim construction.  See Dkt. 183.  The court then directed the parties to submit a proposed jury instruction on the "by means of" term, but rather than submit a jury instruction, "Chilisin submitted a newly-proposed claim construction."  See Dkt. 192 at 1.  The court stated that "Chilisin's attempt to reopen claim construction is untimely and directly contrary to the court's instructions at the case management conference."  Id. at 1-2.  Overall, the

United States District Court
Northern District of California

court concludes that Chilisin's litigation conduct with regard to indefiniteness and construction of the "by means of" term is sufficient to weigh the third <u>Read</u> factor in favor of enhanced damages.

As to factor (4), Cyntec argues that "Chilisin's size and financial condition are sufficiently large to favor enhanced damages." <u>See</u> Dkt. 288-1 at 24-25. Cyntec argues that Chilisin's own documents show that its annual revenue exceeds $252 million. <u>Id.</u> at 25 (citing Trial Ex. 129). Chilisin's opposition brief does not address this <u>Read</u> factor. The court concludes that the fourth <u>Read</u> factor weighs in favor of enhanced damages.

As to factor (5), Cyntec argues that "this case was not close." Cyntec argues that "the jury ultimately rejected each of Chilisin's non-infringement defenses, found Chilisin to be a willful infringer, and awarded Cyntec the full measure of damages requested." <u>See</u> Dkt. 288-1 at 25. Chilisin argues that this was a close case, pointing to its Rule 50(b) motion for judgment as a matter of law and Rule 59 motion for a new trial. <u>See</u> Dkt. 294-6 at 29. The court concludes that the fifth <u>Read</u> factor weighs in favor of enhanced damages.

As to factors (6) and (7), Cyntec argues that "despite the duration of misconduct, Chilisin has taken no remedial action." <u>See</u> Dkt. 288-1 at 25-26. In particular, Cyntec points to trial exhibits showing that Chilisin continued to copy Cyntec's technology even after learning of Cyntec's patents and continued to sell the infringing products at least through trial. <u>See</u> Trial Ex. 57, A-808. Chilisin argues that it investigated Cyntec's claims after receiving the December 2017 notice letter, and suggests that it did not need to stop selling the accused products because "Chilisin had been selling those products for nearly three years before Cyntec sent its letter." <u>See</u> Dkt. 294-6 at 29-30. Because Cyntec's evidence shows that, even after this suit was filed, Chilisin continued to make their products "exactly the same" as Cyntec's, with "no room for negotiation because the client prefers Cyntec," the court concludes that the sixth and seventh <u>Read</u> factors weigh in favor of enhanced damages. <u>See</u> Trial Ex. 57 at 2.

As to factor (8), Cyntec argues that Chilisin intended to harm Cyntec. <u>See</u> Dkt.

1   288-1 at 26-27.  Cyntec again points to trial evidence showing that Chilisin deliberately

2   copied Cyntec's products and sought to undercut Cyntec on price.  Id. (citing Trial Ex. 57,

3   105, 107, 117, 132, 1363).  Chilisin argues that there is no evidence that Chilisin intended

4   to harm Cyntec.  See Dkt. 294-6 at 30.  Based on the evidence cited by Cyntec, the court

5   concludes that the eighth Read factor weighs in favor of enhanced damages.

6          Cyntec's motion does not address the ninth and final Read factor.

7          Having considered the Read factors, the court concludes that the totality of the

8   circumstances weigh in favor of enhanced damages.  In particular, as mentioned above,

9   the evidence showing that Chilisin sought to deliberately copy Cyntec's products as

10   closely as possible even well after the filing of this lawsuit.  See, e.g., Trial Ex. 57.

11   Accordingly, Cyntec's motion for enhanced damages is GRANTED, and the court will

12   multiply all applicable damages by a factor of three.

13          However, there is an issue with the amount of trebled damages sought by Cyntec.

14          The jury awarded Cyntec $1,552,493 in lost profits and $320,463 in reasonable

15   royalties, for a total damages award of $1,872,596.  See Dkt. 269 at 4.  The amount of

16   the jury's award was the same as that in the summary of damages submitted at trial by

17   Cyntec's damages expert.  See Trial Ex. 1342.  Cyntec's expert's summary was in turn

18   based on calculations of direct sales damages and indirect sales damages.  See Trial Ex.

19   1300, 1301, 1343, 1344.

20          Cyntec's direct sales damages calculations for both lost profits and reasonable

21   royalty include damages going back to November 2016.  See Trial Ex. 1300, 1301.

22   However, as discussed above, Cyntec conceded during trial that its willfulness claim is

23   limited to any infringement after Chilisin's receipt of Cyntec's notice letter in December

24   2017.  See Trial Tr., vol. 5 (Dkt. 260) at 872:13-14 ("The willfulness claim, Your Honor,

25   we would limit to after receipt of the notice letter.").  Thus, to the extent that Cyntec's

26   motion seeks trebling of the entire jury damages award of $1,872,596, including damages

27   from before December 2017, that request goes beyond the scope of Cyntec's willfulness

28   claim.

United States District Court
Northern District of California

1    Accordingly, while Cyntec's motion for enhanced damages is GRANTED, and the

2  court will apply a multiplier of three to a subset of the awarded damages, the court will not

3  apply the multiplier to the entire amount awarded by the jury, given that no enhanced

4  damages are appropriate for the time period before notice to Chilisin in December 2017.

5  Instead, the court has reviewed the damages breakdowns submitted as trial exhibits, and

6  has determined that $1,840,144 represents the amount of damages from 2018 onwards.

7  See Trial Ex. 1342 (citing Trial Ex. 1300, 1301, 1343, 1344).  Applying the multiplier of

8  three to only that amount, then adding back the non-trebled damages, results in a total

9  lost profits damages award of $4,602,671 and a total reasonable royalties award of

10  $950,573, for a total damages award of $5,553,244.  The court therefore revises its prior

11  judgment to reflect a total damages award of $5,553,244.

12  Motion to seal (Dkt. 294)

13    Chilisin filed a motion to seal portions of its brief in opposition to Cyntec's motion

14  for permanent injunction and enhanced damages, and to seal three supporting exhibits.

15  See Dkt. 294.  Pursuant to Civil Local Rule 79-5, Cyntec filed a supporting declaration

16  narrowing the request, arguing that only portions of one exhibit should be sealed, but that

17  the remaining exhibits and the opposition brief need not be sealed.  See Dkt. 302.

18    Because Cyntec does not seek sealing of the information in Chilisin's opposition

19  brief, the motion to seal is DENIED as to that request, and Chilisin shall file an

20  unredacted version of the opposition brief on the public docket.  As to the limited portion

21  of Exhibit H for which Cyntec maintains a claim of confidentiality due to concerns about

22  business competitors having access, the motion to seal is GRANTED.

23                                          **CONCLUSION**

24    For the reasons set forth above, Chilisin's Rule 50(b) motion for judgment as a

25  matter of law (Dkt. 285) is DENIED, Chilisin's Rule 59 motion for a new trial (Dkt. 286) is

26  DENIED, Cyntec's motion for permanent injunction and for enhanced damages (Dkt. 288)

27  is GRANTED subject to the court's approval of a revised proposed injunction, and

28  Chilisin's motion to seal (Dkt. 294) is GRANTED in part and DENIED in part.

As directed above, Cyntec is to submit a revised version of its proposed injunction within fourteen (14) days of the date of this order.

**IT IS SO ORDERED.**

Dated:  May 6, 2022

_____/s/ _Phyllis J. Hamilton_____
PHYLLIS J. HAMILTON
United States District Judge