Jonathan Lamberson (SBN 239107)
lamberson@whitecase.com
Henry Huang (SBN 252832)
henry.huang@whitecase.com
Yuhan Wang (SBN 341882)
yuhan.wang@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Hallie Kiernan (SBN 313541)
hallie.kiernan@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Attorneys for Defendants

CHILISIN ELECTRONICS CORP.[1]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CYNTEC COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>CHILISIN ELECTRONICS CORP., and CHILISIN AMERICA LTD.,<br><br>Defendants. | CASE NO.: 3:18-cv-00939-TLT<br><br>**CHILISIN'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: October 28, 2025<br>Time: 2:00 p.m.<br>Court: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

[1] Chilisin America Ltd. no longer exists as a legal entity, it was dissolved in January 2023.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

A. Cyntec's Damages Theory ..... 1

B. The Federal Circuit Appeal ..... 2

III. ARGUMENT ..... 2

A. The Mandate Does Not Foreclose (And In Fact Requires) Addressing Damages on Remand ..... 2

B. Chilisin Did Not Waive Its Challenge To Cyntec's Importation Theory—It Raised The Issue And Won ..... 4

C. The Federal Circuit Issued a General Remand, Including on Damages ..... 8

IV. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES


*Ackermann v. United States*,
340 U.S. 193 (1950) ........ 2, 3

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) ........ 5

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
Case No. 22-1873, Dkt. 12 (Fed. Cir. Aug. 5, 2022) ........ 4, 5

*Dejoria v. Maghreb Petroleum Expl.*,
No. A-13-CV-654-JRN-AWA, 2016 WL 4250488 (W.D. Tex. Aug. 11, 2016) ........ 8, 9

*Engel Indus., Inc. v. Lockformer Co.*,
166 F.3d 1379 (Fed. Cir. 1999) ........ 3, 4, 5, 6

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
137 F.3d 1475 (Fed. Cir. 1998) ........ 3

*Field v. Mans*,
157 F.3d 35 (1st Cir. 1998) ........ 9

*Hall v. City of L.A.*,
697 F.3d 1059 (9th Cir. 2012) ........ 3

*Laitram Corp. v. NEC Corp.*,
115 F.3d 947 (Fed. Cir. 1997) ........ 4

*Minks v. Polaris Indus.*,
546 F.3d 1364 (Fed. Cir. 2008) ........ 7

*Montana v. Talen Montana, LLC*,
130 F.4th 675 (9th Cir. 2025) ........ 5, 6

*Omega Patents, LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ........ 9

*Pierce v. Wyndham Vacation Resorts, Inc.*,
No. 3:13-CV-641-CCS, 2022 WL 5237291 (E.D. Tenn. Oct. 5, 2022) ........ 8, 9

*Tronzo v. Biomet, Inc.*,
236 F.3d 1342 (Fed. Cir. 2001) ........ 6, 7, 8

*VirnetX, Inc. v. Cisco Sys.*,
767 F.3d 1308 (Fed. Cir. 2014) ........ 5

*Vizcaino v. U.S. Dist. Court*,
173 F.3d 713 (9th Cir. 1999) ..... 3

**FEDERAL STATUTES**

35 U.S.C. § 284 ..... 9

**FEDERAL RULES**

Rule 60(b) ..... 3

## I. INTRODUCTION

Cyntec's summary judgment motion overlaps with Chilisin's motion for summary judgment regarding damages (Dkt. 406) and Cyntec's opposition to that motion (Dkt. 410). But where Chilisin's motion is clear as to the relief that it seeks, Cyntec's motion is vague. *See* Dkt. 407-2 (proposed order, stating only that the motion is granted). Presumably Cyntec is asking this Court to award it $320,463 in reasonable royalty damages, the amount awarded by the jury in the now-vacated damages verdict. If that is what Cyntec seeks via its motion, its request violates both the letter and spirit of the Federal Circuit's mandate.

