JAMES C. YOON (State Bar No. 177155)
jyoon@wsgr.com
CHRISTOPHER MAYS (State Bar No. 266510)
cmays@wsgr.com
JEFFREY NALL (State Bar No. 340675)
jnall@wsgr.com
OBIE REYNOLDS (State Bar No. 352072)
oreynolds@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

LUCY YEN (State Bar No. 224559)
lyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
31 West 52nd Street, Fifth Floor
New York, New York 10019-6118
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

CELINE LIU (State Bar No. 268990)
celine.liu@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, D.C. 20006
Telephone: (202) 791-8800
Facsimile: (650) 493-6811

*Attorneys for Plaintiff*
*CYNTEC COMPANY, LTD.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CYNTEC COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>CHILISIN ELECTRONICS CORP. and CHILISIN AMERICA LTD.,<br><br>Defendants. | Case No.: 3:18-cv-00939-TLT<br><br>**CYNTEC COMPANY, LTD.'S OPPOSITION TO CHILISIN'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Hearing Date: September 15, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

# TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION .................... 1

II. LEGAL STANDARDS .................... 1

III. ARGUMENT .................... 3

A. Chilisin Waived Arguments Not Disclosed in Its Rule 50(a) Motion .................... 3

B. The Jury's Verdict of Nonobviousness and Presumed Underlying Factual Findings Are Supported by Substantial Evidence .................... 5

1. Determination of Obviousness Cannot Rely on Hindsight .................... 5

2. Defendant Bears Burden of Proof on All *Graham* Factors .................... 6

a. *Graham* Factor 1: Shafer and/or Nakamura Are Outside the Scope and Content of the Prior Art .................... 6

b. *Graham* Factor 2: Shafer and Nakamura Differed from the Claims .................... 9

c. *Graham* Factor 3: A POSITA's Knowledge and Skill Do Not Support Obviousness .................... 13

d. *Graham* Factor 4: The Objective Evidence Supports Nonobviousness .................... 14

i. Long-Felt Need .................... 15

ii. Unexpected and Superior Results .................... 15

iii. Commercial Success .................... 16

iv. Copying .................... 18

3. A POSITA Would Not Be Motivated to Combine Shafer and Nakamura .................... 19

C. Chilisin's Reexamination Arguments Contravene Federal Circuit Authority .................... 21

IV. CONCLUSION .................... 22

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.*, 25 F.4th 1354 (Fed. Cir. 2022) ........ 16

*Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293 (Fed. Cir. 2015) ........ 12

*Apple Inc. v. Samsung Elecs. Co. Ltd.*, 839 F.3d 1034 (Fed. Cir. 2016) ........ 14, 19, 20

*Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 678 F. Supp. 3d 716 (E.D. Va. 2023) ........ 2

*Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361 (Fed. Cir. 2005) ........ 1, 9, 21

*Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (*en banc*) ........ 1, 11, 12, 14

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370 (Fed. Cir. 2021) ........ 18

*Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137 (9th Cir. 1974) ........ 1, 2

*ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340 (Fed. Cir. 2012) ........ 3

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ........ 1

*Costa v. Desert Palace, Inc.*, 299 F.3d 838 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003) ........ 1

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010) ........ 14

*E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951 (9th Cir. 2009) ........ 3

*Eli Lilly & Co v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331 (Fed. Cir. 2021) ........ 6

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553 (Fed. Cir. 1995) ........ 11

*Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003) ........ 3

*Gillette v. Delmore*,
979 F.2d 1342 (9th Cir. 1992) ........ 1

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) ........ *passim*

*Hyundai Motor Fin. Co. v. McKay Motors I, LLC*,
574 F.3d 637 (8th Cir. 2009) ........ 4

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ........ 2

*In re Antonie*,
559 F.2d 618 (C.C.P.A. 1977) ........ 12

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012) ........ 12

*In re Brandt*,
886 F.3d 1171 (Fed. Cir. 2018) ........ 12

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
676 F.3d 1063 (Fed. Cir. 2012) ........ 6

*In re Soni*,
54 F.3d 746 (Fed. Cir. 1995) ........ 16

*In re Yates*,
663 F.2d 1054 (C.C.P.A. 1981) ........ 12

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008) ........ 5

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004) ........ 18

*K-TEC, Inc. v. Vita-Mix Corp.*,
696 F.3d 1364 (Fed. Cir. 2012) ........ 7, 8

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
688 F.3d 1342 (Fed. Cir. 2012) ........ 5, 9

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007) ........ 5

*Lakeside-Scott v. Multnomah Cty.*,
556 F.3d 797 (9th Cir. 2009) ........ 2

*LifeNet Health v. LifeCell Corp.*,
837 F.3d 1316 (Fed. Cir. 2016) ........ 9

*Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*,
70 F.4th 1331 (Fed. Cir. 2023) ........ 18, 19

*Mintz v. Dietz & Watson, Inc.*,
679 F.3d 1372 (Fed. Cir. 2012) ........ 6

*MobileMedia Ideas LLC v. Apple Inc.*,
780 F.3d 1159 (Fed. Cir. 2015) ........ 2

*OSI Pharms., LLC v. Apotex Inc.*,
939 F.3d 1375 (Fed. Cir. 2019) ........ 5

*Osseo Imaging, LLC v. Planmeca USA Inc.*,
116 F.4th 1335 (Fed. Cir. 2024) ........ 5

*Pavao v. Pagay*,
307 F.3d 915 (9th Cir. 2002) ........ 1, 11

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007) ........ 6

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.*,
566 F.3d 989 (Fed. Cir. 2009) ........ 6

*Summit Tech., Inc. v. Nidek Co.*,
363 F.3d 1219 (Fed. Cir. 2004) ........ 1

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
809 F. App'x 965 (Fed. Cir. 2020) ........ 2

*Volterra Semiconductor Corp. v. Primarion, Inc.*, No. 08-cv-05129,
2011 WL 4079223 (N.D. Cal. Sep. 12, 2011) ........ 21

