JAMES C. YOON (State Bar No. 177155)
jyoon@wsgr.com
CHRISTOPHER MAYS (State Bar No. 266510)
cmays@wsgr.com
JEFFREY NALL (State Bar No. 340675)
jnall@wsgr.com
OBIE REYNOLDS (State Bar No. 352072)
oreynolds@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

LUCY YEN (State Bar No. 224559)
lyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
31 West 52nd Street, Fifth Floor
New York, New York 10019-6118
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

CELINE LIU (State Bar No. 268990)
celine.liu@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, D.C. 20006
Telephone: (202) 791-8800
Facsimile: (650) 493-6811

*Attorneys for Plaintiff*
*CYNTEC COMPANY, LTD.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CYNTEC COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>CHILISIN ELECTRONICS CORP. and CHILISIN AMERICA LTD.,<br><br>Defendants. | Case No.: 3:18-cv-00939-TLT<br><br>**CYNTEC COMPANY, LTD.'S OPPOSITION TO DEFENDANTS' RULE 59 MOTION FOR A NEW TRIAL**<br><br>Hearing Date: September 15, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

**TABLE OF CONTENTS**

**PAGE**


I. INTRODUCTION ........ 1

II. LEGAL STANDARDS ........ 1

III. ARGUMENT ........ 2

A. The Issues in Chilisin's Rule 50(b) Motion Do Not Entitle It to a New Trial ........ 2

1. The Objective Factors Support the Jury's Verdict ........ 3

2. Chilisin's Self-Serving Summary Does Not Show That the Jury's Verdict Was Against the Clear Weight of the Evidence ........ 8

B. There Were No Inflammatory Statements or Evidence at Trial ........ 11

C. The Court Correctly Denied Chilisin's Novel Instruction on Ranges ........ 14

D. Dr. Kohl's Copying Testimony Was Timely Disclosed ........ 17

E. The Reexamination Proceedings Were Properly Admitted ........ 19

F. There Was No Cumulatively Prejudicial Impact ........ 21

IV. CONCLUSION ........ 21

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.*,
25 F.4th 1354 (Fed. Cir. 2022) .... 6

*Allergan, Inc. v. Sandoz Inc.*,
796 F.3d 1293 (Fed. Cir. 2015) .... 16

*Almirall, LLC v. Amneal Pharms. LLC*,
28 F.4th 265 (Fed. Cir. 2022) .... 15

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
4 F.4th 1370 (Fed. Cir. 2021) .... 6

*Cotton v. City of Eureka*,
860 F.Supp.2d 999 (N.D. Cal. 2012) .... 21

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) .... 3

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
807 F.2d 955 (Fed. Cir. 1986) .... 20

*Diversitech Corp. v. Century Steps, Inc.*,
850 F.2d 675 (Fed. Cir. 1988) .... 11

*E.I. du Pont de Nemours & Co. v. Synvina C.V.*,
904 F.3d 996 (Fed. Cir. 2018) .... 15

*EagleView Techs., Inc. v. Xactware Sols., Inc.*,
485 F.Supp.3d 505 (D.N.J. 2020) .... 3, 8

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
64 F.3d 1553 (Fed. Cir. 1995) .... 10, 11

*In re Antonie*,
559 F.2d 618 (C.C.P.A. 1977) .... 16

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012) .... 16

*In re Brandt*,
886 F.3d 1171 (Fed. Cir. 2018) .... 15

*In re Yates*,
663 F.2d 1054 (C.C.P.A. 1981) .... 16

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004) .... 4

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
141 F.4th 1367 (Fed. Cir. 2025) .......... 14

*Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*,
315 F.Supp.3d 1130 (N.D. Cal. 2018) .......... 2, 3

*Landes Const. Co. v. Royal Bank of Canada*,
833 F.2d 1365 (9th Cir. 1987) .......... 2

*Larez v. City of Los Angeles*,
946 F.2d 630 (9th Cir. 1991) .......... 21

*Linear Tech. Corp. v. Monolithic Power Sys., Inc.*, No. 06-476 GMS,
2009 WL 3805567 (D. Del. Nov. 12, 2009) .......... 3, 10

*McClean v. State Farm Mut. Auto. Ins. Co.*, No. 2:13-cv-00101-LDG-NJK,
2013 WL 12218463 (D. Nev. Dec. 6, 2013) .......... 18

*Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*,
70 F.4th 1331 (Fed. Cir. 2023) .......... 4, 7

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011) .......... 15

*Montera v. Premier Nutrition Corp.*,
111 F.4th 1018 (9th Cir. 2024) .......... 12

*Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*,
996 F.3d 1342 (Fed. Cir. 2021) .......... 13, 14

*Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*,
652 F.Supp.3d 1098 (C.D. Cal. 2023) .......... 12, 21

*Rudy-Glanzer v. Glazer*,
232 F.3d 1258 (9th Cir. 2000) .......... 12

*Ruvalcaba v. City of Los Angeles*,
64 F.3d 1323 (9th Cir. 1995) .......... 12, 14, 18

*Settlegoode v. Portland Pub. Schs.*,
371 F.3d 503 (9th Cir. 2004) .......... 12

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
251 F.3d 814 (9th Cir. 2001) .......... 1, 2

*Smith v. M/V Horizon Spirit*, No. 21-CV-04250-MMC,
2023 WL 4137477 (N.D. Cal. June 21, 2023), *aff'd sub nom. Smith v. Sunrise Operations, LLC*, No. 23-15921,
2024 WL 3372690 (9th Cir. July 11, 2024) .......... 8

