Jonathan Lamberson (SBN 239107)
lamberson@whitecase.com
Henry Huang (SBN 252832)
henry.huang@whitecase.com
Yuhan Wang (SBN 341882)
yuhan.wang@whitecase.com
Tiffany Huynh (SBN 346019)
tiffany.huynh@whitecase.com
Christhy Le (SBN 365690)
christhy.le@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Hallie Kiernan (SBN 313541)
hallie.kiernan@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Attorneys for Defendants
CHILISIN ELECTRONICS CORP.[1]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CYNTEC COMPANY, LTD,<br><br>Plaintiff,<br><br>v.<br><br>CHILISIN ELECTRONICS CORP. and CHILISIN AMERICA LTD.,<br><br>Defendants. | Case No. 3:18-cv-00939-TLT<br><br>**CHILISIN'S REPLY IN SUPPORT OF ITS RULE 59 MOTION FOR A NEW TRIAL**<br><br>Date: September 15, 2026<br>Time: 10:00 a.m.<br>Dept.: Courtroom 9, 19 Floor<br>Judge: Hon. Trina L. Thompson |

[1] Chilisin America Ltd. no longer exists as a legal entity, it was dissolved in January 2023.

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. A New Trial on Obviousness is Needed .......... 1

B. Prejudicial Evidence and Arguments Support a New Trial .......... 2

C. The Jury Should Have Been Instructed on Overlapping Ranges .......... 3

D. The Jury Should Not Have Heard Dr. Kohl's Copying Opinions .......... 5

E. Chilisin's Inability to Address the Reexaminations Warrants Re-Trial .......... 6

III. CONCLUSION .......... 8

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Almirall, LLC v. Amneal Pharms. LLC*,
28 F.4th 265 (Fed. Cir. 2022) .......... 4

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) .......... 2

*Doe v. Glanzer*,
232 F.3d 1258 (9th Cir. 2000) .......... 2

*E.I. du Pont de Nemours & Co. v. Synvina C.V.*,
904 F.3d 996 (Fed. Cir. 2018) .......... 3, 4, 5

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*,
762 F.3d 829 (9th Cir. 2014) .......... 2

*Gilbrook v. City of Westminster*,
177 F.3d 839 (9th Cir. 1999) .......... 3

*Interconnect Planning Corp. v. Feil*,
774 F.2d 1132 (Fed. Cir. 1985) .......... 8

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
141 F.4th 1367 (Fed. Cir. 2025) .......... 4

*Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*,
652 F. Supp. 3d 1098 (C.D. Cal. 2023) .......... 1

*In re Peterson*,
315 F.3d 1325 (Fed. Cir. 2003) .......... 3

*Settlegoode v. Portland Pub. Schs.*,
371 F.3d 503 (9th Cir. 2004) .......... 2

*Smith v. M/V Horizon Spirit*,
No. 21-CV-04250-MMC, 2023 WL 4137477 (N.D. Cal. June 21, 2023) .......... 1

*Tennant v. Peoria & P. U. Ry. Co.*,
321 U.S. 29 (1944) .......... 1

*UCB, Inc. v. Actavis Labs. UT, Inc.*,
65 F.4th 679 (Fed. Cir. 2023) .......... 3, 4

# I. INTRODUCTION

Chilisin's Rule 59 motion identified multiple errors and irregularities during the March 2026 trial that collectively warrant a new trial. Cyntec contends that Rule 59 requires a "trial-wide pattern of misconduct" (Dkt. 574 at 21), but that is incorrect because specific errors that "urged the jury to decide the case on irrelevant factors" justify a re-trial. *Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*, 652 F. Supp. 3d 1098, 1103 (C.D. Cal. 2023). Here, the errors involved multiple disputed obviousness issues—the scope of the prior art, secondary considerations, and the effect of the reexaminations—which support a new trial.

# II. ARGUMENT

## A. A New Trial on Obviousness is Needed

Cyntec repeats its substantive arguments against JMOL to oppose a new trial on obviousness. (*Cf.* Dkt. 574 at 2-11). Chilisin addresses all these arguments in its concurrently filed reply in support of JMOL. In short, Cyntec continues to rely on technical benefits that the patents did not claim, while interpreting the prior art and the field of the inventions narrowly and contrary to the law of obviousness.

