Jonathan Lamberson (SBN 239107)
lamberson@whitecase.com
Henry Huang (SBN 252832)
henry.huang@whitecase.com
Yuhan Wang (SBN 341882)
yuhan.wang@whitecase.com
Tiffany Huynh (SBN 346019)
tiffany.huynh@whitecase.com
Christhy Le (SBN 365690)
christhy.le@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Hallie Kiernan (SBN 313541)
hallie.kiernan@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Attorneys for Defendants
CHILISIN ELECTRONICS CORP.[1]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CYNTEC COMPANY, LTD,<br><br>Plaintiff,<br><br>v.<br><br>CHILISIN ELECTRONICS CORP. and CHILISIN AMERICA LTD.,<br><br>Defendants. | Case No. 3:18-cv-00939-TLT<br><br>**CHILISIN'S REPLY IN SUPPORT OF ITS RENEWED RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Date: September 15, 2026<br>Time: 10:00 a.m.<br>Dept.: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

[1] Chilisin America Ltd. no longer exists as a legal entity, it was dissolved in January 2023.

# TABLE OF CONTENTS

**Page(s)**

I. ARGUMENT ........................................ 1

A. Obviousness is a Question of Law for the Court, and Deference Has Limits ........................................ 1

B. Chilisin Did Not Waive its Obviousness Arguments ........................................ 1

C. Shafer and Nakamura are Analogous Art ........................................ 3

D. The Purportedly Missing Limitations are Obvious ........................................ 5

E. Ranges Disclosed in the Prior Art Teach Individual Values and Means ........................................ 7

F. No Secondary Considerations Evidence Changes the Result ........................................ 9

G. No Reasonable Jury Could Find Lack of Motivation to Combine ........................................ 12

H. The Reexaminations Do Not Change the Obviousness Analysis ........................................ 13

II. CONCLUSION ........................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Agrizap, Inc. v. Woodstream Corp.*,
520 F.3d 1337 (Fed. Cir. 2008)....1

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
920 F. Supp. 2d 1116 (N.D. Cal. 2013)....1, 9

*In re Black*,
778 F. App'x 911 (Fed. Cir. 2019)....4, 5

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
4 F.4th 1370 (Fed. Cir. 2021)....11

*Comaper Corp. v. Antec, Inc.*,
596 F.3d 1343 (Fed. Cir. 2010)....3

*Cytiva BioProcess R&D AB v. JSR Corp.*,
122 F.4th 876 (Fed. Cir. 2024)....6

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
No. 05-CV-1411-MLH (GSA), 2012 U.S. Dist. LEXIS 64571 (E.D. Cal. May 7, 2012)....1

*EEOC v. Go Daddy Software, Inc.*,
581 F.3d 951 (9th Cir. 2009)....1, 2

*Gonzalez-Bermudez v. Abbott Labs. P.R. Inc.*,
990 F.3d 37 (1st Cir. 2021)....1

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
141 F.4th 1367 (Fed. Cir. 2025)....8

*KSR Int'l Co. v. Teleflex Inc.*,
127 S. Ct. 1727 (2007)....12, 13

*Medivis, Inc. v. Novarad Corp.*,
No. 2024-1794, 2026 U.S. App. LEXIS 6078 (Fed. Cir. Mar. 3, 2026)....12

*Meiresonne v. Google, Inc.*,
849 F.3d 1379 (Fed. Cir. 2017)....9

*Motorola, Inc. v. Interdigital Tech. Corp.*,
121 F.3d 1461 (Fed. Cir. 1997)....9

*Orion IP, LLC v. Hyundai Motor Am.*,
605 F.3d 967 (Fed. Cir. 2010)....................2

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006)....................7

*Persion Pharm. LLC v. Alvogen Malta Operations LTD.*,
945 F.3d 1184 (Fed. Cir. 2019)....................5

*In re Peterson*,
315 F.3d 1325 (Fed. Cir. 2003)....................7

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
491 F.3d 1342 (Fed. Cir. 2007)....................1

*Titanium Metals Corp. v. Banner*,
778 F.2d 775 (Fed. Cir. 1985)....................7

*Universal Elecs., Inc. v. Roku, Inc.*,
No. 2024-1426, 2026 U.S. App. LEXIS 10383 (Fed. Cir. Apr. 10, 2026)....................12

