Jonathan Lamberson (SBN 239107)
lamberson@whitecase.com
Henry Huang (SBN 252832)
henry.huang@whitecase.com
Yuhan Wang (SBN 341882)
yuhan.wang@whitecase.com
Christhy Le (SBN 365690)
christhy.le@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Hallie Kiernan (SBN 313541)
hallie.kiernan@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Attorneys for Defendants
CHILISIN ELECTRONICS CORP.[1]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CYNTEC COMPANY, LTD,<br><br>Plaintiff,<br><br>v.<br><br>CHILISIN ELECTRONICS CORP. and CHILISIN AMERICA LTD.,<br><br>Defendants. | Case No. 3:18-cv-00939-TLT<br><br>**CHILISIN'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM PRIOR JUDGMENTS UNDER RULE 60, FOR A FINDING OF UNCLEAN HANDS, AND FOR SANCTIONS**<br><br>[[redacted]]<br><br>Date: September 15, 2026<br>Time: 10:00 a.m.<br>Dept.: Courtroom 9, 19 Floor<br>Judge: Hon. Trina L. Thompson |

[1] Chilisin America Ltd. no longer exists as a legal entity, it was dissolved in January 2023.

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Cyntec Was Obligated to Produce its License Agreements ........ 2

B. Chilisin Cannot Induce a Licensed Customer to Infringe ........ 4

C. Cyntec Identified Specific Customers in its Damages Calculations ........ 7

D. Relief From the Judgments is Warranted Under Rule 60 ........ 9

1. Rule 60(b)(2) Applies ........ 9

2. Rule 60(b)(3) Applies ........ 11

3. Rule 60(d) Applies ........ 13

E. Cyntec's Hands Are Unclean ........ 14

F. Monetary Sanctions are Warranted ........ 15

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Brandywine Communs. Techs., LLC v. AT&T Corp.*, No. C 12-2494 CW, 2014 U.S. Dist. LEXIS 54370 (N.D. Cal. Apr. 18, 2014) ....................... 10

*Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008) ....................... 14

*Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ....................... 8

*Jajco, Inc. v. Leader Drug Stores, Inc.*, No. C 12-05703 PJH, 2013 U.S. Dist. LEXIS 77830 (N.D. Cal. May 31, 2013) ....................... 6

*Jones v. Aero/Chem Corp.*, 921 F.2d 875 (9th Cir. 1990) ....................... 13

*In re Levander*, 180 F.3d 1114 (9th Cir. 1999) ....................... 13

*Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014) ....................... 5

*Nugent v. Secretlab US, Inc.*, No. 22-cv-08944-RFL, 2024 U.S. Dist. LEXIS 175988 (N.D. Cal. Sept. 27, 2024) ....................... 12

*TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009) ....................... 5

*Wood v. Milyard,* 566 U.S. 463 (2012) ....................... 14

# I. INTRODUCTION

Through eight years of litigation, Cyntec swore under oath that it "ha[d] not attempted to license the '037 or '312 Patents." It exploited the parties' sales to Apple as evidence for infringement, damages, validity, and a two-year permanent injunction against Chilisin. Yet, before filing this lawsuit, [redacted]. Cyntec argues no rights flowed to Chilisin under these agreements. That is wrong, but it is also irrelevant, for two reasons. First, Chilisin was accused of inducing Apple to import and sell infringing products in the United States. [redacted]. Second, even if Cyntec believes the agreements should have no impact on the outcome of the case, at the very least Chilisin should have been permitted to make its arguments when infringement, validity, damages, and injunctive relief were being addressed in the first instance.

