UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CYNTEC COMPANY, LTD.,

Plaintiff,

v.

CHILISIN ELECTRONICS CORP. and CHILISIN AMERICA LTD.,

Defendants.

Case No. 18-cv-00939-TLT

**ORDER GRANTING RULE 60 MOTION FOR FINDING OF UNCLEAN HANDS AND SANCTIONS AND DENYING DEFENDANTS' RULE 50 AND RULE 59 MOTIONS**

Re: Dkt. Nos. 559, 560, 599

This patent infringement action involved two jury trials over the course of eight years. In the first trial, the jury found Defendants Chilisin Electronics Corp. and Chilisin America Ltd. (collectively, "Chilisin[1]") infringed Plaintiff Cyntec Company, Ltd. ("Cyntec")'s U.S. Patent Nos. 8,922,312 (the "'312 Patent"), 9,481,037 (the "'037 Patent") (collectively, "Patents-in-Suit"). Upon remand from the United States Court of Appeals for the Federal Circuit for further proceedings on the validity of the Patents-in-Suit under obviousness and damages, the Court held a second trial. The jury found that Chilisin infringed the Patents-in-Suit.

Pending before the Court are three motions filed by Chilisin: Motion for Judgment as a Matter of Law under Rule 50; Motion for New Trial under Rule 59; Motion for Relief from Prior Judgment under Rule 60, for a Finding Unclean Hands and Sanctions ("Motions"). ECF 559, 560, 599.

On September 1, 2026, the Court issued its tentative ruling on the Motions and supplemental questions before the hearing. ECF 631. The parties responded to the supplemental questions on September 8, 2026. ECF 635, 636. On September 15, 2026, the Court issued its

[1] The Court notes that Chilisin repeatedly states, "Chilisin America Ltd. no longer exists as a legal entity, it was dissolved in January 2023." ECF 357, 599. That statement appears to suggest there is only one defendant. In any event, the Court will refer to Defendant or Defendants as "Chilisin".

United States District Court
Northern District of California

further tentative findings and additional supplemental questions for the hearing and heard the parties' oral arguments. ECF 643–44.

After reviewing the eight-year record, the parties' briefs, oral arguments, and the relevant legal authority, the Court **GRANTS** the Motion for Relief from Prior Judgment under Rule 60 for Finding Unclean Hands and Sanctions and **DENIES** the Motion for Judgment as a Matter of Law under Rule 50 and the Motion for a New Trial under Rule 59 for the reasons set forth below.

## I. BACKGROUND

Cyntec is a Taiwanese corporation that manufactures power chokes. ECF 1 ¶ 2. Chilisin consists of a Taiwanese corporation and a California company, although the latter entity was dissolved in January 2023. *Id.* ¶¶ 3–4.

On February 14, 2018, Cyntec filed this patent-infringement action against Chilisin, a major Taiwanese manufacturer and supplier in the power-choke industry, alleging infringement of U.S. Patent No. 8,212,641 (the "'641 Patent"); 9,117,580 (the "'580 Patent"); and the Patents-in-Suit.[2] *Id.* The accused products are mixed-powder molded chokes. A choke is a type of inductor used to eliminate undesirable signals in circuits. ECF 336 at 2. Molded chokes are formed by placing coiled conducting wire inside a mold, filling that mold with magnetic powders and a binding adhesive, compressing the mold, and heating the mold to solidify the adhesive. *Id.*

Initially, this action was assigned to Magistrate Judge Sallie Kim, ECF 4, but Judge Kim recused herself the next day, and this action was reassigned to Judge Phyllis J. Hamilton (ret.). ECF 5, 6. On June 22, 2018, Chilisin answered the complaint. ECF 15, 16. Steptoe & Johnson LLP initially represented Chilisin.

Judge Hamilton held a tutorial hearing on April 26, 2019, and a claim-construction hearing on May 15, 2019. ECF 78, 79. On June 20, 2019, Judge Hamilton issued a claim-construction order construing disputed patent terms. ECF 83. The parties filed stipulations to modify schedules, including fact and expert discovery, pretrial conference, and trial dates, and litigated protective-order, sealing, and discovery disputes before Magistrate Judge Donna M. Ryu (ret.).

---

[2] The parties stipulated noninfringement of the '641 Patent and Chilisin's infringement of the '580 Patent in favor of Cyntec. *See* ECF 130, 244.

ECF 86–168.

On March 26, 2020, Judge Hamilton entered noninfringement of the '641 Patent based on the parties' stipulation. ECF 129–30. On May 20, 2020, Chilisin filed a motion to exclude expert opinions by Dr. Paul A. Kohl (technical expert) and Bryan M. Van Uden (damage expert) and a motion for summary judgment. ECF 139, 141. On September 8, 2020, Judge Hamilton denied the motion for summary judgment and granted in part and denied in part the motion to exclude Mr. Van Uden's opinion. ECF 170.

On August 20, 2021, the parties stipulated to entry of judgment of infringement against Chilisin of the '580 Patent, and that the parties agreed to bear their own costs and fees associated with the '580 Patent, and Judge Hamilton entered judgment accordingly. ECF 243–44.

From August 23 through September 1, 2021, the first trial was held, and Judge Hamilton entered judgment after the jury's verdict on September 24, 2021. ECF 249–68, 277. The jury found that Chilisin committed direct, induced, and willful infringement of the Patents-in-Suit, and that Cyntec is entitled to $1,552,493 in lost profits and $320,463 in royalties at a 5% rate. ECF 277. On September 28, 2021, White & Case LLP entered appearances for Chilisin, and the Court approved the substitution and withdrawal of the Steptoe & Johnson LLP attorneys on September 30, 2021. ECF 279–83.

