JAMES C. YOON (State Bar No. 177155)
jyoon@wsgr.com
CHRISTOPHER D. MAYS (State Bar No. 266510)
cmays@wsgr.com
JEFFREY NALL (State Bar No. 340675)
jnall@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

LUCY YEN (State Bar No. 224559)
lyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
31 West 52nd Street, Fifth Floor
New York, New York 10019-6118
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

CELINE LIU (State Bar No. 268990)
celine.liu@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, D.C. 20006
Telephone: (202) 791-8800
Facsimile: (650) 493-6811

*Attorneys for Plaintiff*
*CYNTEC COMPANY, LTD.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

CYNTEC COMPANY, LTD.,

Plaintiff,

v.

CHILISIN ELECTRONICS CORP. and CHILISIN AMERICA LTD.,

Defendants.

Case No.: 3:18-cv-00939-TLT

**CYNTEC COMPANY, LTD.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF POST-TRIAL MOTIONS**

**[CORRECTED REDACTED VERSION]**

Hearing: December 8, 2026
Time: 10:00 a.m.
Location: Courtroom 9, 19th Floor
Judge: Hon. Trina L. Thompson

# TABLE OF CONTENTS

PAGE


I. INTRODUCTION ... 1

II. PROCEDURAL BACKGROUND ... 1

III. FACTUAL BACKGROUND ... 2

A. The Parties' Direct Competition for Molding Power Chokes ... 2

B. Chilisin Sought to Evade the Original Permanent Injunction ... 4

1. Chilisin Falsely Stated It Made No Sunset Sales ... 5

2. Chilisin Moved Infringing Sales to an Enjoined Affiliate ... 5

C. Chilisin's Current Infringing Products Have Generated Significant Revenue ... 5

IV. CHILISIN SHOULD BE PERMANENTLY ENJOINED ... 6

A. *eBay* Factor 1: Chilisin's Infringement Will Irreparably Harm Cyntec ... 7

1. Chilisin Uses Cyntec's Patents to Directly Compete with Cyntec ... 7

2. The Industry's Design-Win Model Exacerbates the Irreparable Harm ... 8

3. Cyntec Has Never Been Free from Infringing Competition by Chilisin ... 9

4. Cyntec's Supply Agreements Do Not Negate Irreparable Harm ... 10

B. *eBay* Factor 2: Cyntec's Remedies at Law are Inadequate ... 11

1. Chilisin's Direct Competition Defies Attempts at Valuation ... 11

2. The Full Extent of Chilisin's Infringement Is Unquantifiable ... 12

C. *eBay* Factor 3: The Balance of Hardships Favors Cyntec ... 13

D. *eBay* Factor 4: Public Interest Factors Favor Cyntec as the Patentee ... 13

V. ALTERNATIVELY, CYNTEC IS ENTITLED TO AN ONGOING ROYALTY ... 14

VI. THE COURT SHOULD REINSTATE ENHANCED DAMAGES ... 17

A. *Read* Factor 1: Chilisin Copied Cyntec's Patented Products ... 17

B. *Read* Factor 2: No Good Faith Belief of Non-infringement or Invalidity ... 18

C. *Read* Factor 3: Chilisin's Litigation Conduct Supports Enhancement ... 19

D. *Read* Factor 4: Chilisin's Size Supports Enhancement ... 20

E. *Read* Factor 5: This Case Was Not Close ........ 20

F. *Read* Factors 6 and 7: The Duration of Misconduct Spans A Decade ........ 20

G. *Read* Factor 8: Chilisin Intended to Harm Cyntec ........ 21

H. *Read* Factor 9: Chilisin Concealed Its Ongoing Infringement ........ 22

VII. THE COURT SHOULD AWARD SUPPLEMENTAL DAMAGES ........ 22

VIII. THE COURT SHOULD AWARD CYNTEC ITS ATTORNEY FEES ........ 23

A. Chilisin Circumvented the OPI and Misrepresented It to Customers ........ 23

B. Chilisin Misrepresented Its Sales and Then Exploited Its Own Nondisclosure ........ 23

IX. CYNTEC IS ENTITLED TO PRE- AND POST-JUDGMENT INTEREST ........ 24

X. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Acumed LLC v. Striker Corp.*,
551 F.3d 1323 (Fed. Cir. 2008) ... 10, 11

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008) ... 15

*Apple Inc. v. Samsung Electronics Co.*,
735 F.3d 1352 (Fed. Cir. 2013) ... 10

*Apple Inc. v. Samsung Elecs. Co.*,
258 F. Supp. 3d 1013 (N.D. Cal. 2017) ... *passim*

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015) ... 14

*Apple, Inc. v. Samsung Elecs. Co.*,
2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) ... 15

*Arctic Cat Inc. v. Bombardier Recreational Prods.*,
876 F.3d 1350 (Fed. Cir. 2017) ... 15

*Atmel Corp. v. Silicon Storage Tech., Inc.*,
202 F. Supp. 2d 1096 (N.D. Cal. 2002) ... 24

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ... 13

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013) ... 8, 9, 12

*Commonwealth Sci. and Indus. Rsch. Org. v. Buffalo Tech., Inc.*,
492 F. Supp. 2d 600 (E.D. Tex. 2007) ... 14

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ... 7, 8

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ... *passim*

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
697 F.3d 1342 (Fed. Cir. 2012) ... 24

*Farmer Bros. Co. v. Coca-Cola Co.*,
384 F. Supp. 595 (C.D. Cal. 1974) ... 24

*Ford v. Alfaro*,
785 F.2d 835 (9th Cir. 1986) ... 25

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
2008 WL 928535 (N.D. Cal. Apr. 4, 2008) .......... 24

*Gogo Kaisha IP Bridge 1 v. TLC Commc'n Tech. Holding Ltd.*,
2019 WL 1877189 (D. Del. Apr. 26, 2019) .......... 17

*Hologic, Inc. v. Minerva Surgical, Inc.*,
957 F.3d 1256 (Fed. Cir. 2020) .......... 25

*Hynix Semiconductor Inc. v. Rambus Inc.*,
609 F. Supp. 2d 951 (N.D. Cal. 2009) .......... 11

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) .......... 6 ,7 ,11

*Jurgens v. CBK, Ltd.*,
80 F.3d 1566 (Fed. Cir. 1996) .......... 17

*Lam, Inc. v. Johns-Manville Corp.*,
718 F.2d 1056 (Fed. Cir. 1983) .......... 17

*NCS Multistage Inc. v. Nine Energy Serv., Inc.*, No. 6:20-cv-277-ADA,
Dkt. 305 (W.D. Tex. Jan. 31, 2023) .......... 15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
449 F. App'x 923 (Fed. Cir. 2011) .......... 11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .......... 23

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) .......... 14, 15, 16

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013) .......... 23

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012) .......... 7

*Radware, Ltd. v. F5 Networks, Inc.*,
2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) .......... 20

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992) .......... *passim*

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) .......... 6, 7, 11, 13

*Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*,
2014 WL 1008183 (N.D. Cal. Mar. 7, 2014) .......... 24

*SRI Int'l, Inc. v. Cisco Sys.*,
14 F.4th 1323 (Fed. Cir. 2021) .......... 15

*United States ex rel. Thrower v. Acad. Mortg. Corp.*, 172 F.4th 695 (9th Cir. 2026) .......... 25

*WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358 (Fed. Cir. 2016) .......... 18

*WhitServe, LLC v. Comput. Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012) .......... 23