Chilisin appealed this Court's refusal to grant a *Daubert* motion excluding Cyntec's importation theory. There is no dispute that over 95% of the reasonable royalty damages the prior jury awarded relied on that importation theory. The Federal Circuit agreed with Chilisin that Cyntec's importation theory was "unreliable and speculative," that Chilisin's *Daubert* motion should have been granted, and that the importation theory should have been excluded. Dkt. 336 at 18. It vacated the damages award and remanded for further proceedings "consistent with this opinion." *Id.* Awarding Cyntec reasonable royalty damages that rely on its now discredited importation theory violates the mandate rule. As discussed in Chilisin's co-pending motion for summary judgment, the only damages the Court can award on the current record are $23,677.

## II. FACTUAL BACKGROUND

Cyntec's summary judgment motion raises essentially the same issues, facts, and procedural history as Chilisin's summary judgment motion. *See* Dkt. 405 at 2-5. Accordingly, this response repeats only the most relevant factual background for resolving Cyntec's motion.

### A. Cyntec's Damages Theory

Because nearly all the accused sales occurred outside of the United States, Cyntec elected to present a damages theory that attempted to determine how many accused chokes it believed were imported into the United States by Chilisin's direct and indirect customers. In expert reports served in 2020 and 2021, Cyntec's damages expert, Bryan Van Uden, developed a list of approximately 27 companies that he believed were direct or indirect Chilisin customers who performed such

importation. *See Id*. at 535:9-543:18; Dkt. 300-3 ("United States Sales Distribution – Summary").[2] For this importation theory, he assumed each company imported devices with Chilisin chokes at the same percentage as their overall sales into the United States, as reflected in their Form 10-K disclosure statements. Mr. Van Uden applied this importation theory to both a "market share" approach for lost profits (*see* Dkt. 299-33, Dkt. 301-24) and a reasonable royalty for any remaining sales (Dkt. 300-33).

Although he did not present it at trial, in his expert reports Mr. Van Uden also performed a calculation for damages assuming no lost profits. *See* Dkt. 406-3, Ex. B at 4. His royalty-only damages theory was also broken down into direct and indirect damages: direct damages were $23,677, and indirect damages (damages that relied on his importation theory) were $489,869. *Id*.

### B. The Federal Circuit Appeal

As explained in Chilisin's summary judgment motion, on appeal the Federal Circuit agreed with Chilisin's *Daubert* challenge, finding it was legal error for the Court to allow Mr. Van Uden to present his importation calculations. Dkt. 336 at 16. It agreed that the Form 10-K importation percentages included revenue from services and products that do not contain chokes, and that the importation percentages were therefore "unreliable and speculative." *Id*. at 16-18. It vacated the damages award and remanded for proceedings "consistent with this opinion." *Id*. at 18. Since it vacated the damages award, the Federal Circuit said it did not need to reach Chilisin's other challenges to Cyntec's damages theories. *Id*. at 13, n.1.

## III. ARGUMENT

### A. The Mandate Does Not Foreclose (And In Fact Requires) Addressing Damages on Remand

As explained in Chilisin's reply for its summary judgment motion (Dkt. 412), Cyntec's reliance on the mandate rule and waiver doctrines are flawed. The doctrines are distinct and should not be confused, but Cyntec's motion repeatedly attempts to blur the distinction between the two. For example, in its discussion of the "legal standard for [the] mandate rule," Cyntec (at 4) quotes

---

[2] Trial Exhibit 1312 lists 29 companies, but there were no accused sales under the '312 and '037 patents to two of those companies, LG and GoPro.

from *Ackermann v. United States*, 340 U.S. 193 (1950), a case that has nothing to do with the mandate rule. *Ackerman* involved an individual who never appealed a judgment, and then later tried to set aside that judgment under Rule 60(b). *Id*. at 194-95. It is a waiver case, and it has nothing to do with the facts here, since Chilisin *did* appeal and indeed prevailed in its damages challenge.