*Wallace v. City of San Diego*,
479 F.3d 616 (9th Cir. 2007) ........ 2, 10, 14

**RULES**

FED. R. CIV. P. 50 ........ *passim*

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '312 Patent | U.S. Patent No. 8,922,312 |
| '037 Patent | U.S. Patent No. 9,481,037 |
| Cyntec | Cyntec Company, Ltd. |
| Chilisin | Chilisin Electronics Corp. and Chilisin America Ltd. |
| Dr. Bravman | Chilisin's expert, John C. Bravman, Ph.D. |
| Dr. Kohl | Cyntec's expert, Paul A. Kohl, Ph.D. |
| Ex. | Exhibits attached to the Declaration of Christopher D. Mays |
| JMOL | Judgement as a Matter of Law |
| Mays Decl. | Declaration of Christopher D. Mays in support of Cyntec's Oppositions to Chilisin's Post-Trial Motions |
| Motion or Mot. | Chilisin's Renewed Rule 50 Motion for Judgment as a Matter of Law (Dkt. 559) |
| Nakamura | Japanese Patent Appl. No. 2004-106072 (Trial Ex. A-017) |
| POSITA | Person of ordinary skill in the art at the time of invention |
| Remand Trial Day 1 Tr. | 3/2/2026 Trial Transcript of Remand Proceedings Vol. 1 (Dkt. 544) |
| Remand Trial Day 2 Tr. | 3/3/2026 Trial Transcript of Remand Proceedings Vol. 2 (Dkt. 545) |
| Remand Trial Day 3 Tr. | 3/4/2026 Trial Transcript of Remand Proceedings Vol. 3 (Dkt. 546) |
| Remand Trial Day 4 Tr. | 3/5/2026 Trial Transcript of Remand Proceedings Vol. 4 (Dkt. 547) |
| Shafer | U.S. Patent No. 6,460,244 (Trial Ex. A-033) |
| Trial Ex. | Admitted Trial Exhibits attached to the Declaration of Christopher D. Mays |

## I. INTRODUCTION

Chilisin's Rule 50(b) Motion is not a proper renewed JMOL request. The Motion is an attempt to retry the case and recast the Court as jury. The Motion advances unpreserved arguments not raised under Rule 50(a). It also urges the Court to commit the legal error of reweighing the evidence and second-guessing the jury's credibility determinations.

Under Rule 50, the jury's verdict—and all implicit findings of fact contained therein—must be upheld if supported by substantial evidence that is viewed in the light most favorable to Cyntec. That standard is easily met here. The jury heard competing expert testimony about whether a POSITA would be motivated to combine Shafer and Nakamura, whether Shafer and Nakamura were in the scope and content of the prior art, and the many differences between Shafer/Nakamura and the patented inventions. The jury also heard a substantial amount of evidence on objective factors of nonobviousness that Chilisin never rebutted. Because Chilisin cannot show that the jury's verdict rests on less than substantial evidence or that only a verdict in Chilisin's favor is possible, Chilisin's Motion should be denied.

## II. LEGAL STANDARDS

Renewed motions for judgment as a matter of law are "reviewed under the law of the regional circuit." *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). In the Ninth Circuit, the standard for overturning the jury's verdict "is very high." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003). A JMOL motion "is properly granted only if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (*en banc*) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). A party seeking judgment as a matter of law must show that the verdict is not supported by "substantial evidence." *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). Substantial evidence is anything "more than a mere scintilla." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137,

1140 (9th Cir. 1974). Substantial evidence can be "evidence adequate to support the jury's conclusion, ***even if it is also possible to draw a contrary conclusion*** from the same evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). In making this determination, "the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Id.* While the Court must review the entire evidentiary record, it "must disregard all evidence favorable to the moving party [Chilisin] that the jury is not required to believe." *Id.* The Court should not grant JMOL unless it concludes that "the jury could have relied only on speculation to reach its verdict." *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 803 (9th Cir. 2009).

Nor may the Court assess credibility or weigh disputed expert testimony to resolve conflicting testimony. "Conflicting expert opinions are, in almost all instances, a matter for the jury to resolve." *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 678 F. Supp. 3d 716, 724 (E.D. Va. 2023). Indeed, the Court must resolve such conflicting testimony in nonmovant *Cyntec's* favor because the jury was always free to reject Chilisin's testimony and believe Cyntec's. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 F. App'x 965, 974 (Fed. Cir. 2020) ("Here, the jury heard conflicting expert testimony on whether Straus discloses a single universal primer. The jury was free to adopt Dr. Cooper's testimony over that of Dr. Cantor's in concluding that Straus did not disclose a single universal primer."); *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015) ("when there is conflicting testimony at trial, and the evidence overall does not make only one finding on the point reasonable, the jury is permitted to make credibility determinations and believe the witness it considers more trustworthy"); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ("At trial, the jury heard conflicting testimony on whether S4 met the 'metacode map' limitation. In evaluating the evidence, the jury was free to disbelieve Microsoft's expert, who relied on the S4 user manual, and credit i4i's expert, who opined that it was impossible to know whether the claim limitation was met without looking at S4's source code.").

## III. ARGUMENT

The Remand Action is over, and a jury found for Cyntec for a second time. Chilisin cannot overturn the verdict by rearguing its invalidity case to the Court under the guise of Rule 50. Yet, Chilisin's Rule 50(b) Motion commits the cardinal error of asking the Court to serve as factfinder, reassess the evidence, and reevaluate the jury's verdict based on the supposed weight of ***Chilisin's*** evidence and the arguments of its counsel. The only question for the Court is whether the jury's verdict of nonobviousness—and the implicit factual findings therein—are supported by substantial evidence. They are.

### A. Chilisin Waived Arguments Not Disclosed in Its Rule 50(a) Motion

It is black letter law that Chilisin cannot include arguments in its renewed JMOL that it did not make in its Rule 50(a) motion. Arguments not raised before the case was submitted to the jury are waived. *See Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003); *see also ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012). As the Ninth Circuit has stated:

> A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion . . . Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion. Thus, a party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.

*E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). The purpose of this rule is twofold: "First it preserves the sufficiency of the evidence as a question of law, allowing the district court to review its initial denial of judgment as a matter of law instead of forcing it to engage in an impermissible reexamination of facts found by the jury." *Freund*, 347 F.3d at 761. "Second, it calls to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them." *Id.* Given the rule, it was incumbent on Chilisin to be specific, thorough, and diligent about "notify[ing] the district court and the opposing party of the underlying issue[s]" that are going to be subsequently raised

in the party's renewed motion. *See Hyundai Motor Fin. Co. v. McKay Motors I, LLC*, 574 F.3d 637, 642 (8th Cir. 2009) ("cursory discussion" of pre-verdict motions are not sufficient to preserve issue for appeal).

Contravening this authority, Chilisin advances several arguments it did not make in its Rule 50(a) motion during trial.