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008) .......... 15

*Tennant v. Peoria & P.U. Ry. Co.*,
321 U.S. 29 (1944) .......... 8

*United States v. Washington*,
462 F.3d 1124 (9th Cir. 2006) .......... 13

*Zhang v. Am. Gem Seafoods, Inc.*,
339 F.3d 1020 (9th Cir. 2003) .......... 14

**RULES**

FED. R. CIV. P. 26(e)(1)(A) .......... 17, 18

FED. R. CIV. P. 51(b)(2), (c)(2)(A) .......... 14

FED. R. CIV. P. 59 .......... *passim*

FED. R. EVID. 403 .......... 12

FED. R. EVID. 702 .......... 18

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| ’312 Patent | U.S. Patent No. 8,922,312 |
| ’037 Patent | U.S. Patent No. 9,481,037 |
| Cyntec | Cyntec Company, Ltd. |
| Chilisin | Chilisin Electronics Corp. and Chilisin America Ltd. |
| Dr. Bravman | Chilisin’s expert, John C. Bravman, Ph.D. |
| Dr. Kohl | Cyntec’s expert, Paul A. Kohl, Ph.D. |
| Ex. | Exhibits attached to the Declaration of Christopher D. Mays |
| JMOL | Judgement as a Matter of Law |
| Mays Decl. | Declaration of Christopher D. Mays in support of Cyntec’s Oppositions to Chilisin’s Post-Trial Motions |
| MIL | Motion *in Limine* |
| Motion or Mot. | Chilisin’s Rule 59 Motion for a New Trial (Dkt. 560) |
| Nakamura | Japanese Patent Appl. No. 2004-106072 (Trial Ex. A-017) |
| POSITA | Person of Ordinary Skill in the Art at the time of invention |
| Remand Trial Day 1 Tr. | 3/2/2026 Trial Transcript of Remand Proceedings Vol. 1 (Dkt. 544) |
| Remand Trial Day 2 Tr. | 3/3/2026 Trial Transcript of Remand Proceedings Vol. 2 (Dkt. 545) |
| Remand Trial Day 3 Tr. | 3/4/2026 Trial Transcript of Remand Proceedings Vol. 3 (Dkt. 546) |
| Remand Trial Day 4 Tr. | 3/5/2026 Trial Transcript of Remand Proceedings Vol. 4 (Dkt. 547) |
| Shafer | U.S. Patent No. 6,460,244 (Trial Ex. A-033) |
| Trial Ex. | Admitted Trial Exhibits attached to the Declaration of Christopher D. Mays |

## I. INTRODUCTION

Chilisin's Rule 59 motion (the "Motion") suffers from many of the same failures as its Renewed JMOL Motion. In seeking another redo, Chilisin selectively recounts the evidence in its favor and invites the Court to do what Rule 59 does not permit—substitute its judgment for that of the jury. But a new trial is an extraordinary remedy, reserved for cases where the verdict is against the clear weight of the evidence or results in a miscarriage of justice. This is not such a case. The jury considered competing expert testimony, unrebutted evidence of objective indicia, and extensive documentary proof—including Chilisin's own documents—and reached a verdict that was fully consistent with the record. Chilisin's disagreement with that outcome does not establish the "definite and firm conviction" required to disturb it.

In addition to relying on a wholly one-sided recitation of the record, Chilisin also relies on a series of alleged trial errors. The Court's rulings were proper. Certainly, none resulted in the kind of prejudice that could be described as a manifest injustice. Chilisin's objections to Mr. Wu's discussion about the economic effects of its copying were sustained (and the testimony stricken). Chilisin's complaints about the reexamination record also resulted in the Court limiting the instruction, adopting Chilisin's own proposals in substantial part, and reminding the jury it could assign whatever weight to the reexamination proceedings it deemed appropriate. Chilisin's novel "overlapping ranges" instruction was unprecedented, incorrect, and inapplicable to a record containing multiple differences between the prior art and the claimed invention. Dr. Kohl's copying testimony was long ago disclosed, properly admitted, and wholly unrebutted by Chilisin's own choice.

In the end, Chilisin identifies no error—let alone one that affected the fairness of the proceedings or the integrity of the verdict. Because the record easily supports the jury's verdict and reveals no miscarriage of justice, Chilisin's Motion should be denied.

## II. LEGAL STANDARDS

The Court "may grant a new trial if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice. . . [A] district court may not grant a new trial simply because

it would have arrived at a different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) ("[I]f the jury's verdict is not against the clear weight of the evidence, we may find that a district court abused its discretion in granting a new trial."). A motion for a new trial should be granted only if the Court "on the ***entire*** evidence is left with the definite and firm conviction that a mistake has been committed." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987) ("Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake."). Based on these standards, the Court should deny Chilisin's Motion.

## III. ARGUMENT

Chilisin raises five grounds for a new trial. None of them, individually or collectively, calls into the fairness of the proceedings in such a way that justifies a new trial. The jury's verdict was supported by the clear weight of the evidence, much of which Chilisin never chose to dispute given that it failed to offer expert opinions on the objective factors, bring knowledgeable fact witnesses, or even put on a meaningful rebuttal case. Chilisin believes the jury could have found in its favor, but a new trial is not warranted even if Chilisin or the Court itself would have reached a different result. *See Silver Sage*, 251 F.3d at 819.

### A. The Issues in Chilisin's Rule 50(b) Motion Do Not Entitle It to a New Trial

Alleging that "the jury reached a seriously erroneous result on obviousness," Chilisin's first ground for a new trial is a re-argument of its Rule 50(b) JMOL Motion and its invalidity case at trial. Mot. at 2-6. Through a series of bullet points, Chilisin puts its spin on the trial, enumerating what it sought to establish, ignoring Cyntec's rebuttal evidence, and creating an alternative universe in which the jury heard only Chilisin's version of the case. Unfortunately for Chilisin, it cannot obtain a new trial by "cataloguing the evidence it considers favorable to its case" while disregarding Cyntec's rebuttal case. *See Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 315 F.Supp.3d 1130, 1138 (N.D. Cal. 2018) (quoting *Silver Sage*, 251 F.3d at 819). Nor can Chilisin "slap[] on" a request for a new trial to "its Rule 50 arguments," as Rule 59 is a separate inquiry from Rule 50. *Id.* Given the general jury verdict, the Court should presume that the jury resolved the underlying factual disputes in favor of Cyntec. *Id.* at 1140 (in reviewing jury's general

verdict of nonobviousness, "the Court presumes that the jury resolved the underlying factual disputes in favor of Johnstech and will not disturb those presumed findings unless they are contrary to the clear weight of the evidence").

Here, the bar for a new trial is set even higher because Chilisin bore the burden of proving obviousness at trial by clear and convincing evidence. *See EagleView Techs., Inc. v. Xactware Sols., Inc.*, 485 F.Supp.3d 505, 519 (D.N.J. 2020) (defendant seeking new trial on obviousness "must establish that their trial evidence was ***overwhelming***, leaving no room for the jury to draw significant inferences in favor of" patentee). Chilisin came nowhere close to meeting its burden of proof at trial. The jury deliberated for less than an hour before ruling in Cyntec's favor. Far from "overwhelming," Chilisin's case was absent in many respects. For example, Chilisin did not (and could not) rebut Cyntec's evidence of objective indicia of nonobviousness: Chilisin's technical expert did not offer such opinions; Chilisin elected not to call its financial expert to respond to Mr. Van Uden's commercial success analysis; and Chilisin chose not to call any fact witnesses to address the significant number of Chilisin documents showing copying—even though a chief author and participant of those emails (Scott Wei) was under subpoena.

Chilisin put itself in a corner and now has nothing to rely on except the "conflicting testimony" of the experts. However, such "conflicting testimony" is far from the "overwhelming" evidence courts look for when a party bearing an elevated burden of proof seeks to overturn a verdict. The jury "was free to accept" Cyntec's evidence of non-obviousness and reject Chilisin's arguments. *Linear Tech. Corp. v. Monolithic Power Sys., Inc.*, No. 06-476 GMS, 2009 WL 3805567, at *5 (D. Del. Nov. 12, 2009) ("Given the conflicting testimony, a reasonable jury was entitled to reject MPS' simultaneous invention theory."). Chilisin simply cannot demonstrate that the "jury's verdict in [Cyntec's] favor was impermissible." *EagleView Techs.*, 485 F.Supp.3d at 519.