Cyntec's non-substantive arguments against re-trial are misplaced. Cyntec states the standard for a new trial under Rule 59 is "even higher" because of the clear and convincing standard for invalidity. (*Id.* at 3). That assertion lacks support. Cyntec cites *EagleView Technologies, Inc. v. Xactware Solutions, Inc.*, but that district court case quoted a non-patent Third Circuit case for that court's standard of "overwhelming" evidence to obtain a new trial. 485 F. Supp. 3d 505, 519 (D.N.J. 2020). Next, Cyntec claims the jury's short deliberation shows Chilisin did not approach its burden of proof. (*See* Dkt. 574 at 3). That contention is baseless—the trial ended on a Thursday afternoon, and the jury was told it could not deliberate on Friday, so it might have simply deliberated quickly to avoid returning the following Monday. Cyntec then contends that the Court cannot re-weigh evidence to decide a Rule 59 motion, but that is wrong. Cyntec cites an unpublished case, *Smith v. M/V Horizon Spirit*, No. 21-CV-04250-MMC, 2023 WL 4137477, at *2 (N.D. Cal. June 21, 2023), which cites a Supreme Court case addressing JMOL (judgment notwithstanding the verdict), not a new trial request. *See Tennant v. Peoria & P. U. Ry. Co.*, 321

U.S. 29, 35 (1944) ("Thus to enter a judgment for respondent notwithstanding the verdict is to deprive petitioner of the right to a jury trial."). Governing Ninth Circuit law holds that "in considering a Rule 59 motion for new trial . . . the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*., 762 F.3d 829, 842 (9th Cir. 2014). Under the proper test and review of the evidence, Chilisin should receive a new trial.

**B. Prejudicial Evidence and Arguments Support a New Trial**

In addition to the other problems addressed in Chilisin's motion, Cyntec presented trial testimony from Dan Wu about Chilisin allegedly engaging in willful conduct to cause Cyntec business harm. Despite objections and motions to strike that testimony, the jury still heard improper testimony that the Court's *in limine* rulings precluded. (*See* Trial Tr. at 580:22-584:9). In response, Cyntec defends Mr. Wu's testimony on these topics as relevant to copying and non-obviousness, without implicating willfulness or Chilisin's knowledge of the patents. (*Cf.* Dkt. 574 at 11-12). However, that testimony strayed past addressing Chilisin's alleged copying to covering Cyntec's purported harm, which was irrelevant to obviousness. Mr. Wu was asked about competition between Chilisin and Cyntec, including questions about whether Chilisin's competition made it "more difficult" for Cyntec, but that testimony served only to portray Chilisin as a bad actor, not to show it copied the inventions. (*See* Trial Tr. at 580:22-581:20). The Court agreed during trial that such testimony was irrelevant (*id.* at 583:6), but its effect on the jury cannot be undone.

Cyntec contends that this testimony cannot support a new trial because it did not "permeate" the entire proceeding. (Dkt. 574 at 12). Much of Cyntec's cited authority discusses the degree of attorney misconduct that warrants re-trial, but does not foreclose the availability of a new trial for improper evidence and witness testimony. *See, e.g.*, *Doe v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000); *Settlegoode v. Portland Pub. Schs*., 371 F.3d 503, 516 (9th Cir. 2004). The Ninth Circuit has held that "constant objections" to testimony are not required, and that introducing evidence violating *in limine* rulings supports a new trial. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995). Here, Mr. Wu's discussion of alleged business harm to Cyntec "does not relate to the technical question of patent invalidity under obviousness" (Dkt. 496 at 7)

and further shows why a new trial is appropriate.