*W. Union Co. v. MoneyGram Payment Sys.*,
626 F.3d 1361 (Fed. Cir. 2010)....................1

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
683 F.3d 1356 (Fed. Cir. 2012)....................12

# I. ARGUMENT

## A. Obviousness is a Question of Law for the Court, and Deference Has Limits

Cyntec's opposition makes much of the deference owed to the jury. While the jury is entitled to deference on how it implicitly resolved fact disputes, this Court must still assess the ultimate legal conclusion on obviousness *de novo*. *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 920 F. Supp. 2d 1116, 1132 (N.D. Cal. 2013). Also, deference has limits: the Court must still review the jury's implicit factual findings to ensure that they are supported by substantial evidence. *See id*. at 1122; *see also Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 05-CV-1411-MLH (GSA), 2012 U.S. Dist. LEXIS 64571, at *13 (E.D. Cal. May 7, 2012) ("The court reviews the jury's underlying factual findings, whether explicit or implicit within the verdict, for substantial evidence"). When a fact finding lacks substantial evidence, or when the claims are obvious even in light of the jury's implicit factual findings, JMOL is appropriate. *See Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1367 (Fed. Cir. 2007) (reversing denial of JMOL and holding patents obvious despite a jury verdict of non-obviousness); *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1339 (Fed. Cir. 2008) ("Though we defer to the jury for its fact findings on obviousness, we ultimately conclude that, despite those findings, the patent claims in dispute are invalid for obviousness and thus reverse the district court's denial of Woodstream's JMOL in that respect.").

## B. Chilisin Did Not Waive its Obviousness Arguments

Cyntec's opposition argues Chilisin waived various issues, but Cyntec misapplies the law. A party that moves under Rule 50 need only indicate the ***grounds*** upon which the motion is based. *See EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). There is no legal requirement that a party catalog each and every piece of evidence that supports or refutes those grounds in an oral JMOL motion. *See Gonzalez-Bermudez v. Abbott Labs. P.R. Inc.*, 990 F.3d 37, 45 (1st Cir. 2021) ("Rule 50(a) does not require technical precision in stating the grounds of the motion. Otherwise, Rule 50(a) motions—often made while the jury awaits argument and instructions—would necessarily turn into lengthy analyses of every possible piece of evidence in the other party's possible favor"); *W. Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1367 (Fed. Cir. 2010) ("even a cursory motion suffices to preserve an issue on JMOL"). The Court

should consider not just the arguments made at trial, but any arguments that are a "logical extension" of those arguments. *See Go Daddy*, 581 F.3d at 961. The arguments made at trial should be given a "liberal interpretation" to avoid results that are overly harsh. *Id*. For patent invalidity, the Federal Circuit has found a request for "partial judgment as a matter of law based on prior art" sufficient to preserve a challenge. *See Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 973-74 (Fed. Cir. 2010). Here, Cyntec does not point to any legal grounds that Chilisin allegedly waived—it cannot do so because Chilisin raised each relevant *Graham* factor in its JMOL motion. (*See* Trial Tr. at 669:7-673:4). At most, Cyntec identifies certain pieces of evidence relating to those grounds that it says were not explicitly mentioned during the oral JMOL, but that is not a basis to find waiver.

Several of the issues Cyntec identifies as allegedly waived go to whether all the elements of the asserted claims are found in the prior art. Chilisin explicitly raised this at JMOL. (*See* Trial Tr. at 670:3-7 ("Chilisin presented evidence that all ***elements of all asserted claims*** are found in the prior art or would have been obvious variations for a person of ordinary skill in the art.") (emphasis added)). The logical extension of saying all the elements of the asserted claims are present is elements that are not in the claims (the "unclaimed benefits" from Chilisin's opening brief) are irrelevant. Similarly, Chilisin's argument in its opening brief that the reexaminations do not change the result is simply another way of saying all the elements of the claims are present in the prior art, regardless of what happened in the USPTO during the reexaminations. Arguments that Shafer, Nakamura, and Brunner contain teachings about formation temperature are similarly evidence that one specific claim limitation is present: the limitation requiring formation "at a temperature lower than the melting point of the insulating encapsulant." When Chilisin said at trial that the prior art taught all the claim elements, that necessarily included this element. Nothing required Chilisin to do a claim-element-by-claim-element walkthrough, reciting all available evidence for each limitation.