Ultimately, Cyntec fails to explain why it did not produce these agreements sooner. Cyntec argues disclosing the agreements was unnecessary because they are just [redacted], but Chilisin did not restrict its discovery based on the title of the agreement, it focused on the substance. There is no question these agreements contain [redacted]. Cyntec also claims Chilisin was not diligent or specific enough in its discovery requests, blaming Chilisin's e-mail search terms, but these agreements ***are not e-mails***. Nothing in the Court's procedures for collecting and producing electronically stored information ("ESI") allowed Cyntec to avoid searching for other types of relevant documents. It certainly did not allow Cyntec to give incorrect 30(b)(6) testimony, or to fail to correct the record when it discovered its prior sworn statements were wrong.

At the end of the day, there can be no dispute that Cyntec successfully concealed agreements with the most relevant customer for the accused and embodying products from February 2018 to May 2026. Even if the Court finds Cyntec and its counsel were merely negligent, that still warrants relief under Rule 60. But negligence alone cannot explain Cyntec's conduct after Chilisin raised

this issue in 2021, and especially after 2024, when [redacted] yet said nothing to correct the record here. As explained below, Chilisin's motion should be granted in full.

## II. ARGUMENT

### A. Cyntec Was Obligated to Produce its License Agreements

Chilisin's original discovery requests were broad: they asked for production of "any license to the Patents in Suit" and "all agreements relating to the Asserted Patents and Related Patents, including settlement agreements, licenses, and covenants-not-to-sue." (Dkt. 606-3 ("Opp'n") at 7 (quoting RFP Nos. 33, 43)). Cyntec claims "[redacted]," but Chilisin's discovery did not have to be drafted so narrowly. Notably, Cyntec did not refuse to answer this discovery because it was too broad, or because it was not understandable; Cyntec answered and said it had no such agreements. There is no dispute Cyntec did have agreements, and [redacted] Any reasonable reading of the discovery requests would have called for the production of these documents.

Cyntec next blames the e-mail discovery process for its lack of production, claiming that Chilisin's e-mail search terms were too narrow. (*See id.* at 8-9 ("[redacted]")). This argument is misplaced, for several reasons. First, Cyntec does not explain how these agreements were stored. [redacted]. From the current record it is not clear whether these documents even qualify as electronically stored information ("ESI"); they may well exist in physical form. Second, even assuming they are ESI, the Court's ESI order only required search terms for "email productions." (Dkt. 57 at 3). As noted, there is no evidence these agreements qualify as e-mail. Third, regardless of Cyntec's obligations to search for and produce e-mail, Cyntec also had an obligation to answer interrogatory responses correctly, and to educate its 30(b)(6) witnesses to discuss topics relating to licensing. Cyntec's opposition suggests it did no document collection other than for e-mails, and that it performed no diligence beyond reviewing those e-mails. That is plainly deficient.

Cyntec also ignores its separate duty under Fed. R. Civ. P. 26(e) to supplement interrogatory

responses and to correct its witnesses' sworn testimony once Cyntec knew it to be false. [redacted], and repeated that statement in a sworn post-trial declaration to help Cyntec obtain a permanent injunction (Dkt. 288-24 ¶ 9). Cyntec itself previously insisted that a responding party "must provide complete and updated information without repeated prompting." (Dkt. 410 at 14). Yet when Cyntec learned about the existence of these agreements, either in 2021 when Chilisin first raised the issue, [redacted], Cyntec never supplemented its plainly incorrect responses.

Next, Cyntec blames Chilisin's pleadings, claiming its discovery search was proportionate to Chilisin's affirmative defenses at the time, which did not include "implied licenses or patent exhaustion defenses." (Opp'n at 8). The agreements, however, were relevant to issues beyond the question of whether Chilisin is licensed. They are relevant to whether [redacted], whether Chilisin can induce infringement when it sells to Apple, and whether Cyntec has standing to pursue damages for these sales. They are also relevant to whether Chilisin engaged in "copying" when it satisfied a request to provide competing parts [redacted]. And they are relevant to whether Cyntec suffered "irreparable harm" warranting injunctive relief. Here again, Cyntec did not object to Chilisin's discovery based on relevance—it answered and said it had no agreements. (*Id.* at 7). Even if Chilisin had pled that it was licensed, these responses would have foreclosed that defense. This motion is the only procedural vehicle to undo the prejudice caused by this lack of disclosure.