On October 22, 2021, Chilisin filed post-trial motions, a Rule 50 motion for judgment as a matter of law, and a Rule 59 motion for a new trial, and Cyntec moved for a permanent injunction and enhanced damages. ECF 285, 286, 288. On May 6, 2022, Judge Hamilton issued an order denying Chilisin's post-trial motions and granting Cyntec's motion for a permanent injunction and for enhanced damages. ECF 317. On the same day, Judge Hamilton entered an amended judgment revising the damages to reflect the enhanced damages, resulting in a total lost profits award of $4,602,671 and a total reasonable royalties award of $950,573, for a total damages award of $5,553,244. ECF 318. On May 24, 2022, Judge Hamilton entered a permanent injunction and terminated this action. ECF 322. On May 31, 2022, Chilisin appealed to the Federal Circuit, identifying the permanent injunction, amended judgment, jury-verdict judgment, claim-construction order, and other specified orders as subjects of the appeal. ECF 324.

On February 13, 2023, while the appeal was pending, Chilisin commenced a malpractice action against its then-counsel, Steptoe & Johnson LLP, partly alleging inadequate investigation of an agreement between Cyntec and Apple, Inc. ("Apple"). ECF 599-6; *Chilisin Elecs. Corp. v. Steptoe & Johnson, LLP*, No. 23-cv-027831, Complaint ¶¶ 55–64 (Cal. Super. Ct. Feb. 14, 2023) ("Malpractice Case").

On October 16, 2023, the Federal Circuit affirmed the judgment of infringement, reversed the Court's prior judgment as a matter of law that the Patents-in-Suit were not obvious, vacated the lost profit award, and remanded for further proceedings on obviousness and damages. ECF 337. On November 27, 2023, Judge Hamilton issued an order of recusal for senior status. ECF 339.

On November 28, 2023, this action was reassigned to the undersigned Judge. ECF 341. On December 4, 2023, Chilisin moved to dissolve the permanent injunction previously entered against it. ECF 342. On December 15, 2023, Cyntec filed its cross-motion for preliminary injunction. ECF 346. Pursuant to the case management conference order, the parties were permitted to conduct discovery relevant to the remanded validity and damages issues by June 28, 2024. ECF 353. The Court granted Chilisin's motion to dissolve the permanent injunction on May 15, 2024, and denied Cyntec's motion for preliminary injunction. ECF 372, 376.

On September 2, 2025, Chilisin moved for summary judgment on damages issues seeking that the amount of damages for Chilisin's infringement is no greater than $23,677, and Cyntec cannot recover additional damages for the period from the date of the verdict in the first trial to the scheduled date of the second trial and moved to strike Cyntec's supplemental expert reports on September 24, 2025, while Cyntec moved for summary judgment seeking that Chilisin waived the issue of reasonable royalties on remand and moved to exclude the testimony of Chilisin's expert, Dr. John C. Bravman. ECF 406, 407, 408, 417.

On November 7, 2025, the Court denied Chilisin's motion for summary judgment and granted Cyntec's motion for summary judgment. ECF 433. On November 21, 2025, the Court granted Cyntec's motion to exclude Dr. Bravman's opinions on the issue of obviousness and to

limit Dr. Bravman's primary invalidity references to two prior art references, Shafer[3] and Nakamura[4]. ECF 434. The Court also granted in part Chilisin's motion to strike Cyntec's supplemental expert reports by Dr. Kohl and Mr. Van Uden pursuant to Rule 26 and denied in part their reports pursuant to Rule 16. *Id*.

For the second trial set for March 2, 2026, the parties filed their joint pretrial materials, including proposed jury instructions, voir dire questions, a verdict form, a statement of the case, and a joint pretrial statement. ECF 436, 465–68. The parties filed motions in limine addressing, *inter alia*, reexamination of Patents-in-Suit before the U.S. Patent and Trademark Office ("USPTO"), willfulness, secondary considerations of nonobviousness, the "by means of" limitation, alleged circumvention of the injunction, validity and obviousness testimony, asserted copying, and references to the prior infringement, injunction, and validity proceedings. ECF 439–48. On January 12, 2026, Cyntec moved for judicial notice, and Chilisin filed a conditional cross-motion in connection with the opposition to Cyntec's motion for judicial notice on January 26, 2026. ECF 452, 471. On February 12, 2026, the Court granted in part Cyntec's motion for judicial notice of the fact that certain filings and actions in connection with Patents-in-Suit and USPTO records occurred on specific dates, but denied in part the admission of the entire Patents-in-Suit and USPTO records for the jury's review and reference to a "List of Chilisin Accused Products" and denied Chilisin's cross-motion as moot. ECF 488. On January 23, 2026, Chilisin moved to quash Cyntec's trial subpoena to Weili (Wayne) Wu, and the Court granted that motion in part and denied it in part, permitting use of the unavailable witness's prior trial and deposition testimony but declining to reopen discovery for additional depositions on February 12, 2026. ECF 470, 491. The Court further ruled on proposed jury instructions and exhibits, required the parties to identify the purpose of proposed trial exhibits, directed narrowing of the exhibit lists, adopted a final verdict form, and entered the final jury instructions. ECF 504–15, 523, 525, 535, 540.

On March 2, 2026, the second trial commenced with an eight-member jury. ECF 531. The trial continued on March 3 and 4, 2026, including testimony from Dr. John Bravman, Dr.

---

[3] U.S. Patent No. 6,460,244.
[4] Japanese unexamined patent application No. 2005-294458.

Kohl, and Dan Wu. ECF 538–39. On March 5, 2026, after the parties presented closing and rebuttal arguments, the jury returned a unanimous verdict, finding that claims in the Patents-in-Suit are not invalid under obviousness. ECF 541, 542. On March 16, 2026, the Court entered judgment following the jury verdict. ECF 549.

On March 20, 2026, the Court issued a post-trial case-management and scheduling order ECF 552. On April 13, 2026, Chilisin filed the instant Motion for Judgment as a Matter of Law under Rule 50 and Motion for New Trial under Rule 59. ECF 559, 560. On June 18, 2026, Chilisin filed the instant Motion for Relief from Prior Judgment under Rule 60 for Finding Unclean Hands and Sanctions. ECF 599. The three Motions are fully briefed. ECF 573, 574, 577, 578, 608, 614. On September 1, 2026, the Court issued its tentative ruling on the Motions and supplemental questions before the hearing. ECF 631. The parties responded to the supplemental questions on September 8, 2026. ECF 635, 636. On September 15, 2026, the Court issued its further tentative findings and additional supplemental questions for the hearing and heard the parties' oral arguments. ECF 643–44.