**STATUTES**

28 U.S.C. § 1961 .......... 24, 25

35 U.S.C. § 271(b) .......... 16

35 U.S.C. § 283 .......... 16

35 U.S.C. § 284 .......... 17, 22, 23

35 U.S.C. § 285 .......... 23

**RULES**

Fed. R. Civ. P. 50 .......... 18, 19, 20

**TABLE OF EXHIBITS**

| Ex./Dkt. No. | Description |
|---|---|
| Dkt. 287-8 | Trial Ex. 384 |
| Dkt. 288-3, Ex. A | Compilation of First Trial Transcripts ("First Trial Tr.") |
| Dkt. 288-4, Ex. B | 12/19/2019 Tsung-Chan (Dan) Wu Deposition Transcript |
| Dkt. 288-5, Ex. C | 12/20/2019 Tsung-Chan (Dan) Wu Deposition Transcript |
| Dkt. 288-9 | Trial Ex. 105 |
| Dkt. 288-10 | Trial Ex. 107 |
| Dkt. 288-11 | Trial Ex. 117 |
| Dkt. 288-24 | 10/22/2021 Declaration of Tsung-Chan (Dan) Wu |
| Dkt. 295-13 | Trial Ex. 120T |
| Dkt. 298-25 | Trial Ex. 116T |
| Dkt. 298-28 | Trial Ex. 121 |
| Dkt. 298-34 | Trial Ex. 129 |
| Dkt. 298-35 | Trial Ex. 132 |
| Dkt. 299-27 | Trial Ex. 388 |
| Dkt. 301-19 | Trial Ex. A-420 |
| Dkt. 451-3 | Trial Ex. 58T |
| Dkt. 451-4 | Trial Ex. 59T |
| Dkt. 451-7 | Trial Ex. 317 |
| Dkt. 451-9 | Trial Ex. 413 |
| Dkt. 451-10 | Trial Ex. 414 |
| Dkt. 451-13 | Trial Ex. 1379T |
| Dkt. 451-14 | Trial Ex. 1380T |
| Dkt. 451-15 | Trial Ex. 1382T |
| Dkt. 451-16 | Trial Ex. 1383T |
| Dkt. 451-17 | Trial Ex. 1384T |
| Dkt. 451-18 | Trial Ex. 1385T |
| Dkt. 451-19 | Trial Ex. 1390T |
| Dkt. 561-8 | Trial Ex.71T |
| Dkt. 561-11 | Trial Ex.133T |
| Dkt. 575-11 | Trial Ex. 57T |
| Dkt. 575-12 | Trial Ex. 72T |
| Dkt 575-13 | Trial Ex. 122 |
| Dkt. 576-1 | Trial Ex. 134T |
| Dkt. 576-4 | Trial Ex. 297A |
| Dkt. 576-11 | Trial Ex. 1363 |
| Dkt. 576-5 | Trial Ex. 299A |
| Dkt. 602-4, Ex. 7 | Chilisin's Responses to Cyntec's First Set of Post-Trial Interrogatories (Nos. 1-6) |
| Dkt. 602-5, Ex. 8 | 12/11/2019 Scott Wei Deposition Transcript |
| Dkt. 602-6 | 06/26/2026 Declaration of Bryan M. Van Uden in Support of Cyntec's Opposition to Chilisin's Motion for Relief from Prior Judgments Under Rule 60, for A Finding of Unclean Hands, and for Sanctions |
| Dkt. 603-6, Ex. 9 | PULSE000001 |

| Ex./Dkt. No. | Description |
|---|---|
| Dkt. 603-7, Ex. 10 | Supplier Sales Prompted Report Builder |
| Dkt. 603-8, Ex. 11 | CHILISIN_PT_000992 |
| Dkt. 608-11 | Chilisin's Corrected Appeal Brief |

# TABLE OF ABBREVIATIONS

| Abbreviation | Definition |
|---|---|
| PTO | Unites States Patent & Trademark Office |
| OPI | Original permanent injunction issued May 24, 2022 (Dkt. 322) |
| MPC | "Molded Power Choke" or "Molded Choke" or "Choke" |
| OEM | Original Equipment Manufacturer, an entity that manufactures products for end-customers like Amazon, NVIDIA, Qualcomm, Broadcom and others. |
| Lee Decl. | Declaration of Chi-Hsun (Jack) Lee in Support of Plaintiff's Post-Trial Motions |
| Wu Decl. | Declaration of Tsung-Chan (Dan) Wu in Support of Plaintiff's Post-Trial Motions |
| Kohl Decl. | Declaration of Paul A. Kohl, Ph.D. in Support of Plaintiff's Post-Trial Motions |
| Mays Decl. | Declaration of Christopher D. Mays in Support of Plaintiff's Post-Trial Motions |

## I. INTRODUCTION

Chilisin has spent nearly a decade taking Cyntec's customers and eroding its profits with willfully infringing copies of Cyntec's patented molding chokes. Chilisin has lost on infringement, willfulness, and validity before two juries, the Federal Circuit, and the United States Patent Office ("PTO"). The first jury found Chilisin willfully infringed the '312 and '037 Patents—a finding not appealed—and the Court trebled damages and enjoined Chilisin.

How has Chilisin responded? First, when enjoined in 2022, Chilisin dissolved its U.S. co-defendant, Chilisin America, and routed its infringing chokes through a non-party affiliate, Pulse, to keep selling in the United States. Second, Chilisin told customers the injunction covered only Chilisin Electronics and Chilisin America, wrongly suggesting that Pulse and other affiliates could keep selling. Chilisin also falsely told Cyntec it had made no sunset-period sales. Third, Chilisin renamed the infringing parts, resisted discovery into the renaming, and gave the old names to different parts to suggest it had "designed around" the patents. Chilisin falsely represented to this Court it had made no U.S. sales while withholding the records that showed otherwise.

Chilisin's continued infringement is inflicting harm on Cyntec that money cannot repair. Cyntec and Chilisin compete directly for many of the same U.S. customers and their OEMs in a "design win" market, where a supplier whose part is validated for a product "is expected to remain in place for the entire life of that product absent extraordinary circumstances." Lee Decl. ¶¶ 5, 7, 18. Each design win Chilisin captures with a copy of Cyntec's technology costs Cyntec not just a sale, but years of incumbency, customer goodwill, and an edge in competing for that customer's next-generation products. Chilisin's lower prices have forced Cyntec to choose between matching "commercially unsustainable" prices and losing the business.

An injunction is the only adequate remedy, and the one Cyntec proposes is narrow. It operates prospectively and exempts customers to the extent a supply agreement confers rights to practice the patents. Chilisin's post-verdict conduct strengthens the case for that relief.

## II. PROCEDURAL BACKGROUND

After notifying Chilisin of its infringement in December 2017, Cyntec filed suit in February 2018. Dkts. 301-19; 1. During the August 2021 First Trial on the '312 and '037 Patents, the Court

granted Cyntec's JMOL on all Chilisin's invalidity defenses (indefiniteness, anticipation, and obviousness). Dkt. 288-3 at 1158:19-1160:4. The jury found willful infringement and awarded lost profits and a 5% reasonable royalty. Dkt. 269. The Court denied Chilisin's post-trial motions, trebled the jury's damages award, and permanently enjoined Chilisin. Dkts. 317, 318, 322.

Chilisin appealed only infringement, obviousness, and lost profits; not indefiniteness, anticipation, willfulness, reasonable royalty, or the injunction. Dkt. 409-2. The Federal Circuit affirmed infringement, vacated lost profits, reversed the JMOL of nonobviousness, and remanded for a new trial solely on obviousness over Shafer and Nakamura. Dkt. 336 at 9, 18. Meanwhile, in two *ex parte* reexaminations Chilisin requested, the PTO considered both references, confirmed the asserted claims, and held that Nakamura "teaches away" from the claimed invention. Dkt. 452-11 at 529; Dkt. 661 at 10 ("the USPTO considered the Shafer and Nakamura references").

On remand, the Court lifted the injunction and held on summary judgment that Chilisin waived any challenge to the reasonable royalty award, which the mandate rule independently forecloses. Dkts. 372, 433. At the March 2–5 Second Trial, the jury found that Chilisin failed to prove any asserted claim invalid after deliberating for less than an hour. Dkt. 542.

## III. FACTUAL BACKGROUND

### A. The Parties' Direct Competition for Molding Power Chokes

The relevant products are molding power chokes ("MPCs"), a type of inductor. The patents cover MPCs made with two magnetic powders—such as iron and/or an alloy—whose particles vary in size and hardness (a "mixed powder" MPC). Kohl Decl. ¶ 28. The parties have competed directly for mixed powder MPCs since at least 2015. *See, e.g.*, Dkt. 198 at 4 ("Cyntec and Chilisin are competitors."); Dkt. 288-3 201:12-17, 206:16-19; *id.* 683:13-14, 696:3-8; Lee Decl. ¶ 5. Chilisin offered no evidence that it independently developed the technology incorporated in the infringing products. Chilisin intentionally copied the size, performance, and characteristics of Cyntec's patented MPC technology. Dkt. 288-3 1167:12-18; Dkt. 544 170:10-23; *see infra* §§ IV.B.2, VI.A. After becoming [redacted] Dkt. 451-19 Trial Ex. 1390T at 34200 ([redacted]). When customers asked Chilisin to displace Cyntec, it set out to

match Cyntec's parts. [redacted] Dkts. 451-18 at 161416; 451-7 at 26748–49; 287-8 at 26723-24; 288-9 at 26672. [redacted] Dkts. 451-10 at 35321, 35328; 575-12 at 22851; 451-9 at 38038. [redacted] Dkts. 451-13 at 32427; 451-16 at 40885 [redacted]; 451-17 at 94963; 451-15 at 32346.