Cyntec next quotes *Engel Indus., Inc. v. Lockformer Co*., 166 F.3d 1379, 1382-83 (Fed. Cir. 1999), but only excerpts the portion of that case discussing waiver, not the mandate rule. In doing so, Cyntec ignores critical language in *Engel* about the application of the mandate rule. For example, *Engel* says, "while a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Id*. It further states a district court "may act on matters left open by the mandate." *Id*. (quoting *Laitram Corp. v. NEC Corp*., 115 F.3d 947, 951 (Fed. Cir. 1997)). In *Engel* the appellate court did not return *any* mandate to the district court—there was no remand. *Id*. Here, there is no dispute there was a remand, the only dispute is over the scope of that remand.

*Engel* is consistent with a multitude of other cases that hold the mandate rule only acts to bar this Court from reconsidering issues the appellate court expressly decided, but does not bar consideration of issues the appellate court did not address. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp*., 137 F.3d 1475, 1484 (Fed. Cir. 1998) ("[F]ollowing appellate disposition, a district court is free to take any action that is consistent with the appellate mandate, as informed by both the formal judgment issued by the court and the court's written opinion."); *Hall v. City of L.A*., 697 F.3d 1059, 1067 (9th Cir. 2012) (holding the district court can take up "anything not foreclosed by the mandate" because the mandate "requires respect for what the higher court decided, not for what it did *not* decide."); *Vizcaino v. U.S. Dist. Court*, 173 F.3d 713, 719 (9th Cir. 1999) ("On remand, a trial court can only consider any issue not expressly or impliedly disposed of on appeal."). Here, Cyntec argues the Federal Circuit did not address the impact of its decision on reasonable royalty damages. [Mot.[3] at 1 (arguing reasonable royalty was "never addressed" by the Federal Circuit).] If the Federal Circuit never addressed the impact of its decision on reasonable royalty damages, that issue cannot be barred under the mandate rule. Whether it was waived is a separate question

---

[3] Dkt. 407-1.

addressed by separate law, discussed further below, but the mandate rule cannot prohibit consideration of this issue.

Indeed, the opposite is true: the mandate rule *requires* this Court to only take further actions consistent with "the letter [and] the spirit of the mandate." *See Laitram*, 115 F.3d at 951 (citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)).[4] In other words, the Court must consider the impact of the mandate before it enters any judgment. Here, the Federal Circuit stated expressly that "Mr. Van Uden's importation calculations" were "both unreliable and speculative," and vacated the damages award "***[b]ecause*** Mr. Van Uden's lost profits calculation ***stemmed from*** his importation calculations." Dkt. 336 at 18 (emphases added). The same is true of the reasonable royalty award, nearly all of which stems from Cyntec's rejected importation theory. Granting summary judgment to Cyntec awarding importation damages would thus violate the letter and spirit of the mandate.

### B. Chilisin Did Not Waive Its Challenge To Cyntec's Importation Theory—It Raised The Issue And Won

Cyntec argues that Chilisin never appealed the reasonable royalty award, but this ignores what Chilisin actually appealed: this Court's denial of a *Daubert* motion to exclude Cyntec's indirect damages theory. *See* Dkt. 324 (appealing "the Court's September 8, 2020 order … Denying in Part Motion to Exclude … ECF No. 170"). Chilisin's *Daubert* motion, in turn, challenged "Mr. Van Uden's opinions regarding the estimated United States sales of Chilisin's accused products as a result of Chilisin's sales of those products outside of the United States." Dkt. 139 at 8. In other words, Chilisin's *Daubert* motion challenged Cyntec's importation theory in its entirety, regardless of where it was applied. Indeed, Chilisin's *Daubert* motion did not even mention "lost profits" or "reasonable royalties"—because it applied equally to both. *See id*. By appealing the denial of that *Daubert* motion, Chilisin was necessarily arguing the importation theory should have been excluded.

As a legal matter, waiver is assessed based on the contents of a party's opening appeal brief.