- "Unclaimed benefits" should be disregarded (*compare* Dkt. 547 (Remand Trial Day 4 Tr.) 669:6-673:4 *with* Mot. at 12-13);
- Shafer, Nakamura, and Brunner contain alleged teachings about formation temperature (*compare* Dkt. 547 (Remand Trial Day 4 Tr.) 669:6-673:4 *with* Mot. at 18-19);
- Cyntec's revenues and market share are irrelevant (*compare* Dkt. 547 (Remand Trial Day 4 Tr.) 669:6-673:4 *with* Mot. at 20-21);
- Chilisin's customers never explicitly requested mixed powdered products (*compare* Dkt. 547 (Remand Trial Day 4 Tr.) 669:6-673:4 *with* Mot. at 21);
- Chilisin did not copy because it lacked knowledge about powders and equipment necessary to measure particle size or hardness (*compare* Dkt. 547 (Remand Trial Day 4 Tr.) 669:6-673:4 *with* Mot. at 21);
- Brunner pre-dates Shafer and Nakamura (*compare* Dkt. 547 (Remand Trial Day 4 Tr.) 669:6-673:4 *with* Mot. at 22-23);
- Dr. Kohl allegedly failed to compare the results of the Asserted Patents to the closest prior art (*compare* Dkt. 547 (Remand Trial Day 4 Tr.) 669:6-673:4 *with* Mot. at 23); and
- The reexamination proceedings have no probative value (*compare* Dkt. 547 (Remand Trial Day 4 Tr.) 669:6-673:4 *with* Mot. at 23-24).

Although Cyntec addresses them out of an abundance of caution, the Court should disregard each of these arguments as waived.

### B. The Jury's Verdict of Nonobviousness and Presumed Underlying Factual Findings Are Supported by Substantial Evidence

#### 1. Determination of Obviousness Cannot Rely on Hindsight

As a preliminary matter, a patent challenger cannot prove obviousness "merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418-19 (2007) ("inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known."); Dkt. 540 at 39 (instructing jury: "A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art."). This requirement aims to ensure any obviousness analysis is not tainted by the improper use of hindsight. *See OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1385 (Fed. Cir. 2019) (claim not obvious where "[i]t is only with the benefit of hindsight that a person of skill in the art would have had a reasonable expectation of success in view of the asserted references"); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 n.3 (Fed. Cir. 2008) ("We must still be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention."); Dkt. 540 at 40 (instructing jury that it "must be careful not to determine obviousness using the benefit of hindsight" because "many true inventions might seem obvious after the fact").

Here, because the jury issued only a general verdict that the patents were not obvious, the Court must presume the jury resolved each of these factual issues in Cyntec's favor. *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) ("the district court was required to accept all implicit factual findings supporting the jury's conclusion with respect to the ultimate conclusion of obviousness that were supported by substantial evidence"); *Osseo Imaging, LLC v. Planmeca USA Inc.*, 116 F.4th 1335, 1344 (Fed. Cir. 2024) ("Where, as here, the jury made no explicit factual findings regarding obviousness, we must determine whether the implicit findings necessary to support the verdict are supported by substantial evidence.").

As demonstrated below (*see infra* at III.B.2-3), the jury's presumptive factual findings supporting nonobviousness are supported by substantial evidence.

### 2. Defendant Bears Burden of Proof on All *Graham* Factors

At all times, the burden is on the defendant to establish by clear and convincing evidence that the patent is obvious. Obviousness is a question of law based on four underlying factors: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). The obviousness inquiry requires considering ***each*** *Graham* factor prior to reaching a conclusion on obviousness. *E.g., Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1375 (Fed. Cir. 2012); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1076-77 (Fed. Cir. 2012) (collecting cases). Additionally, a party alleging obviousness must "demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so.'" *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)); *Eli Lilly & Co v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1344 (Fed. Cir. 2021); *see also* Dkt. 540 at 39-40 (instructing jury that it may consider "whether Chilisin has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention" and "whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.").

#### a. *Graham* Factor 1: Shafer and/or Nakamura Are Outside the Scope and Content of the Prior Art

To be considered as proper prior art to the asserted patents, Shafer and Nakamura "must be reasonably related to the claimed invention of that patent." Dkt. 540 at 38. A reference is "reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem." *Id.* at 38-39.

With respect to the "known problem," Dr. Kohl explained that the claimed inventions reduced "core loss," a measure of inefficiency in molding choke products. Dkt. 545 (Remand Trial Day 2 Tr.) 372:5-373:22 ("the inventors discovered a way that you can actually make a choke at high pressure without annealing, and it has the low core loss of previously you had to anneal"); *id.* 374:8-17 (through the claimed combination of two powders that are "[b]igger larger, softer smaller, core – less core loss can be obtained without the heat treatment."). Chilisin's expert offered similar testimony. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 258:25-259:7 (benefit of the patents is to "eliminate the annealing step or use a much lower temperature" and "heat treatment can be far less aggressive"), 292:10-16 (asserted patents describe "the idea of trying to reduce core loss" and "the benefit" thereof). Both experts also agreed that the solution presented by Cyntec's patents to the known problem were not discussed or even recognized in the prior art. *See id.* 318:3-319:23 (there is "nothing in Shafer that has a discussion as to the relationship between hardness and the two particles,"), 335:23-336:9 ("neither the data in Shafer or Nakamura correlates size and hardness to performance"), 337:3-12 (Nakamura provides no guidance on optimizing size ranges), 331:5-333:9 ("there is nothing in Nakamura that says that the alloy is required to be bigger than the iron powder"), 378:22-379:6 ("Shafer doesn't tell me the hardness nor the size"); Dkt. 546 (Remand Trial Day 3 Tr.) 411:3-16 ("Nakamura will allow either particle to be larger, either particle to be smaller . . . Nakamura has no wire anywhere").

Instead of taking on this testimony or demonstrating how the prior art and the claimed invention provided the same benefits to solve the same known problem (Dkt. 540 at 38-39), Chilisin argues that the jury should have disregarded any benefits which were not explicitly recited in the claim language.[1] There is no support for Chilisin's narrow reading of *Graham* Factor 1, which is not limited to claim language at all. Indeed, it is customary to look to a patent's specification to determine the problems the patent sought to solve or the benefit it hoped to confer. *See K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1375 (Fed. Cir. 2012) (identifying "prior art

---

[1] None of the authority that Chilisin cites (Mot. at 12-13) relies on any distinction between a "claimed" or "unclaimed" benefit in the context of any *Graham* factor. Chilisin's argument lacks any legal support.

problems that the invention solves[]" from specification, not claims). Shafer and Nakamura's failure to solve the same known problems or offer the same benefits as Cyntec's patents is a key distinction Dr. Kohl drew between them and Cyntec's patents and disqualifies Shafer and Nakamura from being related prior art.