### 1. The Objective Factors Support the Jury's Verdict

Objective indicia "can be the most probative evidence of non-obviousness in the record, and enables the [] court to avert the trap of hindsight." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310 (Fed. Cir. 2010). At trial, Cyntec's experts detailed how several objective

considerations applied to Cyntec's patents—including long-felt need, unexpected and surprising results, commercial success, and copying. Dkt. 546 (Remand Trial Day 3 Tr.) 417:16-463:5 (Kohl testimony on all objective factors); Dkt. 547 (Remand Trial Day 4 Tr.) 634:10-644:14 (Van Uden testimony on commercial success).

At the outset, Dr. Kohl provided a history of molding chokes. For many decades before Cyntec's patents, manufacturing molding chokes required high-temperature annealing to reduce inefficient "core loss." Dkt. 545 (Remand Trial Day 2 Tr.) 356:1-17, 359:13-22; Trial Ex. A-288. However, annealing tends to melt the chokes' internal components, *e.g.*, the insulated wire buried inside the chokes. Dkt. 545 (Remand Trial Day 2 Tr.) 356:9-17, 360:24-361:9, 366:4-21. Because of this "Catch-22," the industry believed that molding chokes were doomed to suffer from poor core loss. *Id.* 370:17-371:6; Trial Ex. 302. Cyntec's patents solved this problem by devising a way to manufacture a molding choke ***with*** low core loss but ***without*** the need for annealing. Dkt. 545 (Remand Trial Day 2 Tr.) 372:5-373:22. By also enabling higher molding pressures to be used during manufacturing without creating core loss, Cyntec's invention contradicted the accepted wisdom of the day and surprised the industry, which historically assumed high pressure molding was the cause of core loss. *Id.* 374:8-17.

Because of the superior and unexpected performance of Cyntec's invention, patented products of both parties gained significant commercial success in the market, with Cyntec selling over $2.2 billion dollars, Chilisin experiencing a staggering 48.7% growth rate in sales, and both parties enjoying higher profitability percentages. Dkt. 546 (Remand Trial Day 3 Tr.) 430:3-431:4, 436:10-437:10; Dkt. 547 (Remand Trial Day 4 Tr.) 634:11-634:25, 637:10-638:24, 638:25-640:5; Trial Exs. 6, 50.

Cyntec's patented products also engendered copycat products from competitor Chilisin, who sought to obtain samples of Cyntec's molded chokes and create replicas. *See Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) (copying applies where someone builds "a virtually identical replica . . . or [has] access to, and substantial similarity to, the patented product"); *Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*, 70 F.4th 1331, 1340 (Fed. Cir. 2023) ("the copying inquiry involves a comparison of the competitor's product with the

allegedly copied patented product"). To get at Cyntec's chokes, Chilisin disassembled mobile phones into which Cyntec's products were incorporated (among other things). Trial Ex. 133T. Chilisin created replica products so it could serve as an alternative supplier. *See* Dkt. 547 (Remand Trial Day 4 Tr.) 624:23-630:12 (S. Wei testimony); Trial Exs. 57T, 72T, 122, 133T, 134T, 1363. Chilisin internally emphasized the need for molded chokes that "completely match Cyntec [product] characteristics." *E.g.*, Trial Ex. 1363 at -30071. When Chilisin offered customers non-infringing products, they were rejected because Chilisin's "core loss is significantly higher compare [*sic*] to cross part (Cyntec)." *See* Trial Ex. 1384T (email to Mr. Wei and others). Chilisin had to assure its customer that it would be able to make exact replicas of Cyntec's products with "same dimensions with Cyntec's" and whose electrical characteristics "meet [Cyntec's] as close as possible." Trial. Ex. 122 at -9954-55. Chilisin successfully obtained specifications for Cyntec's products, and account manager, Melanie Chen, instructed that Chilisin's products needed to be "exactly the same" without "room for negotiation because the client prefers CYNTEC." Trial Ex. 57T (email to S. Wei and others). The mandate and its result were that Chilisin offered virtually identical products—using the same magnetic powders—to compete with Cyntec. Dkt. 545 (Remand Trial Day 2 Tr.) 362:5-8, 363:2-14, 364:1-365:13; Dkt. 546 (Remand Trial Day 3 Tr.) 440:25-442:17, 444:18-446:17, 444:22-447:21; Trial Exs. 297A, 299A.

Chilisin did not rebut any of this evidence. Its technical expert, Dr. Bravman, offered no testimony about objective indicia of nonobviousness. Likewise, Chilisin elected not to call its financial expert from the first trial to respond to Mr. Van Uden, leaving Mr. Van Uden's commercial success opinions similarly unrebutted. Most telling of all, Chilisin chose not to call any Chilisin witness to explain the numerous Chilisin documents showing Chilisin's copying scheme. Scott Wei—the person involved in numerous such efforts—never appeared at trial. Instead, Chilisin presented testimony from Ms. Wu, who merely confirmed that Chilisin's goal and practice were to meet customer requirements, including requirements that Chilisin match Cyntec's electrical characteristics.[1] Dkt. 544 (Remand Trial Day 1 Tr.) 160:3-12.

---

[1] Relatedly, Cyntec issued a trial subpoena to Scott Wei, and Chilisin confirmed that he could have appeared.

Having chosen not to put on a rebuttal case during trial, Chilisin resorts to attorney argument after trial to attempt to explain away the damaging documents. These arguments are meritless.

***Long-felt Need***. Chilisin tries to minimize the import of Dr. Kohl's long-felt need analysis by pointing to two documents that Chilisin contends predate Shafer and Nakamura. Mot. at 5. However, Chilisin offers no reason why the date of these documents negates Dr. Kohl's identification of the longstanding problems of core loss and melted components in the manufacture of molding chokes. Indeed, Dr. Kohl extensively explained the nature of the historical problem and how that problem persisted until solved by Cyntec. *See* Dkt. 546 (Remand Trial Day 3 Tr.) 425:18-426:2, 426:17-24 ("right before the filing of the patent, it was practically impossible to embed a core if you had to do high-temperature annealing").

***Unexpected Results***. Chilisin falsely suggests that Dr. Kohl failed to compare the patents to "the closest prior art" (*Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.*, 25 F.4th 1354, 1373 (Fed. Cir. 2022)). Mot. at 5. However, Dr. Kohl expressly compared the patents' disclosed experiments relating to powder size, hardness, and core loss to the complete absence of corresponding experimental data or discussion in Shafer and Nakamura. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 371:15-374:4. Chilisin's expert likewise acknowledged that neither Shafer nor Nakamura correlated "size and hardness" of the powders "to performance." *Id.* 335:23-336:9 ("neither the data in Shafer or Nakamura correlates size and hardness to performance").