### C. The Jury Should Have Been Instructed on Overlapping Ranges

Cyntec's arguments about instructing the jury on obviousness of numerical ranges are flawed. First, Chilisin never waived its request for that instruction. Before trial, Chilisin sought an instruction on numerical ranges, Cyntec opposed, and the Court declined to adopt it. (*See* Dkt. 479 at 4-5). Cyntec now contends Chilisin needed to request reconsideration "after the close of evidence" to raise this as a basis for new trial. (Dkt. 574 at 14). Cyntec provides no authority for this position. Rule 51 requires "an opportunity to object . . . before the instructions and arguments are delivered," but says nothing about seeking reconsideration. Instead, Rule 51(d) states a party "may assign as error . . . a failure to give an instruction, ***if that party properly requested it*** and—unless the court rejected the request in a definitive ruling on the record—also properly objected" (emphasis added). Here, Chilisin properly requested the instruction before trial, and the Court denied it in a written order, eliminating the need for further objections. Cyntec's cited case, *Zhang v. American Gem Seafoods, Inc.*, says nothing about seeking reconsideration, and instead dealt with a situation where appellants "might have thought that it was advantageous *not* to propose instructions," which is not the case here. 339 F.3d 1020, 1037 (9th Cir. 2003). Rule 51(d)(2) also permits consideration of a plain error "that has not been preserved" if it affects substantial rights, as would be the case with improper jury instruction.

Second, Cyntec claims the proposed instruction was unprecedented—but not legally incorrect. Many cases involving obviousness of numerical ranges are USPTO proceedings or pharmaceutical cases under the Hatch-Waxman Act, neither of which involve jury trials, which likely explains why some model jury instructions lack this concept. *See, e.g.*, *In re Peterson*, 315 F.3d 1325 (Fed. Cir. 2003) (appeal from USPTO); *UCB, Inc. v. Actavis Labs. UT, Inc.*, 65 F.4th 679, 683 (Fed. Cir. 2023) (Hatch-Waxman case). Cyntec cites no authority that prohibits courts from creating non-model jury instructions that suit the law and case—indeed, instructions must be "formulated so that they fairly and adequately cover the issues presented." *Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir. 1999). Cyntec does not (and cannot) dispute controlling Federal Circuit precedent that numerical overlap "creates a presumption of obviousness." *E.I. du*

*Pont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1006 (Fed. Cir. 2018). Here, the evidence about particle size ranges in the prior art implicates this case law, which the jury needed to understand to evaluate obviousness properly.

Third, Cyntec argues that the presumption of obviousness for particle sizes would "never have been triggered" because Chilisin retains the burden of proving invalidity. (Dkt. 574 at 15). This argument is nonsensical. Cyntec cites a Federal Circuit case that (fully quoted) explains how the presumption operates together with the ultimate burden of proof: "A presumption of obviousness does not shift the burden of persuasion to the patentee to prove nonobviousness, but a presumption establishes that, ***absent a reason to conclude otherwise,*** a factfinder is justified in concluding that a disclosed range does just that—discloses the entire range." *Almirall, LLC v. Amneal Pharms. LLC*, 28 F.4th 265, 273 (Fed. Cir. 2022) (emphasis added). *Almirall* affirmed a holding of obviousness in part because "the presumption was not overcome" by the patent owner. *Id.*; *see also UCB*, 65 F.4th at 689-90 (applying range presumption and affirming obviousness); *E.I. du Pont*, 904 F.3d at 1008 ("While a patentee technically has no 'burden' to do anything to defend the validity of its patent other than hold the patent challenger to its own burden of persuasion, that burden of persuasion is necessarily satisfied when there is no evidentiary reason to question the prior art's disclosure of a claimed range."). Chilisin agrees that it always bore the ultimate burden of proving obviousness. *See* Dkt. 560 at 8 ("This legal framework does not change the obviousness framework . . . ."). However, under controlling law, the jury should have been instructed that Cyntec needed to overcome an obviousness presumption for overlapping ranges.

Fourth, Cyntec's contention that the range presumption applies only when there is a "single difference" between the prior art and patents is simply wrong. The Federal Circuit expressly rejected that interpretation:

> Thus, contrary to the district court's statement, when we said in *Kumar* that '[a] *prima facie* case of obviousness may be made when the only difference from the prior art is a difference in the range or value of a particular variable,' 418 F.3d at 1366, we did not declare a blanket rule that the presumption 'only applies' in that single-difference circumstance, Remand Decision, at 210. Nor have we been pointed to other precedents setting a categorical one-difference limit on the presumption at issue here.