The remainder of the purportedly waived issues go to secondary considerations. With respect to commercial success, Chilisin argued at JMOL that "[s]ales of products that use the patented inventions alone is not enough to establish commercial success." (Trial Tr. at 672:2-4).

That was a clear challenge to the sufficiency of Cyntec's revenue evidence.[2] Chilisin also argued "[o]ther factors such as price, service, and business considerations can affect sales of a product." (Trial Tr. at 672:4-5). The logical implication of saying customers demand features other than mixed powders is that customers do not demand mixed powders. Regarding copying, Chilisin argued there was no copying. (Trial Tr. at 671:17-21). The fact that Chilisin lacked the ability to copy is just one piece of evidence supporting that assertion. Regarding long-felt need, Chilisin argued Shafer and Nakamura already met any needs present in the prior art before Cyntec's patents. (Trial Tr. at 672:78-9). The fact that Shafer and Nakamura came after Brunner is just one fact establishing that they met the needs described in Brunner. Similarly, Dr. Kohl's failure to consider the closest prior art (Shafer and Nakamura) is another piece of evidence showing that there was no long-felt need here given the available teachings in the prior art. Each piece of evidence goes to grounds specifically raised in the oral JMOL, so there was no waiver.

### C. Shafer and Nakamura are Analogous Art

Cyntec argues the jury implicitly found Shafer and Nakamura are not within the scope and content of the prior art. This argument shows why the Court must examine each fact the jury allegedly implicitly found for substantial evidence. Here, the only conclusion supported by substantial evidence is that Shafer and Nakamura are analogous art.

The Federal Circuit has adopted a two-part test for determining whether prior art is analogous. It considers "(1) whether the art is from the same field of endeavor, **regardless of the problem addressed**, and (2) **if the reference is not within the field of the inventor's endeavor**, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1351 (Fed. Cir. 2010) (emphasis added). Here, Cyntec's opposition brief jumps to the second part of the Federal Circuit's test, but it ignores the first factor, which in this case is dispositive. Each asserted patent explicitly defines the "field of the invention." One patent says the field relates to "an electronic device, and in

[2] Cyntec says Chilisin argued "market share" is irrelevant, but Chilisin's motion takes no such position. To the extent Cyntec is saying Chilisin should have mentioned market share during JMOL, the logical extension of saying revenue alone was insufficient is that more information was needed, such as analysis of market share.

particular, to an electronic device having a magnetic body made by magnetic powders." (Ex. 143A ('312 patent) at 1:18-20). The second patent defines the field of invention even more broadly as "an electronic device and a method for manufacturing the same." (Ex. 145A ('037 patent) at 1:20-24). There is no dispute Shafer and Nakamura fall under both of these field definitions. Specifically, both Shafer and Nakamura disclose magnetic bodies for use in inductors (electronic devices), where the magnetic bodies are made using multiple magnetic powders. (*See* Shafer, Title, 1:66-2:7, 3:29-34; Nakamura, Means for Solving, ¶¶ 0001 & 0032). Because they fall in the "same field of endeavor" as the patents, they are within the scope and content of the prior art, regardless of whether they address the same problems as the asserted patents or not.

Moreover, Shafer and Nakamura do address the same problems as Cyntec's patents. While Cyntec identifies the purported problem as "core loss," that is not what its patents say. Instead, when describing problems associated with the prior art, both patents talk about the fact that the magnetic permeability of existing devices slumps at frequencies above 10,000 Hz. ('037 patent at 1:42-46; '312 patent at 1:39-43). Both Shafer and Nakamura address this problem. (*See* Shafer, 4:58-67; Nakamura, ¶ 0001). Additionally, the '312 patent says existing solutions required heating the inductor to temperatures in excess of 600°C. ('312 patent at 1:44-47). Both Shafer and Nakamura avoid high heat. (Shafer, 4:17-19; Nakamura, ¶¶ 0036 & 0032). Thus, under either prong of the Federal Circuit's test, Shafer and Nakamura are within the scope and content of the prior art.