Cyntec next attempts to shift responsibility to its corporate parent, stating [redacted] (*Id.* at 9). This representation is inconsistent with the fact that Cyntec produced the agreements during the post-trial discovery period. Cyntec must have been able to access the agreements in 2026, and it gives no evidence it could not have done so earlier. Cyntec's argument also ignores that [redacted]. Someone at Cyntec must have known about them, especially since [redacted]

[redacted]. Finally, [redacted]. Cyntec suggests Chilisin should have come to this Court in 2025 because it was also a party to the malpractice case, but it was Cyntec's duty to correct its own misstatements. Also, Chilisin did try multiple times to get the agreements produced here, but those requests were opposed by Cyntec and ultimately denied. (Dkt. 370; Dkt. 385).

The only thing that prevented Cyntec from finding these agreements sooner was its own refusal to look for them. Cyntec apparently did nothing beyond e-mail searches in 2018. When Chilisin raised the MDSA in 2021, [redacted], Cyntec did nothing to correct the record here. This conduct is all attributable to Cyntec.

**B. Chilisin Cannot Induce a Licensed Customer to Infringe**

All of Cyntec's arguments against the forms of relief that Chilisin requested depend on its position that none of the agreements it produced affect this case in any way. That is plainly wrong. The contract language includes provisions stating that [redacted]. These rights impact all issues in the case: infringement, validity, damages, and injunctive relief. [redacted]. Because sales to these intervening manufacturers take place entirely outside of the United States, the only way Cyntec could seek damages for those sales was to argue that Chilisin induced Apple to import and sell devices containing accused chokes into the United States. Cyntec's experts said they could identify Chilisin sales that were destined for Apple because those parts were labeled using a specific "design code"—the letters "EJ" in the part number. (*See* Dkt. 255 (8/25/2021 Trial Tr.) at 541:17-543:18 ("And 'EJ' represents the code for Apple.")). They agreed Apple was Chilisin's "largest customer of products" that "contain Chilisin chokes." (Dkt. 258 (8/26/2021 Trial Tr.) at 626:19-

24). Cyntec's lead counsel, Mr. James Yoon, said in his closing argument that Chilisin helped Apple "bring product into the United States" meaning "[a]bsolutely there's inducement." (Dkt. 266 (8/31/2021 Trial Tr.) at 1198:1-3).

In order for Chilisin to induce Apple to infringe, however, Apple itself must be a direct infringer. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922 (2014) ("[W]here there has been no direct infringement, there can be no inducement of infringement."). But Apple cannot directly infringe because [redacted] There is no question the asserted patents are used in [redacted]—Cyntec said this during both trials. (*E.g.*, Dkt. 544 (3/2/2026 Trial Tr.) at 26:1-5; Dkt. 266 at 1253:13-15). [redacted] (*Id.*, § 13.3(e)). A covenant not to sue ("CNS") is legally equivalent to a license. *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1276 (Fed. Cir. 2009). Because [redacted] under these provisions, it cannot be a direct infringer, and Chilisin cannot induce it to infringe.

Indeed, Cyntec's opposition appears to acknowledge that its agreements give certain [redacted] (Opp'n at 16). Cyntec argues that [redacted]

[redacted]. (*See id.*; Ex. B § 13.2(b)(iii)). This argument is a red herring for two reasons. First, as noted above, [redacted]

Next, Cyntec argues that [redacted] (*See* Opp'n at 4, 16). That contention is legally wrong,[2] but it is also irrelevant because Chilisin is not claiming rights that flow from a status as a third-party beneficiary. The rights at issue here fall into at least two categories. First, there are promises Cyntec made [redacted] (Ex. C § 13.1(b)). All of these rights are express, not implied.