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). The same holds for a motion for a new trial. *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1312 (Fed. Cir. 2010).

Under Rule 50, post-verdict judgment as a matter of law ("JMOL") is not appropriate unless "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). A party seeking judgment as a matter of law must show that the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). The Court is required to "draw all reasonable inferences in the favor of the non-

mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Fifty–Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1069 (9th Cir. 2015) (citing *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008)). The Court's review of a post-trial JMOL motion is limited to arguments raised in the movant's pre-verdict motion; arguments not raised before the case was submitted to the jury are waived. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003); *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012) (the law of the regional circuit determines Rule 50 waiver).

The Court finds that Chilisin fails to meet its Rule 50 burden of showing that the Patents-in-Suit are invalid as obvious under 35 U.S.C. § 103. Obviousness is a question of law based on four underlying factors: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Additionally, a party alleging obviousness must "demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so.'" *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)); *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1344 (Fed. Cir. 2021). While obviousness analysis "does not require expert testimony for every piece of the analysis," because Chilisin's argument in this Rule 50 motion is substantially based on the perspective of a person of ordinary skill in the art ("POSITA"), the Court first examines whether the parties' expert testimony supports the obviousness determination. *Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.*, 25 F.4th 1354, 1368–69 (Fed. Cir. 2022); *see also TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) ("Because the issue before us is whether the Board's obviousness determination is supported by substantial evidence, we first examine the substantial evidence standard and examples of how this court has applied it to expert testimony supporting an obviousness determination.").

Throughout this action, Chilisin relies on two prior-art references, Shafer and Nakamura,

and contends that the asserted claims in the Patents-in-Suit would have been obvious in view of Shafer as modified by Nakamura. ECF 336 at 5. In this motion, Chilisin claims that upon reading Shafer, a POSITA would have known (1) "that it mixed an alloy and pure iron, and that the alloy is generally larger and harder than pure iron powder," (2) "the benefit[s] of mixed powders," and (3) "[s]ize and hardness are inherent properties." ECF 559 at 18. However, both experts agreed throughout the second trial that neither Shafer nor Nakamura recognized any relationship between mean particle diameter and hardness of these powder particles. Chilisin's expert admitted that there is "nothing in Shafer that has a discussion as to the relationship between hardness and the two particles [and] tells you what size you should select." *See* ECF 545 at 318:3, 319:16–23. Further, he admitted that "neither the data in Shafer or Nakamura correlates size and hardness to performance," *id*. at 335:23–336:9, Nakamura provides no guidance on optimizing size ranges, *id*. at 337:3–18, and "nothing in Nakamura [] says that the alloy is required to be bigger than the iron powder." *Id*. at 331:5–333:9. Relatedly, Cyntec's expert testified that "Shafer doesn't tell me the hardness nor the size," *id*. at 378:22–379:6, powders in Shafer "could come in a variety of hardnesses" and sizes, *id*. at 380:3–381:9, Nakamura "deals with a completely different problem" than the "larger harder, smaller softer" problem "faced by the inventors," *id*. at 379:7–380:22, 381:10–382:22, and "Nakamura will allow either particle to be larger, either particle to be smaller [and] has no wire anywhere." ECF 546 at 411:3–16. The testimony from both experts, that reflects a meeting of the minds that neither Shafer nor Nakamura discloses or suggests a relationship between mean powder particle diameter and powder hardness, is sufficient for the Court to determine that Chilisin failed to present substantial evidence to prove the Patents-in-Suit are invalid as obvious under 35 U.S.C. § 103.

Accordingly, the Court **DENIES** Chilisin's Motion for Judgment as a Matter of Law under Rule 50.

## III. MOTION FOR NEW TRIAL UNDER RULE 59

Under Federal Rule of Civil Procedure 59(a)(1), a court "may, on motion, grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a). A trial court may grant a new trial, "even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear

weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). In considering a Rule 59(a) motion, the court "is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

The decision to grant a new trial falls within the sound discretion of the trial court. *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010). However, a court should not grant a new trial unless it is "left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (internal quotations omitted). A trial court's determination that the verdict is not against the clear weight of the evidence is upheld unless there is an "absolute absence of evidence to support the jury's verdict." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1084 (9th Cir. 2017) (internal quotation marks omitted).

The Court finds that Chilisin fails to meet its burden of showing that a reasonable jury could have found the Patents-in-Suit obvious. Chilisin raises five grounds for a new trial. The Court rejects Chilisin's first ground, a new trial on obviousness, because the expert testimony as to knowledge of a POSITA, for the reasons stated above, *supra* Section II, supports the conclusion that the jury did not reach a seriously erroneous result on obviousness that is against the clear weight of the evidence.

The Court also rejects Chilisin's second ground that Cyntec's prejudicial evidence and argument inflamed jury sympathies and therefore justified a new trial. Chilisin argues that, as it contended in connection with Motion in Limine No. 2, "[e]vidence of the prior willfulness verdict is inadmissible, as it does not relate to the technical question of patent invalidity under obviousness" and that "introducing such evidence creates a substantial risk of unfair prejudice," Cyntec's witness, Mr. Wu, testified Chilisin's alleged willful misconduct, which created prejudice to Chilisin. ECF 496 at 7; ECF 560 at 10. The Court is unpersuaded. Chilisin's counsel raised objections during the direct examination of Mr. Wu on three occasions when Mr. Wu answered

regarding Cyntec's hardship resulting from Chilisin's use of Cyntec's mixed powder technology and Chilisin's introduction of accused products to the U.S. market. *See* ECF 546 at 581:13–583:6. Because the Court sustained the objections and then further instructed the jury at the end of the direct examination that testimony the Court had instructed it to disregard "is not evidence and must not be considered," *id*. at 584:7–9, Mr. Wu's testimony is not a case "where misconduct permeates the proceeding [and] the jury [became] necessarily prejudiced." *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995) (cleaned up). Further, Cyntec's evidence showing Chilisin's copying was relevant to rebut obviousness, and Chilisin did not counter this evidence during the trial. *See Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 679 (Fed. Cir. 1988) ("Copying is an indicium of nonobviousness, and is to be given proper weight.").