Chilisin paired its copying with below-market prices: it used "aggressive" quotes to win a Broadcom platform as "2nd source," quoted "15% lower than Cyntec," and priced at a "negative margin." Dkts. 451-14 at 143109; 298-35 at 35011; 288-11 at 34483; 298-25 at 24856–57 (Apple cost breakdown "has to be adjusted").

Chilisin's copies forced Cyntec to compete as an after-the-fact alternative against its own patented technology. Customers that had already designed in Chilisin's infringing HEI- and HPPC-series chokes repeatedly asked Cyntec to match those parts. [redacted] In 2016, Microsoft twice asked for a cross for Chilisin's infringing HPPC12020-1R2M-Q8EZ MPC for its Surface products—the second time, "a pin compatible (exact package dimensions) cross" with "the same dimensions, and the same DCR." *Id*. Exs. U (A-850 at -14365-66); V (A-852 at -15905, -15909). As one salesperson warned, "even [if] they picked Chilisin first, they will still come ask us to propose. If they realize we cannot compete once, twice or three times, you can imagine what the consequences are." *Id.* Ex. V (A-852 at -15905). Chilisin's infringement denied Cyntec the chance to be the primary supplier—a position that, once won, lasts for the life of the product. *See* Lee Decl. ¶¶ 14, 18.

Chilisin's conduct continued after it learned of Cyntec's patents. In December 2017,

Cyntec notified Chilisin that its mixed powder MPCs "incorporate Cyntec's patented technologies without authorization" and infringed a number of Cyntec's patents, including the '312 and '037 Patents. Dkt. 301-19 at -37. Rather than respecting Cyntec's patents, Chilisin accelerated its infringement (*infra* § III.C). Chilisin continued to target Cyntec's most valued customers for "design wins" in which its copies could be validated in place of Cyntec's chokes. *See* Dkt. 288-3 536:5-16; Dkts. 451-4 at 118507 (seeking "substitute material parts" for a Cyntec part); 451-3 at 120730 (proposing substitutes for Cyntec parts); *see also infra* § VI.A.[1]

That competition continues today: at the March 2026 trial, Chilisin's counsel described the parties as "two Taiwanese companies who really compete hard against each other" and conceded that Chilisin is using Cyntec's mixed powder technology "today." Dkt. 544 100:19-22, 101:1-5, 118:10-13. That competition has harmed Cyntec: it has had to accept materially worse commercial terms from major customers. *See infra* § IV.A.4; *see also* Lee Decl. ¶¶ 9-10. In mid-2025, for example, [redacted] on performance grounds, but because Chilisin's competing part was priced about [redacted] lower, [redacted] demanded a substantial price cut. Cyntec was forced to cut its price—from [redacted] to [redacted] per piece and then to [redacted]—roughly [redacted] price erosion. Lee Decl. ¶¶ 10, 22 (citing Mays Decl. Exs. I and J).

### B. Chilisin Sought to Evade the Original Permanent Injunction

The Court entered the Original Permanent Injunction ("OPI") on May 24, 2022. Dkt. 322. The OPI barred Chilisin and its employees, attorneys, ***affiliates***, and other "***persons or entities in active concert or participation with them***" from infringing or inducing infringement of the '312 and '037 Patents. *Id.* at 1. It covered thirteen Chilisin product series and "those devices matching the devices claimed in" the patents. *Id.* It also included a nine-month "Sunset Provision" (ending February 2023) that let enjoined entities sell off existing inventory. For any such sale, Chilisin had to (1) obtain the customer's "written certification" limiting the products' use and showing their "quantity," *id.* at 2, and (2) provide Cyntec with copies quarterly. ***Chilisin also had to provide a copy of the OPI to every parent, successor, affiliated entity, customer, and distributor, among***

[1] Tellingly, in the fact discovery period beginning April 2026, Chilisin refused to update its email production. There may be more examples in more recent emails.

***others***. *Id.* at 3. Those provisions ensured that customers and distributors knew of the injunction.

**1. Chilisin Falsely Stated It Made No Sunset Sales**

Chilisin provided no certifications for its Sunset Sales. In November 2022, Chilisin's counsel informed Cyntec that Chilisin had "made no sales of sunset parts in or to the U.S. during this time period, so there is nothing to certify." Mays Decl. Ex. A. This was false. Chilisin's 2026 interrogatory responses disclosed [redacted] *See* Dkt. 581-3 at 3-4; Dkt. 602-6 ¶ 7. Chilisin does not dispute that it never provided the required certifications or that its "no sales" representation was false; it argues only that the sales were *de minimis*. Dkt. 615-10 at 7-8.

**2. Chilisin Moved Infringing Sales to an Enjoined Affiliate**

[redacted]; Dkt. 602-5 at 32:16-18 (Chilisin America had five employees); Dkt. 322 at 1 (enjoining "affiliated entities"). [redacted] *See* Dkt. 603-6; Dkt. 603-7; Dkt. 602-6 ¶¶ 5-6, 8. Chilisin facilitated this violation of the OPI by publishing a statement that falsely represented the OPI "only applies to Chilisin Electronics Corp. and Chilisin America Ltd.," inducing customers to buy the infringing MPCs it had routed through Pulse. Dkt. 596-7; Dkt. 322 at 1. Chilisin also misled the Court when it asked the parties, "since the [OPI] issued … have any other competitors entered the market that are in direction competition with Cyntec?" Dkt. 357 at 2. Chilisin listed many companies but did not tell the Court about Pulse's infringing sales. *Id.* at 2-3. Chilisin also failed to update interrogatories disclosing that fact to Cyntec. Pulse's infringement bore directly on whether the OPI should remain in force, as the Court found "Cyntec and Chilisin are probably neither direct competitors…." Dkt. 376 at 7.

**C. Chilisin's Current Infringing Products Have Generated Significant Revenue**

Dr. Kohl analyzed Chilisin's current catalogue and production of mixed powder MPCs.

Kohl Decl. ¶¶ 20-73. Since the First Trial, Chilisin sells or has sold [redacted] MPCs explicitly found to infringe in the First Trial or that are renamed versions of the same. *Id.* ¶¶ 30-33, Apps. B-C. It sells or has sold [redacted] MPCs that use the same magnetic powders previously found to infringe, with only immaterial differences. *Id.* ¶¶ 34-45, Apps. D-F. And it sells or has sold at least [redacted] MPCs using new but materially similar powders to those already found to infringe. *Id.* ¶¶ 46-76, Apps. G, J, K. Chilisin's catalogue of infringing MPCs has thus grown more than [redacted], to [redacted]. *Id.* App. H.

Chilisin has profited substantially from Cyntec's technology. Since the First Trial, Chilisin generated at least [redacted]. Van Uden Decl. ¶ 81. Of these sales, [redacted] *Id.* ¶ 104-5. Chilisin's primary channel is indirect: sales to the (typically foreign) OEMs of U.S. design-win customers. *See* Dkt. 288-3 536:5-16. Since the First Trial, Chilisin made at least [redacted] But this is only a portion of its overall sales: Chilisin refused to produce sales data for many infringing MPCs to OEMs. Van Uden Decl. ¶ 19.

Nor has Chilisin produced data showing how many of those MPCs were imported into the United States. Chilisin claims not even to know how many infringing units its U.S. design-win customers import. Dkt. 608-11 at 52 ("***[N]o party*** in this case knows exactly which third-party products contain accused chokes, or how many accused chokes those products contain"). Chilisin has never contended that no infringing units are imported into the United States. Dkt. 288-3 690:23-25.

## IV. CHILISIN SHOULD BE PERMANENTLY ENJOINED

To obtain an injunction, Cyntec must show that "(1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and, (4) the public interest would not be 'disserved' by a permanent injunction." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Courts should not "ignore the fundamental nature of patents as property rights granting the owner the right to exclude." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d

1142, 1149 (Fed. Cir. 2011); *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362 (Fed. Cir. 2012) ("Of course the axiomatic remedy for trespass on property rights is removal of the trespasser."). Each factor favors an injunction here. *See* Van Uden Decl. ¶¶ 6-56.