---

[4] *Laitram* also holds the mandate can cover "issues decided by necessary implication." 115 F.3d at 951. Here, by reversing the district court's denial of Chilisin's *Daubert* motion, the necessary implication is that any use of that theory on remand is prohibited.

*See Engel*, 166 F.3d at 1383. Here, Chilisin's opening brief to the Federal Circuit was clear that it was challenging whether "[t]he district court erroneously refused to exclude Cyntec's importation calculations, which were untethered from the products actually at issue in the case." *See Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, Case No. 22-1873, Dkt. 12, at 15, 39 (Fed. Cir. Aug. 5, 2022). Chilisin's argument to the Federal Circuit focused on Cyntec's "indirect damages." *Id.* at 63-67. Chilisin argued the Federal Circuit should "vacate the damages award," not just the lost profits portion of that award, and that it was "entitled to a new trial on damages" with indirect damages excluded. *Id.* at 39, 62. To be sure, Chilisin also raised multiple other challenges that were specific to lost profits (*see, e.g., id.* at 67-74), but that does not mean Cyntec limited its appeal of the Court's *Daubert* ruling to only one instance where the importation theory was used.

Cyntec's waiver argument also assumes that the royalty the jury awarded is distinct from its claimed lost profits damages. That is simply not correct. As discussed above, Cyntec pursued a "market share" lost profits theory at trial. Under a market share theory, the jury considers what portion of the sales a plaintiff would have made absent infringement; it awards lost profits on only that portion, and a reasonable royalty on the remainder. *See Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001). In other words, the royalty the jury awarded was not for all adjudged-infringing sales, it was only for a portion left over after the award of lost profits. On remand, Cyntec is not pursuing lost profits at all (*see* Dkt. 403, n.1 ("Cyntec is not seeking lost profits damages in this remand trial…")), so the Court must decide what reasonable royalty to award on the adjudged-infringing sales. This necessitates determining the correct royalty base. *See VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). When deciding what revenue to include in the royalty base, the Court must follow the mandate from the Federal Circuit, which requires excluding indirect sales.

Cyntec's waiver argument relies heavily on *Engel* and *Montana v. Talen Montana, LLC*, 130 F.4th 675, 691 (9th Cir. 2025). In *Engel*, the plaintiff (a duct manufacturer) filed a declaratory judgment action seeking a declaration that its products did not infringe a patent held by a competitor, and also that a license agreement it had signed with that competitor was unlawful. 166 F.3d at 1381. The Federal Circuit agreed with Engel that the patent-in-suit was not infringed, but found the license

lawful, and did not remand. *Id*. Engel then filed a motion in the district court asking for a refund of money it had paid under the license agreement, arguing that because the patent was not infringed it should not owe any money under the license. *Id*. The district court denied the motion, because in finding the license valid, the Federal Circuit had implicitly determined no refund was owed. *Id*. The Federal Circuit affirmed, noting that its prior decision upholding the license agreement "necessarily included the issue of Engel's liability under the license agreement." *Id*. at 1383. Here, unlike in *Engel*, the Federal Circuit did not affirm without any remand, it reversed and remanded. That remand necessarily requires this Court to determine the proper amount of damages to award Cyntec. Since the Federal Circuit held that Cyntec's importation theory was improper, it would be inconsistent with the mandate to enter a new judgment awarding damages utilizing that theory.

Cyntec's other case, *Montana*, supports Chilisin. That case involved a dispute over who owned a stretch of river, the State of Montana or the United States, a question that turned on whether the river was navigable when Montana obtained statehood. 130 F.4th at 682. The case went to the Supreme Court, and in its opinion the Court used a particular stretch of the river (the "Great Falls reach") as an illustrative example for how to conduct a navigability analysis. *Id*. at 684. The Supreme Court remanded the case to the Montana state courts to determine navigability of the disputed river consistent with its opinion. *Id*. On remand the case was removed to federal court, and on a subsequent appeal to the Ninth Circuit, two utilities that owned power stations on the river challenged a portion of the lower court's decision that certain specific segments of the river were navigable, arguing they were within the Great Falls reach that the Supreme Court said was not navigable and were therefore subject to the mandate rule. *Id*. at 691. The Ninth Circuit disagreed, finding that the Supreme Court's analysis only concerned a specific segment of the Great Falls reach, and therefore did not foreclose the district court from reaching a different conclusion as to other portions of the river above that segment. *Id*. at 692. Because the Supreme Court remanded, it was left to the district court to determine the exact locations where navigability started and ended. *Id*. Similarly, here all the Federal Circuit decided on damages was that Cyntec could not rely on its importation theory. It discussed that theory in the context of Cyntec's claim for lost profits, which made up nearly all of the claimed damages, and remanded for this Court to determine the impact of