Chilisin also argues that Shafer and Nakamura "avoid high temperatures" and therefore constitute "analogous art." Mot. at 19. However, the patents themselves define "related art" to be devices requiring "a conducting wire of an electronic device [ ] buried inside a magnetic body." Trial Exs. 143A at CYN_0230962 ('312 Patent at 1:32-33), 145A at CYN_0230989 ('037 Patent at 1:35-36); Dkt. 546 (Remand Trial Day 3 Tr.) 414:16-415:9. As discussed below, neither Shafer nor Nakamura qualifies as such devices.

*Nakamura is not related prior art*. A POSITA would not "look to Nakamura to deal with the high-temperature annealing short circuit problem" because (1) Nakamura "doesn't have a wire in it" but "is simply a core"; (2) Nakamura "is not a related kind of technology," because without a wire it "is not a choke"; and (3) Nakamura "has nothing to do with the problem faced by the inventors" but "deals with a completely different problem." Dkt. 545 (Remand Trial Day 2 Tr.) 381:23-382:10. Indeed, Nakamura teaches the use of a doughnut-shaped "toroidal" without an internal wire.[2] Because it lacks an internal wire, "there is no risk" of the wire being damaged, which was the principal problem the Cyntec patents sought to solve. Dkt. 545 (Remand Trial Day 2 Tr.) 357:4-21. Without a wire, Nakamura falls outside of the patents' own definition of related art. *Id.*

*Shafer is not related prior art*. A POSITA would "look to prior art which dealt with annealing, with strain, with the problem of this conundrum." *Id.* 378:6-16. However, "Shafer has nothing like that. Never mentions it, doesn't even acknowledge it exists." *Id.* "Shafer doesn't deal with core loss. It doesn't deal with annealing." *Id.* 373:23-374:1. Also, "Shafer doesn't give

[2] Although one possible application for a toroidal core is in a product called a "wire wound choke," Dr. Kohl consistently explained that Nakamura's disclosure itself was not itself a choke. Dkt. 546 (Remand Trial Day 3 Tr.) 505:13-23.

anything on the size of [the powders'] particles. Shafer gives no specific – no physical characteristics to them. It doesn't name any hardness values. And Shafer overall says nothing about strain. It's not concerned about annealing. And not concerned about the wire insulation and the vulnerability of it." *Id.* 377:9-23. So, a POSITA "wouldn't have looked to it at all." *Id.* 378:15-16; *see also* Dkt. 546 (Remand Trial Day 3 Tr.) 417:2-15 (stating that Shafer and Nakamura "are related to entirely different problems"). Dr. Bravman conceded several of the same underlying facts. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 318:3-319:23, 327:12-15, 330:16-25, 331:5-333:9, 335:23-336:9, 337:3-12.

There was ample supporting testimony from both experts that Shafer and Nakamura are not related art, because neither reference speaks to the core underlying problems of lowering temperature formation and avoiding core loss when the device has a wire buried in it. This more than adequately supports the jury's implicit finding that Shafer and/or Nakamura are not in the scope and content of the prior art.

#### b. *Graham* Factor 2: Shafer and Nakamura Differed from the Claims

The jury implicitly found that Shafer and Nakamura differed from the claims of Cyntec's patents, dealing another fatal blow to Chilisin's obviousness case. *See LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1329 (Fed. Cir. 2016) (court did not err in denying JMOL where "there is substantial evidence to support a finding that [prior art] fails to disclose [claim limitation]"); *Kinetic Concepts*, 688 F.3d at 1361 ("substantial evidence supports the jury's implied factual finding that none of these references disclosed the [limitation]").

On *Graham* factor 2, Chilisin leans into the evidence ***it*** presented (Mot. at 4-12) and invites legal error in asking the Court to credit only ***its*** evidence. This type of one-sided presentation in the moving party's favor is not permitted on JMOL: "JMOL requires that the evidence, construed in the light most ***favorable to the non-moving party***, permits only one reasonable conclusion, and that conclusion is contrary to the jury's." *See Callicrate*, 427 F.3d at 1366 (party seeking judgment as a matter of law must show that the verdict is not supported by "substantial evidence."); *Wallace*,

479 F.3d at 624 (courts must not weigh the evidence on Rule 50(b)). Not only is the Court required to consider Cyntec's rebuttal evidence, but it must also construe it in the light most favorable to Cyntec.[3]

Here, Dr. Kohl testified that even when Shafer and Nakamura are combined, the combination fails to disclose the "by means of..." requirement, which appears in materially the same form in each claim:

> [B]y means of the first hardness difference of the first magnetic powder and the second magnetic powder, the mixture of the first magnetic powder and the second magnetic powder and the conducting wire buried therein are combined to form an integral magnetic body at a temperature lower than the melting point of the insulating encapsulant.

Dkt. 545 (Remand Trial Day 2 Tr.) 373:23-374:1, 377:9-23, 378:22-379:6; Dkt. 546 (Remand Trial Day 3 Tr.) 410:17-411:2; *see also* Trial Ex. 143A at CYN_0230968 ('312 Patent at 14:20-26); Trial Ex. 145A at CYN_0230995 ('037 Patent at 13:41-47). In particular, Dr. Kohl found that Shafer and Nakamura each omitted several key limitations and predicates of the "by means of" requirement:

- Nakamura failed to disclose mean particle diameters (Dkt. 545 (Remand Trial Day 2 Tr.) 375:5-7; Dkt. 546 (Remand Trial Day 3 Tr.) 411:17-413:10; Trial Ex. A-17);
- Nakamura failed to disclose a wire (Dkt. 545 (Remand Trial Day 2 Tr.) 357:8-10, 369:22-370:14, 374:2-4, 386:2-5);
- Shafer failed to disclose mean particle diameters (*id*. 377:9-23, 378:22-379:6, 379:10-20); and
- Shafer failed to disclose hardness values (*id*. 377:9-23, 378:22-379:6, 379:21-381:9).

Because of the absence of key limitations in both Shafer and Nakamura to the "by means of…" requirement, Dr. Kohl concluded that the two references—even when combined—still failed to meet this requirement.