***Commercial Success***. Chilisin claims that Cyntec's market share was under 4% and therefore Cyntec could not be considered successful. However, Chilisin supported this argument with no fact or expert testimony or any actual sales data from Cyntec. Indeed, market share, though potentially informative, is not required to show commercial success. *See Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1378 (Fed. Cir. 2021) ("The Board, however, erred in its analysis that gross sales figures, absent market share data, are inadequate to establish commercial success."). Referencing a presentation by ***Chilisin***, Chilisin misleadingly describes a speculative market share percentage attributed to Cyntec for a host of products—"Multilayer, Power, SMD/Chip Inductors, EMC Filters, Beads"—that are not even the products at issue in this case.

Chilisin offers no reason why a customer shopping for miniaturized, high-performing molded chokes manufactured by Cyntec would purchase, for example, the "EMC Filters" or "Beads" referenced in Trial Ex. A-204. As Cyntec's corporate representative Dan Wu confirmed, those percentages reflect market shares that are totally unrelated to the patent-practicing products. Dkt. 546 (Remand Trial Day 3 Tr.) 567:6-568:13. On the other hand, Mr. Van Uden analyzed Cyntec's sales data, met with Cyntec executives, and determined that Cyntec's actual market share for molded chokes was orders of magnitude larger than Chilisin claimed: up to 60% in the notebook market and 50% in the smartphone market. Dkt. 547 (Remand Trial Day 4 Tr.) 642:11-20.

Chilisin also argues that "no evidence was presented at trial of any customers requesting mixed powders." Mot. at 5. But a finding of commercial success does not require Cyntec's customers to reference technology by claim language or insist on certain material composition. Mr. Wu's trial testimony made clear that customers sought the features enabled by Cyntec's patented technology—including smaller size, higher performance, and lower core loss. Dkt. 546 (Remand Trial Day 3 Tr.) 576:17-579:16. Mr. Van Uden's testimony also separately established that Cyntec achieved substantial sales, high market share, and superior profitability for those products. Dkt. 547 (Remand Trial Day 4 Tr.) 637:10-642:20.

***Copying***. Chilisin ignores that copying can be established through circumstantial evidence. *Medtronic*, 70 F.4th at 1340 ("Medtronic's argument is tantamount to requiring that copying can be proven only by direct evidence 'such as photos of patented features or disassembly of products' . . . Our case law has never drawn any such distinction . . . Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."). Evidence confirming that Chilisin had access to Cyntec's patented products, sought to create replicas of those products by serving as a second source, and matched the electrical characteristics of Cyntec's molded chokes clearly meets this standard. Indeed, through analysis conducted by a third-party laboratory, Dr. Kohl confirmed that Chilisin ***used the same*** combination of iron-silicone-chromium powder and carbonyl iron powder found in Cyntec's products. Dkt. 545 (Remand Trial Day 2 Tr.) 362:5-8, 363:2-14, 364:1-365:13; Dkt. 546 (Remand Trial Day 3 Tr.) 440:25-442:17, 444:18-446:17, 444:22-447:21; Trial Exs. 297A, 299A.

Chilisin tries to whitewash its efforts to copy Cyntec's patented products through attorney argument, but no witness testimony or other admissible evidence supports Chilisin's after-the-fact justifications. For example, Chilisin volunteers that it "did not have any information about the hardness of the powders Cyntec used," Mot. at 4, but this admission is just more circumstantial evidence of copying. At trial, no Chilisin witness explained how it ended up with the same powders if it did not copy. Chilisin's purported unawareness of the "hardness" properties of the powders is entirely consistent with a party who blindly copied their competitor's products without performing any independent development. At a minimum, the jury was entitled to interpret the evidence this way in finding for Cyntec.

Simply put, Chilisin's arguments do not alter the fact that the jury was entitled to credit Cyntec's evidence, weigh it against Chilisin's lack of any rebuttal evidence, and conclude that Chilisin failed to meet its clear and convincing burden.

### 2. Chilisin's Self-Serving Summary Does Not Show That the Jury's Verdict Was Against the Clear Weight of the Evidence

In arguing for a new trial, Chilisin includes a self-serving "summary" of the evidence. Mot. at 2-6. Chilisin apparently believes that it can use its one-sided recitation to suggest that the trial "le[ft] ***no room*** for the jury to draw significant inferences" in Cyntec's favor. *See EagleView Techs*, 485 F.Supp.3d at 519. The Court should reject Chilisin's attempt to rewrite the standard for Rule 59. *See Smith v. M/V Horizon Spirit*, No. 21-CV-04250-MMC, 2023 WL 4137477, at *2 (N.D. Cal. June 21, 2023), *aff'd sub nom. Smith v. Sunrise Operations, LLC*, No. 23-15921, 2024 WL 3372690 (9th Cir. July 11, 2024) ("It is well established [ ] that '[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'") (quoting *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944)).

Chilisin argues it was "undisputed" that the Shafer and Nakamura references were within the scope and content of the prior art. However, Dr. Kohl testified to exactly the opposite, noting that Nakamura teaches away from the claimed invention. Indeed, while the Asserted Patents define "related art" as requiring an "embedded wire" (Dkt. 546 (Remand Trial Day 3 Tr.) 414:19-415:9),

Nakamura discloses only a "toroidal core" made of magnetic powders, with ***no wire*** embedded in the core. Dkt. 545 (Remand Trial Day 2 Tr.) 356:23-357:3; *see also id.* at 330:4-22 (Dr. Bravman testifying that in toroidal devices the wire "is always on the ***outside*** of a toroidal core"). As Dr. Kohl plainly stated, Nakamura "doesn't have a wire in it," "is not a related kind of technology," and a POSITA would not "look to Nakamura to deal with the high-temperature annealing short circuit problem" facing the inventors of Cyntec's patents. *Id.* 381:23-382:11. Such testimony clearly establishes that Nakamura was not "in the same field as the claimed invention [and] is from another field to which a person of ordinary skill in the field would look to solve a known problem." Dkt. 540 at 38-39.

Chilisin's related argument—that Cyntec uses toroidal cores to test "the properties of magnetic powders" (Mot. at 4)—is similarly irrelevant. Even if Cyntec did, Chilisin points to no instance where such a test involved a wire embedded in a toroidal core as required by the patents. As Dr. Kohl explained, toroidal cores without embedded wires do not carry "any risk of short circuits" which was a principal concern of the inventors. Dkt. 545 (Remand Trial Day 2 Tr.) 357:4-21, 370:17-371:6.

Chilisin also claims it presented "overwhelming evidence that all elements of the asserted claims can be found in the prior art" and "presented extensive evidence of a motivation to combine Shafer and Nakamura." Chilisin again ignores Dr. Kohl's testimony, concluding that neither reference (even when combined) satisfied the elements of claim 1:

> by means of the hardness difference of the first magnetic powder and the second magnetic powder, the mixture of the first magnetic powder and the second magnetic powder and the conducting wire buried therein are combined to form an integral magnetic body at a temperature lower than the melting point of the insulating encapsulant.