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1376 (Fed. Cir. 2025). Cyntec

mischaracterizes *In re Brandt*: the quoted portion comes from the underlying USPTO decision, and the Federal Circuit found "no meaningful difference between the prior art's disclosed range and the claimed range," but never implied that the presumption applies *only* in a single-difference context. 886 F.3d 1171, 1178-79 (Fed. Cir. 2018).

Fifth, Cyntec argues incorrectly that the range presumption does not apply unless there was a recognized relationship between particle size and formation temperature. (*Cf.* Dkt. 574 at 16). This argument invokes the "result-effective variable" doctrine, which Cyntec never previously identified at trial or with jury instructions. The Federal Circuit explains that this doctrine is a "narrow" and rare exception to the obviousness of optimizing known variables: "*Antonie* described the situation where a 'parameter optimized was not recognized to be a result-effective variable' as an 'exception' to the general principle in *Aller* that 'the discovery of an optimum value of a variable in a known process is normally obvious.' *Id.* at 620. ***Our subsequent cases have confirmed that this exception is a narrow one. Indeed, we have located no case where this court relied on a variable not being result-effective in an obviousness analysis.***" *E.I. du Pont*, 904 F.3d at 1009 (emphases added). If numerical ranges overlap, the presumption still applies. *See id.* at 1007-08. Even if Cyntec could raise this theory now, it does not apply because the patents do not require "optimization" of specific sizes or temperatures, only relative mean particle size and a "lower" formation temperature. Nakamura expressly disclosed two different size ranges, and both Shafer and Nakamura use formation below wire insulation melting points.

Sixth, Cyntec claims it rebutted the range presumption with secondary considerations. (*Cf.* Dkt. 574 at 16). This argument is a red herring. Cyntec's belief in the strength of its rebuttal evidence does not mean the jury should not have received correct instructions about the law. Properly instructed, the jury could have decided that the range presumption applied, and that Cyntec's evidence failed to overcome it. By contrast, the jury *did* receive guidance about secondary considerations in Instructions No. 31 and 32. (*See* Dkt. 540). None of Cyntec's arguments supports omitting a necessary legal explanation from the jury's directives.

**D. The Jury Should Not Have Heard Dr. Kohl's Copying Opinions**

Cyntec acknowledges it submitted Dr. Kohl's copying opinions in the reexaminations, but

claims that attaching that expert declaration to its post-remand preliminary injunction motion (at Dkt. 347-7) satisfied its Rule 26 disclosure obligations. (*Cf.* Dkt. 574 at 17). Cyntec misinterprets the rules. Rule 26(e)(1)(A) allows a party to rely on discovery supplementation "during the discovery process or in writing," but the parties repeatedly agreed there was no need for an expert "discovery process" after remand. Moreover, Rule 26(a)(2)(B) requires disclosure of expert opinions "at the times and in the sequence that the court orders." For similar reasons, the Court struck Dr. Kohl's July 2025 supplemental report addressing the reexaminations as untimely, even though they were disclosed "in writing." (*See* Dkt. 434 at 9-10). Cyntec still cites no authority allowing a party to rely on expert declarations submitted in a separate proceeding.

Cyntec's assertion that Chilisin suffered no unfair prejudice from Dr. Kohl's untimely copying opinions contradicts its own arguments against a new trial. Cyntec relies on those copying opinions to support the verdict. (Dkt. 574 at 4-5 ("Dr. Kohl confirmed that Chilisin used the same combination . . .")). Cross-examination and rebuttal evidence cannot erase improper testimony from the jury's memory, which is why courts exercise their gatekeeping function to exclude untimely expert opinions. Cyntec's argument that Chilisin could have submitted a rebuttal expert report on copying is disingenuous because the parties agreed not to pursue more expert discovery. Cyntec moved to exclude Dr. Bravman from opining on secondary considerations (including copying), and Chilisin also successfully moved to strike Dr. Kohl's untimely supplemental report on the reexaminations. (Dkt. 434). This shows the Court limited the experts to opinions they disclosed in their original reports in this litigation, consistent with its Guidelines for Civil Jury Trials, and this limitation should have also applied to Dr. Kohl's reexamination declaration.