Cyntec argues Nakamura is not "related prior art" because it "doesn't have a wire" and "is not a choke." This argument ignores what a person of ordinary skill would have necessarily understood from reading Nakamura. *See In re Black*, 778 F. App'x 911, 918 (Fed. Cir. 2019) ("A person of ordinary skill in the art attempting to solve a problem is not wholly restricted to the literal confines of the prior art."). Nakamura discusses using its magnetic cores in "inductors" (Nakamura, ¶ 0001), and Cyntec's own expert agreed "[i]n order to create that inductance, you have to have a wire." (Trial Tr. at 467:13-16). In other words, by disclosing an inductor (or choke), Nakamura necessarily discloses a wire, even if it does not use the word "wire," because a wound wire is what defines an inductor. Dr. Kohl acknowledged at trial that his own report said, "Nakamura is directed

to forming a core for a ***wire wound choke***." (Trial Tr. at 505:13-15 (emphasis added)). There is thus no evidence, let alone substantial evidence, to support Cyntec's position that Nakamura has nothing to do with inductors or wound wires.

Cyntec argues Shafer is not "related prior art" because it "doesn't deal with annealing." The evidence at trial, however, was that annealing just means heating. (Trial Tr. at 216:11-14, 255:8-11). The asserted patents do not say to create a choke using ***no*** annealing—to the contrary, the patents say annealing ***can*** be performed. (*See* '312 Patent at 5:39-48). The only problem the patents wish to avoid is ***high temperature*** annealing—use of temperatures above 600°C. With that understanding, Shafer does "deal with annealing" because it heats its choke to around 163°C, well below the high temperatures the asserted patents were trying to avoid. (Shafer, 4:17-19). Again, there is no evidence (let alone substantial evidence) that would justify any other conclusion.

**D. The Purportedly Missing Limitations are Obvious**

Cyntec identifies four "key limitations" it says are missing from "both Shafer and Nakamura." Two of its allegedly missing limitations (that Shafer does not disclose particle size or hardness) relate to Shafer alone. These arguments are irrelevant, since Chilisin is relying on the combined teachings of Shafer and Nakamura. *See Black*, 778 Fed. Appx. at 918 (citing *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097-98 (Fed. Cir. 1986) ("Non-obviousness cannot be established by attacking references individually where the [argument] is based upon the teachings of a combination of references.")). Similarly, Cyntec's argument that Nakamura fails to disclose a wire is irrelevant because Shafer teaches using a buried wire. (Shafer, 1:66–2:7). Also, as discussed above, Nakamura implicitly discloses a wire. It does not matter that Nakamura does not explicitly say the word wire; a wound wire is necessarily present in an inductor, which Nakamura discloses, making the limitation obvious. *See Persion Pharm. LLC v. Alvogen Malta Operations LTD.*, 945 F.3d 1184, 1191 (Fed. Cir. 2019).

The only remaining "key limitation" Cyntec says is missing relates to average size. Specifically, Cyntec argues that while Nakamura does disclose size ranges, it does not explicitly disclose the "mean particle diameter" for those ranges. Like Cyntec's arguments about the purportedly missing wire, this argument is irrelevant because even if Nakamura does not explicitly

discuss the concept of a mean, a POSITA[3] wound have understood that all powders come in ranges of sizes, and therefore must have a mean size. (Trial Tr. at 503:19-25). There is no dispute the size ranges for the powders in Nakamura differ: the iron powder has sizes between 1–10 µm, and the Fe-Si-B alloy powder has sizes between 5–20 µm. (Nakamura, ¶ 0032). In other words, the alloy powder range is larger than the iron powder range. (Trial Tr. at 284:16-285:7). There is also no dispute that Cyntec did not purport to have invented the concept of making chokes using particles that differ in mean size: its own patents say this was known in the art. (*See* ’312 patent at 1:46-47 (describing the problems with existing chokes that have “more than two magnetic powders of different sizes”)). The only thing Cyntec purports to have invented was the realization that the larger particle should also be harder, but that is precisely the teaching in Nakamura: the larger particle (the alloy) is also the harder particle.

Cyntec also argues the “by means of” limitation was not known in the prior art, but its argument is derivative. Specifically, Cyntec argues that because Nakamura does not disclose the size and hardness limitations, it cannot disclose the impact of differences in size or hardness. This argument is wrong, for at least four reasons. First, the claims only require that the ***hardness*** difference impact the formation temperature. There is no dispute Nakamura has a hardness difference. Second, Cyntec does not address the portion of Nakamura that expressly says the hardness difference leads to improved packing. (Nakamura, ¶ 0043). Third, Cyntec does not address its own expert’s concessions that a POSITA would have understood that improved packing leads to a host of improvements, including lower formation temperature, by virtue of physics. (Trial Tr. at 472:12-473:25).[4] Finally, Cyntec never argues that Shafer or Nakamura use temperatures above 300°C, corresponding to the melting point of wire insulation. (’312 Patent at 2:8-12; Trial Tr. at 230:2-6). Thus Cyntec provides no evidence, let alone substantial evidence, that the prior art fails to disclose a relationship between hardness, packing density, and temperature.