For the [redacted] MDSA, [redacted], Cyntec offers no arguments other than saying Chilisin must identify "retroactive language" that covers prior infringement. (Opp'n at 6). But [redacted]. To the extent Cyntec is able to obtain supplemental damages, those will be covered by [redacted].

---

[2] *See Jajco, Inc. v. Leader Drug Stores, Inc.*, No. C 12-05703 PJH, 2013 U.S. Dist. LEXIS 77830, *17-19 (N.D. Cal. May 31, 2013) (ruling that specific contract provisions can benefit third parties despite "express disclaimer of third party beneficiaries").

[redacted],[3] but even with respect to that agreement Cyntec's arguments are wrong. Cyntec argues [redacted]

**C. Cyntec Identified Specific Customers in its Damages Calculations**

In its opposition, Cyntec acknowledges that [redacted] (Opp'n at 17). This argument ignores Cyntec's own position in the litigation. As noted, Cyntec's experts identified a Chilisin product identifier that they said designated sales of parts used in Apple devices. The parts Chilisin sold to Apple have that identifier, and Cyntec specifically identified Apple as the "indirect customer" for these parts in its damages opinions. (*See* Dkt. 255 (8/25/2021 Trial Tr.) at 541:20-542:5; Dkt. 148-7 (Van Uden Opening Rep.) ¶ 47 ("[redacted]

[3] Cyntec's damages calculations for inducement begin on December 14, 2017. (Dkt. 138-7 (Van Uden Opening Rep.) ¶ 114).

[redacted].")). Indeed, Cyntec's damages expert testified at trial that Apple was "by far the largest importer of products" containing Chilisin chokes. (Dkt. 258 (8/26/2021 Trial Tr.) at 626:22-24). He could not have said this if he had no idea which parts were meant for Apple.[4] Also, the Court gave Cyntec its full reasonable royalty damages on remand, including for both direct and indirect customers, which means sales to Apple remain in the damages award to this day. (Dkt. 433 at 8). Having prevailed in obtaining damages for sales to Apple, Cyntec should be judicially estopped from arguing that Chilisin lacks evidence accused products go into Apple devices. *See Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1345 (Fed. Cir. 2001) ("a party will be judicially estopped from asserting a position on appeal that is directly opposed to a position that the party successfully urged at trial").

[redacted]. (Ex. B § 13.3(d); Ex. D § 13.7(d)). Cyntec's attempts to escape those obligations also fail. Cyntec claims it was allowed to use its own documents against Chilisin and that it did not use any Apple confidential documents (Opp'n at 17-18), but that is plainly wrong: Cyntec introduced, for example, Apple's agreements and certifications involving Chilisin (including the Apple-Chilisin MDSA, Trial Ex. 193) to show that Chilisin allegedly induced Apple to infringe; the agreement is clearly marked "Apple Confidential." (*E.g.*, Dkt. 287-02; Dkt. 255 (8/25/2021 Trial Tr.) at 537:1-538:6 (Cyntec's damages expert discussing Apple agreement), 540:18-22 (same expert discussing Apple certification)). Chilisin's corporate witness touted Cyntec's sales to Apple, showed the jury inductors that allegedly "go on to today's modern smart phones," and told the Court in a sworn declaration that Cyntec lost Apple business to Chilisin. (Dkt. 546 (3/4/2026 Trial Tr.) at 577:16-19, 556:3-25; Dkt. 288-24 ¶ 5). Cyntec's repeated and continued use of its sales to Apple disproves its claim that it "did not use any contractually restricted materials." (Opp'n at 18).

[4] The Federal Circuit ultimately rejected Cyntec's importation theory because Cyntec lacked proof regarding how many devices were imported into the United States, not because of a lack of evidence that Chilisin sold parts to Apple (albeit indirectly). (*See* Dkt. 336 at 17).