Chilisin's third ground, that the Court's denial of Chilisin's proposed jury instruction on overlapping particle size ranges for the obviousness decision justifies a new trial, is also without merit. "Chilisin agrees that it always bore the ultimate burden of proving obviousness," ECF 577 at 7, but Chilisin fails to explain why the result-effective-variable doctrine, as narrowly applied to particle size and formation temperature, should not apply, especially since both Cyntec and Chilisin's experts indicated otherwise. *See E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1007 (Fed. Cir. 2018); *supra* Section II.

The Court also rejects Chilisin's fourth ground that Dr. Kohl's testimony regarding his opinion from the first trial unfairly prejudiced Chilisin during the second trial. Chilisin had access to Dr. Kohl's prior report for review, and his opinion based on that report during the second trial was not new, and the Court appropriately notified the parties by denying Chilisin's Motion in Limine No. 3 that Dr. Kohl's copying opinion would be admitted. ECF 496 at 8.

The Court remains unpersuaded by Chilisin's fifth ground that excluding reexamination evidence warrants a new trial in light of the Court's rulings on the parties' motion in limine for the second trial. Cyntec wanted the jury to receive the full reexamination file history, but the Court granted Chilisin's Motion in Limine No. 1 in part and limited the evidence to only those materials showing that the USPTO considered the Shafer and Nakamura references. ECF 496 at 5–6. The

Court also upheld Chilisin's objections and declined Cyntec's attempt to treat the reexamination files as public records that contain agency factual findings. ECF 506 at 6-7. The Court also granted Chilisin's request that, despite Shafer and Nakamura being listed on the Invention Disclosure Statement, the examiner did not analyze their combination. *See* ECF 524 at 2–3; ECF 534 at 1–2. Relatedly, the Court finds no merit in Chilisin's argument that the examiner "never discussed Shafer, or Shafer combined with Nakamura," because the record shows that the office action listed Shafer and Nakamura as references during the reexamination. *See* ECF 498 at 6. Consequently, a new trial is not warranted.

Accordingly, the Court **DENIES** Chilisin's Motion for New Trial under Rule 59.

## IV. MOTION FOR RELIEF FROM PRIOR JUDGMENTS UNDER RULE 60

Rule 60(b) permits a court, on motion and just terms, to relieve a party from a final judgment, order, or proceeding for certain grounds. Fed. R. Civ. P. 60(b). Rule 60(b)(2) authorizes relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," and Rule 60(b)(3) authorizes relief for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." *Id*. 60(b)(2)–(3). A Rule 60(b)(2) or Rule 60(b)(3) motion must be made "within a reasonable time" and, in all events, "no more than a year after the entry of the judgment or order or the date of the proceeding." *Id*. 60(c)(1).

To obtain relief under Rule 60(b)(2), the movant must establish that (1) the evidence existed at the time of the judgment, (2) the evidence could not have been discovered through due diligence, and (3) the newly discovered evidence was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.' *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1217 (9th Cir. 2024) (quoting *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003)). Reasonable diligence is an express requirement to receive relief under Rule 60(b)(2). *Marroquin*, 112 F.4th at 1215 (cleaned up).

Under Rule 60(b)(3), the moving party must prove by clear and convincing evidence both "that the verdict was obtained through fraud, misrepresentation, or other misconduct" and "that the conduct complained of prevented the losing party from fully and fairly presenting the defense."

*Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (quoting *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000)).

Rule 60(d)(3) preserves a court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). "[N]ot all fraud is fraud on the court." *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999). The movant "bears a high burden in seeking to prove fraud on the court, which must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Pizzuto v. Ramirez*, 783 F.3d 1171, 1180 (9th Cir. 2015) (cleaned up). "In that vein, mere nondisclosure of evidence is typically not enough to constitute fraud on the court [] unless it is 'so fundamental that it undermined the workings of the adversary process itself.'" *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017) (cleaned up). Unlike Rule 60(b), a Rule 60(d)(3) motion is not subject to the one-year deadline after the entry of judgment. *Id.* at 1167.

The Court finds that relief under Rule 60(b)(2) is appropriate in this action. The instant Rule 60 motions turn, in part, on the meaning and effect of provisions in three agreements between Cyntec and Apple made in 2014, 2017, and 2025, respectively (the "2014 Agreement", the "2017 Agreement", and the "2025 Agreement"). ECF 599-2, 599-3, 599-5. To consider the entire infringement period for the original damage award, the period for the first and second trials, and the period through the present, the Court focuses on the provisions of the 2017 and 2025 Agreements. ECF 599-3, 599-5. The Court places verbatim language for clarity.

The 2017 Agreement provides in relevant part that

> Cyntec "grants Apple a non-exclusive, irrevocable, royalty-free, perpetual, worldwide license under Supplier [Intellectual Property Rights] to use, sell, offer to sell, import, [] the Goods in or with (or for use with) any Apple products." ECF 599-3 at 12, § 13.2(b) 'License.'
>
> Cyntec "grants to Apple a non-exclusive, irrevocable, royalty-free, perpetual, worldwide license, with the right to sublicense under the Supplier [Intellectual Property Right] that is used or incorporated in the Goods [] to [] import [] Apple products." *Id.* at 13, § 13.2(c) 'Second Source License.'
>
> ""Goods" means the finished goods, components and sub-assemblies, identified in an SOW, or any other goods, components and sub-assemblies not identified in an SOW but offered by Supplier to Authorized Purchasers. For the avoidance of doubt, Goods include

> Pre-Production Builds and related Service Units." *Id*. at 19.
>
> "“Supplier” means [Cyntec] or Supplier Affiliate, as the case may be." *Id*. at 21.
>
> "“Supplier Affiliate” means a Related Entity of Supplier that is a party to an SOW or is otherwise authorized by Apple to provide Goods or related services under this Agreement." *Id*.
>
> "“Pre-Production Builds” are stages of product development and validation prior to volume production of finished Goods (or components of finished Goods) for sale to end users during which prototype versions of Goods are manufactured and used in validation testing in accordance with Apple's new product process." *Id*. at 20.