**A. *eBay* Factor 1: Chilisin's Infringement Will Irreparably Harm Cyntec**

Chilisin has used infringing MPCs to compete directly with Cyntec since at least 2015—before, during, and after the OPI—causing Cyntec significant irreparable harm. *See supra* §§ III.A, B, C. That past harm is strong evidence of the harm to come. Continued infringement will bring "continued lost sales and profits, diminished market share, and price erosion." Van Uden Decl. ¶ 8. Even after the first verdict, Chilisin "never stopped selling products that compete with Cyntec's patented products." Lee Decl. ¶ 11. And because a design win typically lasts for the life of the customer's end product—often several years for laptops and data-center servers—every design win Chilisin holds or captures will keep harming Cyntec for years to come. *Id.* ¶¶ 13, 18; Van Uden Decl. ¶¶ 7-38.

**1. Chilisin Uses Cyntec's Patents to Directly Compete with Cyntec**

"Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Presidio*, 702 F.3d at 1363; *see also Robert Bosch*, 659 F.3d at 1153. Likewise, "past harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee 'has suffered an irreparable injury.'" *i4i Ltd.*, 598 F.3d at 861; *see also Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions.").

Each is present here. The parties compete for many of the same customers in the same market, Chilisin considered Cyntec its principal competitor, and Cyntec regards Chilisin as its "major competitor" for mixed powder MPCs. *See supra* § III.A, C; Dkt. 288-10 at 14537; Dkt. 288-24 ¶ 3; Dkt. 288-3 206:16-19; Lee Decl. ¶ 5. Chilisin's own documents confirm that the two compete head-to-head for the same U.S. design wins. [redacted] after learning that [redacted]

[redacted] Having copied Cyntec's products, Chilisin targeted Cyntec's customers with lower-priced replicas, forcing Cyntec to compete against its own patented technology and injuring its goodwill, the exclusivity of its product offerings, and its market position. *See supra* § III.A; *infra* § VI.A; Dkt. 288-4 43:11-44:4, 45:6-46:24, 66:18-68:17, 69:22-70:21; Dkt. 288-5 159:18-160:7; Kohl Decl. ¶¶ 34-76; Wu Decl. ¶ 6. Cyntec lost sales when its customers awarded Chilisin "design wins" at prices Cyntec could not match, giving Chilisin a foothold with those customers to become a "one-stop shop" for electronic components. *See id.*; Dkt. 288-24 ¶¶ 4-5, 10-13; Dkt. 288-3 649:1-11 (quoting Dkt. 301-11 at 239857); Lee Decl. ¶ 9 (Cyntec lost business when it "could not lower its price to the level required by the customer"). Other customers used Chilisin to force Cyntec to lower its prices or lose the sale. *See* Dkt. 288-3 205:21-206:22; Dkt. 546 581:1-16; Lee Decl. ¶¶ 10, 22.

By making Cyntec compete against its own patented technology, Chilisin forced Cyntec to increase R&D investment. *Id.* ¶ 18. The harm is tied to the infringement itself: the patented features "directly affect whether a supplier secures or loses a sale or design win," and Chilisin's use of them erodes the market distinction Cyntec earned through research and development spending that reached approximately [redacted]. Van Uden Decl. ¶¶ 12-13, 33-34; *see Douglas Dynamics*, 717 F.3d at 1344-45.

### 2. The Industry's Design-Win Model Exacerbates the Irreparable Harm

In *Broadcom Corp. v. Emulex Corp.*, the Federal Circuit affirmed an injunction in a market where, once an OEM designs in a supplier's component, "it is very difficult to alter the design of the OEM product." 732 F.3d 1325, 1336 (Fed. Cir. 2013). A "design-win effectively locks the OEM into using the winner's component part and thus temporarily immunizes the winner from competition," and winners "enjoy an 'incumbency effect' making them more likely to win subsequent design competitions." *Id.* "Broadcom and Emulex were competitors and . . . Broadcom

lost market share while Emulex gained it," thus showing irreparable harm. *Id.* at 1338.

The MPC market is likewise a design-wins market in which Cyntec and Chilisin compete for business from large U.S. companies and their OEMs. *See* Dkt. 288-3 182:25-184:1; Lee Decl. ¶¶ 7, 14. Once an OEM sets the electrical characteristics for a component, it *requires* that suppliers' products exactly match them. *See* Dkts. 576-11 at 30077 (customer required a sample "to cross Cyntec as the spec attached"); 298-28 at 30077. In many cases, those specifications track Cyntec's own patented technology, which "set the industry standard for the relevant electrical specifications." Lee Decl. ¶ 7. Each design win Chilisin secures with a replica siphons sales from Cyntec and undermines its goodwill. As in *Broadcom*, a validated part "is expected to remain in place for the entire life of that product [and] absent extraordinary circumstances," the incumbent "enjoys an advantage in being selected by the OEM for the next generation product," and the "trust and goodwill" it earns "can also translate into additional design wins." Lee Decl. ¶¶ 15, 17-19. As a result, Cyntec now finds itself, in many instances, "seeking to become the second source supplier against Chilisin regarding a Chilisin design that is using Cyntec's own intellectual property." *Id.* ¶ 14; *see, e.g.*, Mays Decl. Ex. K (CYN_0023877) at 23892, 23894 ([redacted]); Mays Decl. ¶ 18, Trial Ex. A-852 at 15904 [redacted]; *supra* § III.A; Van Uden Decl. ¶ 16. Chilisin's documents show the mechanism: where "the client prefers CYNTEC," Chilisin makes its part "exactly the same" to "get 2nd source on BOM," pricing it "15% lower than Cyntec"—good enough to get "the 2nd source decision." Dkts. 575-11 at 02; 298-35 at 35011; Lee Decl. ¶ 8. A single design-house win at a company like Qualcomm or Broadcom can yield "multiple end-customer design wins." Van Uden Decl. ¶¶ 40, 50. [redacted] Where Cyntec cannot match Chilisin's below-cost pricing, it risks losing the customer altogether. *See supra* §§ III.A, IV.A.1; Lee Decl. ¶ 21. That conduct continues: since 2015, Chilisin has sold [redacted] not counting for the recent sales data to OEMs that it refused to produce. Van Uden Decl. ¶ 98.

**3. Cyntec Has Never Been Free from Infringing Competition by Chilisin**

At no point since this case was filed has Cyntec been free from competition from Chilisin's

infringing MPCs. *See* infra § VI.F. The OPI did not end that competition; it rerouted it. During the Sunset Period, Chilisin America [redacted] while telling Cyntec it had made none. *See supra* § III.B.1. Once the Sunset Period ended, Chilisin sold through Pulse to avoid the OPI. Dkt. 602-6 ¶¶ 4-5; Dkt. 603-8 at row 2394; Dkt. 603-6; Dkt. 603-7; Lee Decl. ¶ 12 (Pulse's sales "have the same effect of hurting Cyntec's business as those made directly by Chilisin"). When the OPI dissolved in May 2024, Pulse's infringing sales simply continued (Dkt. 603-6; 602-6 ¶¶ 4-5). That competition continues today. Van Uden Decl. ¶¶ 11, 92, 98, 101; Kohl Decl. ¶¶ 34-76; Lee Decl. ¶¶ 6, 11. Unless Chilisin is enjoined, Cyntec will suffer irreparable for years to come. *See* Lee Decl. ¶¶ 11, 13, 20.

**4. Cyntec's Supply Agreements Do Not Negate Irreparable Harm**

Cyntec's supply agreements with certain customers contain conditional, limited license and non-assert provisions that vary from agreement by agreement. Those terms facilitate the sale of Cyntec's own components and do not negate irreparable harm. In *eBay*, the Supreme Court held that a patentee's "willingness to license its patents" does not dispositively establish the absence of irreparable harm, because traditional equitable principles "do not permit such broad classifications." 547 U.S. at 393. Applying *eBay*, the Federal Circuit in *Apple Inc. v. Samsung Electronics Co.* vacated a finding that the inadequacy-of-remedies factor favored Samsung. The district court had relied on Apple's licenses to Nokia, IBM, and HTC and its offer to license Samsung, its "primary competitor." 735 F.3d 1352, 1368–71 (Fed. Cir. 2013). Licensing is just "one factor"; courts must also consider "the identity of the past licensees, the experience in the market since the licenses were granted, and the identity of the new infringer." *Id.* at 1369. The district court erred by relying on Apple's licensing history "without exploring any relevant differences from the current situation." *Id.* at 1370.