its ruling. Like in *Montana*, the appellate decision does not foreclose and indeed requires this Court to consider the impact of that decision on what remains in dispute.

Cyntec also relies on *Tronzo v. Biomet, Inc.*, 236 F.3d 1342 (Fed. Cir. 2001). As an initial matter, the Federal Circuit has questioned whether *Tronzo* remains good law in light of subsequent Supreme Court decisions. *See Minks v. Polaris Indus.*, 546 F.3d 1364, 1373 n.7 (Fed. Cir. 2008). Regardless, the case is inapposite. In *Tronzo*, the defendant appealed an award of compensatory damages, but did not appeal an award of punitive damages. *Id*. at 1348. The Federal Circuit held the defendant waived any future challenges to punitive damages by not including it in its initial appeal. *Id*. at 1349. Here, Chilisin did file a challenge to the Court's *Daubert* decision, and the Federal Circuit agreed with that challenge. No waiver can apply to an argument that was expressly made and accepted. Moreover, the *Tronzo* court confirmed that the punitive damages award remained consistent with the revised scope of infringement on remand. *Id.* at 1350 ("[W]e cannot conclude that the reduction of the amount of compensatory damages on remand created such a substantial change in the facts to allow the district court to revisit the punitive damage award."). Here, the original royalty award is inconsistent with the new *Daubert* ruling.

Cyntec notes that Chilisin explicitly discussed reasonable royalties in JMOL motions it filed after trial. Chilisin's reasonable royalty JMOL is irrelevant—Chilisin chose not to appeal that decision. Instead, Chilisin chose to appeal the Court's denial of a *Daubert* motion. Cyntec never meaningfully disputes that the *Daubert* motion addressed importation generally, and was not specific to lost profits or reasonable royalties. Chilisin's arguments on JMOL had nothing to do with that *Daubert* challenge, which was filed over a year earlier.

Cyntec relatedly argues that "Chilisin never mentioned reasonable royalties in its appeal briefs," but Chilisin did not discuss "lost profits" in its *Daubert* appeal either—Chilisin only mentioned "lost profits" once, and then only then to give the Federal Circuit context about the importance of the appeal. [*See* Dkt. 409-2, Ex. 2 at 64 (noting that over 95% of the lost profits damages (which were themselves over 80% of the damages award) came from alleged importation).] As noted, Cyntec's importation theory is not a damages theory *per se*, it is a calculation of how many accused products allegedly come into the United States. The Federal Circuit held that

calculation was performed incorrectly and should have been excluded. It is irrelevant where the calculation was used; respecting the Federal Circuit's decision means neither the parties nor the Court should make any further use of that calculation in this case on remand.

### C. The Federal Circuit Issued a General Remand, Including on Damages

Cyntec argues that the only decisions the appellate court made were to (1) vacate the lost profits award, and (2) reverse and remand on obviousness. This ignores the Federal Circuit's statements that, "[b]ecause we find that the district court abused its discretion in denying Chilisin's *Daubert* motion, we **reverse the district court's denial and vacate the damages award**." [Dkt. 336 at 13 (emphasis added); *see also id*. at 18 ("we reverse the district court's … denial of Chilisin's motion to exclude Mr. Van Uden's damages expert testimony."); *id*. at n.5 ("we vacate the damages award").] Through these sentences (and the entirety of its damages analysis), the Federal Circuit clearly reversed this Court's decision on Chilisin's *Daubert* motion. As noted above, Chilisin's *Daubert* motion challenged Cyntec's importation theory *in toto*, and was not limited to lost profits. By reversing that decision, the *Daubert* motion is now effectively granted, meaning Cyntec's importation theory should not be used for any purpose in the case, including when awarding Cyntec reasonable royalty damages on remand via summary judgment.