---

[3] Emphases are added unless noted otherwise.

Notably, Dr. Bravman testified consistently, further underscoring that the jury's verdict was supported by substantial evidence. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 318:3-319:23, 327:12-15, 330:16-25, 331:5-333:9, 335:23-336:9, 337:3-12. Both experts agreed that neither Shafer nor Nakamura recognized any relationship between the size and hardness values of the two powders (*i.e.*, one should be larger and harder, while the other smaller and softer) and the ability to reduce the formation temperature of the claimed molding choke. *See id.* 318:3-319:23 ("nothing in Shafer [ ] has a discussion as to the relationship between hardness and the two particles"); *id.* 335:23-336:9 ("neither the data in Shafer or Nakamura correlates size and hardness to performance"); *id.* 337:3-12 (Nakamura provides no guidance on optimizing size ranges); *id.* 331:5-333:9 ("there is nothing in Nakamura that says that the alloy is required to be bigger than the iron powder"); *id.* 378:22-379:6 ("Shafer doesn't tell me the hardness nor the size"); Dkt. 546 (Remand Trial Day 3 Tr.) 411:3-16 ("Nakamura will allow either particle to be larger, either particle to be smaller . . . Nakamura has no wire anywhere").

Chilisin repeatedly argues that there should have been a presumptive finding of obviousness based on "ranges" of sizes purportedly found in the prior art. *See* Mot. at 3-12, 17. But nowhere do the claims recite the use of a "range" of particle sizes. Rather, the claims specifically require the use of a "***mean particle diameter***." Trial Exs. 143A at 14:5-14, 14:38-40, 14:48-51; 145A at 13:26-39, 14:4-7. Yet, both parties' experts agree that Shafer and Nakamura lack any discussion of mean particle diameters. Dkt. 545 (Remand Trial Day 2 Tr.) 319:9-22, 337:13-18 (Bravman); *id.* 375:2-7, 380:16-381:14; Dkt. 546 (Remand Trial Day 3 Tr.) 412:25-413:7 (Kohl).

The Court should decline to assume that a disclosure of ranges is a disclosure of the mean particle diameter. Such an assumption would violate a fundamental canon of claim construction by reading out the requirement of using the *mean* particle diameter. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) (court should "give meaning to all the words in [the] claims"). It is a particularly improper inference at JMOL, since the Court is required to credit all factual inferences in Cyntec's favor. *See Castro*, 833 F.3d at 1066 (quoting *Pavao*,

307 F.3d at 918). Moreover, Chilisin presents no unchallenged testimony equating a size range with mean particle diameter—certainly, Dr. Kohl strenuously disputed this, as shown above.

Even on the merits, the so-called presumption is legally inapplicable. It only applies when the *sole* difference between the claimed invention and the prior art is the range at issue. *See In re Brandt*, 886 F.3d 1171, 1174-75 (Fed. Cir. 2018) (rule applies "when ***the*** difference between the claimed invention and the prior art is the range or value of ***a*** particular variable"). That is not the case here. Dr. Kohl identified numerous differences outside of any alleged overlapping ranges, including the absence of a wire in Nakamura and size or hardness values in Shafer. Dkt. 545 (Remand Trial Day 2 Tr.) 357:8-10, 369:22-370:14, 374:2-4, 375:5-7, 377:9-23, 378:22-379:6, 379:10-20, 379:21-381:9, 386:2-5; Dkt. 546 (Remand Trial Day 3 Tr.) 411:17-413:10; Trial Ex. A-17.

The presumption also does not apply where the prior art fails to recognize any relationship between the "variable" (*i.e.*, alleged size ranges) and the "desired property" (*i.e.*, the claimed reduction in temperature below "the melting point of the insulating encapsulant"). *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1297 (Fed. Cir. 2012); *In re Yates*, 663 F.2d 1054, 1056 (C.C.P.A. 1981) ("no evidence of correlation of any kind" between variable and property); *In re Antonie*, 559 F.2d 618, 620 (C.C.P.A. 1977) (prior art did not recognize variable was relevant to desired property). Here, both experts agreed that neither Shafer nor Nakamura recognized any relationship between mean particle diameter and hardness (*i.e.*, that one should be larger and harder, while the other smaller and softer) and reduced formation temperature. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 318:3-319:23, 335:23-336:9, 337:3-12, 331:5-333:9, 378:22-379:6; Dkt. 546 (Remand Trial Day 3 Tr.) 411:3-16.

Finally, even if it applied, the presumption would not save Chilisin because Cyntec came "forward with evidence that (1) the prior art taught away from the claimed invention; (2) there were new and unexpected results relative to the prior art; [and] (3) there are other pertinent secondary considerations." *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1304-05 (Fed. Cir. 2015) (patentee may rebut presumption by coming forward with such evidence). Dr. Kohl testified

extensively that Shafer and Nakamura taught away from the claimed invention, and Dr. Kohl and Mr. Van Uden provided unrebutted testimony on unexpected results, commercial success, and other secondary considerations. Dkt. 546 (Remand Trial Day 3 Tr.) 418:3-419:12, 420:2-422:6, 423:17-426:24, 427:5-429:25, 458:3-461:1, 461:22-462:8, 462:9-463:5, 539:13-540:22 (Kohl); Dkt. 547 (Remand Trial Day 4 Tr.) 634:10-25, 637:10-638:24, 639:14-640:7, 640:25-643:9 (Van Uden); Trial Exs. 25, 57T, 302, 1310A, 1354A, 1356A, 1360A, 1363, A-272, A-288.

#### c. *Graham* Factor 3: A POSITA's Knowledge and Skill Do Not Support Obviousness

Chilisin's arguments regarding the third *Graham* factor again ignore the conflicting testimony from both experts. Chilisin claims that upon reading Shafer, a POSITA would have known (1) "that it mixed an alloy and pure iron, and that the alloy is generally larger and harder than pure iron powder," (2) "the benefit[s] of mixed powders," and (3) "[s]ize and hardness are inherent properties."[4] Mot. at 14-15.

But Dr. Kohl testified differently. He explained that a POSITA would only know that the powders in Shafer "could come in a variety" of hardnesses and sizes. Dkt. 545 (Remand Trial Day 2 Tr.) 381:3-9. This is because the references themselves provide no further guidance: "Shafer has no interest in size or hardness of their materials," and Nakamura "deals with a completely different problem" than the "larger harder, smaller softer" problem "faced by the inventors." *Id.* 381:10-382:22, 379:7-380:22. Chilisin's expert agreed that "there is nothing in Shafer that tells you what size you should select". *Id.* 319:9-23. He even conceded that the differences in the Shafer powders were such that they may not even meet the claims' requirements. *Id.* 313:2-319:15.