'312 Patent Claim 1; *see* Dkt. 545 (Remand Trial Day 2 Tr.) 376:23-377:8, 378:2-16, 381:10-19, 381:23-382:22, 383:6-386:1; Dkt. 546 (Remand Trial Day 3 Tr.) 410:17-411:2, 414:23-415:9, 416:11-417:15, 462:9-463:5; 546:1-14.

Additionally, Chilisin's expert (Dr. Bravman) agreed that "Ancorsteel 1000C can be chosen in a range of particle sizes"; that Ancorsteel 1000C can come in hardnesses that "would

not practice" the '312 Patent; and "there is nothing in Shafer that tells you what size you should select for Ancorsteel 1000C." Dkt. 545 (Remand Trial Day 2 Tr.) 318:3-319:23; Trial Ex. A-33; *id.* 311:1-3 ("there is no explicit hardness" in Shafer); *id.* 311:4-6 (there is no explicit "mention of particle size in Shafer"); *id.* 335:23-336:9 ("neither the data in Shafer or Nakamura correlates size and hardness to performance"). As to Nakamura, Dr. Bravman also agreed it lacked any disclosure of a wire (contrary to Chilisin's present arguments). *Id.* 327:12-15, 330:16-25, 385:18-386:5. The jury could have reasonably credited Dr. Kohl's testimony and Dr. Bravman's concessions in finding that the combination of Shafer and Nakamura fails to teach every claim limitation and a POSITA would not be motivated to combine the two references. *See Linear Tech.*, 2009 WL 3805567, at *5 (denying motion for new trial given "conflicting testimony").

Chilisin also takes issue with Dr. Kohl's testimony regarding the numerical ranges in Nakamura. Mot. at 4. Dr. Kohl testified that Nakamura fails to disclose the claims' requirements because it "simply gives a range of possible sizes for the two particles" (Trial Tr. at 411:24-412:9), without any disclosure of mean particle diameters. Dkt. 545 (Remand Trial Day 2 Tr.) 375:2-7, 380:16-381:14; Dkt. 546 (Remand Trial Day 3 Tr.) 412:25-413:7; *see also* Dkt. 545 (Remand Trial Day 2 Tr.) 319:9-22, 337:13-18 (Bravman). However, the claims explicitly require that "the ***mean*** particle diameter of the first magnetic powder is larger than the ***mean*** particle diameter of the second magnetic powder," and are not satisfied merely be a range of potential sizes. Trial Exs. 143A ('312 Patent) at 14:5-14, 145A ('037 Patent) at 13:26-39. Dr. Kohl confirmed that in his infringement analysis of Chilisin's products, he specifically used the mean particle diameter (called "D50") consistent with the claims' requirements. Dkt. 546 (Remand Trial Day 3 Tr.) 544:13-545:6. In contrast, neither Shafer nor Nakamura disclosed mean particle diameters. Dkt. 546 (Remand Trial Day 3 Tr.) 412:10-18, 545:10-23 (Kohl testimony). Chilisin's expert agreed. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 337:13-18, 375:5-7 ("there was no reference to mean particle diameter in Nakamura.").

In light of the claim requirements, Chilisin's "ranges" argument is a red herring. By any definition, a mere "range" of possible values is not synonymous with a "mean" particle size. Chilisin's apples-to-oranges comparison is improper and fails to "give meaning to all the words in

[the] claims" by reading out the requirement of using the *mean* particle diameter. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995).

Chilisin's reliance on hotly disputed factual citations and pure attorney argument fall far short of its required showings. It cannot demonstrate it met its burden of proving obviousness by clear and convincing evidence.

**B. There Were No Inflammatory Statements or Evidence at Trial**

Chilisin claims that it was unfairly maligned because Cyntec presented evidence of Chilisin's copying. Mot. at 11 (attributing to Cyntec "improper trial theme . . . that Chilisin was a bad actor that committed business harm, including ***copying***."). Copying is a long-accepted objective indication of nonobviousness. *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 679 (Fed. Cir. 1988) ("Copying is an indicium of nonobviousness, and is to be given proper weight."). It is highly relevant, yet Chilisin chose to do nothing to rebut it. To the contrary, Chilisin's sole fact witness confirmed that Chilisin needed to follow customer requirements, even if those requirements were to create copycat Cyntec products. Dkt. 544 (Remand Trial Day 1 Tr.) 170:10-23. Any resulting prejudice is entirely of Chilisin's own making.

Chilisin also objects to testimony of Dan Wu about the economic significance of Chilisin's copying a key competitor. The challenged testimony did not portray Chilisin as a bad actor; it highlighted the benefits of the invention: Chilisin's creation of replica products allowed Chilisin to serve as a second-source supplier and blunted the advantage of Cyntec's design win. Dkt. 546 (Remand Trial Day 3 Tr.) 581:13-25. Mr. Wu's testimony supports nonobviousness. If the invention was obvious, Cyntec would never have been able to serve as "sole supplier" or "stand out." *Id*. If the invention was obvious, there would have been no need for Chilisin to copy to get business from Cyntec's customers.

The testimony also did not implicate the prior willful infringement verdict or violate the Court's ruling on Chilisin's MIL No. 2. Indeed, it did not mention deliberate misconduct or any decision by Chilisin to infringe. *See* Dkt. 267 (Final Jury Instructions from the first trial) at 39 ("to show willfulness, you must find that Chilisin engaged in additional conduct evidencing deliberate or reckless disregard of Cyntec's patent rights."). It did not suggest that Chilisin knew

of the patents and proceeded anyway, nor did it ask the jury to punish Chilisin for any bad acts. The testimony was also not inflammatory, and the Court did not sustain a prejudice objection. Mr. Wu did not accuse Chilisin of misconduct, use charged language, or appeal to the jury's emotions. *See Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1036 (9th Cir. 2024) (rejecting prejudice challenge where objected-to testimony was not likely to cause the jury to decide the case based on improper impressions); *see also* FED. R. EVID. 403 advisory committee's note (defining unfair prejudice as "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").[2]

In any event, even if the testimony were irrelevant, this record falls far short of the standard for a new trial. A new trial should be granted only where the challenged conduct so permeated the "entire proceeding" that it created a strong conviction the jury was swayed by passion or prejudice. *See Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 516 (9th Cir. 2004); *see id*. at 520 ("Even in cases where the trial court has found counsel's behavior is 'outrageous,' we've found no prejudice"); *Rudy-Glanzer v. Glazer*, 232 F.3d 1258, 1271 (9th Cir. 2000) ("A few sustained objections dispersed over the course of a trial, coupled with limiting jury instructions, cannot suffice to meet the high 'permeation' standard necessary to invalidate the verdict of a trial."). Where, as here, the challenge is to an evidentiary ruling, the moving party must also show that the ruling was erroneous and it was "substantially prejudiced." *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (denying motion for new trial because "testimony was not so unfairly prejudicial as to warrant exclusion").