### E. Chilisin's Inability to Address the Reexaminations Warrants Re-Trial

Jury Instruction No. 33 about the reexaminations required the jury to accept that "Shafer and Nakamura were available to the USPTO" (Dkt. 540 at 42), but Chilisin was not allowed to tell the jury that Cyntec lacked any expert opinion about the reexaminations, or that Chilisin was unable to participate in the *ex parte* proceedings (Trial Tr. at 344:4-345:23, 707:9-13, 750:11-751:3). Cyntec argues this was acceptable because the Court excluded the reexamination file histories and limited judicial notice of the reexaminations in response to Chilisin's motions *in limine*, and the

final instruction was a stipulated one. (*See* Dkt. 574 at 19). However, Instruction No. 33 omitted undisputed facts about the reexaminations that Chilisin proposed, such as the Examiner having "36 prior art references" to review. (Dkt. 498 at 5-6). Chilisin only stipulated to subsequent revised versions of the instruction because that is what the Court ordered it to do over Chilisin's objection, but Chilisin did so preserving its objections to giving any reexamination instruction at all. (*E.g.*, Dkt. 509 at 26 n.2).

Cyntec claims there was no unfair prejudice because Instruction No. 33 told the jury it could decide what weight to give the reexaminations. (*See* Dkt. 574 at 20). However, Chilisin was not allowed to present the jury with relevant facts and arguments to enable that assessment. The fact that Cyntec's expert presented no reexamination opinions could have influenced the jury's evaluation of those proceedings, but the Court sustained Cyntec's objection to that argument with no legal basis stated for the objection or the ruling. (*See* Trial Tr. at 707:8-9 ("MR. YOON: Objection about Dr. Kohl and the re-exam. THE COURT: Sustained.")). That conflicts with allowing Cyntec to tell the jury that Chilisin's expert lacked opinions on secondary considerations. Cyntec responds that secondary considerations "were part of invalidity," while the reexaminations "were ***not*** being tried" (Dkt. 574 at 20 n.7), but that is false—the parties disputed both issues and how they affected obviousness. If the reexaminations were "not being tried" they should not have been admitted at all. Cyntec also faults Chilisin for not obtaining expert rebuttal opinions on the reexaminations, but as noted above, the parties repeatedly agreed that no post-remand expert discovery process was necessary, which is why the Court struck Cyntec's own supplemental expert report on the reexaminations. (Dkt. 434 at 9-10).

Cyntec argues that Chilisin was properly prevented from telling the jury that the reexaminations were *ex parte* to avoid a "trial-within-trial." (Dkt. 574 at 20). Again, there was no stated legal basis for the objection or ruling on this issue. (*See* Trial Tr. at 750:11-15 ("MR. YOON: Objection, Your Honor. THE COURT: Sustained.")). Chilisin was not even allowed to inform the jury that *ex parte* "means only one party was involved." *Id.* Yet the Federal Judicial Center patent video (which all jurors watched before the trial) states that "prosecution of a patent application takes place without input from people who might later be accused of infringement." The Patent

Process: An Overview for Jurors, https://www.youtube.com/watch?v=ax7QHQTbKQE, at 14:45-15:00. The fact that Chilisin could not participate in USPTO proceedings was relevant and not unfairly prejudicial. Far from requiring a mini-trial, these facts were valid evidence and would have informed the jury to weigh the reexaminations properly. Contrary to Cyntec's view that the jury must consider the reexaminations, the existing clear and convincing standard of proof for invalidity already captures the deference owed to the USPTO for issuing and reexamining a patent. *See Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985) ("the reissue patent reaches the court clothed in a statutory presumption of validity, and clear and convincing evidence is required to surmount this presumption").

## III. CONCLUSION

For these reasons, Chilisin respectfully requests a new trial on obviousness.

Dated: May 4, 2026

WHITE & CASE LLP

By: */s/ Jonathan Lamberson*
Jonathan Lamberson
Attorneys for Defendants
CHILISIN ELECTRONICS CORP.