---

[3] Cyntec’s opposition brief includes a section on the third *Graham* factor, but the level of ordinary skill in the art is not disputed in this case. (*See* Trial Tr. at 465:14-19).

[4] The “by means of limitation” effectively claims an inherent property of an otherwise known composition (that it lowers formation temperature), which is not enough to make it non-obvious. *See Cytiva BioProcess R&D AB v. JSR Corp.*, 122 F.4th 876, 890 (Fed. Cir. 2024).

**E. Ranges Disclosed in the Prior Art Teach Individual Values and Means**

Cyntec argues that because the asserted claims do not recite ranges of sizes, but rather a specific value (the "mean particle diameter"), the case law on obviousness of ranges does not apply. This is incorrect. The case law makes no distinction as to whether the claims recite a range or a specific value. So for example, in *In re Peterson*, 315 F.3d 1325, 1329 (Fed. Cir. 2003), the USPTO applied this law to claims that recited both ranges (*i.e.*, 1-3% rhenium) and specific values (*i.e.*, 14% chromium). The relevant question was not whether the claims recited a range, but whether the values in the claims (whether a range or a specific value) fall within the range of values disclosed in the prior art. If they do, the claims are presumptively obvious, even if the prior art also discloses values that fall outside the claimed range.

Even if this Court were to read the case law to require the claims themselves to recite ranges, Cyntec's asserted claims do in fact describe ranges. The asserted claims only require that "the mean particle diameter of the first magnetic powder is larger than the mean particle diameter of the second magnetic powder." The mean particle diameter can take on a wide range of values. Some dependent claims, for example, state that the mean particle diameter of the first powder can be from 10 µm to 40 µm—a range. ('312 patent, claim 4). The claims would also cover powders with only slight size differences, or powders with very large size differences—a range of size differences. Indeed, by claiming a "mean" diameter, and not any specific value, the claims necessarily contemplate that the sizes of particles could vary: a "mean" can be calculated based on particle size values that are similar, or size values that are vastly different. The law on obviousness of ranges exists for situations such as this, where a claim limitation can take a number of different possible values. When any possible claimed value is disclosed in the prior art, the claim element is presumptively known and obvious, even if the prior art also discloses other possible values. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Where a claimed range overlaps with a range disclosed in the prior art, there is a presumption of obviousness."); *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985) ("It is … an elementary principle of patent law that when, as by a recitation of ranges or otherwise, a claim covers several compositions, the claim is 'anticipated' if one of them is in the prior art.").

Cyntec argues the presumption of obviousness only exists when the sole difference between the claims and the prior art is the range. The Federal Circuit has expressly rejected that interpretation:

> Thus, contrary to the district court's statement, when we said in *Kumar* that '[a] *prima facie* case of obviousness may be made when the only difference from the prior art is a difference in the range or value of a particular variable,' 418 F.3d at 1366, we did not declare a blanket rule that the presumption 'only applies' in that single-difference circumstance, Remand Decision, at 210. Nor have we been pointed to other precedents setting a categorical one-difference limit on the presumption at issue here.

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1376 (Fed. Cir. 2025). Also, Cyntec's argument confuses two separate issues. The first question presented here is whether Nakamura discloses combinations of particles that differ in mean size, even if it also discloses combinations of particles that do not differ in mean size. Nakamura provides this disclosure: a person of skill could select iron particles from the smaller end of the size range in Nakamura, and alloy particles from the larger end of the size range in Nakamura. Such a selection is consistent with the teachings in Nakamura and would satisfy the claims of the asserted patents, which is legally sufficient to find the limitation present. *See id*. The second question presented here is whether Cyntec has valid arguments for anything other than the size limitations. As discussed above, it does not: Cyntec's other "key arguments" all focus on a single reference, ignoring the teachings of the second reference that fill the gaps. The mean size limitation is the only difference Cyntec says is missing from both references, so if it is present in Nakamura, this creates a rebuttable presumption that the claim is obvious.