**D. Relief From the Judgments is Warranted Under Rule 60**

***1. Rule 60(b)(2) Applies***

Of Rule 60(b)(2)'s three requirements, Cyntec challenges two. First, Cyntec claims Chilisin did not exercise reasonable diligence, arguing that Chilisin should have pleaded a license affirmative defense and sought discovery based on a 2018 e-mail mentioning one agreement. (*See* Opp'n at 18-19). Chilisin's failure to plead a license defense is discussed above. Most importantly, Cyntec did not refuse to provide discovery on this basis; it instead responded and gave testimony stating no licenses existed. Also, the agreements were relevant to issues beyond just a license defense, touching on all issues in the case. Indeed, Chilisin had no basis to pursue a license defense once Cyntec said in sworn testimony it had never licensed its patents.

Regarding diligence, Chilisin exercised reasonable diligence throughout discovery in pursuing information about Cyntec's licensing agreements. Chilisin's original requests for production sought any licenses or agreements involving the asserted patents, [redacted]. Chilisin also served an interrogatory and asked Cyntec's Rule 30(b)(6) witness questions under oath on the topic of licensing. In all of these responses, Cyntec said no agreements existed. After the 2021 trial, Chilisin specifically requested the MDSA, but Cyntec again denied any such agreement existed. [redacted]. (Opp'n at 10 ("Cyntec declined to reopen discovery, run new search terms, and search for an agreement to support a defense that Chilisin never raised"); Dkt. 606, Mays Decl. ¶ 4).

Following the Federal Circuit appeal, when fact discovery re-opened, Chilisin issued a subpoena and asked Cyntec to produce its agreements, but the Court declined to compel production. Finally, following the 2026 trial, Chilisin yet again renewed its demand for the agreements. Only then did Cyntec produce the documents for inspection. While Cyntec asks the Court to focus on discovery activity prior to 2021, it gives the Court no legal basis to ignore Chilisin's efforts after that date.[5] In fact, Cyntec does not argue Chilisin lacked diligence from 2021 onward; it simply

[5] Chilisin's statement about Steptoe's lack of diligence prior to 2021 similarly is not an admission that Chilisin was not diligent following that date. Also, since the malpractice case settled, no fact finder determined whether Steptoe in fact failed to diligently pursue this issue.

says (without legal support) that "Chilisin's later pursuit of discovery in the Remand Action cannot cure its lack of diligence during the First Action." Diligence, however, does not require a party to request a document at the earliest possible opportunity. *See Brandywine Communs. Techs., LLC v. AT&T Corp.*, No. C 12-2494 CW, 2014 U.S. Dist. LEXIS 54370, *49 (N.D. Cal. Apr. 18, 2014) (finding diligence despite argument that party "could have obtained this information sooner"). That is particularly true here, since Cyntec said in sworn statements that the document does not exist, and since Court orders blocked discovery into the issue.

The amount of diligence Chilisin exercised was particularly appropriate in light of Cyntec's repeated representations about the non-existence and unavailability of any agreements. Cyntec's opposition fails to address its multiple prior statements to the Court and Chilisin, including that:

- "Cyntec has not attempted to license the '037 or '312 Patents. Cyntec's policy is to retain exclusivity over its patented technologies." (Dkt. 288-24 ¶ 9)
- "Chilisin's Assumption That [an] Agreement Exists Is Pure Speculation" (Dkt. 303, Dec. 14, 2021)
- "Chilisin does not cite or include an actual agreement … Instead, Chilisin speculates as to both the existence of such an agreement and its terms . . . ." (Dkt. 349, Jan. 5, 2024)
- "While the [October 2018 e-mail] may suggest a Delta-Apple agreement (which Chilisin never subpoenaed), it does not establish the existence of an agreement with Cyntec." (Dkt. 367 at 4, Apr. 2, 2024)
- "Cyntec has, to date, been unable to locate the … Supply Agreement" (Dkt. 550, Mar. 16, 2026)

Notably, Cyntec's argument that Chilisin should have known about the agreements based on a 2018 e-mail cuts against its own position—Cyntec, too, had that 2018 e-mail, yet Cyntec says it saw no need to investigate whether any agreements existed when it responded to Chilisin's discovery.