As to the 2025 Agreement, its preamble identifies Delta Electronics, Inc. ("Delta") as a party to the agreement with Apple. ECF 599-5 at 2. Because Cyntec remains one of Delta's Related Entities, Cyntec continues to grant Apple the same or a substantially similar license under the 2017 Agreement. *Id*. at 2, 16, § 13.2(b) 'License'. Therefore, Cyntec has licensed Apple throughout the infringement period to the present. There is no dispute that the Goods practice Patents-in-Suit. *See* ECF 546 at 438:21–24. (Cyntec's technical expert acknowledging that Cyntec's products practice the Patents-in-Suit); ECF 148-7 at 40 (Cyntec's representative acknowledging that for products practicing patents, Cyntec has secured design wins with many companies, including Apple).

Not only Cyntec, but also Chilisin entered into an agreement with Apple as early as August 1, 2016, granting Apple a license of the same or a substantially similar scope as Cyntec for their products and services. ECF 599-4 at 2, 6, 11. Chilisin avers that "Chilisin does not sell parts directly to Apple. It instead sells parts to companies that manufacture devices for Apple." ECF 614 at 7. This representation at least supports treating Chilisin as an indirect supplier to Apple. Therefore, Chilisin is at least an indirect supplier under the 2017 and 2025 Agreements.

The 2017 Agreement also provides that

> Cyntec "covenants not to assert [] any claims for infringement of any Intellectual Property Rights against Apple's direct or indirect customers, partners, consultants, independent contractors, resellers, distributors, or suppliers, but only for products [] provided [] for Apple." *Id*. at 13, Section 13.2(e) 'Non-Assert.'
> Cyntec "shall not use [] any Goods, [] Apple Confidential Information [] for the purpose of [] identifying or providing evidence to support any potential patent infringement claim against [] Apple's direct or indirect suppliers." ECF 599-3 at 13, § 13.3(d).

Under these provisions, there is no reasonable dispute that Cyntec licensed Apple products related to the Patents-in-Suit (i.e., chokes), agreed not to sue Apple's suppliers such as Chilisin, and agreed not to use the products or Apple's information as evidence. *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275–76 (Fed. Cir. 2009) (explaining that a covenant not to sue is legally equivalent to a license on numerous occasions.).

Cyntec contends that these agreements neither establish that Apple's importation or sale of products containing Chilisin's accused products falls within the scope of Apple's license rights nor confer third-party beneficiary status on Chilisin. ECF 636 at 2–6; *see* ECF 599-3 at 23. However, because Apple holds licenses from both Cyntec and Chilisin, Cyntec's covenant not to assert infringement claims extends to Apple's suppliers such as Chilisin for products provided for Apple. *See* ECF 599-3 at 12–13, §§ 13.2(b),(e). Without direct infringement by Apple, Cyntec cannot establish inducement based on Chilisin's supply of the accused products because "where there has been no direct infringement, there can be no inducement of infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922 (2014). Cyntec used sales of Goods to seek lost profits damages in this action and used Apple Confidential Information (i.e., agreements) to prove infringement. *See* ECF 299-1 (Chilisin–Apple agreement marked with "Apple Confidential"); ECF 298-24 (Chilisin's certificate of compliance with Apple); ECF 148-7 (Cyntec's damage expert report claiming that Chilisin "induce[d] customers and other downstream parties to import" accused products in the U.S."); ECF 266 at 1198:1–3 ("Chilisin is working with the manufacturer, for example, Apple or Microsoft. [] Absolutely there's inducement."); *id.* at 1194:16–19 (Chilisin "induced third parties to import into the United States the products that infringe the patent."); ECF 148-7 at 78–100 (showing Chilisin's sales in the U.S. to companies including Apple); ECF 258 at 626:20–24 and ECF 264 at 970:7–10 (Cyntec's witnesses testifying their opinion of the relationship between Apple and Chilisin).

## V. MOTION FOR FINDING UNCLEAN HANDS AND SANCTIONS

The doctrine of unclean hands is an equitable doctrine derived from the maxim that one "who seeks equitable relief must come to court with clean hands." *Gilead Scis., Inc. v. Merck & Co., Inc.*, No. 13-cv-04057-BLF, 2016 WL 3143943, at *23 (N.D. Cal. June 6, 2016), *aff'd sub*

*nom. Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231 (Fed. Cir. 2018) (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933). This doctrine applies when the "misconduct of a party seeking relief has immediate and necessary relation to the equity that [the party] seeks in respect of the matter in litigation." *Gilead Sciences, Inc.*, 888 F.3d at 1239 (citing *Keystone Driller Co.*, 290 U.S. at 245). "The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice." *Cal-Agrex, Inc. v. Van Tassell*, 258 F.R.D. 340, 351 (N.D. Cal. 2009), *aff'd*, 408 F. App'x 58 (9th Cir. 2011) (citation omitted). The party invoking unclean hands bears the burden of proving, "by clear and convincing evidence," that the opposing party engaged in conduct amounting to "wrongfulness, willfulness, bad faith, or gross negligence." *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018). When established, unclean hands may preclude the offending party from obtaining equitable relief in the action but "does not reach out to extinguish a property right based on misconduct during litigation to enforce the right." *Apte Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1373–75 (Fed. Cir. 2001) (affirming dismissal of patent-infringement claims based on litigation-related misconduct supported by falsified engineering notebooks.).

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to this exclusion, the Court may order payment of reasonable expenses, including attorney's fees, caused by the failure, inform the jury of the failure, or impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1)(A)–(C). The party facing exclusion or sanctions under Rule 37(c) bears the burden of proving that its nondisclosure was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). District courts have wide latitude to issue sanctions under Rule 37(c)(1). *Id.* at 1106.

After reviewing the record, the Court finds that Cyntec's conduct warrants a finding of unclean hands and sanctions under Rule 37(c)(1). This motion centrally turns on a years-long

discovery dispute over the Agreements. Neither Cyntec nor Chilisin's then-counsel produced the Agreements before the first trial, and Chilisin terminated its then-counsel after the first trial and brought a malpractice action concerning the Agreements. Chilisin represents that its current counsel "never made any appearance in the malpractice action, and never received any document productions made in that action." ECF 599 at 8. Further, Chilisin asserts that it could not obtain the 2014 Agreement because it "remained sealed and subject to protective order in that case, which restricted its use in other proceedings." *Id.* Approximately 53 months after Chilisin's current counsel moved to compel production of the Agreements, ECF 292, the Agreements finally produced and placed before the Court.