Here, Cyntec does not license out its patents to monetize them; it seeks to maintain as much control over its intellectual property as possible. Cyntec's supply agreements exist to facilitate the sale of Cyntec MPCs to its customers. Wu Decl. ¶¶ 5-6; Van Uden Decl. ¶¶ 26-28, 78-81. Limited IP provisions negotiated with customers to facilitate supply are a far cry from Apple's global, nonexclusive licenses untethered to its own products. *See Apple,* 735 F.3d at 1370; *Acumed LLC*

*v. Striker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("past willingness to license its patent is not sufficient *per se* to establish a lack of irreparable harm if a new infringer were licensed."); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923, 933 (Fed. Cir. 2011) (prior customer license contained "provisions consistent with [patentee's] status as a [] supplier that competes with other suppliers such as [defendant]"); *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 970 (N.D. Cal. 2009) (customer license "of limited probative value" because "it created a possible business alliance"). And, the proposed injunction provides carve-out procedures for any customer legitimately entitled to buy from Chilisin. *See* Mays Decl. Ex. E.

The evolution of Cyntec's Apple supply agreements shows another irreparable harm: as Chilisin's infringement continued, Cyntec and its parent Delta had to accept eroding terms to keep Apple's business. Cyntec's 2014 agreement, which predates Chilisin's infringement, let Cyntec [redacted] Dkt. 598-2 at § 15.2(a). After multiple renegotiations (a decade into Chilisin's infringement), that provision vanished: the 2025 agreement only allows [redacted] *See* Dkt. 598-5 at § 19.4. The 2014 agreement's objective [redacted] That erosion is telling, because Chilisin's copying and predatory pricing focused on Apple. *See supra* § III.A; *infra* §§ VI.A, VI.G.

**B. *eBay* Factor 2: Cyntec's Remedies at Law are Inadequate**

**1. Chilisin's Direct Competition Defies Attempts at Valuation**

Damages are inadequate where, as here, the patentee practices its patent (Kohl Decl. ¶¶ 78-85; Lee Decl. ¶¶ 3-4) and seeks to exclude competitors (Wu Decl. ¶¶ 5-6), because the resulting loss of "market share, brand recognition, and customer goodwill" may "frequently defy attempts at valuation." *i4i Ltd.*, 598 F.3d at 862; *see also Robert Bosch*, 659 F.3d at 1155 (damages could not compensate for "lost market share, lost business opportunities, and price erosion"). By making replicas of Cyntec's patented products, Chilisin inflicts exactly that harm. *See supra* §§ III.A, III.C; *infra* § VI.A; Dkt. 288-11 at 34483 ("negative margin"). Lost profits cannot be determined with reasonable certainty, and a royalty—which by design leaves the infringer "an acceptable profit"—

would "significantly understate the true economic injury" to Cyntec, which earns a [redacted] gross margin on its patented products. Van Uden Decl. ¶¶ 41, 94. A running royalty cannot replace what Chilisin takes: the value of Cyntec's design-win relationships "is something that cannot be replicated through or compensated by a compulsory license," and a royalty would not compensate Cyntec for "the loss of competitive advantages and exclusivity" it continues to suffer. Lee Decl. ¶¶ 19, 21. Even the Samsung episode carried costs no damages model captures: Cyntec reallocated inventory from other customers to meet Samsung's schedule, "an operational cost that does not appear in any per-unit margin analysis." *Id.* ¶¶ 16, 18, 22.

Moreover, the design win nature of the market itself renders monetary damages insufficient. *See Broadcom*, 732 F.3d at 1336 ("money damages were inadequate to compensate Broadcom largely due to incumbency effects from the design-win market conditions."); Lee Decl. ¶¶ 18-19, 22 (lost design wins "are not easily recovered" because Chilisin "benefits from the same incumbency effect"). When a customer designs in Chilisin's infringing part first, Cyntec is at best invited to compete against its own technology after the fact (*see supra* § III.A) and at worst never learns the opportunity existed. No award can account for unknown design wins and the follow-on business they generate. *See* Lee Decl. ¶¶ 19-20. Those losses "carry forward into future generations of products" and "cannot be predicted with precision." Van Uden Decl. ¶ 24, 39-42.

**2. The Full Extent of Chilisin's Infringement Is Unquantifiable**

Remedies at law are also inadequate where, as here, complete damages are difficult (or impossible) to calculate. *i4i*, 598 F.3d at 862 ("Difficulty in estimating monetary damages is evidence that remedies at law are inadequate"). Chilisin sells most of its infringing parts to the foreign OEMs of U.S. customers. *See supra* § III.C. From 2021 through Q1 2026, Chilisin [redacted] Van Uden Decl. ¶¶ 19, 98. Chilisin has refused to disclose its complete OEM sales. *Id.* ¶¶ 19-20. And neither Chilisin nor its customers track how many infringing MPCs enter the United States in finished products. *Id.* ¶¶ 20-22; Dkt. 288-3 677:9-16, 678:20-22, 679:4-6; Dkt. 608-11 at 52; *see also* Mays Decl. Exs. B-D (customer subpoena responses); Dkt. 288-3 787:12-25. Chilisin made its products

fungible with Cyntec's patented MPCs by mimicking their size, shape, and physical characteristics. *Infra* § VI.A; Mays Decl. ¶ 17 (collecting documents). It is thus nearly impossible to identify infringing MPCs in a finished product, let alone calculate the full extent of infringement. *See* Lee Decl. ¶ 20 (harm to Cyntec "cannot be readily quantified"). Because indirect sales cannot be traced, a damages award compensates "at most, for a subset of past infringement"—here, [redacted] in direct U.S. sales, less than [redacted] of Chilisin's [redacted] in sales since the First Trial. Van Uden Decl. ¶¶ 21-22, 81, 105. Determining which sales are licensed—under supply agreements whose terms differ and, for Apple, changed in 2014, 2017, and 2025—would compound the difficulty.

**C. *eBay* Factor 3: The Balance of Hardships Favors Cyntec**

This factor "assesses the relative effect of granting or denying an injunction on the parties." *i4i*, 598 F.3d at 862. Courts consider "the parties' sizes, products, and revenue sources" but not the infringer's "expenses incurred in creating the infringing products and the consequences of its infringement, such as the cost of redesigning the infringing products." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020); *Robert Bosch*, 659 F.3d at 1156 (similar).

The balance tips decisively toward Cyntec. MPCs practicing the '312 and '037 Patents "now account for a majority of Cyntec's inductor sales and revenues." Lee Decl. ¶ 4; *see also* Dkt. 288-3 182:18-24. By contrast, Chilisin's business is widely diversified and the infringing MPCs are only "a small portion of [Chilisin's] business." Dkt. 288-3 654:9-11; *see* infra § VI.D. Mr. Van Uden quantifies the disparity: Cyntec has sold approximately [redacted] of patent-practicing products since late 2016, while Chilisin's infringing products were just [redacted] of its passive-component sales from 2015 to 2018 and less than [redacted] of its parent Yageo's passive-component business through 2025.— Van Uden Decl. ¶¶ 45, 43-47, 97. An injunction would not bar Chilisin from selling its non-infringing inductors. Accordingly, this favors an injunction. *See i4i*, 598 F.3d at 863 (balance favored patentee where "the patented technology is central to i4i's business" and the infringing product "relates to only a small fraction of Microsoft's sizable business").

**D. *eBay* Factor 4: Public Interest Factors Favor Cyntec as the Patentee**

The "touchstone" of this factor is "whether an injunction, both in scope and effect, strikes

a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *Id*. "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). Cyntec does, for several companies. Lee Decl. ¶ 6; Kohl Decl. ¶¶ 78-85. This encourages innovation into scientific advances. Van Uden Decl. ¶¶ 49-52. This is a critical aspect here, since the market for MPCs demands increasingly smaller and more efficient power inductors to keep up with advances in modern consumer electronics. *Id.* ¶ 49. Cyntec invests [redacted] annually in R&D—expenses that should not be penalized by a copycat. *Id.* ¶ 50. By "protecting returns on innovation" an injunction would "support incentives for future R&D." *Id.* ¶ 52.

Cyntec's proposed injunction strikes the correct balance and will not limit customer choice. It is narrowly tailored, takes effect prospectively, applies to Chilisin and its affiliates (and not its customers), so contract manufacturers and end customers need not remove infringing products already purchased or limit their use. Ex. E (proposed form of injunction). It also carves out situations where a customer's supply agreement legitimately permits the customer to purchase from Chilisin. *Id.* It also would not "hamper Chilisin's ability to compete in the inductor market," other than taking away its ability to sell infringing MPCs into the U.S. Van Uden Decl. ¶ 53.