Cyntec's argument that there was no remand on damages, only obviousness, also ignores the multiple places in the opinion where the Federal Circuit states it is vacating the damages award, which would necessarily require a new trial on damages. Dkt. 336 at 13. While the Federal Circuit's opinion also only says in places that it is vacating the lost profits award,[5] that too would require reassessing damages on remand, since Cyntec pursued a market share theory of lost profits where the only reasonable royalty awarded was calculated on only a portion of the allegedly infringing sales.

Cyntec's argument also ignores the Federal Circuit's decision to "remand for proceedings consistent with this opinion." This language is particularly important. As courts have explained,

---

[5] If the Court finds the mandate ambiguous, that would weigh against applying the mandate rule. *See Dejoria v. Maghreb Petroleum Expl*., No. A-13-CV-654-JRN-AWA, 2016 WL 4250488, at *8 (W.D. Tex. Aug. 11, 2016) ("in general the law of the case doctrine should not be applied in cases involving ambiguous opinions").

there are two types of remands, general and limited. *Pierce v. Wyndham Vacation Resorts, Inc.*, No. 3:13-CV-641-CCS, 2022 WL 5237291, at *6 (E.D. Tenn. Oct. 5, 2022). "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. General remands give district courts authority to address all matters as long as remaining consistent with the remand. In the absence of an explicit limitation, the remand order is presumptively a general one." *Id*. In *Pierce*, the district court found that a remand "for further proceedings consistent with this opinion" was a general remand. *Id*.; *see also Field v. Mans*, 157 F.3d 35, 42 (1st Cir. 1998) (noting "'for proceedings consistent with this opinion'" was a "general remand order"); *Dejoria v. Maghreb Petroleum Expl*., No. A-13-CV-654-JRN-AWA, 2016 WL 4250488, at *8 (W.D. Tex. Aug. 11, 2016) (holding "'for further proceedings in accordance with the opinion of this Court'" was "general remand language"). The same language is present here, and the Federal Circuit placed no limits on how this Court should assess the impact of its ruling on damages on remand.

Finally, Cyntec makes the confusing argument that because Chilisin prevailed when it asked the Federal Circuit to vacate the damages award, "judicial estoppel" bars it from seeking to address damages on remand. First, it is unclear what "inconsistent position" Cyntec is seeking to block. In the appeal, Chilisin sought to exclude Cyntec's importation theory. On remand, Chilisin seeks the same relief. There is no inconsistency. Second, Cyntec's argument suggests that by asking the Federal Circuit to vacate damages, Chilisin was seeking to bar Cyntec from pursuing any damages on remand. Nothing in the record supports this. In general, Cyntec had a right to seek damages. *See* 35 U.S.C. § 284. Once the prior damages award was vacated, Cyntec could have attempted to pursue new theories on remand that were consistent with the Federal Circuit's decision, as well as the existing record and expert disclosures. *See Omega Patents, LLC v. CalAmp Corp*., 13 F.4th 1361, 1374 (Fed. Cir. 2021) (holding that on remand the court was free to consider damages consistent with the principles set forth in the appeal decision). It was Cyntec's decision not to do so; it was not blocked by any argument upon which Chilisin prevailed, so judicial estoppel does not apply.

## IV. CONCLUSION

For the foregoing reasons, Cyntec's motion for summary judgment should be denied.

Dated: September 16, 2025

WHITE & CASE LLP

By: */s/ Jonathan Lamberson*
Jonathan Lamberson
Attorneys for Defendant
Chilisin Electronics Corp.