Consequently, the jury was entitled to credit Dr. Kohl's analysis on this factor to support its finding of nonobviousness.[5]

---

[4] Chilisin cites no evidence for this proposition.

[5] Chilisin also argues that because Dr. Kohl's infringement analysis identified powders that met the "larger harder smaller softer" requirement of the claims, this somehow suggests that a POSITA would understand Shafer to have necessarily disclosed the same. Chilisin cites no evidence or legal authority permitting such an attenuated inference. Indeed, Chilisin's infringing

(continued...)

#### d. *Graham* Factor 4: The Objective Evidence Supports Nonobviousness

Objective indicia "can be the most probative evidence of non-obviousness in the record, and enables the [] court to avert the trap of hindsight." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310 (Fed. Cir. 2010). At trial, Cyntec's experts detailed how several objective considerations applied to Cyntec's patents—including commercial success, long-felt need, unexpected and surprising results, and copying. Dkt. 546 (Remand Trial Day 3 Tr.) 417:16-463:5 (Kohl testimony on all objective factors); Dkt. 547 (Remand Trial Day 4 Tr.) 634:10-644:14 (Van Uden testimony on commercial success). Because the jury found for Cyntec, the Court must "presume the jury found that the evidence was sufficient to establish each" objective factor and can only review that decision to confirm "substantial evidence in the record" exists "to support each of those findings." *Apple Inc. v. Samsung Elecs. Co. Ltd.*, 839 F.3d 1034, 1053 (Fed. Cir. 2016).

Notably, Chilisin presented ***no rebuttal case*** at trial to Cyntec's objective evidence. The undisputed nature of Cyntec's evidence alone defeats Chilisin's JMOL Motion. However, adding insult to injury, Chilisin now belatedly and futilely attempts to pave over its failure at trial by asking the Court to reweigh Cyntec's evidence. *Compare* Mot. at 20 ("Cyntec's secondary considerations evidence was weak[.]") *with Wallace*, 479 F.3d at 624 ("court must not weigh the evidence"). Chilisin also impermissibly asks the Court to resolve inferences in ***Chilisin*'s** favor. *Compare* Mot. at 20 ("a large amount of revenue ***could*** simply reflect the fact that the overall market is large") *with Castro*, 833 F.3d at 1066 (JMOL motions require courts to construe evidence "in the light most favorable to the nonmoving party"). Chilisin's arguments are unauthorized and must be rejected at this stage.

---

products do not predate Cyntec's patents and are not prior art. *See* Dkt. 540 at 39 (instructing jury that "[p]rior art is previously known subject matter in the field of a claimed invention").

**i. Long-Felt Need**

Dr. Kohl testified extensively about the long-felt need in the industry for a molding choke (1) that could be manufactured without high temperature annealing (which melted internal wire components), ***and*** (2) with reduced "core loss," a measure of electrical inefficiency. Dkt. 545 (Remand Trial Day 2 Tr.) 356:1-17, 359:13-22, 360:24-361:9, 366:4-21, 370:17-371:6; Trial Exs. 302, A-288. Cyntec's patents solved this long-felt need. Dkt. 545 (Remand Trial Day 2 Tr.) 372:5-373:22 ("the inventors discovered a way that you can actually make a choke at high pressure without annealing, and it has the low core loss of previously you had to anneal"); Dkt. 546 (Remand Trial Day 3 Tr.) 421:25-422:6 (the problem the patents fixed was that annealing is "at such a high temperature that things like wires and the insulation on the wires are very vulnerable"); *id.* 425:6-426:2 ("embedding that coil [] into the high-pressure compression is practically impossible" which was "the prevailing wisdom and knowledge" at the time); *id.* 426:17-427:4 ("it was practically impossible to embed a [wire] if you had to do high-temperature annealing"); *id.* 421:1-24 ("Masaru in 1991 states what everybody knew, that annealing is required when you compress these magnetic particles because the bonds are distorted, you have to anneal out that stress.").

Chilisin's only response—that the Masaru and Brunner references predated Shafer and Nakamura (Mot. at 22)—only underscore the longstanding nature of the problem and how that problem persisted until solved by Cyntec. *See* Dkt. 546 (Remand Trial Day 3 Tr.) 425:18-426:2, 426:17-24 ("right before the filing of the patent, it was practically impossible to embed a core if you had to do high-temperature annealing"). Dr. Kohl's long-felt need analysis was well supported and constitutes substantial evidence. Chilisin's arguments simply go to the weight of the evidence, which is the province of the jury and should not be disturbed at JMOL.

**ii. Unexpected and Superior Results**

At trial, Cyntec presented unrebutted expert testimony that its patented technology surprised the industry, which believed at the time that it was impossible to produce molding chokes with low core loss without using high temperature annealing. *See* Dkt. 545 (Remand Trial Day 2

Tr.) 370:17-371:6; Trial Ex. 302. Cyntec proved the industry wrong by innovating technology that allowed core loss to be reduced even at higher molding pressures, something previously believed to be impossible (because high pressure molding was considered the ***cause*** of core loss). *See* Dkt. 545 (Remand Trial Day 2 Tr.) 372:5-373:22, 374:8-17. Dr. Kohl's testimony—which Chilisin's expert did not address or rebut—is substantial evidence of unexpected and superior results.

Chilisin (falsely) suggests that Dr. Kohl failed to compare the patents to "the closest prior art" (*Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.*, 25 F.4th 1354, 1373 (Fed. Cir. 2022)). Mot. at 23. Dr. Kohl expressly compared the inclusion of experiments relating to powder size, hardness, and core loss in the Cyntec patents to the complete absence of any experimental data in Shafer and Nakamura. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 371:15-374:4. And, Chilisin's own expert confirmed that neither Shafer nor Nakamura correlated "size and hardness" of the powders "to performance[.]" *Id.* 335:23-336:9 ("neither the data in Shafer or Nakamura correlates size and hardness to performance").