That standard is not remotely met here. The challenged testimony—which was stricken—consisted of only a few lines in a four-day trial:

[2] Chilisin's reliance on *Pavemetrics* is misplaced. There, the court granted a new trial based on repeated misconduct that permeated the entire proceeding and included arguments urging the jury to decide the case based on broader societal themes such as "corporate greed" and accusations of discovery misconduct by the attorneys themselves. *See Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*, 652 F.Supp.3d 1098, 1101-04 (C.D. Cal. 2023) ("The misconduct concerned raising discovery disputes, presenting misstatements of law and fact, and discouraging the jury from weighing the relevant facts of the case."). This case bears no resemblance to *Pavemetrics*.

> Q. And did Cyntec -- did Chilisin's use of Cyntec's mixed powder technology make it more difficult to maintain the same level of profitability?
> A. Yes.
> Q. And does Chilisin's use of Cyntec's mixed powder technology make it more difficult for Cyntec to stand out to customers with its smaller size and higher performance?
> A. Yes.

Dkt. 546 (Remand Trial Day 3 Tr.) 581:13-20; *also id.* 582:21-25 ("Q. And is the level of pricing pressure that Chilisin has put on Cyntec typical in the industry, or has it been unusual based on your 20 years of experience? MR. LAMBERSON: Same objection. THE WITNESS: No.").[3]

Finally, far from "permeating the entire proceeding," these measured remarks drew an immediate objection, were promptly struck, and were followed by a curative instruction:

> [THE COURT:] Counsel asked the Court to give an admonishment.
>
> And so please be aware that testimony that is excluded or stricken or that you have been instructed to disregard is not evidence and must not be considered.

*Id.* 584:5-9; *see also id.* 581:21-582:3, 582:21-583:6. That prompt corrective action eliminated any possible prejudice. *See United States v. Washington*, 462 F.3d 1124, 1136 (9th Cir. 2006) ("A judge's prompt corrective action in response to improper comments usually is sufficient to cure any problems arising from such improper comments."). A new trial is not warranted where "the court gave exactly the curative instruction" requested, and the objective party waited "until after the verdict" to "request a new trial based on the remarks." *Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*, 996 F.3d 1342, 1353-54 (Fed. Cir. 2021) (denying motion for new

---

[3] Chilisin also challenges Mr. Wu's testimony that Chilisin's infringement made it more difficult for Cyntec to remain the sole supplier for certain customers. *See* Mot. at 6 ("Despite the Court's clear ruling, Cyntec used the trial presentation of its Senior Vice President, Mr. Wu, to elicit testimony . . . that Chilisin's infringement made it harder for Cyntec to be the sole supplier for various customers . . . ."). Chilisin's argument fails at the threshold because its counsel did not even object to the "sole supplier" question and answer. *See* Dkt. 546 (Remand Trial Day 3 Tr.) 581:7-25 (requesting an instruction only as to "the last two answers," which concerned Cyntec's maintaining profitability and "stand[ing] out"). Chilisin cannot remain silent at trial, and later recast unobjected-to testimony as a supposed violation of a Court ruling.

trial in part because "no indication of any sort that the jury did anything other than what it was supposed to do").

Chilisin cannot show that Mr. Wu's stricken comments about the effects of Chilisin's copying caused the substantial prejudice required to justify a new trial. *See Ruvalcaba*, 64 F.3d at 1328.

**C. The Court Correctly Denied Chilisin's Novel Instruction on Ranges**

Chilisin argues that the Court should have included Chilisin's novel instruction regarding "obviousness of ranges." The Court correctly declined to give that instruction and should not now grant a new trial on this basis.

*First*, Chilisin waived its right to the instruction by failing to raise it after the close of evidence. Even though Federal Circuit authority holds that the so-called presumption should only be considered in the context of "full factfinding proceedings," *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1376-1377 (Fed. Cir. 2025), Chilisin never renewed its request for this instruction at the appropriate time. If Chilisin believed the trial record supported reconsideration of its proposed jury instruction, the time to raise the issue was ***before*** the jury was charged, not months after trial. *See* FED. R. CIV. P. 51(b)(2), (c)(2)(A) (objections are untimely if not made "before the instructions and arguments are delivered"); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1037 (9th Cir. 2003) ("Under Rule 51, instructional errors are waived if not raised in a timely fashion."). Chilisin's argument comes too late.

*Second*, Chilisin's proposed instruction is wholly unprecedented. Chilisin never identified a single instance in which its proposed instruction or anything comparable was ever given. Similarly, to Cyntec's knowledge, no published set of national patent jury instructions includes a specific instruction on the "obviousness of ranges." *Cf.* Mays Decl., Ex. 1 (AIPLA, Model Patent Jury Instructions (2025)); *id.* Ex. 2 (FCBA, Model Patent Jury Instructions (2020)). The Court properly gave the Northern District of California Model Patent Jury Instruction on Obviousness—which has been given in countless patent trials in this District and accurately describes the legal standards for a jury to determine obviousness.

*Third*, Chilisin's proposed "presumption" would never have been triggered. In a blatant attempt at improper burden-shifting, Chilisin's instruction tells the jury to presume obviousness. But, as a matter of law, the burden of proof on obviousness always rests on Chilisin. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("burden to prove invalidity" never "shifts to the other party"). The presence of overlapping ranges "does not shift the ***burden of persuasion*** to the patentee to prove nonobviousness." *Almirall, LLC v. Amneal Pharms. LLC*, 28 F.4th 265, 273 (Fed. Cir. 2022). Rather, the factfinder is to consider the ranges "along with all other evidence of record, to determine whether a patent challenger has a carried its burden of persuasion to prove that the claimed range was obvious." *E.I. du Pont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1007 (Fed. Cir. 2018).

*Fourth*, the so-called "presumption" only applies when the single difference between the claimed invention and the prior art is the range at issue. *See In re Brandt*, 886 F.3d 1171, 1174-75 (Fed. Cir. 2018) (rule applies "when ***the*** difference between the claimed invention and the prior art is the range or value of ***a*** particular variable"). However, Dr. Kohl pointed to numerous differences in the prior art unrelated to any allegedly overlapping ranges, such as:

- Nakamura failed to disclose mean particle diameter sizes (Dkt. 545 (Remand Trial Day 2 Tr.) 375:5-7; Dkt. 546 (Remand Trial Day 3 Tr.) 411:17-413:10; Trial Ex. A-17);
- Nakamura failed to disclose a wire (Dkt. 545 (Remand Trial Day 2 Tr.) 357:8-10, 369:22-370:14, 374:2-4, 386:2-5);
- Shafer failed to disclose mean particle diameter sizes (*id.* 377:9-23, 378:22-379:6, 379:10-20);
- Shafer failed to disclose hardness values (*id.* 377:9-23, 378:22-379:6, 379:21-381:9); and
- Even when combined, Shafer and Nakamura failed to disclose the limitation:

  "by means of the hardness difference of the first magnetic powder and the second magnetic powder, the mixture of the first magnetic powder and the second magnetic powder and the conducting wire buried therein are combined to form an integral magnetic body at a temperature lower than the melting point of the insulating encapsulant" (*id.* 373:23-374:1, 377:9-23, 378:22-379:6; Dkt. 546 (Remand Trial Day 3 Tr.) 410:17-411:2).