Cyntec also argues that the prior art must recognize the claimed "relationship" between size and a reduction in formation temperature. The asserted claims, however, do not require any relationship between ***size*** and formation temperature. The claims only require a relationship between ***hardness*** and formation temperature. (*See* '312 Patent, claim 1 ("wherein by means of the first ***hardness*** difference" the temperature is reduced); '037 Patent, claim 1 (same)). As discussed above, Nakamura expressly acknowledges the relationship between hardness and packing density, which Dr. Kohl agrees necessarily lowers formation temperature as a matter of physics. (Trial Tr. at 472:12-473:25). The prior art does not need to recognize a relationship

between size and formation temperature, since none is claimed.

Finally, Cyntec argues that here there are secondary considerations of non-obviousness, and that the prior art "teaches away" from its claims. Secondary considerations of non-obviousness are addressed below. As for "teaching away," a reference teaches away "when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken in the claim." *See Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017). Here, Cyntec does not explain what "divergent" path Nakamura teaches with respect to the claimed size limitation. Nakamura clearly discloses that the size range for the iron powder is smaller than the size range for the alloy, meaning individual particles of iron can be smaller (and thus have a smaller mean size) than individual powders of alloy. Nakamura never says to use only the largest iron particles, or only the smallest alloy particles. Since Nakamura teaches the entire range, there is no teaching away. Notably, none of the testimony Cyntec identifies in its brief discusses "teaching away" or explains how the prior art allegedly "teaches away" from any particular claim limitation.

**F. No Secondary Considerations Evidence Changes the Result**

As Chilisin noted in its opening brief, even strong secondary considerations or "objective indicia" evidence does not mean a claim is not obvious. *See Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997) (a "trial court may conclude that a patent claim is obvious, even in the light of strong objective evidence tending to show non-obviousness"). Cyntec complains that Chilisin is asking the Court to reweigh Cyntec's secondary considerations evidence, but that is precisely what the law requires: obviousness (including the impact of secondary considerations) is assessed by the Court *de novo*. *See Apple*, 920 F. Supp. 2d at 1132. Thus, while the Court must assume the jury found secondary considerations present, it must still independently weigh that evidence and consider whether it makes the claims non-obviousness.

With respect to long-felt need, even if the Court accepts that there was a need in the industry for creating chokes at lower temperatures, that does not explain why the combination of Shafer and Nakamura failed to satisfy that need. It is undisputed that neither Shafer nor Nakamura discloses the use of high temperatures during formation. Also, Nakamura expressly discloses mixing

powders that have the claimed hardness difference, which Dr. Kohl said necessarily reduces formation temperature by virtue of physics. (Trial Tr. at 472:12-473:25). Cyntec's expert never explained why using Nakamura's powders in a molded choke would fail to satisfy the need for lower formation temperatures. Also, the only ***objective*** evidence Cyntec presented (the third-party patent from Brunner) predates Shafer and Nakamura by multiple years. Presumably if the need for obtaining lower formation temperatures remained great for over a decade, some third party would have commented on that between 2005 (when Nakamura was published) and 2010 (when Cyntec filed its patents). Cyntec has no objective evidence that this occurred.

With respect to unexpected and superior results, Cyntec says it presented "unrebutted expert testimony" that its technology "surprised the industry." Here again, Cyntec offered no ***objective*** evidence. If Cyntec's results were so surprising, presumably some third party (such as a customer or industry analyst) would have comments on them. Here, all the evidence of allegedly superior results came from Cyntec documents and witnesses, so it is not an ***objective*** indicia of non-obviousness. Cyntec argues its testing data was objective, but all that testing data shows is that the combination of alloy and iron has the best performance. (*See* '312 Patent, Table 3). Nakamura's testing data showed the same result. (Nakamura, Table 1). Specifically, Nakamura showed the 50/50 iron/alloy combination had the best magnetic permeability and the highest packing density. Dr. Kohl said high packing density caused by hardness differences results in several benefits, including low core loss. (Trial Tr. at 472:12-473:25). Dr. Kohl never explained why using the powder combination in Nakamura (which indisputably has a hardness difference) in a molded choke would not provide all the benefits he described.