Cyntec also argues that Chilisin should have produced its own agreements earlier, and that it should have known that Cyntec had similar agreements. (*See* Opp'n at 6-7, 19). Those arguments are misplaced, for multiple reasons. First, even assuming Chilisin should have known agreements typically contain licenses, Chilisin could not have been expected to assume Cyntec's repeated, sworn statements that it did not have the agreements, or that it had not licensed its patents, were false. Second, Chilisin did in fact produce its agreement during the original fact discovery period, and Cyntec introduced it at trial as Trial Exhibit 193. (Dkt. 299-01). Cyntec complains Chilisin

withheld a later agreement, but Cyntec never asked for that agreement, and it was not relevant until Cyntec produced its own agreements showing [redacted]. Had Cyntec produced its agreements sooner, Chilisin would have produced its agreement to show [redacted]. Third, even if Chilisin allegedly lacked diligence during the first fact discovery phase, it was unquestionably diligent from 2021 onward.

For similar reasons, the separate malpractice action also does not excuse Cyntec's failure to produce its agreements here. First, even if Chilisin's former counsel should have sought more discovery on the e-mail, that does not mean Cyntec had no obligation to search for responsive agreements, to produce them in response to discovery requests, to answer interrogatories and deposition questions truthfully, and to supplement the record when it learned its prior response were inaccurate. Second, the [redacted] FGA and [redacted] MDSA were not produced in the malpractice action—only the [redacted] MDSA was produced,[6] so Steptoe's statements about the scope of that license (Opp. at 11) are irrelevant to the later, [redacted] agreements. Third, Cyntec now argues the reference to an MDSA in the e-mail was in fact a reference to a different document, the [redacted] FGA. (Opp. at 4 n.2). Thus even if Chilisin's former counsel had pursued the document referenced in the e-mail, there is no guarantee it would have resulted in the production of the correct agreement. Finally, it is not Steptoe's fault that Cyntec's counsel had at least the [redacted] MDSA by no later than [redacted], yet it did nothing to correct its prior incorrect discovery responses here.

Finally, Cyntec insists that the agreements would not have changed infringement, damages, or validity. (*See* Opp'n at 20). These arguments all depend on Cyntec's theory that the agreements did not give any rights, which is incorrect for the reasons explained above. Because [redacted], Chilisin cannot be liable for inducing their importation or sales, nor can Cyntec reasonably expect to obtain damages for those sales.

**2. *Rule 60(b)(3) Applies***

Cyntec denies it committed fraud, misrepresentation, or misconduct because the parties' ESI process did not identify these agreements (Opp'n at 21), but as discussed above, Cyntec's

---

[6] Cyntec attempts to muddy the record by suggesting multiple agreements were produced in that malpractice case, [redacted]. (Dkt. 606, Mays Decl. ¶ 10).

search was flawed because it apparently only involved e-mail. The ESI order should not have prevented Cyntec from searching for non-e-mail agreements. Cyntec also argues that the "[redacted]" (*id.*), but at least for the [redacted] FGA this is not credible because [redacted].[7] Also, this argument does not excuse non-production of the [redacted] MDSA, and Cyntec's declaration does not confirm whether Cyntec or its parent possesses that agreement. Cyntec also acknowledges [redacted], and does not explain its failure to correct the record here. (Dkt. 606, Mays Decl., ¶ 10). Finally, the fact that [redacted] is irrelevant if Cyntec also had access to them. *See Nugent v. Secretlab US, Inc.*, No. 22-cv-08944-RFL, 2024 U.S. Dist. LEXIS 175988, *50 (N.D. Cal. Sept. 27, 2024) (compelling production of parent's documents from subsidiary that "has actual possession and custody of the documents"). Cyntec does not suggest they were unavailable from 2018 to 2026, nor does it explain how they were suddenly available to it in May 2026.