Cyntec counters that "Chilisin never pled any affirmative defenses [] such as implied license." ECF 608 at 7. Further, Cyntec represents that, using the search term provided by Chilisin—"[PATENTS-IN-SUIT] AND (licens! OR agree! OR ceas! OR desist OR Royalt! OR valu!)"—Cyntec provided responsive and discoverable information, and because the Agreements are categorized as supply agreements and did not exclusively include Patents-in-Suit, they were not found under the search terms. ECF 608 at 8.

The Court finds that Chilisin did not waive its implied license defense. Waiver is "intentional relinquishment or abandonment of a known right." *Wood v. Milyard*, 566 U.S. 463, 474 (2012) (citation omitted). As stated below, given that Cyntec had not produced any agreements until after the second trial, that its discovery responses and corporate witness testimony insisted that Cyntec never licensed its Patents-in-Suit, and that Cyntec's counsel repeatedly sought to steer away from the Agreement in several discovery dispute litigations, Chilisin cannot intentionally relinquish or abandon its right to an implied license.

Next, the Court finds that although the Agreements, ECF 599-2, 599-3, 599-4, are supply agreements and were not identified by the search terms, the failure to find them does not excuse the parties' lack of sufficient diligence. Modern discovery frequently involves electronically stored information ("ESI") and is subject to Court guidance concerning ESI discovery. *See, e.g.*, Guidelines for the Discovery of Electronically Stored Information ¶ 1.01. Cyntec and Chilisin's then-counsel appear to have relied substantially on ESI searches during the discovery before the

first trial, and as a result, were not able to identify the Agreements. However, reliance on ESI searches does not excuse the parties' discovery obligations or their counsel's responsibilities under the Federal Rules of Civil Procedure and California Rules of Professional Conduct. *See* Fed R. Civ. P. 26(b)(1) (Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); Cal. R. Pro. Conduct r. 3.4(b) (A lawyer shall not suppress any evidence that the lawyer or the lawyer's client has a legal obligation to reveal or to produce.); *see also Alivecor, Inc. v. Apple, Inc.*, No. 21-cv-03958-JSW, 2023 WL 2224431, at *2 (N.D. Cal. Feb. 23, 2023) ("Perfection in ESI discovery is not required; rather a producing party must take reasonable steps to identify and produce relevant documents." (cleaned up)).

Nevertheless, Chilisin's current counsel demonstrated due diligence in discovering the Agreements throughout this action. "The issue in assessing diligence is not when a party actually discovered information but whether the party could have discovered the information earlier had it acted with the requisite diligence." *Netskope, Inc. v. Fortinet, Inc.*, No. 25-cv-02360-HSG, 2026 WL 2411588, at *4 (N.D. Cal. Aug. 18, 2026) (cleaned up). The Court finds that Chilisin has established, by clear and convincing evidence, that Cyntec engaged in sufficiently culpable conduct with respect to each incident addressed below.

### A. Before the first trial

Before the first trial in 2021, Chilisin's then-counsel sought Cyntec's patent licenses through requests for production, an interrogatory, and Rule 30(b)(6) deposition testimony. ECF 291-5, 292-3. Cyntec's representative, Dan Wu, then-Assistant Vice President of the portable electronic business unit, was deposed on December 19–20, 2019. ECF 292-3, 608-5. Mr. Wu testified that Cyntec's sales to Apple, Google, Microsoft, Qualcomm, and Intel each totaled millions of dollars, ECF 608-5 at 117:12–119:23, and testified the following day that Cyntec never licensed the Patents-in-Suit. ECF 291-5 at 159:18–160:7. Cyntec's counsel responded to the

Request for Production No. 33 on November 14, 2018, that "Cyntec does not have [a copy of any license to the Patents-in-Suit] after investigation." ECF 292-3 at 18. In response to the preceding Request for Production No. 32, Cyntec was in the process of obtaining third-party consent to produce responsive documents. *Id*. On January 16, 2019, in response to Interrogatory No. 7 that required Cyntec to "[i]dentify each agreement that includes a transfer or provision of intellectual property right (including, but not limited to, a license or assignment)," Cyntec did not identify any agreements with Apple despite identifying other documents. ECF 292-5 at 9. On February 21, 2019, in response to Request for Production No. 44 regarding all agreements relating to the Field with any third party or related entity, "Cyntec has not located any additional documents responsive to this Request after a reasonable search beyond what Cyntec has already produced." ECF 292-4 at 8.

However, with the Agreements now revealed, Cyntec entered into agreements with Apple either directly or through its parent corporation, Delta: (1) the 2014 Agreement, signed as early as June 25, 2014 by Cyntec's President, Ted Shyy; (2) the 2017 Agreement, signed around March 2017 by Johnson Lee, Delta's then-President and COO; and (3) the 2025 Agreement, signed on February 14, 2025 by Simon Chang, Delta's then-President and COO. ECF 599-2 at 19, ECF 599-3 at 17, ECF 599-5 at 46. Since the Agreements explicitly granted Apple a license and the second source license to Cyntec's intellectual property rights, necessarily including the Patents-in-Suit, Cyntec's prior discovery responses before the first trial lacked candor. Based on this incident alone, Cyntec's counsel may have violated the ethical obligation under California Rule of Professional Conduct 3.4(b).

**B. First Post-Trial Proceedings Before the Federal Circuit Appeal**

During the first post-trial phase, the parties had a discovery dispute. ECF 303. Chilisin's current counsel identified an October 24, 2018 email produced during the pretrial discovery that it believed related to an agreement between Cyntec and Apple. ECF 291-4 at 5–6. The email provides, in relevant part, that "[f]or the avoidance of doubt, the terms and conditions of the Master Development and Supply Agreement between the parties shall apply to this RFQ." *Id*. at 6.