Nor do the infringing products—components of consumer electronics—implicate the "rare and limited circumstances in which an injunction would be contrary to a significant public interest such as health and safety concerns." *Commonwealth Sci. and Indus. Rsch. Org. v. Buffalo Tech., Inc.*, 492 F. Supp. 2d 600, 607 (E.D. Tex. 2007). And because Chilisin's products are replicas of Cyntec's, often supplied as a "second source" to customers for which Cyntec is the preferred "first source," removing them would not affect the performance of any consumer electronics, and both parties agree Cyntec has the manufacturing and marketing capacity to meet the additional demand. *See supra* § III.A; *infra* § VI.A; Lee Decl. ¶ 14; Dkt. 298-35 at 35011; Dkt. 288-3 559:10-25; *id.* at 936:21-23. Van Uden Decl. ¶¶ 48-56. This—and each—factor weighs in favor of an injunction.

## V. ALTERNATIVELY, CYNTEC IS ENTITLED TO AN ONGOING ROYALTY

Absent an injunction, the Court should "award[] an ongoing royalty for patent infringement

in lieu of an injunction" until Chilisin's infringement ceases or Cyntec's patents expire. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007). Because "there is a fundamental difference … between a reasonable royalty for pre-verdict infringement and post-verdict infringement," *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361 (Fed. Cir. 2008), the jury's rate is the floor, and "[c]ourts frequently impose a post-verdict ongoing royalty rate that is higher than the reasonable royalty found at trial for past infringement." *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 6687122, at *14 (N.D. Cal. Nov. 25, 2014); *see, e.g.*, *Arctic Cat Inc. v. Bombardier Recreational Prods.*, 876 F.3d 1350, 1357, 1370 (Fed. Cir. 2017) (affirming double the jury's rate).

A higher rate is warranted here because the two verdicts changed the parties' bargaining positions. *See Amado*, 517 F.3d at 1362. Chilisin is an adjudged willful infringer—a finding it did not appeal—and Cyntec's patents have survived two reexaminations and a second jury. *See supra* § II; Lee Decl. ¶ 3. This gives Cyntec a significantly "stronger bargaining position" than before the verdict. *NCS Multistage Inc. v. Nine Energy Serv., Inc.*, No. 6:20-cv-277-ADA, Dkt. 305 at 3, 5-6 (W.D. Tex. Jan. 31, 2023) (ongoing royalty 25% above the jury's rate). And because Chilisin now knows the patents are valid and infringed, its continued infringement can only be "deliberate or intentional." *SRI Int'l, Inc. v. Cisco Sys.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). Cyntec's damages expert agrees that the economic circumstances have shifted in Cyntec's favor since the December 2014 hypothetical negotiation for the First Trial. Van Uden Decl. ¶¶ 59-61. Cyntec would be even less willing to license a competitor that has sold [redacted] of infringing products against it (*Georgia-Pacific* Factor 4) even while the OPI was in force; the parties remain direct competitors, and Cyntec would seek to recover the [redacted] margin it loses on each infringing sale (Factor 5); Cyntec's patented products have generated approximately [redacted] in sales (Factor 8); Chilisin's infringing volume peaked at more than [redacted] (Factor 11); and there is still no acceptable non-infringing alternative (Factors 9-10). *Id.* ¶¶ 91-102. Cyntec's customer supply agreements are not comparable licenses and at most affect the royalty base for [redacted] products. *Id.* ¶¶ 77-90. Mr. Van Uden concludes that the post-verdict rate "would be materially higher than the 5.0% rate." *Id.* ¶ 103. In light of this analysis and Chilisin's status as an adjudged willful infringer, the Court should treble the original jury's award

and set an ongoing royalty of 15% on the royalty base described below, from entry of judgment forward.

The ongoing royalty should reach every infringing MPC that enters the United States through either of Chilisin's two channels. *See* Kohl Decl. Apps. B-G, H; Van Uden Decl. ¶ 104. The first is direct: all MPCs that Chilisin and its affiliates, including Pulse, sell, offer to sell, or import directly into the United States, under both the adjudicated part numbers and the renamed ones. *See supra* §§ III.B-C, VI.H; Kohl Decl. ¶¶ 35-37, Apps. B-C. The second—Chilisin's primary channel—is indirect: the MPCs Chilisin and affiliates sell to the foreign OEMs of U.S. design-win customers, which incorporate them into products imported into the United States. *See supra* §§ III.C, IV.B.2. Chilisin supplies those parts knowing that they have been adjudicated to infringe and that many are bound for the United States—conduct the OPI itself barred as "inducing the infringement of" the asserted claims. Dkt. 322 at 1; *see* 35 U.S.C. § 271(b).

A royalty on that indirect channel means nothing unless the units are counted, and Chilisin claims it does not track—and has refused to produce—how many of its MPCs reach the United States through its customers' OEMs. *See supra* §§ III.C, IV.B.2. Because the Court's authority to award an ongoing royalty derives from its equitable power under 35 U.S.C. § 283, *see Paice*, 504 F.3d at 1314, the Court may impose the terms needed to make that royalty effective. Cyntec therefore asks the Court to require Chilisin to (1) notify the OEMs and design-win customers it supplies of the royalty; (2) condition continued supply on each OEM's quarterly report of the Chilisin MPCs incorporated into products imported into or sold in the U.S.; (3) report quarterly its and its affiliates' direct U.S. sales, its sales to the OEMs of U.S. customers (with the OEM reports), and its U.S. design wins, by customer, program, and part number; (4) pay the royalty quarterly on direct U.S. sales and OEM-reported U.S.-bound units; and (5) submit its reports and records to audit by an independent auditor.

These terms are modest. They track the OPI, which required customer notice and written certifications "show[ing] the quantity" sold, with quarterly copies to Cyntec. Dkt. 322 at 2–3. Chilisin ignored those requirements, *see supra* § III.B.1, which is why audit rights are needed. Courts awarding ongoing royalties have likewise required infringers to identify and account for

royalty-bearing sales, including sales of non-adjudicated products. *See Gogo Kaisha IP Bridge 1 v. TLC Commc'n Tech. Holding Ltd.*, 2019 WL 1877189, at *7 (D. Del. Apr. 26, 2019) (ordering accounting of non-accused products). And any remaining uncertainty is Chilisin's own making. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

## VI. THE COURT SHOULD REINSTATE ENHANCED DAMAGES

The Court's prior order enhancing (trebling) Cyntec's damages should stand. That order was not appealed and Chilisin cannot now dispute any of the Court's prior factual findings. The facts now weigh even more strongly in favor of enhancement.

The Court may "increase [ ] damages up to three times the amount found or assessed." 35 U.S.C. § 284. "The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992). Courts weigh the nine factors identified in *Read*, each addressed below. *See id.* at 826-27. Not all factors must be present for a court to award enhanced damages; rather, a court "must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating." *Id.* at 826. Once the jury finds willful infringement, enhancement is appropriate so that the willfulness finding will not be rendered meaningless. *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571-72 (Fed. Cir. 1996).

### A. *Read* Factor 1: Chilisin Copied Cyntec's Patented Products

Evidence of copying weighs in favor of enhanced damages. *See Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1030 (N.D. Cal. 2017). Here, two juries have been confronted with the facts of Chilisin's copying and both juries decisively sided with Cyntec.

In March 2018, Chilisin's President, Jack Chung, directed his team to acquire competitors' MPC samples for use as references in Chilisin's R&D. Dkt. 561-11 at 30291. Chilisin executive Scott Wei reported that obtaining Cyntec's parts directly would be "difficult" and suggested that Chilisin instead acquire a mobile phone containing a Cyntec MPC and disassemble it to extract the part. *Id.*; Dkt. 547 629:6-12. Mr. Wei also confirmed the objective: when asked whether Chilisin was "trying to completely match Cyntec's product characteristics," he answered, "[w]e have to completely meet the characteristics required by our customer." Dkt. 547 627:18-22. To

gain traction, Chilisin targeted Cyntec customers by promising fungible replicas of Cyntec's patented MPCs that matched "pin distance, size, dimension and the common difference". Dkt. 295-13 at 29193; *see also id.* at 29196 ("Should we just copy that?"); *see also* Dkt. 575-13 at 39954-55 ("The new parts we are working, with bottom terminals, will mettle same dimensions with Cyntec's."); Mays Decl. ¶ 17 (collecting documents). Cyntec's expert also confirmed that Chilisin's infringing MPCs use the same magnetic powders as Cyntec's patented MPCs—powders of the differing size and hardness the patents claim. *See* Dkt. 561-14 at 13:32-39; Dkt. 561-13:7-14; *compare* Dkt.576-4 *with* Dkt. 576-5 (same iron-silicon-chromium alloy powder and carbonyl-iron powder); Dkt. 545 362:5-8, 363:2-14, 364:1-365:13; Dkt. 546 440:25-442:17, 444:22-447:21.