Citing *In re Soni*, Chilisin claims that Dr. Kohl improperly failed to rely on any "objective evidence." 54 F.3d 746, 750 (Fed. Cir. 1995). The case is inapposite, as Dr. Kohl did not limit his analysis to "[m]ere lawyer's arguments and conclusory statements in the specifications." Dr. Kohl specifically analyzed Cyntec's experimental data as well as statements in the prior art. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 371:7-373:22 Dkt. 546 (Remand Trial Day 3 Tr.) 428:24-429:25 (analysis of experimental data in asserted patents); *id.* 423:17-425:22 (analysis of Brunner prior art disclosure); *id.* 421:18-422:6, 425:23-25 (analysis of Masaru prior art disclosure); *id.* 427:11-428:23 (analysis of inventor disclosure document compared to prior art). The silence of its expert and Chilisin's reliance on inapplicable authority do not come close to meeting its burden of proof on its JMOL Motion.

**iii. Commercial Success**

Cyntec presented substantial evidence that both parties' use of the patented technology drove commercial success. Dr. Kohl testified at length that both Cyntec's and Chilisin's products

practice the asserted patents. Dkt. 546 (Remand Trial Day 3 Tr.) 437:13-450:13, 452:6-458:2. Cyntec executive Dan Wu likewise testified that Cyntec's use of the patented technology improved "manufacturing cost control" by reducing molding pressures during production. *Id.* 563:17-564:1. He further explained that the patented technology helped Cyntec secure "design wins" with customers and increase sales because it enabled Cyntec to satisfy demand for both "high performance and low cost." *Id.* 565:20-22, 569:3-10. According to Mr. Wu, the patented technology allowed Cyntec to design "high performance power chokes" with "lower core loss," a feature customers valued because it improved battery life in electronic devices. *Id.* 574:25-575:9, 576:24-577:13. That testimony was consistent with Dr. Kohl's analysis that the patented technology reduces core loss. Dkt. 545 (Remand Trial Day 2 Tr.) 351:19-352:16, 371:15-373:22, 374:8-17; Dkt. 546 (Remand Trial Day 3 Tr.) 427:11-428:15; Trial Ex. 302. Even Chilisin's expert Dr. Bravman agreed that one of the patents' objectives is to "reduce core loss." Dkt. 545 (Remand Trial Day 2 Tr.) 322:10-11; *see also id.* 292:8-16.

Cyntec also presented evidence tying those technical advantages to marketplace performance. Mr. Van Uden testified that the superior performance of Cyntec's patented technology resulted in "sustained customer relationships" and "consistent demand for the patented technology." Dkt. 547 (Remand Trial Day 4 Tr.) 638:5-24. He further testified that Chilisin likewise "began to experience substantial sales and growth" after it introduced its mixed-powder technology products, with an average growth rate of 49%. *Id.* 640:25-641:8. Based on that record, Mr. Van Uden concluded that both parties' patent-practicing products "have been commercially successful." *Id.* 644:2-14. The evidence showed that patented products generated more than $2.2 billion in sales and enjoyed higher profitability percentages. Dkt. 546 (Remand Trial Day 3 Tr.) 430:3-431:4, 436:10-437:10; Dkt. 547 (Remand Trial Day 4 Tr.) 634:11-634:25, 637:10-638:24, 641:5-8; Trial Exs. 6, 50. Taken together, this was substantial evidence from which the jury could find that the patented technology drove the commercial success of the infringing products.

Chilisin asserts that Cyntec's market share was under 4%, but the jury was not required to accept that characterization. Chilisin supported this argument with no fact or expert testimony or

any actual sales data from Cyntec. Indeed, market share, though potentially informative, is not required to show commercial success. *See Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1378 (Fed. Cir. 2021) ("The Board, however, erred in its analysis that gross sales figures, absent market share data, are inadequate to establish commercial success."). The 4% figure was drawn from a *Chilisin* presentation covering a broad mix of products—including "Multilayer, Power, SMD/Chip Inductors, EMC Filters, [and] Beads"—rather than the molded choke products at issue here. *See* Trial Ex. A-204; Dkt. 546 (Remand Trial Day 3 Tr.) 567:6-568:13 (Cyntec's Dan Wu explaining the percentages were not specific to the patent-practicing products). Cyntec, by contrast, presented evidence tied to the relevant molded choke market. Based on Cyntec's sales data, discussions with Cyntec executives, and his analysis of the relevant markets, Mr. Van Uden testified that Cyntec's market share reached as high as 60% in notebooks and 50% in smartphones. Dkt. 546 (Remand Trial Day 3 Tr.) 430:3-431:4, 436:10-437:10; Dkt. 547 (Remand Trial Day 4 Tr.) 634:11-634:25, 637:10-638:24, 642:11-20; Trial Exs. 6, 50.

Chilisin chose not to present a commercial success expert at trial, and its sole fact witness confirmed that Chilisin sought to emulate Cyntec's success with customers. *See* Dkt. 544 (Remand Trial Day 1 Tr.) 170:1-9.

**iv. Copying**

Cyntec presented overwhelming, unrebutted evidence of copying. Chilisin admitted that it had access to Cyntec's patented products and undertook to create replicas of Cyntec's patented products by copying Cyntec's patented products. Dkt. 547 (Remand Trial Day 4 Tr.) 624:23-630:12 (testimony of S. Wei); Trial Exs. 57T, 72T, 122, 133T, 134T, 1363; *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) (copying applies where someone builds "a virtually identical replica . . . or [has] access to, and substantial similarity to, the patented product"); *Medtronic, Inc. v. Teleflex Innovations S.A.R.L.,* 70 F.4th 1331, 1340 (Fed. Cir. 2023) ("the copying inquiry involves a comparison of the competitor's product with the allegedly copied patented product"). Chilisin sought to make molded chokes that "completely match Cyntec

[product] characteristics." *E.g.*, Trial Ex. 1363 at -30071.[6] Chilisin sought to obtain samples and specifications of Cyntec's products. Trial Exs. 57T, 133T. In communications with common customers, Chilisin stated that it could make exact replicas of Cyntec's products "with same dimensions with Cyntec's" and whose electrical characteristics "meet [Cyntec's] as close as possible." Trial. Ex. 122 at -9954-55. This evidence more than adequately supports the jury's implicit finding that there was copying.