Additionally, the "presumption" does not apply where the prior art does not recognize any relationship between the "variable" (*i.e.*, mean particle diameter size) in question and "the desired property" (*i.e.*, the claimed reduction in temperature below "the melting point of the insulating encapsulant"). *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1297 (Fed. Cir. 2012); *In re Yates*, 663 F.2d 1054, 1056 (C.C.P.A. 1981) ("no evidence of correlation of any kind" between variable and property); *In re Antonie*, 559 F.2d 618, 620 (C.C.P.A. 1977) (prior art did not recognize variable was relevant to desired property). Both technical experts agreed that neither Shafer nor Nakamura recognized any relationship between the size and hardness values of the two powders (*i.e.*, that one should be larger and harder, while the other smaller and softer) and the ability to reduce the formation temperature of the claimed molding choke. *See* Dkt. 545 (Remand Trial Day 2 Tr.) 318:3-319:23 ("nothing in Shafer [ ] has a discussion as to the relationship between hardness and the two particles"), 332:18-333:6 ("Could be same size, bigger, or smaller"), 335:23-336:9 ("neither the data in Shafer or Nakamura correlates size and hardness to performance"), 337:3-12 (Nakamura provides no guidance on optimizing size ranges); *id.* 331:5-333:9 ("there is nothing in Nakamura that says that the alloy is required to be bigger than the iron powder"), 378:22-379:6 ("Shafer doesn't tell me the hardness nor the size"); Dkt. 546 (Remand Trial Day 3 Tr.) 411:3-412:9 ("Nakamura will allow either particle to be larger, either particle to be smaller . . . Nakamura has no wire anywhere"). Far from being an "improper argument" (Mot. at 9), Dr. Kohl's testimony addresses relevant questions raised by governing authority.

*Finally*, a "presumption" would not save Chilisin because Cyntec "c[a]me forward with evidence that (1) the prior art taught away from the claimed invention; (2) there were new and unexpected results relative to the prior art; [and] (3) there are other pertinent secondary considerations." *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1304-05 (Fed. Cir. 2015) (patentee may rebut presumption by coming forward with such evidence). Dr. Kohl testified extensively that both Nakamura and Shafer taught away from the prior art. Dr. Kohl and Mr. Van Uden also offered ***unrebutted*** testimony regarding unexpected results, commercial success, and several other secondary considerations. Dkt. 546 (Remand Trial Day 3 Tr.) 418:3-419:12, 420:2-422:6, 423:17-426:24, 427:5-429:25, 458:3-461:1, 461:22-462:8, 462:9-463:5, 539:13-540:22; Dkt. 547

(Remand Trial Day 4 Tr.) 634:10-634:25, 637:10-638:24, 639:14-640:7, 640:25-643:9; Trial Exs. 25, 57T, 302, 1310A, 1354A, 1356A, 1360A, 1363, A-272, A-288.[4]

Chilisin's proposed instruction is unprecedented, unnecessary, and inapplicable. The Court properly declined to include it. Chilisin is not prejudiced and is not entitled to a new trial based on its exclusion.

### D. Dr. Kohl's Copying Testimony Was Timely Disclosed

Chilisin's challenge to Dr. Kohl's copying testimony is, in effect, a re-argument of the Court's order on Chilisin's MIL No. 3. *See* Mot. at 11 (arguing that Court's denial of Chilisin's MIL No. 3 is factually and legally incorrect). In denying Chilisin's MIL No. 3, the Court rejected Chilisin's request that Dr. Kohl's copying opinions be excluded as supposedly untimely, holding that those opinions had been disclosed to Chilisin years earlier through Dr. Kohl's 2023 USPTO declaration:

> As to Dr. Kohl's testimony, the Court finds no basis to exclude his opinions on copying and unexpected results under Rules 26 or 37. Since Cyntec has shown that Dr. Kohl's opinions on these secondary considerations were disclosed to Chilisin years ago through prior trial testimony and a USPTO declaration in 2023, the Court finds that disclosure was timely and that Dr. Kohl should not be precluded from testifying to the secondary considerations.

Dkt. 496 at 8.

Chilisin does not dispute that the copying opinions presented at trial were previously disclosed years ago. Rather, it objects that Chilisin's having notice of those opinions through a "separate proceeding" should not count as notice. Chilisin cites nothing for this novel proposition, which fails legally and factually. Rule 26's disclosure requirement is intended to prevent unfair surprises and expressly contemplates that there is no unfair surprise "if the additional or correction information" has "been made known to the other part[y] ***during the discovery process or in writing***." *See* FED. R. CIV. P. 26(e)(1)(A). There is no genuine dispute that Chilisin had Dr. Kohl's

---

[4] During the reexaminations, the Patent Office also determined that Nakamura fails "to teach or fairly suggest a method as claimed because differences in manufacturing between the two teachings was a teaching away." Dkt. 452-11 at CYN_0228651.

copying opinions: Chilisin itself acknowledges that those opinions were set out in Dr. Kohl's declaration submitted in the USPTO reexaminations on February 21, 2023. Mot. at 10-11. Cyntec produced that declaration to Chilisin as soon as it was filed with the Patent Office. Dkt. 459 at 5. Then to remove any doubt that Cyntec intended to rely on the subject of that declaration ***in this case***, Cyntec cited the reexamination record in filings to this Court in 2023, long before any remand schedule was entered. Dkt. 347 at 5; Dkts. 347-1 through 347-13 (reexamination records). Cyntec produced the declaration multiple times, including in this proceeding.

Chilisin's reliance on statements that Cyntec would not offer "any new opinions from its expert" is beside the point. The copying opinions were ***not*** new: by the time Cyntec made that statement, Chilisin possessed Dr. Kohl's declaration opinions for years. This is not a situation where an expert unveiled a brand-new theory for the first time after the close of expert discovery or at trial.[5] Nor can Chilisin show prejudice, the absence of which is fatal to its request for a new trial. *See Ruvalcaba*, 64 F.3d at 1328 (denying motion for new trial because "testimony was not so unfairly prejudicial as to warrant exclusion"). Chilisin rigorously cross-examined Dr. Kohl on the copying issues, including whether the Chilisin products practiced the Asserted Patents, and whether the evidence showed a nexus to the claimed inventions. *See* Dkt. 546 (Remand Trial Day 3 Tr.) 523:21-525:15, 526:2-528:20. There is no question that Chilisin had a meaningful opportunity to test and challenge Dr. Kohl's opinions. Chilisin also could have sought leave to submit a rebuttal expert report or presented rebuttal fact testimony.[6] It did neither and cannot now claim unfair surprise based on that choice. *See McClean v. State Farm Mut. Auto. Ins. Co.*, No. 2:13-cv-00101-LDG-NJK, 2013 WL 12218463, at *2 (D. Nev. Dec. 6, 2013) (holding no "prejudice or surprise" where the opposing expert "had an opportunity to evaluate and criticize [expert's] opinions").