Regarding commercial success, Cyntec argues its products sold well, but that fact, standing alone, is not probative. There is no dispute all modern electronic devices need chokes (Trial Tr. at 244:20-245:1), so high sales could reflect the growth in the size of the market for consumer electronics, not anything having to do with the superiority of Cyntec's technology. There is also no dispute other companies compete in this market, including with parts that do not use Cyntec's technology. (Trial Tr. at 570:24–571:2, 594:19-595:9, 567:11-568:13). Cyntec's experts never

analyzed whether Cyntec's sales or profit margins were better than any of these competitors.[5] Cyntec says its market share is 60% in notebooks and 50% in smartphones, but that still means the remaining 40-50% of customers in these two key industries are not using Cyntec's chokes. Also, here again Cyntec has no ***objective*** evidence—its market share data is taken from its own sources. (Dtk. 299-23, Ex. 383 at 32). Chilisin's market share data, by contrast, came from third parties, and that objective information shows Cyntec with a considerably lower market share. (Trial Tr. at 151:6-152:7).[6] Cyntec argues its technology is what provides the low core loss customers demand, but Cyntec's expert said low core loss is caused by having a hardness difference between two powders. (Trial Tr. at 472:12-473:25). There is no dispute Nakamura has a hardness difference, so using that powder mixture would provide these benefits to customers too.

Finally, with respect to copying, even if the Court assumes the jury found evidence that Chilisin copied Cyntec's "dimensions" and "electrical characteristics," as Cyntec alleges in its brief, that does not mean the jury found copying of the patented powder technology. There is no evidence, let alone substantial evidence, that Chilisin ever knew what powders Cyntec used in its chokes. Cyntec does not dispute that Chilisin not only did not know what powders Cyntec used, it had no capability to run the tests necessary to obtain that information. Cyntec does not rebut the fact that its own expert had to run tests using third-party labs to know the properties of Cyntec's powders; there is no evidence (let alone substantial evidence) that Chilisin ever ran such tests. Cyntec also does not address the fact that while its "copying" evidence is all dated between 2017 and 2020, the accused parts were being mass produced years earlier, by no later than 2015. (*See* Dkt. 298-13, Ex. 50 ("Mass production started from 2015"); Dkt. 576-8, Ex. 1354-A (showing Chilisin sales data starting in 2015)). Cyntec has no evidence (let alone substantial evidence) any copying occurred during development of these products. The fact that Chilisin later changed its

---

[5] Cyntec's evidence was that its margins became better than they were historically, but that is not probative if others in the industry were also achieving higher margins.

[6] Cyntec identifies *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1378 (Fed. Cir. 2021), for the proposition that commercial success can be shown through sales figures alone. The case also says, however, that market share data should be considered when present. Here, the market share data sheds important light on the significance of Cyntec's sales numbers, showing they are not as meaningful as Cyntec claims.

parts to "match" Cyntec's sizes or electrical characteristics without changing the powder composition shows that copying these characteristics had nothing to do with copying Cyntec's mixed powder technology. Since there is no connection between copying dimensions or electrical characteristics and the asserted claims, Cyntec's copying evidence carries little weight. *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012) ("a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis").

**G. No Reasonable Jury Could Find Lack of Motivation to Combine**

Cyntec argues the jury implicitly found no motivation to combine Shafer and Nakamura. Importantly, the Supreme Court has cautioned against applying a rigid requirement for a teaching, suggestion, or motivation to combine two prior art references when conducting an obviousness analysis. *See KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1741 (2007). The Federal Circuit has said that "[t]he motivation-to-combine analysis is a flexible one" and that "[a]ny need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *See Medivis, Inc. v. Novarad Corp.*, No. 2024-1794, 2026 U.S. App. LEXIS 6078, at *8 (Fed. Cir. Mar. 3, 2026). The case law "does not require that each piece of prior art in an asserted combination must be directed to the same known problem" in order for there to be a reason to combine two references. *See Universal Elecs., Inc. v. Roku, Inc.*, No. 2024-1426, 2026 U.S. App. LEXIS 10383, at *11 (Fed. Cir. Apr. 10, 2026). Here, Cyntec itself argues there was a "long-felt need" in this industry for forming chokes at lower temperatures. Both Shafer and Nakamura teach chokes that accomplish this result. That alone is a sufficient reason for a POSITA (a materials scientist with a Ph.D.) to attempt the combination.