Cyntec also again sidesteps the numerous misleading statements it made to the Court and Chilisin about the agreements. As listed above, Cyntec stated that it never licensed its patents; that there was no evidence the [redacted] MDSA even existed; that Chilisin's contrary arguments were "speculation"; that any agreement involved only Delta, not Cyntec; and that "any purported agreement" was "irrelevant." While seeking a post-remand preliminary injunction in 2024, Cyntec told the Court that the 2018 e-mail "does not establish the existence of an agreement with Cyntec." (Dkt. 367 at 4). Then after producing and sealing the [redacted] MDSA in the malpractice case, Cyntec did not produce it in this case despite the second trial scheduled for March 2026. Then Cyntec told this Court after trial that it was "unable to locate" the agreement—a false statement, since it received two agreements in the malpractice case. Also, even if Chilisin could have obtained a copy of the [redacted] MDSA in the malpractice case, as Cyntec alleges (Opp'n at 22), Chilisin could not have obtained the [redacted] FGA or [redacted] MDSA in that case, and that does not absolve Cyntec of its own duty to correct its misrepresentations about the existence and relevance of the agreements.

[7] Cyntec executives such as Ted Shyy appear to have positions at both companies. *See* https://www.delta-americas.com/en-US/about/Leadership

Under Rule 60(b)(3), failure to disclose discovery supports relief, even without "proof of nefarious intent," and without showing that "the result in the case would be altered." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878-79 (9th Cir. 1990). Here, Cyntec made multiple false and misleading statements about its agreements from discovery in 2019 through post-trial proceedings in 2026, which is clear and convincing evidence of fraud, misrepresentation, and misconduct.

Finally, Chilisin was prevented from fully and fairly presenting its case. Cyntec argues that Chilisin could have but did not pursue a license defense, but as noted that is irrelevant. The only relevant question is whether Chilisin was deprived of using this evidence as appropriate for issues in the case such as infringement, invalidity, damages and injunctive relief. It unquestionably was.

**3. *Rule 60(d) Applies***

Regarding fraud on the Court, Cyntec repeats its prior arguments, further contending that because it produced the single 2018 e-mail, it could not have engaged in fraud. (Opp'n at 23). As explained above, even Cyntec now acknowledges that the 2018 e-mail identified the wrong agreement and could not have led either party to the right agreements. Even in the malpractice case, which centered on this issue, there is no evidence Chilisin was aware of the [redacted] agreements. Cyntec claims it consented to production of the [redacted] FGA in the malpractice case (Mays Decl., ¶ 10), meaning [redacted], but once again Cyntec never corrected the record here—it did not supplement its discovery responses, and did not produce the agreement, [redacted]. Cyntec also fails to explain why it was suddenly able to find and produce these agreements after denying their existence for years. Cyntec's production of the agreements eight years after Chilisin's original discovery requests—after repeated demands and discovery motions, two trials, a permanent injunction, and an appeal—demonstrates that Cyntec engaged in obstruction, not cooperation.

Cyntec is also incorrect that a discovery failure is not fraud absent an unconscionable plan or scheme. (Opp. at 15, 23). Non-disclosure supports fraud when the undisclosed evidence "was not – and could not have been – an issue" at court proceedings. *In re Levander*, 180 F.3d 1114, 1120 (9th Cir. 1999) ("The reason why the courts in these cases did not treat perjury or non-

disclosure alone as fraud on the court was that the plaintiff had the opportunity to challenge the alleged perjured testimony or non-disclosure because the issue was already before the court.”). Here, Cyntec’s licenses were never before the Court or juries during the relevant portions of the case. Cyntec affirmatively relied on the absence of the agreements to make false statements—that Cyntec never licensed its patents, and that Chilisin induced infringement by licensed customers—to obtain jury verdicts and a permanent injunction against Chilisin. Every aspect of this case would have been impacted had Cyntec disclosed this evidence, which explains Cyntec’s motivation for withholding these agreements for so long.