Chilisin requested that Judge Hamilton reopen discovery and order Cyntec to supplement its discovery responses. ECF 303. Cyntec's counsel argued, *inter alia*, that "Cyntec is not withholding any agreement with Apple and has never done so. As Cyntec has repeatedly informed Chilisin, Cyntec previously searched for but *never located* such an agreement. Thus, even if an agreement between Cyntec and Apple existed, Cyntec cannot produce what it cannot find." *Id*. at 5. Cyntec further contended that "[e]ven if an agreement between Cyntec and Apple existed and could be located, it would be irrelevant." *Id*. Judge Hamilton denied Chilisin's request because it "is not only untimely, but also shows a lack of diligence by Chilisin in failing to pursue the discovery before [the first jury] trial." ECF 304. Further, Judge Hamilton credited Cyntec's contention in granting Cyntec's motion for permanent injunction. ECF 317 at 20 ("In particular, the court notes that Cyntec was unwilling to license patents-in-suit.").

Now that the record establishes the existence of an agreement between Cyntec and Apple before the foregoing discovery dispute, this incident shows that Cyntec's counsel violated its ethical obligation under the California Rules of Professional Conduct. *See, e.g.*, Cal. R. Pro. Conduct r. 3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer).

**C. Post-Remand Proceedings Following the Federal Circuit's Remand**

After the Federal Circuit remanded this action in 2023, the Court authorized reopening discovery by June 28, 2024. ECF 354. On February 8, 2024, Chilisin requested production of an agreement related to the October 24, 2018 email identified during the foregoing first post-trial. ECF 608-4 at 4, ECF 291-4 at 6. On April 2, 2024, the parties filed a joint discovery letter before Magistrate Judge Ryu. ECF 367. Cyntec, *inter alia*, contended that the email was "between Apple and Cyntec's corporate parent, Delta," and that Cyntec's personnel were not included in the email "although Cyntec's Dan Wu was later included and requested to provide financial information." ECF 367 at 4. Further, Cyntec repeated verbatim the position it took in the first post-trial proceeding that "even if a Cyntec-Apple Agreement existed and could be located, it would be irrelevant." *Id*. at 5, *cf.* ECF 303 at 5.

Magistrate Judge Ryu denied the letter without prejudice, but credited that "Chilisin's motion to compel is no longer untimely." ECF 370 at 2; *see also* ECF 378. Subsequently, Chilisin filed a motion for relief from Magistrate Judge Ryu's order before this Court. ECF 380. The Court denied the motion because the Court found that (1) Magistrate Judge Ryu's order was not clearly erroneous or contrary to law; (2) the requested production of the agreement was not proportional to the needs of the case for the second trial on obviousness; and (3) the burden or expense of producing the agreement outweighed its benefit, as "Cyntec argues there is an issue with its access to the [agreement] because the agreement is between its parent company and Apple." ECF 385 at 6–7. Separately, the Court noted that production of the agreement could be relevant to damages. *Id*. at 5. In light of the current record, the Court finds Cyntec's asserted lack of access to the Agreement not credible and Cyntec's counsel lacked candor.

During the Malpractice Case between 2023 and 2025, Chilisin's malpractice counsel, separate from Chilisin's current counsel, subpoenaed Apple to produce the 2014 Agreement, subject to the state court protective order. *See* ECF 599-9, § 6.2. Cyntec's counsel declared that on August 29, 2024, the firm was first provided with a copy of the redacted 2014 Agreement by Apple's counsel. ECF 608-1 ¶ 5. On March 10, 2025, Cyntec's counsel filed a third-party motion to seal in the state court case, requesting to seal several exhibits and explaining that Exhibits A and B should be sealed because they contain confidential business materials, including an agreement between Cyntec and a customer. ECF 599-8 at 10.

Given the history before August 29, 2024, Cyntec had reasonable notice that an Agreement may have existed. The Court finds that Cyntec's post-remand contention that the October 24, 2018 email communication was not indicative of the existence of an agreement between Cyntec and Apple supports the lack of candor. *See* ECF 367 at 4. At that point, Cyntec's counsel had more than incidental notice that an agreement between Cyntec and Apple could exist.

Separately, Cyntec's counsel declared that producing the Agreements faced objections from Cyntec, Apple, and Cyntec's parent company. ECF 608-1 ¶¶ 6, 7, 10, 12. After the second trial, Cyntec further stated in the joint case management statement that "[a]lthough Cyntec has, to date, been unable to locate the Apple Supply Agreement, Cyntec is aware that a copy can be

obtained from Apple. In 2023, Chilisin sued its former legal counsel for malpractice in Alameda County Superior Court. As part of those proceedings, Cyntec is aware that Apple produced a redacted copy of the Supply Agreement." ECF 550 at 6. That does not excuse Cyntec's candor, and the Agreement at issue in the Malpractice Case is the 2014 Agreement, not the 2017 and 2025 Agreements that encompass the alleged infringement period.

Furthermore, the Court finds unpersuasive Cyntec's assertion that its counsel could not obtain or review the Agreement until August 29, 2024. As the representative of Cyntec, Cyntec's counsel is not barred from requesting the Agreement from its own client. Even if a third party was involved to obtain the Agreement, Cyntec's counsel could have examined it under the applicable privilege without stepping into the issue of production to Chilisin. In short, Cyntec's counsel is not precluded from undertaking a reasonable inquiry, obtaining and reviewing the Agreements, or correcting and supplementing Cyntec's discovery responses before the Agreements became material to Chilisin's reliance on their non-assertion provisions now.

Before signing discovery responses, Cyntec's counsel had a duty to conduct a reasonable inquiry and certify that the responses were complete and correct to the best of counsel's knowledge, information, and belief. *See* Fed. R. Civ. P. 26(g)(1)(A). Cyntec also had a continuing duty to timely supplement or correct any response to an interrogatory or request for production if it learned that the response was materially incomplete or incorrect. *See* Fed. R. Civ. P. 26(e)(1)(A). Further, by filing or later advocating a written submission to the Court asserting that no Agreement existed or could be located, counsel certified that the factual contention had evidentiary support after an inquiry reasonable under the circumstances. *See* Fed. R. Civ. P. 11(b)(3). Thus, after reasonable notice of the Agreement by Chilisin's current or then-counsel, Cyntec's counsel had a duty to reasonably investigate the Agreement's existence, correct or supplement its discovery responses as required, and refrain from continuing to advocate any factual contention that lacked evidentiary support.