Even after Cyntec's December 2017 notice letter, Chilisin kept copying: it shipped samples to Apple that "need[ed] to completely match Cyntec characteristics," sought Cyntec samples for its R&D, and told its engineers that a Marvell part "need[ed] to be exactly the same" as Cyntec's. Dkt. 576-11 at 30067-68, 30071 (Nov. 2017–Feb. 2018); Dkts. 561-11 at 30291 (Mar. 2018); 575-11 at 02 (May 2019). This factor weighs heavily in favor of enhancement.

Cyntec's supply agreements do not authorize copying: Chilisin has identified no provision permitting it, no customer could or did authorize Chilisin to infringe, and the plan to acquire, dismantle, and copy Cyntec's products came from Chilisin's own personnel.

### B. *Read* Factor 2: No Good Faith Belief of Non-infringement or Invalidity

This factor weighs in favor of enhancement when there is an "absence of evidence of an adequate investigation." *Apple*, 258 F. Supp. 3d at 1032. Chilisin received Cyntec's December 14, 2017 notice but offered no testimony at either trial that it ever investigated Cyntec's concerns. Instead of investigating, Chilisin devoted extraordinary effort to obtaining, dismantling, and copying Cyntec's patented MPCs. *See supra* § VI.A. That is not the conduct of a company that believed in good faith that the patents were invalid or unworthy of respect.

This factor also favors enhancement when an accused infringer's positions are objectively unreasonable. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1363 (Fed. Cir. 2016). Here, the lack of any good faith belief only amplified after the First Trial. Chilisin did not appeal the willfulness finding, the Rule 50(a) rulings on indefiniteness and anticipation, or the

royalty, and it lost the claim-construction issue it did appeal. *See supra* § II; Dkt. 336 at 9-11. And it filed two *ex parte* reexaminations with the USPTO (which involved the same obviousness defense as in the Second Trial) and lost both. *See Apple,* 258 F. Supp. 3d at 1032 n.2 ("the PTO's consideration of this prior art undermines the contention that Samsung relied on its invalidity defense in good faith."). Facing these losses, Chilisin still litigated obviousness in March 2026—and lost again. Nothing in the record shows a good-faith belief in non-infringement or invalidity.

**C. *Read* Factor 3: Chilisin's Litigation Conduct Supports Enhancement**

Chilisin forced Cyntec and the Court to spend enormous resources on meritless defenses, pressing indefiniteness and anticipation right up to the First Trial. *See, e.g.,* Dkt. 65 at 19-23; Dkt. 213 at 14; Dkt. 288-3 168:13-169:6, 174:6-13. But after touting indefiniteness in its opening statement, Chilisin presented no evidence on it. Dkt. 288-3 1158:19-1159:10. The Court also found Chilisin's anticipation defense specious and granted Rule 50(a) on both the indefiniteness and anticipation defenses. *Id.* Chilisin never appealed those findings. Dkt. 317 at 24-25.

After both trials, Chilisin's Rule 50(b) motions pressed arguments it had waived (Dkt. 317 at 3-14; Dkt. 573 at 3-4), forcing Cyntec to spend significant resources responding.

Chilisin's misconduct continued: it evaded the OPI through Pulse and falsely denied making sunset sales. *See supra* § III.B. And, when this Court specifically asked in 2024 what companies were currently selling MPCs, Chilisin through its counsel ***misled*** the Court by failing to tell it that Pulse had been selling infringing Chilisin MPCs for a year at that point. *See* Dkt. 355 (Questions 9 and 10). Chilisin also failed to timely supplement interrogatory responses identifying distributors of the infringing MPCs, [redacted]. Ex. G at 4-5 [redacted]. That supplementation finally occurred in 2026—three years later. Ex. H at 2-3. Chilisin withheld this critical fact at the exact time it mattered: when the Court was assessing current competition to weigh lifting the OPI.

Chilisin also took every opportunity to increase Cyntec's costs. It pursued two PTO reexaminations and a second jury trial on obviousness, losing each time. It filed dispositive briefs on issues it plainly waived to the Federal Circuit. Dkt 433 at 6-10. It also forced Cyntec to relitigate rejected arguments, repeatedly defending the Court's rulings admitting the reexaminations and

permitting Cyntec's experts to testify from their reexamination declarations. *See* Dkt. 439 at 2-5; Dkt. 498 at 5-6; Dkt. 524 at 1-2; Dkt. 537 at 1-3; Dkt. 547 606:24-607:11; Dkt. 439. Chilisin then moved post-trial on the same issues and lost again. Dkt. 560 at 10-13, Dkt. 661 at 10-11. This strategy needlessly drove up costs and consumed the Court's resources.

After the Second Trial, Chilisin's conduct continued – objecting and opposing meaningful discovery into its sales of infringing products; falsely arguing to the Court that Cyntec waived infringement on products ***it specifically obtained damages on*** and forcing Cyntec to repeatedly move (and then successfully move for reconsideration) on Chilisin's finances. Dkts. 580; 588; 595-3; 602-3. Chilisin then sought reconsideration of its discovery defeats, which the Court summarily denied. Dkt. 618.

### D. *Read* Factor 4: Chilisin's Size Supports Enhancement

Chilisin can readily pay an enhanced award: its own documents show annual revenues exceeding [redacted], dwarfing the [redacted] royalty award. Dkts. 298-34 at 247605; 299-27 at 1. Chilisin's former marketing manager confirmed that it sold "millions" of mixed powder MPCs. Dkt. 544 166:23-25. Even so, its infringing MPC sales are only a small part of its business. Dkt. 288-3 654:9-11; Van Uden Decl. ¶ 45. Trebling the damages in this case would have little impact on Chilisin's overall business. *See Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, at *8 (N.D. Cal. Aug. 22, 2016) (infringer's large size favored enhancement).

### E. *Read* Factor 5: This Case Was Not Close

This case was not close. *See supra* §§ VI.A–C (*Read* Factors 1-3). Chilisin's infringement appeal failed even under *de novo* review. Dkt. 336 at 9-11. The Federal Circuit's obviousness remand reflected only Rule 50's low bar for reaching a jury; whenever the merits were decided, Cyntec prevailed decisively. *See supra* §§ VI.B–C. *Read* factor 5 supports enhancement.

### F. *Read* Factors 6 and 7: The Duration of Misconduct Spans A Decade

***Duration of Misconduct.*** The duration here is extraordinary: Chilisin first infringed the '312 and '037 Patents no later than 2015, when it began deliberately copying Cyntec's products. Dkt. 288-3 1167:12-18; *see supra* §§ III.A, VI.A. Infringement has continued without interruption to this day—including when the OPI was in force.

In the Second Trial—11 years after that infringement first began and three years after the Federal Circuit affirmed infringement—Chilisin's counsel brazenly acknowledged that "Chilisin doesn't dispute it is using [Cyntec's] mixed powder technology. It is using it. ***It is using it today***." Dkt. 544 101:1-5. Since the First Trial, Chilisin—directly or through Pulse—has continuously sold mixed powder MPCs into the United States. Dkt. 602-6 ¶¶ 5, 7-8; Kohl Decl. ¶¶ 28-77, Apps. B-H; Van Uden Decl. ¶ 98. [redacted]. *See supra* § III.C. Chilisin's infringement has continued for over a decade with no end in sight. *See* Lee Decl. ¶¶ 11, 13; *Apple*, 258 F. Supp. 3d at 1033 (infringement continuing 12 months after notice).

***No Remedial Action.*** The only trial testimony about Chilisin's response to Cyntec's notice was that an employee "forwarded the letter to the person in charge," Dkt. 288-3 685:14-19, and Chilisin offered no design-around evidence at either trial. Instead of complying with the OPI (Dkt. 322 at 1-3), Chilisin (1) certified none of its sunset sales and told Cyntec it had made none (*supra* § III.B.1); (2) dissolved Chilisin America and moved its U.S. sales to Pulse, which sold infringing products in the United States while the OPI remained in force (Dkts. 602-4 at 1-2; 603-6); (3) implied to customers that the injunction would not apply to Pulse (Dkt. 596-7); and (4) renamed the adjudicated products and reassigned their old part numbers to non-infringing parts, creating the false appearance of a design-around (*infra* § VI.H; Kohl Decl. ¶¶ 35-37, 73, Apps. C, H, I). Throughout, Chilisin kept selling the infringing MPCs. That is not remediation; it is evasion.