Chilisin tries to explain away its efforts to copy Cyntec's patented products through attorney argument. *See* Mot. at 21-22. However, Chilisin is merely arguing for its interpretation of the evidence, which is impermissible in a Rule 50(b) motion. Chilisin ignores that copying can and often is established only through circumstantial evidence. *Medtronic*, 70 F.4th at 1340 ("Medtronic's argument is tantamount to requiring that copying can be proven only by direct evidence 'such as photos of patented features or disassembly of products' . . . Our case law has never drawn any such distinction . . . Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."). The jury was certainly free to interpret the evidence in the way that Cyntec does – namely, that the testimony of Chilisin's own witnesses (Scott Wei and Tania Wu) and its internal documents confirmed that Chilisin had access to Cyntec's patented products, sought to create replicas of those products by serving as a second source, and matched the electrical characteristics of Cyntec's molded chokes.

#### 3. A POSITA Would Not Be Motivated to Combine Shafer and Nakamura

The Court correctly instructed the jury on the law of motivation to combine. *See* Dkt. 540 at 39-40. The jury thereafter found in Cyntec's favor, and the Court must "presume [the jury] resolved the conflicting expert testimony and found that a skilled artisan would not have been

---

[6] Chilisin's reliance on Mr. Wu's testimony that "cross" does not necessarily mean "copy" misses the point. *See* Mot. at 22. Cyntec did not ask the jury to infer copying from the word "cross" alone. Rather, the evidence showed that Chilisin had access to Cyntec's products and specifications and undertook to create replicas that matched Cyntec's products and electrical characteristics. Trial Exs. 57T, 122, 133T, 134T, 1363.

motivated to combine" the prior art. *Apple Inc.*, 839 F.3d at 1052. The jury's verdict must stand provided substantial evidence exists for its findings. *Id.* As discussed below, there is more than enough evidence of a lack of motivation to combine.

As a preliminary matter, a POSITA would not find Shafer or Nakamura useful in solving the problems faced by the inventors. *See supra*, Section III.B.2.a. As such, there is no "motivation to combine the Shafer and Nakamura reference" because "nothing is imported of value." Dkt. 546 (Remand Trial Day 3 Tr.) 416:24-417:8. Dr. Kohl further explained that Shafer and Nakamura themselves "deal with different things" (Dkt. 545 (Remand Trial Day 2 Tr.) 376:25-377:8):

> Well, they are, first of all, related to different technologies. One has a wire; one doesn't. So you can't simply combine those unrelated things. And in combining them, one has to take from -- learn from one and bring it into another for a particular reason. And as I show here, Shafer doesn't teach any size differences. Nakamura doesn't teach any size differences. They can be the same.
>
> Nakamura does not have the buried wire. Shafer does not teach hardness differences. So there is really nothing to learn or bring in from one to the other.

Dkt. 546 (Remand Trial Day 3 Tr.) 415:17-416:5. Bravman conceded several of the same points:

- "[T]here is nothing in Shafer that tells you what size you should select for Ancorsteel 1000C (Dkt. 545 (Remand Trial Day 2 Tr.) 318:3-319:23), one of the powders mentioned in Shafer;
- "[N]othing in Shafer [ ] has a discussion as to the relationship between hardness and the two particles" (*id*. 318:3-319:23);
- "[N]either the data in Shafer or Nakamura correlates size and hardness to performance" (*id*. 335:23-336:9);
- Nakamura provides no guidance on optimizing size ranges (*id*. 337:3-12);
- "[T]here is nothing in Nakamura that says that the alloy is required to be bigger than the iron powder" (*id*. 331:5-333:9); and
- Nakamura lacks any disclosure of a wire (*id*. 327:12-15, 330:16-25, 385:18-386:5).

Chilisin does nothing to address the above but recite selected evidence in its favor while ignoring evidence in Cyntec's favor. Then Chilisin asks the Court to reverse the jury's finding of

obviousness because it contends that its position of obviousness was supported by substantial evidence. This is the exact opposite of the applicable legal standards. First, Chilisin was required to meet its burden of proof by ***clear and convincing*** evidence. Second, the Court must make all inferences in Cyntec's favor and assess whether the jury's verdict of nonobviousness was supported by substantial evidence. *Callicrate*, 427 F.3d at 1366.

Given Dr. Kohl's well-reasoned testimony and Dr. Bravman's numerous concessions, the jury had more than substantial evidence for its implicit finding that a POSITA would not be motivated to combine Shafer and Nakamura.

**C. Chilisin's Reexamination Arguments Contravene Federal Circuit Authority**

Chilisin's final argument urges the Court to disregard the reexaminations of the two asserted patents. However, as the Court has already noted, it would be legal error to ignore the results of those proceedings. Dkt. 512 at 3 ("considering the Federal Circuit's mandate to consider the final determinations by the PTO, the Court finds that a judicial notice jury instruction on the reexamination proceedings would not be unfairly prejudicial"). The reexaminations are relevant because during those proceedings, the USPTO Examiner expressly stated he considered ***both*** Shafer and Nakamura (the same prior art at issue in the trial). Dkt. 452-6 (Ex. 3) at CYN_0230805; Dkt. 452-11 (Ex. 6) at CYN_0228669; *Volterra Semiconductor Corp. v. Primarion, Inc.,* No. 08-cv-05129, 2011 WL 4079223, at *10 (N.D. Cal. Sep. 12, 2011) ("final determinations by the PTO *must* be considered when the challenge in the reexamination proceeding was based on the same prior art as is at issue in the litigation.").

If the Court were not inclined to disregard them, Chilisin tells the Court it should reweigh and re-adjudicate the reexaminations, which the Court is also not permitted to do. For example, Chilisin urges the Court to devalue the reexaminations by falsely alleging that Cyntec "argued different claim constructions during the reexamination" and makes hay about the absence of any

extended analysis of Shafer.[7] Mot. at 24. Chilisin is simply asking the Court to serve as fact finder as part of a trial-within-a-trial, which is plainly improper in a JMOL Motion.

## IV. CONCLUSION

Chilisin's Rule 50(b) Motion includes several unpreserved arguments and repeatedly attempts to reargue its invalidity case, inviting legal error through improper reweighing and failing to construe all evidentiary disputes and factual inferences in Cyntec's favor. The Court should accordingly deny Chilisin's Motion.

Dated: April 27, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ James C. Yoon*
James C. Yoon
E-mail: jyoon@wsgr.com

*Attorney for Plaintiff*
*CYNTEC COMPANY, LTD.*

---

[7] Chilisin's claim that Cyntec "argued different claim constructions" is simply false. Dkt. 462 at 2-3 (explaining why Cyntec never argued "opposite positions" during reexamination). Nor is it relevant whether the Examiner substantively discussed Shafer since he confirmed he *considered* it.