---

[5] Nor does Chilisin's passing reference to Rule 702 (*see* Mot. at 1) change the analysis. Chilisin identifies no defect in Dr. Kohl's qualifications, methodology, reliability, or helpfulness. *See* FED. R. EVID. 702.

[6] As discussed above, Scott Wei was knowledgeable about the activities Cyntec contends to be copying. If Chilisin was not copying, Mr. Wei could have explained what it was doing. He was under subpoena, available for trial, but Chilisin chose not have him provide any explanation.

Rule 59 does not permit a disappointed party to convert its own strategic choices into alleged trial error. Chilisin cannot justify a new trial.

**E. The Reexamination Proceedings Were Properly Admitted**

Chilisin was given innumerable opportunities to argue the nature, scope, and admission of the reexamination evidence. *See* Mot. at 13 (arguing that Court should have excluded reexamination evidence in its entirety); *id*. at 12 (arguing that Court failed to include in the judicial notice extraneous "facts" Chilisin wanted); *see also* Dkt. 439 (Chilisin's MIL No. 1) (arguing that the reexaminations should be excluded altogether); Dkt. 498 (Joint [Proposed] Jury Instruction) at 6 (arguing that Court should instruct jury that Invention Disclosure Statement listed over 30 references, no office action discussed Shafer, and the examiner did not address the Shafer-Nakamura combination). Chilisin prevailed on many of its arguments, and the Court adopted many of Chilisin's proposals.

For example, although Cyntec wanted the jury to receive the full reexamination file history, the Court granted Chilisin's MIL No. 1 in part and limited to only those materials showing that the USPTO considered the Shafer and Nakamura references. *See* Dkt. 496 at 5-6. The Court likewise sustained Chilisin's objections and rejected Cyntec's effort to characterize the reexamination files as public records containing agency factual findings. *See* Dkt. 506 at 6-7. The Court limited the instruction to a short list of specified filings and actions on specified dates. *See id*. Chilisin pressed for a further clarification that, even though Shafer and Nakamura were listed on the Invention Disclosure Statement, the examiner did not address their combination. The Court granted that request as well. *See* Dkt. 524 at 2-3; Dkt. 534 at 1-2. Despite Chilisin's grievances, the final instruction given at the trial was jointly submitted by the parties as a *stipulated* instruction. Dkt. 534 at 1-2.

What Chilisin could not prevail on the Court to do was to exclude any reference to the reexamination. Such exclusion would have contravened Federal Circuit authority. *See, e.g.*, *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986) (holding it was error to give reexamination proceeding no credence where the USPTO upheld the claims despite consideration of much of the same art presented in the district court). The Court's limited

instruction was proper and not misleading, prejudicial, or inaccurate in any way. It required the jury to accept only *undisputed* actions taken by the USPTO; it did not require the jury to accept the examiner's reasoning, adopt the USPTO's conclusion, or find the claims nonobvious. Dkt. 506 at 7 ("Chilisin does not dispute the facts underlying Cyntec's proposed jury instruction."). To the contrary, the Court expressly told the jury that "[i]t is up to you to decide how much weight, ***if any***, to give to [the reexamination outcome] when determining obviousness." Dkt. 547 (Remand Trial Day 4 Tr.) 667:12-13. That limiting language foreclosed the very inference Chilisin now says created unfair prejudice.

Chilisin also complains that it was not permitted to argue in closing about the *ex parte* nature of the proceedings or the lack of expert opinions on the reexaminations (even though Cyntec was permitted to point out Chilisin's lack of expert opinions on secondary considerations).[7] Mot. at 12-13. But neither warrants a new trial. They merely reflect the Court's decision to enforce limits, to prevent the reexamination proceedings from expanding into the very trial-within-trial that Chilisin originally feared, and to prevent Chilisin from arguing alleged facts about the reexaminations that were not in evidence. *See* Dkt. 496 at 5-6; Dkt. 506 at 6-7; Dkt. 547 (Remand Trial Day 4 Tr.) 750:2-15. Had Chilisin wished to present those issues to the jury it should have timely sought leave to supplement its expert's report to address those facts. Chilisin was not permitted to raise those facts for the first time in closing through pure attorney argument.

The Court struck the proper balance on admission of the reexamination record. Rule 59 does not allow Chilisin to recast every evidentiary ruling as trial prejudice after an adverse verdict. *See Cotton v. City of Eureka*, 860 F.Supp.2d 999, 1015 (N.D. Cal. 2012) (denying new trial where the asserted prejudice was speculative rather than supported by a showing of actual harm).

[7] There was nothing inconsistent about these two separate rulings concerning expert opinions. Cyntec was allowed to point out a lack of evidence on secondary considerations because secondary considerations were part of the invalidity case before the jury. On the other hand, the reexaminations were ***not*** being tried as a disputed issue. As such Chilisin was not allowed to argue a lack of expert opinions on the reexaminations.

**F. There Was No Cumulatively Prejudicial Impact**

Chilisin's throwaway cumulative error argument does not provide an independent basis for a new trial. It simply repackages the same arguments from previous sections and asserts that, taken together, they rendered the trial unfair. But where the underlying rulings were neither erroneous nor prejudicial, there is no cumulative effect to remediate.

Nor do its cited cases help Chilisin. *Pavemetrics* involved a record of pervasive trial misconduct that repeatedly diverted the jury from the actual issues it was supposed to decide. There, counsel repeatedly injected discovery disputes into the trial, suggested the opposing party and its expert were hiding evidence or acting deceptively, argued that the case was really about "corporate greed," attacked the use of subpoenas to customers, and elicited testimony on inequitable conduct even though that issue was not in the case. *See Pavemetrics*, 652 F.Supp.3d at 1101-04. And in *Larez*, the Ninth Circuit found prejudice in a police brutality case because the jury heard inadmissible newspaper quotations attributed to a police chief—such as that a broken nose was not "worth anything" and that the victim was "lucky that's all he had." *See Larez v. City of Los Angeles*, 946 F.2d 630, 641-44 (9th Cir. 1991). Here, by contrast, there was no comparable trial-wide pattern of misconduct.

**IV. CONCLUSION**

Chilisin has identified no error, let alone one that renders the verdict against the clear weight of the evidence or results in a miscarriage of justice. What Chilisin offers instead is a repackaged trial narrative and *post hoc* criticism of rulings that were correct, measured, and in many instances adopted from Chilisin's own proposals. Because the jury's verdict is fully supported by the record and the proceedings were fair in every respect, the Motion should be denied.

Dated: April 27, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *James C. Yoon*
James C. Yoon
E-mail: jyoon@wsgr.com

*Attorney for Plaintiff*
*CYNTEC COMPANY, LTD.*