Cyntec's argument that Shafer and Nakamura "deal with different things" is not supported by substantial evidence. Both Shafer and Nakamura describe magnetic bodies for inductors that use a combination of two magnetic powders: iron and an alloy. Both use this technology to provide better performance at higher frequencies, just like the asserted patents. Cyntec argues the two are different because Nakamura lacks a buried wire, but Dr. Kohl admitted that Nakamura discloses a magnetic core for use in a wire wound choke (Trial Tr. at 505:13-15), and Cyntec does not dispute

that if a powder can be used in a wire wound choke it can also be used in a molded choke. (*See* ’312 Patent at 6:34-7:4). There is no evidence in the record, let alone substantial evidence, that Nakamura’s powders were somehow unfit for use in molded chokes.

The remaining arguments in Cyntec’s brief are either wrong, irrelevant, or both. For example, Cyntec says there is no data in Shafer or Nakamura that correlates size and hardness to performance, but this ignores Nakamura’s test results, which clearly show the performance benefits of using a 50/50 powder mixture (which has the size and hardness difference) over single powders (which lack any difference). (Nakamura, Table 1). Nakamura also expressly says these performance benefits are due to the hardness difference, which is all that the asserted claims require. (Nakamura, ¶ 0043). Cyntec says Nakamura provides “no guidance on optimizing size ranges,” but the claims do not require “optimal” size ranges, they only require using sizes that differ. Nakamura expressly teaches differing size ranges for its two powders. Finally, Cyntec argues Nakamura “lacks any disclosure of a wire,” but as noted above, Cyntec’s own expert said Nakamura discloses inductors, and inductors necessarily have wires.

As the Supreme Court has said, a person of ordinary skill is “a person of ordinary creativity, not an automaton.” *KSR*, 127 S. Ct. at 1742. Here, the claimed novelty is using powders that differ not only in size but also in hardness. The claimed benefit is obtaining lower formation temperatures. A skilled artisan seeking to lower formation temperatures would see that both Shafer and Nakamura achieve this result, and Nakamura provides an express powder formula for doing so. That is a legally sufficient reason for a person with a Ph.D. in this field to attempt to combine the two references.

### H. The Reexaminations Do Not Change the Obviousness Analysis

Cyntec’s ends its brief with a straw man argument. It says Chilisin is asking this Court to “disregard the reexaminations,” “re-adjudicate” them, or “reweigh” them. Chilisin is not asking the Court to do any such thing. The Court can consider the reexaminations, but they do not change the outcome. Notably, Cyntec does not identify any *Graham* factor that is allegedly impacted in any way by the reexaminations. The USPTO did not make any findings that Shafer or Nakamura were outside the scope and content of the prior art; if anything, the examiner found Nakamura was

within the scope and content of the prior art, since he found it raised a substantial new question of patentability and used it as the basis for various obviousness rejections. The examiner did not say Shafer fails to teach any claim limitations: there was no substantive discussion of Shafer whatsoever. The discussion of Nakamura was about the lack of a reason to combine it with ***Shin*** (Dkt. 450-13 at 993), but that does not say anything about whether it would have been obvious to combine Nakamura with ***Shafer***. The reexaminations simply do not carry any probative weight.

Cyntec argues it did not argue inconsistent claim constructions in the two proceedings, but that is plainly wrong. Cyntec argued to the USPTO (among other things) that the claims require "a causal link between the recited hardness difference and the lower temperature." (Dkt. 450-13, Ex. 1366 at CYN_0227808). The Federal Circuit rejected that claim construction, holding "[t]he key phrase 'by means of' is certainly broad enough to include but for causation. But the phrase is also broad enough to capture mere contribution." (Dkt. 336 at 10). This Court did not instruct the jury that the claims require a "causal link." (Dkt. 509). Cyntec made this argument to the USPTO hoping it would view the claims narrowly, making them harder to invalidate. Nothing prevented Cyntec from making this argument; the reexaminations were *ex parte*, so Chilisin could not point out the inconsistency. Having made this argument, however, Cyntec must now accept that it diminishes any probative weight the proceedings should be given here.

## II. CONCLUSION

For the foregoing reasons, and for the reasons discussed in its opening brief, Chilisin respectfully requests that this Court grant its Renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) and enter judgment in Chilisin's favor on the issue of invalidity, finding that the asserted claims of U.S. Patent Nos. 8,922,312 and 9,481,037 are invalid as obvious under 35 U.S.C. § 103.

Dated: May 4, 2026

WHITE & CASE LLP

By: */s/ Jonathan Lamberson*
Jonathan Lamberson
Attorneys for Defendants
CHILISIN ELECTRONICS CORP.