**E. Cyntec’s Hands Are Unclean**

Cyntec’s primary defense against unclean hands is waiver, but Chilisin did not deliberately relinquish a ***known*** defense of unclean hands, contrary to Cyntec’s portrayal. (Opp’n at 24). When Chilisin withdrew its unclean hands defense before the 2021 trial, Cyntec had not produced any agreements, and its discovery responses and corporate witness insisted Cyntec never licensed its patents. Chilisin could not have waived a defense based on then-unknown facts. *Wood v. Milyard* confirms that knowledge of relevant facts is required for deliberate waiver of a defense: “the State knew it had an ‘arguable’ statute of limitations defense.” 566 U.S. 463, 474 (2012).

Cyntec also again complains that Chilisin did not produce its own MDSA until recently, but as explained above Chilisin had no reason to produce its MDSA until Cyntec revealed [redacted]. Once Cyntec disclosed that, Chilisin produced its own agreement soon thereafter to show [redacted]. Notably, Cyntec identifies no authority suggesting unclean hands should focus on the conduct of the accused infringer.

Finally, Cyntec argues it would be prejudiced by allowing this defense now, but the only prejudice it would suffer is a dismissal necessitated by its own prior failure to disclose this agreement. That is not a legally recognized harm. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir. 2008) (“Abbott will have to bear the cost of being precluded”). Cyntec also argues amendment will be futile because the agreements do not impact the case, but as noted above, that is wrong: the agreements at the very least demonstrate that [redacted]. Thus whether the Court

addresses this issue *sua sponte* or requests amended pleadings, there is no procedural barrier to addressing the merits of this defense. And again, Cyntec gives the Court no explanation for why it did not properly investigate this issue in 2021 when it was first raised, or correct the record in 2024 [redacted] and recognized its prior assertions about them were false.

**F. Monetary Sanctions are Warranted**

Finally, Cyntec attempts to escape sanctions by arguing it had no duty to search for these agreements in response to discovery requests. As discussed above, that is false, and it also ignores Cyntec's independent obligations to answer interrogatory responses and to give 30(b)(6) testimony correctly. It also ignores that [redacted], yet failed to produce until 2026.

Cyntec also argues that its late production of the agreements was "harmless" and that Chilisin was not "prevented from presenting arguments" at the relevant stages. (Opp'n at 24-25). This contention is meritless. Cyntec produced the contracts only after two jury verdicts, a permanent injunction, and an appeal. The agreements would have shown that [redacted], that Chilisin could not have induced infringement for importation or sales of these products, that Chilisin did not "copy" Cyntec when it agreed to be a second source, and that no damages should have been awarded for these sales. In other words, every issue in the case would have been impacted. Chilisin suffered tremendous harm from the lack of crucial evidence that would have rebutted many of Cyntec's allegations regarding this customer. In particular, Cyntec convinced the Court to enjoin Chilisin from selling products in the United States for two years based on the false, sworn statement that Cyntec never licensed its patents.

Finally, Cyntec's complaints about identifying the specific fees are premature—if the Court agrees relief is warranted, it can specify exactly what in the case must now be undone or redone. Once it does so, Chilisin can identify in detail the fees it unnecessarily incurred.

## III. CONCLUSION

For these reasons, Chilisin respectfully requests that the Court (1) set aside the existing judgments under Rule 60; (2) find Cyntec's claims against Chilisin barred by unclean hands; and (3) award monetary sanctions and any other appropriate relief. Chilisin joins Cyntec's request for oral argument on this motion.

Dated: July 9, 2026

WHITE & CASE LLP

By: */s/ Jonathan Lamberson*
Jonathan Lamberson
Attorneys for Defendants
CHILISIN ELECTRONICS CORP.