Accordingly, the Court finds that Cyntec engaged in conduct amounting to "wrongfulness, willfulness, bad faith, or gross negligence." *Pinkette Clothing, Inc.*, 894 F.3d at 1029. Cyntec's late production after the second trial, despite the focus on obviousness and the numerous discovery

disputes over untimeliness or the third party's consent, was not substantially justified or harmless under Rule 37(c)(1). *See* Fed. R. Civ. P. 37(c)(1). Cyntec prevails on infringement of the Patents-in-Suit only to the extent of its intellectual-property rights.[5] However, Cyntec cannot claim damages against Chilisin under the Agreements. Ignoring this, the parties have prolonged the litigation since Chilisin first raised the issue of the Agreement in November 2021, in connection with the October 24, 2018 email, and conducted damages discovery over Chilisin's accused products. Chilisin claims that its attorney's fees from November 2021 to the present are approximately $5 million. ECF 599 at 24–25. Chilisin should be compensated for the time spent. *See also Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1958-B (BLM), 2008 WL 66932 (S.D. Cal. Jan. 7, 2008), *vacated in part*, No. 05CV1958-RMB (BLM), 2008 WL 638108 (S.D. Cal. Mar. 5, 2008) (awarding $8,568,633.24 in attorney's fees for failure to produce documents); *SK Hynix Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2013 WL 1915865 (N.D. Cal. May 8, 2013) (imposing a monetary sanction of $250 million for spoliation of evidence).

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion for Judgment as a Matter of Law under Rule 50 and the Motion for a New Trial under Rule 59. ECF 559, 560. The Court **GRANTS** the Motion for Relief from Prior Judgment under Rule 60 for Finding Unclean Hands and Sanctions. ECF 599.

Cyntec and Chilisin are Taiwanese corporations involved in protracted litigation over patent claims related to products sold in the United States. The record shows that their products and customers overlap, and that the Agreements include license and non-assertion provisions applicable to certain products provided to those customers. Despite having an agreement not to assert infringement against each other, Cyntec continued to do so, prolonging this dispute for eight years without diligently disclosing or discussing the potential repercussions. This Court considers

[5] During the September 15, 2026 hearing, Chilisin's counsel raised that because of the Agreement and other similarly situated agreements, no damage occurred to Cyntec, and thus Cyntec lacks standing in this action. The Court declines to address this issue, given that it is uncertain whether the scope of the agreement can trump all patent rights conferred on the patent owner. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 433 (2021) ("In looking to whether a plaintiff 's asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate.").

United States District Court
Northern District of California

the practice of imposing sanctions and awarding fees highly serious and seldom grants fees as a method of penalizing conduct.

The Court **ORDERS** that its prior judgment on Chilisin's Motion for Summary Judgment, regarding damages, be set aside, specifically (1) the denial of Chilisin's adjudged infringement of $23,677 and (2) Cyntec's entitlement to additional damages from the date of the verdict in the first trial to the scheduled date of the second trial (i.e., Q3 2021 to Q1 2026). ECF 433 at 11. The Court maintains the judgment that Chilisin waived the issue of reasonable royalties and therefore may not relitigate it. *Id*.

The Court **ORDERS** that Cyntec cannot recover damages from Chilisin for accused products shown to have been supplied for Apple. The Court's rulings here are limited to the Agreements and the accused products shown to fall within their scope. However, Chilisin indicates that the Motion for Relief from Prior Judgments under Rule 60 focuses on the agreements with Apple, notwithstanding the existence of common customers to the parties, including Microsoft and Xiaomi, that have license rights to Cyntec's patents. ECF 599 at 6. To the extent the instant Order applies squarely to those common customers, Chilisin shall present it at the upcoming post-trial proceedings set for December 7–8, 2026.

The Court further **ORDERS** Cyntec to compensate Chilisin for reasonable attorney's fees and expenses incurred from November 2021 to the present. Within 14 days of this Order, Chilisin shall provide detailed billing records and a supporting declaration to support a specific monetary award for time spent from November 2021 to the present.

The Court further **ORDERS** Cyntec to show cause, within 14 days of this Order, why any of the attorneys on the record should not be referred to the Standing Committee on Professional Conduct and/or to the State of California. *See* Civ L.R. 11-6. Cyntec must make any showing by clear and convincing evidence. Cyntec is ordered to provide the Court with the name(s) of the Relationship Partner, the Decision Making Partner, and all associates aware of the misrepresentation to the Court, attorneys associated with this case, engaged in conduct amounting to "wrongfulness, willfulness, bad faith, or gross negligence", and who failed to cure the

misrepresentation or omission.[6] The Court has no desire to penalize associates or counsel not directly involved in the conduct or decision leading to the above-mentioned sanctions.

Upon receiving Cyntec's response and at the discretion of the Court, the Court will issue a separate order referring attorneys to the Standing Committee on Professional Conduct and/or the State of California.

The Court further **ORDERS** that, in light of this Order, the parties shall present the appropriate damages award, if any, to which Cyntec is entitled based on the first and second trials at the upcoming post-trial proceedings. The Court maintains prior judgments that Chilisin infringed Cyntec's Patents-in-Suit. ECF 277, 336, 549.

All other dates are maintained. ECF 610.

This Order resolves ECF 559, 560, and 599.

IT IS SO ORDERED.

Dated: September 21, 2026

TRINA L. THOMPSON
United States District Judge

[6] The Court's record identifies that Cyntec has been represented by the following attorneys: James Chung-Yul Yoon, Albert Shih, Anjuli Veena Nanda, Christopher Don Mays, Jaideep Venkatesan, Jeffrey Nall, Jennifer Liu, Lucy Yen, Mary A. Procaccio-Flowers, Michael Elliott Nguyen, Neil N. Desai, Obie Daniel Reynolds, IV, Peter Edward Soskin, and Ryan Ronald Smith.