### G. *Read* Factor 8: Chilisin Intended to Harm Cyntec

Chilisin's competition with Cyntec was improper from the outset. Chilisin engaged in a systematic, deliberate campaign to copy Cyntec's patented designs to displace Cyntec at its most important customers. *See supra* §§ III.A, VI.A; Dkt. 575-12 at 22851. This was copying as a business strategy—precisely the deliberate intent to harm this factor targets.

Chilisin translated its counterfeit designs into a predatory pricing scheme designed to drive Cyntec from its own customer accounts. *See supra* § III.A; Van Uden Decl. ¶¶ 93, 99-101. Chilisin acknowledged internally that it was pricing below cost. Dkt. 288-11 at 34483 ("negative margin"). These tactics forced Cyntec to defend its own customers against products embodying its own

patented technology. *See* supra § IV.A.1; Lee Decl. ¶¶ 9-10. Chilisin pursued this scheme knowing of Cyntec's patents, and concealed its infringing sales during and after the OPI. *See supra* §§ III.A–B, VI.A, VI.C, VI.F.

These actions reflect a party that fully understood its obligations and deliberately chose to evade them. Its motive to deprive Cyntec of its patents' benefit—and of this Court's injunction—is evident throughout. *See Apple*, 258 F. Supp. 3d at 1035 ("infringing conduct to gain an edge" in a competitive market "favors an award of enhanced damages.").

### H. *Read* Factor 9: Chilisin Concealed Its Ongoing Infringement

The ninth *Read* factor weighs heavily in favor of enhancement. Chilisin's concealment operated on three mutually reinforcing levels. Beginning before the First Trial, Chilisin rebranded infringing MPCs with new part names and numbers. Van Uden Decl. ¶ 104 and Exs. 2.1-2.4; Kohl Decl. ¶¶ 28-33, 35-37, Apps. C, I. [redacted] *Id*. The effect is a manufactured paper trail: if asked about the adjudicated part numbers, Chilisin can point to non-infringing products; if asked about mixed powder products, it points to the new series names.

The scheme was uncovered not through Chilisin's own disclosures but through a subpoena to Pulse's U.S. distributor DigiKey, whose records confirmed active U.S. sales of the renamed products from 2023 to the present. Dkt. 603-7; *see supra* § III.B.2. Chilisin itself withheld complete sales data for the renamed products in post-trial discovery, notwithstanding that DigiKey's records confirmed those sales were occurring. Dkt. 581-3 at 4; Dkt. 603-6.

Chilisin's concealment even extended to this Court: it falsely represented it made "no sales" of accused products between Q3 2021 and Q1 2026—ignoring Chilisin America's admitted U.S. sales, the sales routed through Pulse, and potentially [redacted] sold abroad for import in finished electronics. Dkt. 571 at 2; *see supra* §§ III.B–C; Dkt. 357. And Chilisin still refuses to produce complete sales data for its sales to those OEMs. Dkt. 580; Van Uden Decl. ¶¶ 19, 91, 100. All nine *Read* factors favor enhancement.

## VII. THE COURT SHOULD AWARD SUPPLEMENTAL DAMAGES

Courts must award prevailing patent owners no less than a reasonable royalty for periods

of infringement not considered by the jury. *See* 35 U.S.C. § 284; *WhitServe, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012) (affirming supplemental damages for post-verdict sales). Because the jury awarded damages only through Q3 2021, it could not compensate Cyntec for later infringing sales. Cyntec is therefore entitled to supplemental damages for those sales. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1380-81 & n.10 (Fed. Cir. 2013). As set forth in Mr. Van Uden's declaration, Chilisin sold [redacted] Van Uden Decl. ¶¶ 104-105. Applying the jury's 5% rate yields supplemental damages of [redacted]. *Id.* ¶ 105.

## VIII. THE COURT SHOULD AWARD CYNTEC ITS ATTORNEY FEES

Section 285 authorizes "reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. A case is exceptional when it "stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Courts consider "the totality of the circumstances," including "frivolousness, motivation, objective unreasonableness … and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* 554 & n.6. Litigation conduct can make a case exceptional and requires only a showing by preponderance of the evidence. *Id.* 554, 557-58. The totality of Chilisin's conduct (including *supra* in § VI) places this case well outside ordinary litigation.

### A. Chilisin Circumvented the OPI and Misrepresented It to Customers

As detailed above, Chilisin responded to the injunction by moving its U.S. sales to its affiliate Pulse and telling customers that "an injunction can only apply to the named defendants in the lawsuit." Mays Decl. Ex. L at 16; *see supra* §§ III.B.2, VI.F. Pulse began selling infringing MPCs in September 2022, Dkt. 603-8 at row 2394. After the sunset period ended in February 2023, Pulse continued selling infringing MPCs in the U.S. Dkt. 603-6; Dkt. 327 at 18.

### B. Chilisin Misrepresented Its Sales and Then Exploited Its Own Nondisclosure

While Pulse was selling infringing products in the U.S., Chilisin told this Court the opposite: that the injunction "prevents Chilisin from selling or importing products to the United States," Dkt. 342 at 1, 3; that "it had to stop making sales as a result of the injunction," Dkt. 348

at 8, 10; and that it "has not been permitted to sell accused products to sunset customers in the United States since February 2023," Dkt. 357 at 1. After the injunction was dissolved in May 2024, Chilisin represented that it "made no sales of [adjudged infringing] products to the United States, meaning it had no need to supplement." Dkt. 403 at 6. [redacted]. *See supra* §§ III.B.1-2, VI.H, VIII.A. Chilisin failed to disclose [redacted]

Chilisin then exploited its own nondisclosure. It sought summary judgment of no damages because "Cyntec has no admissible evidence Chilisin made sales of adjudged-infringing products to the United States after the prior jury verdict, including while the injunction was in effect," Dkt. 406 at 11, and later faulted Cyntec because it "took no discovery on which entities sell accused products," Dkt. 443 at 1. Yet Chilisin failed to supplement its interrogatories to disclose that [redacted]—just as it has withheld sales data for its renamed products. *See supra* § VI.H. Withholding the records of one's own conduct and then faulting the opponent's lack of proof is the antithesis of good-faith litigation. *Farmer Bros. Co. v. Coca-Cola Co.*, 384 F. Supp. 595, 600 (C.D. Cal. 1974) ("concealment of pertinent information" is "grounds for declaring the case to be an exceptional one").

## IX. CYNTEC IS ENTITLED TO PRE- AND POST-JUDGMENT INTEREST

**Pre-judgment interest.** An award of prejudgment interest is "the rule, not the exception." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012). Courts in this District routinely award prejudgment interest at the prime rate, compounded quarterly. *See Atmel Corp. v. Silicon Storage Tech., Inc.*, 202 F. Supp. 2d 1096, 1101 (N.D. Cal. 2002); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2008 WL 928535, at *3-4 (N.D. Cal. Apr. 4, 2008); *Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*, 2014 WL 1008183, at *6 (N.D. Cal. Mar. 7, 2014).

Prejudgment interest is necessary to adequately compensate Cyntec. Van Uden Decl. ¶¶ 107-108. Cyntec requests prejudgment interest on the verdict and any supplemental damages at the prime rate, compounded quarterly.

**Post-judgment interest.** Post-judgment interest is mandatory, at the statutory Treasury-

yield rate. 28 U.S.C. § 1961(a). Post-judgment interest on the total money award is computed daily and compounded annually. 28 U.S.C. § 1961(b); *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986); Van Uden Decl. ¶ 109. It begins accruing when the court enters final judgment quantifying the award. *Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1274 (Fed. Cir. 2020). Enhanced and supplemental damages, prejudgment interest, and fees likewise bear interest from the judgment quantifying each. *See* 28 U.S.C. § 1961(a), (b); *United States ex rel. Thrower v. Acad. Mortg. Corp.*, 172 F.4th 695, 702-703 (9th Cir. 2026) (interest on fees accrues from the order first fixing the amount owed).

## X. CONCLUSION

For the foregoing reasons, the Court should grant Cyntec's Motions for post-trial relief.

Dated: October 9, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ James C. Yoon*
James C. Yoon
E-mail: jyoon@wsgr.com

*Attorney for Plaintiff*
*CYNTEC COMPANY, LTD.*